# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) Case No. 1:13-cv-07945 ) |
| v. | ) **CLASS ACTION** ) ) |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., | ) ) ) Hon. Robert A. Guzman ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS EMERGENCY MOTION TO PARTIALLY LIFT THE PSLRA DISCOVERY STAY IN ORDER TO CONDUCT LIMITED EXPEDITED DISCOVERY**

**TABLE OF CONTENTS**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | STATEMENT OF THE FACTS | | 2 |
| | A. | The Proposed Transaction | 2 |
| | B. | The Unfair Price | 3 |
| | C. | The Unfair Process | 3 |
| | D. | The Incomplete or Materially Deficient Recommendation Statement | 4 |
| III. | ARGUMENT | | 4 |
| | A. | Lifting the PSLRA Discovery Stay Is Appropriate | 4 |
| | | 1. Legal Standard for Lifting the PSLRA Discovery Stay | 4 |
| | | 2. Plaintiff's Discovery Requests Are Sufficiently Particularized | 5 |
| | | 3. Plaintiff Will Suffer Undue Prejudice | 6 |
| | B. | Limited Expedited Discovery Is Appropriate | 7 |
| | | 1. Legal Standard for Expedited Discovery | 7 |
| | | 2. Good Cause Exists to Grant Limited Expedited Discovery | 8 |
| | | 3. Defendants Face No Prejudice from the Requested Expedited Discovery | 11 |
| IV. | CONCLUSION | | 11 |

## TABLE OF AUTHORITIES

**Cases** Page(s)

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
  No. 09 MDL 2058 (DC),
  2009 U.S. Dist. LEXIS 108322 (S.D.N.Y. Nov. 16, 2009) ........................................................5

*David P. Simonetti Rollover IRA v. Margolis*,
  No. 3694-VCN, 2008 Del. Ch. LEXIS 78 (Del. Ch. June 27, 2008) .........................................9

*Dimension Data N. Am., Inc. v. NetStar-1, Inc.*,
  226 F.R.D. 528 (E.D.N.C. 2005) ...............................................................................................7

*Gunter v. Novopharm USA, Inc.*,
  No. 99 C 7496, 2001 U.S. Dist. LEXIS 2117 (N.D. Ill. Feb. 28, 2001) ....................................8

*Hard Drive Prods., Inc. v. Doe*,
  283 F.R.D 409 (N.D. Ill. 2012) ..............................................................................................7, 8

*In re Int'l Jensen Inc. S'holders Litig.*,
  No. 14992, 1996 Del. Ch. LEXIS 77 (Del. Ch. July 16, 1996) ...............................................10

*In re John Q. Hammons Hotels Inc. S'holder Litig.*,
  No. 758-CC, 2009 Del. Ch. LEXIS 174 (Del. Ch. 2009) .......................................................8, 9

*In re Lernout & Hauspie Sec. Litig.*,
  214 F. Supp. 2d 100 (D. Mass. 2002) ........................................................................................4

*Lyondell Chem. Co. v. Ryan*,
  970 A.2d 235 (Del. 2009) ..........................................................................................................9

*In re Netsmart Techs., Inc. S'holders Litig.*,
  924 A.2d 171 (Del. Ch. 2007) ...................................................................................................8

*Nichting v. DPL Inc.*,
  No. 3:11-cv-141,
  2011 U.S. Dist. LEXIS 76739 (S.D. Ohio July 15, 2011) ...............................................4, 5, 6

*Paramount Commc'ns, Inc. v. QVC Network, Inc.*,
  637 A.2d 34 (Del. 1994) ............................................................................................................9

*Pension Trust Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
  No. 12-CV-884-JPS,
  2013 U.S. Dist. LEXIS 63378 (E.D. Wis. May 3, 2013) .......................................................6, 7

*In re Pure Res., Inc., S'holders Litig.*,
   808 A.2d 421 (Del. Ch. 2002) ................................................................................................. 8, 10

*Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*,
   506 A.2d 173 (Del. 1986) ................................................................................................................ 9

*Ryan v. Walton*,
   No. 10-145 (RMC),
   2010 U.S. Dist. LEXIS 108618 (D.D.C. Mar. 9, 2010) ............................................................. 6

*Sheridan v. Oak Street Mortg., LLC*,
   244 F.R.D. 520 (E.D. Wis. 2007) ................................................................................................ 7

*TCYK, LLC v. Does 1-87*,
   No. 13 C 3845, 2013 U.S. Dist. LEXIS 145722 (N.D. Ill. Oct. 9, 2013) .................................. 7

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ..................................................................................................................... 10

*Va. Bankshares, Inc. v. Sandberg*,
   501 U.S. 1083 (1991) ................................................................................................................... 10

**Statutes**

15 U.S.C. § 78u-4(b)(3)(B) ................................................................................................. 1, 4, 6

15 U.S.C. § 78n(e) ................................................................................................................ *passim*

15 U.S.C. § 78t(a) ................................................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................................................... 7, 10

Plaintiff Kerry Lambert ("Plaintiff") respectfully submits this memorandum of law in support of his emergency motion for an order to (i) partially lift the Private Securities Litigation Reform Act of 1995 (the "PSLRA") discovery stay, 15 U.S.C. § 78u-4(b)(3)(B), and (ii) allow Plaintiff to conduct limited expedited discovery.[1]

I.  **INTRODUCTION**

Plaintiff holds 43,550 shares of Tellabs, Inc. ("Tellabs" or the "Company") common stock and brought a class action on behalf of the stockholders of Tellabs against the members of Tellabs's board of directors (the "Board" or the "Individual Defendants")[2] for their breaches of fiduciary duties arising out of the Board's attempt to sell the Company to Marlin Equity Partners through Blackhawk Holding Vehicle, LLC and Blackhawk Merger Sub Inc. (collectively, "Marlin")[3] for inadequate consideration representing barely a 4.5% premium as a result of a unfair sale process, and Marlin's aiding and abetting thereof. Plaintiff also brought claims for violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") for material misstatements or omissions in the recommendation statement filed by Tellabs on Schedule 14D-9 (the "Recommendation Statement") with the Securities and Exchange Commission ("SEC") on November 1, 2013.

Although the PSLRA applies to claims brought under Section 14 of the Exchange Act and provides for a stay of discovery during the pendency of any motion to dismiss,[4] where, as

---

[1] In light of the timing of the Proposed Transaction (defined herein), see discussion *infra*, Plaintiff moves for emergent relief before counsel for Defendants have filed appearances in the action. Plaintiff will attempt to provide the best practicable actual notice of the instant motion by immediately providing corporate counsel and Defendants copies of all relevant documents.

[2] The Individual Defendants are Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinksy, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams.

[3] Tellabs, Marlin, and the Individual Defendants are collectively referred to herein as "Defendants."

[4] Presumably, Defendants will be filing their motion to dismiss shortly.

1

here, the requested discovery is particularized, and a party will suffer undue prejudice absent judicial intervention, the partial lifting of the PSLRA discovery stay is appropriate in order to allow limited expedited discovery.

Specifically, Plaintiff requests particularized discovery aimed at the flawed sales process that culminated in the Board accepting cash consideration of $2.45, which is well below Tellabs' 52-week stock price high of $3.63 and below the Company's book value of $2.81 per share for the fiscal quarter ended June 30, 2013. Plaintiff also requests particularized information on the Recommendation Statement, which fails to disclose material information that prevents Tellabs shareholders from being fully informed on whether to tender their shares in the Proposed Transaction. More importantly, *time is of the essence* because the Proposed Transaction is set to expire on ***December 2, 2013***, less than one month from today. As a result, Plaintiff and the Class will suffer undue prejudice because absent judicial intervention, they will not have all material information necessary to be fully informed on whether to tender their shares in the Proposed Transaction (defined below).

Plaintiff therefore respectfully requests that the Court partially lift the PSLRA discovery stay and allow Plaintiff to conduct limited expedited discovery for the good cause shown.

## II. STATEMENT OF THE FACTS

### A. The Proposed Transaction

On October 21, 2013, Tellabs announced that the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") for Marlin to acquire Tellabs, via a tender offer (the "Offer"), in a deal with an aggregate transaction value of approximately $891 million. ¶ 2.[5]

---

[5] All references herein to "¶_" are cites to the Class Action Complaint for Breach of Fiduciary Duty and Violation of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 ("CAC"), Dkt. No. 1. Capitalized terms not otherwise defined herein shall have the same meaning as those found in the CAC.

2

Pursuant to the Merger Agreement, Tellabs stockholders will receive $2.45 in cash for each share of common stock they own (the "Proposed Transaction"). *Id*.

### B. The Unfair Price

The Offer price of $2.45 per share significantly undervalues the Company and offers a meager 4.5% premium compared to the $2.35 close price for Tellabs stock on October 18, 2013, the day before the Proposed Transaction was announced. *See* ¶¶ 5, 53. Tellingly, the $2.45 price per share is a significant discount to the 52-week high for Tellabs stock of $3.63 and is even a discount to the Company's book value of $2.81 as of June 30, 2013. *Id.* As Jon C. Ogg of 24/7 Wall St. Blog noted in an article discussing the Proposed Transaction titled *Tellabs Gives Itself Away in Private Equity Buyout*, "Tellabs had nearly $800 million in cash and short-term equivalents as of June 30. Even after you back out all the liabilities, its total shareholder equity was $999 million and its net tangible assets came to almost $875 million." ¶ 54.

### C. The Unfair Process

Dialectic Capital Management ("Dialectic Capital"), Tellabs' lead activist stockholders, has been pushing to revamp the Company since 2012 and has successfully nominated three directors to the Board. ¶ 5. Now, in order to liquidate their Tellabs holdings, Dialectic Capital, along with Tellabs' second largest stockholder and co-founder of the Company Michael J. Birck ("Birck"), the Board, and Company management, have improperly caused the Company to be sold to Marlin for inadequate consideration. *Id.* For example, the Proposed Transaction offers substantial liquidity, and if the transaction closes, Dialectic Capital, Birck, the Board, and senior management will receive approximately $110 million of their investment in Tellabs without causing a run in Tellabs stock. ¶¶ 6, 51, 55. The Board was therefore not interested in maximizing stockholder value. *See id*.

    **D.**    **The Incomplete or Materially Deficient Recommendation Statement**

On November 1, 2013, the Company filed the Recommendation Statement with the SEC. ¶ 61. The Recommendation Statement fails to disclose, in violation of the Board's duty of candor under state law and in violation of Sections 14(e) and 20(a) of the Exchange Act, (i) certain information regarding the financial analysis performed by Goldman Sachs & Co. ("Goldman Sachs"), Tellabs' adviser on the fairness of the Proposed Transaction, and (ii) several important details regarding the process leading up to the signing of the Merger Agreement. ¶¶ 63-75.

**III.**    **ARGUMENT**

    **A.**    **Lifting the PSLRA Discovery Stay Is Appropriate**

        **1.**    **Legal Standard for Lifting the PSLRA Discovery Stay**

Although the PSLRA provides that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss," district courts have the power, in their discretion, to lift the PSLRA discovery stay if "the court finds upon the motion of any party that particularized discovery is necessary to . . . prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).

"[T]he concept of particularized discovery is a nebulous one, and the phrase is not devoid of ambiguity." *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 108 (D. Mass. 2002) (internal quotation marks and citation omitted). However, requests are typically "particularized" within the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if the "'party seeking discovery under the exception . . . adequately specifies the target of the requested discovery.'" *Nichting v. DPL Inc.*, No. 3:11-cv-141, 2011 U.S. Dist. LEXIS 76739, at *10 (S.D. Ohio July 15, 2011) (citation and alteration omitted). "Whether a discovery request is sufficiently 'particularized' [ultimately] depends on 'the nature of the underlying litigation.'" *Id.* (quoting *In re Royal Ahold N.V. Sec. &*

4

*ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)). Additionally, "District Courts have construed 'undue prejudice' to mean 'improper or unfair treatment amounting to something less than irreparable harm.'" *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, No. 09 MDL 2058 (DC), 2009 U.S. Dist. LEXIS 108322, at *6 (S.D.N.Y. Nov. 16, 2009) (citation omitted).

### 2. Plaintiff's Discovery Requests Are Sufficiently Particularized

Here, Plaintiff's requests the following narrowly tailored, particularized discovery in regards to the Proposed Transactions:

1. Minutes and notes of the meetings of the Board in connection with the Proposed Transaction and/or where the valuations of Tellabs were discussed;

2. Financial projections and forecasts prepared by Tellabs management and provided to Goldman Sachs, the Board, and/or any bidders in connection with the Proposed Transaction;

3. Materials including books, analyses, and/or presentations (including drafts) prepared by Goldman Sachs concerning the Proposed Transaction, strategic alternatives, or any other offer as well as materials supporting such books and presentations; and

4. Confidentiality, non-disclosure, and standstill agreements entered into between Tellabs and any of the parties referenced in the Recommendation Statement, as well as any potential suitor not referenced in the Recommendation Statement.

Plaintiff also requests that Defendants allow for (i) the deposition of Daniel P. Kelly, the President and Chief Executive Officer, (ii) the deposition of Defendant Vincent H. Tobkin, Chairman of the Board, and (iii) facilitate the deposition of the person most knowledgeable from Goldman Sachs concerning the Proposed Transaction.

In *Nichting*, District Court Judge Timothy S. Black found substantially similar discovery requests sufficiently particularized to warrant lifting the PSLRA discovery stay in the merger context, including document production and depositions. *Nichting*, 2011 U.S. Dist. LEXIS 76739, at *19; *see also Ryan v. Walton*, No. 10-145 (RMC), 2010 U.S. Dist. LEXIS 108618,

(D.D.C. Mar. 9, 2010) (lifting the PSLRA discovery stay and granting expedited discovery because Plaintiff's discovery requests were sufficiently particularized).

Plaintiff's requests are therefore sufficiently particularized under 15 U.S.C. § 78u-4(b)(3)(B).

### 3. Plaintiff Will Suffer Undue Prejudice

Plaintiff alleges in the CAC that he and other Tellabs stockholders will be forced to decide whether to tender their shares without having all material information available. ¶¶ 61-75. Further, because the Offer period is set to expire on December 2, 2013, ***time is of the essence***. ¶ 3. Under similar circumstances—*i.e.*, where shareholders will make an uninformed or misinformed decision or where the acquisition will close before the plaintiff is entitled to discovery—several courts have found undue prejudice and lifted the PSLRA discovery. *See, e.g.*, *Nichting*, 2011 U.S. Dist. LEXIS 76739, at*17 (finding undue prejudice and lifting the PSLRA discovery stay in order for plaintiff to conduct limited expedited discovery because "[the] time constraint, coupled by a showing of potential irreparable harm, militates in favor of an order for limited and discreet discovery"); *Ryan*, 2010 U.S. Dist. LEXIS 108618, at *6 (finding undue prejudice and lifting the PSLRA discovery stay in order for plaintiff to conduct limited expedited discovery because "shareholders cannot make a fully informed decision whether to vote in favor of [the proposed] acquisition . . .").

Defendants have also already gathered the aforementioned discovery materials when deciding to approve the Proposed Transaction and issue the Recommendation Statement. Consequently, "where the defendants have already gathered the discovery materials sought by [Plaintiff], . . . exceptional circumstances exist[] moving this case outside the intended ambit of the PSLRA discovery stay." *Pension Trust Fund for Operating Eng'rs v. Assisted Living*

6

*Concepts, Inc.*, No. 12-CV-884-JPS, 2013 U.S. Dist. LEXIS 63378, at *5 (E.D. Wis. May 3, 2013).

Plaintiff therefore will suffer undue prejudice here absent a judicial order lifting the PSLRA discovery stay to allow him to conduct the particularized discovery discussed *supra*.

B.  Limited Expedited Discovery Is Appropriate

1.  Legal Standard for Expedited Discovery

In addition to the PSLRA, Rule 26(d) of the Federal Rules of Civil Procedure generally provides that formal discovery will not commence until after the parties have conferred, as required by Fed. R. Civ. P. 26(f), unless authorized by court order. Courts may, however, order to expedite discovery before the Rule 26(f) conference upon a showing of good cause. *See Sheridan v. Oak Street Mortg., LLC*, 244 F.R.D. 520, 521 (E.D. Wis. 2007) (citation omitted); *see also TCYK, LLC v. Does 1-87*, No. 13 C 3845, 2013 U.S. Dist. LEXIS 145722, at *10 (N.D. Ill. Oct. 9, 2013) ("District courts have broad discretion to manage the discovery process.") (citing *James v. Hyatt Regency Chi.*, 707 F.3d 775, 784 (7th Cir. 2013)); *Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 530 (E.D.N.C. 2005) ("Federal Rules of Civil Procedure 26(d), 30(a), 33(b), 34(b) and 36 give this Court the power to adjust the timing requirements imposed under Rule 26(d) and if warranted, to expedite the time for responding to the discovery sought.") (internal quotation marks and citation omitted).

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Hard Drive Prods., Inc. v. Doe*, 283 F.R.D 409, 410 (N.D. Ill. 2012) (internal quotation marks and citation omitted). "In deciding a motion for expedited discovery, the Court evaluates 'the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances.'" *Id.* (citation omitted).

7

## 2. Good Cause Exists to Grant Limited Expedited Discovery

Here, the Recommendation Statement fails to disclose, in violation of the Board's duty of candor under state law and in violation of Sections 14(e) and 20(a) of the Exchange Act, (i) certain information regarding the financial analysis performed by Goldman Sachs and (ii) several important details regarding the process leading up to the signing of the Merger Agreement. ¶¶ 63-75.

The Delaware Chancery Court[6] has explained that underlying financial projections are crucial to an investor's decision, noting the following:

> Indeed, *projections of this sort are probably among the most highly-prized disclosures by investors*. Investors can come up with their own estimates of discount rates or (as already discussed) market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects.

*In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007) (emphasis added); *id.* at 203-04 (observing that "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion *as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed*") (emphasis added); *In re Pure Res., Inc., S'holders Litig.,* 808 A.2d 421, 449 (Del. Ch. 2002) (finding that "[t]he *real informative value of the banker's work is not in its bottom-line conclusion, but in the valuation analysis that buttresses that result*") (emphasis added).

Courts have also recognized the importance of disclosing conflicts of interest between the financial adviser and the proposed transaction. *See In re John Q. Hammons Hotels Inc. S'holder Litig.*, No. 758-CC, 2009 Del. Ch. LEXIS 174, at *58 (Del. Ch. 2009); *see also David P. Simonetti Rollover IRA v. Margolis*, No. 3694-VCN, 2008 Del. Ch. LEXIS 78, at *25 (Del. Ch.

---

[6] "'[T]he corporate law of the state of incorporation is controlling with respect to the fiduciary duties of its directors as well as other corporate affairs.'" *Gunter v. Novopharm USA, Inc.*, No. 99 C 7496, 2001 U.S. Dist. LEXIS 2117, at *21 (N.D. Ill. Feb. 28, 2001) (quoting *Treco, Inc. v. Land of Lincoln Sav. & Loan*, 749 F.2d 374, 377 (7th Cir. 1984)). Here, Delaware law will apply because Tellabs is incorporated in Delaware. ¶ 15.

June 27, 2008) (holding that "it is imperative for the stockholders to be able to understand what factors might influence the financial advisor's analytical efforts"). Here, the fact that Goldman Sachs has provided services in the past to Marlin, but has failed to quantify the value of those services, is material information that was omitted in the Recommendation Statement. ¶ 75.

Further, having decided to sell the Company, the Individual Defendants had a fiduciary duty to undertake reasonable efforts to secure the highest price realistically available for Tellabs's shareholders. *See Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986). Put differently, "[i]n the sale of control context, the directors must focus on one primary objective—to secure . . . the best value reasonably available for the stockholders—and they must exercise their fiduciary duties to further that end." *Paramount Commc'ns, Inc. v. QVC Network, Inc.*, 637 A.2d 34, 44 (Del. 1994); *see also Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 242 (Del. 2009) (holding that Revlon's value-maximization rule applies "when a company embarks on a transaction—on its own initiative or in response to an unsolicited offer—that will result in a change of control") (citation omitted).

The Offer price of $2.45 per share however significantly undervalues the Company and offers a meager 4.5% premium. *See* ¶¶ 5, 53. The $2.45 price per share is also a significant discount to the 52-week high for Tellabs stock of $3.63 and is even a discount to the Company's book value of $2.81 as of June 30, 2013. *See id.* In order to liquidate their Tellabs holdings, Dialectic Capital, along with Birck, the Board, and Company management, have thereby improperly caused the Company to be sold to Marlin for inadequate consideration without regard to maximizing shareholder value. *See* ¶ 5.

Plaintiff thus intends to move for a preliminary injunction in order to enjoin the close of the Offer period on December 2, 2013 until Defendants cure the material deficiencies in the

9

Recommendation Statement that violate the duty of candor and Sections 14(e) and 20(a) of the Exchange Act. *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) (explaining that federal securities laws prohibit solicitation of proxies by means of materially false or misleading statements); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 448 (1976) (noting that the remedial purpose of federal securities laws is to prohibit the issuance of misleading proxy statements to enable shareholders to make an informed choice). Plaintiff also believes that there are adequate grounds to seek a preliminary injunction to enjoin the Proposed Transaction in order to require the Board to engage in a process to maximize shareholder value.

For purposes of expedited discovery, the good cause standard is alone satisfied when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information. *See* Fed. R. Civ. P. 26(d) Advisory Committees' Notes on 1993 amendments (noting that discovery before a 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction. . . ."). In fact, in the Delaware Court of Chancery, "[a] party's request to schedule an application for a preliminary injunction, and to expedite the discovery related thereto*, is normally routinely granted. Exceptions to that norm are rare*." *In re Int'l Jensen Inc. S'holders Litig.*, No. 14992, 1996 Del. Ch. LEXIS 77, at*1-2 (Del. Ch. July 16, 1996) (emphasis added); *see also In re Pure Res.*, 808 A.2d at 452 ("*[I]rreperable injury is threatened when a stockholder might make a tender or voting decision on the basis of materially misleading or inadequate information*.") (emphasis added).

Thus, due to the material omissions in the Recommendation Statement and the impending deadline for the close of the Offer period, coupled with alleged breaches of fiduciary duty to maximize shareholder value, expedited discovery is necessary and appropriate.

### 3. Defendants Face No Prejudice from the Requested Expedited Discovery

The benefit of allowing the Company's shareholders a meaningful opportunity to protect their rights as shareholders of Tellabs far outweighs the minimal burden placed on Defendants in producing documents on an expedited basis. Moreover, Plaintiff has sought to limit any burden or hardship on Defendants by requesting discovery that is narrowly tailored to obtain the information necessary to evaluate the Proposed Transaction. *See supra* Part III.A.2. These documents are readily available to Defendants to produce to Plaintiff, which further minimizes any potential burden on Defendants, and Plaintiff is willing to work with Defendants to further narrow the scope of discovery to lessen any potential burden on Defendants.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant his motion in its entirety.

DATED: November 5, 2013

Respectfully submitted
**LITE DEPALMA GREENBERG, LLC**

By: */s/ Katrina Carroll*
      Katrina Carroll
One South Dearborn, Suite 2100
Chicago, IL 60603
Tel: (312) 212-4383
Fax: (312) 212-5919
Email: kcarroll@litedepalma.com
Federal Bar No. 6291405

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Ave., Tenth Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff*

11