**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC.,<br><br>        Defendants. | Case No. 1:13-cv-07945<br><br>Hon. Robert A. Guzman |

**MEMORANDUM OF LAW IN SUPPORT OF THE TELLABS DEFENDANTS'
<u>MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 3

ARGUMENT .......................................................................................................................... 4

I. PLAINTIFF'S FEDERAL-LAW CLAIMS FAIL TO STATE A CLAIM. ................. 4

    A. Plaintiff's Claims Under Section 14(e) Fail to Sufficiently Identify Any False or Misleading Statements, as Required by the PSLRA. ........................... 4

    B. Plaintiff's Section 14(e) Claim Also Fail to Allege Particularized Facts Supporting a Strong Inference of *Scienter*, as Required by the PSLRA. ...... 10

    C. The Dismissal of Plaintiff's Section 14(e) Claim Requires the Dismissal of His Section 20(a) Claim. ........................................................................... 11

II. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE REMAINING STATE-LAW CLAIMS. ........................................................... 11

CONCLUSION .................................................................................................................... 13

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Beck v. Dobrowski*,
 559 F.3d 680 (7th Cir. 2009) ...................................................................................2, 7, 8, 13

*Beck v. Dobrowski*,
 No. 06-C-6411, 2007 WL 3407132 (N.D. Ill. Nov. 14, 2007) ................................................7

*Bond Opportunity Fund v. Unilab Corp.*,
 87 Fed. Appx. 772 (2d Cir. 2004) ..........................................................................................5

*Brody v. Transitional Hosps. Corp.*,
 280 F.3d 997 (9th Cir. 2002) .........................................................................................6, 8, 9

*Connecticut Nat'l Bank v. Fluor Corp.*,
 808 F.2d 957 (2d Cir. 1987) ................................................................................................10

*Dixon v. Ladish Co., Inc.*,
 785 F. Supp. 2d 746 (E.D. Wis. 2011) ..........................................................................2, 6, 7

*H. K. Porter Co., Inc. v. Nicholson File Co.*,
 482 F.2d 421 (1st Cir. 1973) ...............................................................................................11

*In re Citigroup Inc. S'holder Deriv. Litig.*,
 964 A.2d 106 (Del. Ch. 2009) .............................................................................................12

*In re Digital Island Sec. Litig.*,
 357 F.3d 322 (3d Cir. 2004) ................................................................................................10

*In re Digital Island Sec. Litig.*,
 223 F. Supp. 2d 546 (D. Del. 2002) ..............................................................................2, 4, 6

*Pugh v. Tribune Co.*,
 521 F.3d 686 (7th Cir. 2008) ..............................................................................................11

*RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*,
 672 F.3d 476 (7th Cir. 2012) ..........................................................................................3, 12

*Ryan v. Gifford*,
 918 A.2d 341 (Del. Ch. 2007) .............................................................................................12

*Schreiber v. Burlington N., Inc.*,
 472 U.S. 1 (1985) ................................................................................................................10

*Taro Pharm. Indus. v. Sun Pharm. Indus.*,
  No. 09-cv-8262, 2010 U.S. Dist. LEXIS 84163 (S.D.N.Y. July 13, 2010) ............................ 10

*Wright v. Associated Ins. Co.*,
  29 F.3d 1244 (7th Cir. 1994) .................................................................................................. 12

**STATUTES AND REGULATIONS**

Section 14(e) of the Exchange Act, 15 U.S.C. § 78n(e) ............................................................. 1, 5

Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a) ................................................................. 7

15 U.S.C. § 78u-4(b)(1) ............................................................................................................. 2, 5

15 U.S.C. § 78u-4(b)(2)(A) ........................................................................................................... 11

28 U.S.C. § 1367(c)(3) .................................................................................................................. 12

17 C.F.R. § 240.14d-101 ............................................................................................................ 1, 4

Rule 10b-5, 17 CFR § 240.10b–5 ................................................................................................. 10

Rule 14a-9, 17 CFR § 240.14a-9 .................................................................................................... 7

Del. Code Annot., tit. 8, § 262 ........................................................................................................ 4

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 13

**INTRODUCTION**

On October 21, 2013, Tellabs, Inc. ("Tellabs" or the "Company") announced that it had entered into an agreement for its acquisition by an affiliate of Marlin Equity Partners ("Marlin"), to be accomplished through a cash tender offer to Tellabs' shareholders followed by a "short form" merger (the "Proposed Transaction"). As almost inevitably occurs when such public company transactions are announced, Tellabs' announcement was followed by a spate of putative shareholder class action complaints, the first of which was filed the same day as the announcement.[1] On November 4, 2013, Tellabs filed its Solicitation/Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement"), as required by the SEC for a company that is the subject of a tender offer. 17 C.F.R. § 240.14d-101. The next day, Plaintiff filed this lawsuit. Plaintiff alleges federal-law claims under Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (Counts III and IV, respectively) based on the Tellabs Defendants' purportedly inadequate disclosures in the Recommendation Statement.[2] Plaintiff also alleges state-law claims under Delaware law for breach of fiduciary duty and aiding and abetting such breaches (Counts I and II, respectively). Both the federal-law and state-law claims must be dismissed.

First, Plaintiff's federal-law claims do not meet the pleading standards of the PSLRA. In order to state a claim under Section 14(e) (which applies to tender offers), a plaintiff must allege, *inter alia*, that the Schedule 14D-9 recommendation statement contains a false or misleading

---

[1] There are three lawsuits challenging the Proposed Transaction that are pending in the Delaware courts, five actions pending in the Circuit Court for DuPage County (where Tellabs is headquartered) and seven actions pending in the Circuit Court of Cook County.

[2] The "Tellabs Defendants" consist of Tellabs, Inc. together with members of its Board of Directors, i.e., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Srigl, Jan H. Suwinski, and Mikel H. Williams.

statement. 15 U.S.C. § 78n(e). Under the PSLRA, in turn, a plaintiff alleging that a statement is false or misleading is required to identify the alleged false statements "with particularity" and must also provide facts indicating *how* or *why* each identified statement is "false" or "misleading." 15 U.S.C. § 78u-4(b)(1).

Yet nowhere in the Complaint does Plaintiff identify with specificity particular statements in the Recommendation Statement alleged to be false or misleading, much less provide facts indicating in what way any such statements are purportedly false or misleading. Instead, Plaintiff adopts a different tack, enumerating a laundry list of additional information that he claims should also have been included to assist investors in deciding whether to tender their shares. But claims of this sort simply do not square with the governing provisions of Section 14(e), which make clear, among other things, that the omission of additional information is only actionable if doing so caused statements made to be affirmatively misleading. And courts repeatedly have rejected allegations of the sort made here—including in other cases brought by the same Plaintiff's counsel, in which they attempted to advance the same flawed theory— holding that the purported omission of additional information that a stockholder might find "interesting" or "helpful" or even allegedly "important" for evaluation cannot serve as the basis for a federal disclosure claim. Instead, the federal securities laws proscribe only the failure to include information necessary to prevent an affirmative statement from being affirmatively misleading. *See, e.g.*, *Beck v. Dobrowski*, 559 F.3d 680, 684-85 (7th Cir. 2009); *Dixon v. Ladish Co., Inc.*, 785 F. Supp. 2d 746 (E.D. Wis. 2011); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 552 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004). Nowhere, however, does the Complaint plead, except in the most conclusory terms, that *any* affirmative statement in the Recommendation Statement was rendered false or misleading due to the alleged omission of this

additional information. Nor does Plaintiff make any attempt to plead facts giving rise to a "strong inference" of *scienter*, or intent to defraud, with respect to any of the Defendants.

With respect to the state-law claims, as the Seventh Circuit has held, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the *presumption* is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012) (internal citation omitted; emphasis added). That should be the case here. This general presumption is even more compelling here, given that Plaintiff's state-law claims are entirely duplicative of the claims made in fifteen other previously-filed lawsuits pending in various state courts. (*See* p.1 n.1, *supra*.)

## BACKGROUND

Tellabs is a telecommunications company incorporated in Delaware and headquartered in Naperville, Illinois that designs, develops and supports telecommunication networking products for communications service providers in the United States and internationally. (Compl. ¶ 15.) In recent years, Tellabs has been facing significant challenges in growing or even maintaining its business in light of developments in the ever-changing telecommunications industry. The Company's total annual revenue has declined every year since 2010. (*See* Schedule 14D-9 at 18, attached hereto as Exhibit A.) And the Company is projecting a loss in 2013 with only minimal revenue growth projected through 2017. (*Id.* at 32-34.) Not surprisingly, there has been a general decline in the value of the Company's stock, which has hovered around $2.00 per share throughout 2013.

On October 21, 2013, Tellabs announced a merger agreement in which an affiliate of Marlin proposes to pay cash for all of Tellabs' stock, starting with a tender offer for Tellabs' stock at $2.45 per share. (Compl. ¶ 2.) The tender offer commenced on November 1, 2013, and

will expire at midnight on December 2, 2013, unless extended. (*Id.* ¶ 3; Schedule 14D-9 at 2.) Under the terms of the Agreement and Plan of Merger (the "Merger Agreement"), Marlin has the right to walk away from the deal if it is not consummated on or before December 20, 2013. (*Id.* at 2.)

Shareholders will ultimately decide whether or not to accept the tender offer (with any dissenting shareholders having the right, under Delaware law, to pursue an appraisal action in the Delaware courts[3]). But prior to entering into the Merger Agreement with an affiliate of Marlin, the Company engaged in a far-reaching solicitation of interest process, which involved contacting a total of 33 financial sponsor and strategic parties since April 30, 2013. (*Id.* at 22.) Marlin's offer was the highest offer that the Company received in connection with that process. No higher bid has emerged since the Merger Agreement was announced on October 21, 2013.

## ARGUMENT

I.   **PLAINTIFF'S FEDERAL-LAW CLAIMS FAIL TO STATE A CLAIM.**

   A.   **Plaintiff's Claims Under Section 14(e) Fail to Sufficiently Identify Any False or Misleading Statements, as Required by the PSLRA.**

A tender offer recommendation statement is not required to contain all information that a shareholder may be interested in knowing. *Digital Island*, 223 F. Supp. 2d at 552 (under Section 14(e), a defendant "is not required to disclose a fact merely because a[n] … investor would like to know that fact") (internal quotation marks omitted). Instead, under the federal securities laws, there are two sets of requirements governing the information in tender offer recommendation statements. First, the SEC has promulgated rules establishing certain information that is required to be contained in a tender offer recommendation statement. Schedule 14D-9, 17 C.F.R. § 240.14d-101 (setting forth the specific categories of information that must be contained in a

---

[3] *See* Schedule 14D-9 at 37; *see also* Del. Code Annot., tit. 8, § 262.

4

tender offer recommendation statement). Second, Section 14(e) of the Exchange Act provides that a tender offer recommendation statement cannot contain false statements of material fact or omit to state any material fact necessary to make the statements made not misleading. 15 U.S.C. § 78n(e).[4]

Tellingly, the Complaint does not even generally allege any violation of the affirmative disclosure requirements set forth in Schedule 14D-9, much less attempt to identify any specific requirement of that Schedule with which the Recommendation Statement allegedly failed to comply. Rather, Plaintiff's claims are based on an alleged violation of Section 14(e) and its prohibition on false or misleading statements. (Compl. ¶¶ 61-75.) However, Plaintiff ignores the actual requirements for liability under Section 14(e) and utterly fails to satisfy the particularity requirements of the PSLRA with respect to statements claimed to be false or misleading. These deficiencies are fatal.

A plaintiff "[i]n any private action arising under [the PSLRA]" which alleges untrue statements or misleading omissions must "specify each statement alleged to have been misleading" *and* "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). "Mere speculation is insufficient to satisfy the PSLRA pleading standard." *See Bond Opportunity Fund v. Unilab Corp.*, 87 Fed. Appx. 772, 773 (2d Cir. 2004). Thus, when, as here, a complaint fails to identify specific statements in a recommendation statement that are alleged to be rendered false or misleading by virtue of alleged omissions, *or* fails to explain with

---

[4] The text of Section 14(e) provides as follows: "It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative."

particularity in what way any specific statement is "false or misleading" in the absence of additional information, its claim must be dismissed. *See, e.g.*, *Digital Island*, 223 F. Supp. 2d at 552 (dismissing Section 14(e) complaint where plaintiff "fail[ed] to identify a prior disclosure that was rendered 'inaccurate, incomplete, or misleading' by the alleged omission," and also failed to "state that any specific disclosures made … in connection with the tender offer were inaccurate, incomplete, or otherwise untruthful"); *see also Dixon*, 785 F. Supp. 2d at 749 (under the PSLRA, "generalized allegations" that a proxy "'misstates and/or omits material information' concerning four categories of information" were "too conclusory to state a claim on their own").

Nor is it sufficient merely to allege that additional information was "material," (Compl. ¶¶ 63-75); would "evince[] the process the Board took" (*id.* ¶¶ 69-71), or would allegedly help shareholders to "fully understand" (*id.* ¶¶ 64-68) the analysis employed by the Company's financial advisor. These are the purported foundations of Plaintiff's federal disclosure claims here. But there is a wide gulf between additional information claimed to be helpful or potentially relevant and information whose omission causes a statement to be affirmatively misleading. It is only the latter that Section 14(e) requires be supplied, with Schedule 14D-9 dictating the only affirmative disclosure requirements. *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (Section 14(e) does not "contain[] a freestanding completeness requirement; the requirement is that any public statements companies make that could affect security sales or tender offers not be misleading or untrue"). For this reason, courts in this circuit and elsewhere have repeatedly held that a federal securities claim that is merely based on the alleged relevance or materiality of additional information does not state a claim at all.

*Dixon v. Ladish Company, Inc.*, 785 F. Supp. 2d 746, a case in which Plaintiff's counsel was involved, is illustrative. As here, the *Dixon* complaint conclusorily alleged that a financial

6

advisor's fairness opinion provided to stockholders in connection with a proposed transaction failed to disclose information purportedly necessary to allow shareholders to make an "intelligent" determination, including a list of five items that the financial advisor purportedly should have included in its opinion.[5]  *Id.* at 750 (internal quotations omitted); *compare* Compl. ¶¶ 63-68.  Judge Stadtmueller rejected this claim and dismissed the complaint, holding that these allegations failed to meet the pleading requirements of the PSLRA because they were "not tied to another statement which became misleading or false as a result, nor an explanation of why any such transformed statement is in fact misleading or false."  *Id*.  In the absence of such a particularized linkage, the plaintiff's generalized allegation that the disclosure to shareholders was "plagued by materially false statements and omissions" did not suffice.  *Id.*

*Beck v. Dobrowski* is to the same effect.  There, Judge Leinenweber, in a decision affirmed by the Seventh Circuit, dismissed proxy disclosure claims similar to those alleged here.  As Judge Leinenweber correctly held, the complaint in that case failed to state a federal securities claim when it "[s]imply list[ed] information that [d]efendants allegedly omitted from … proxies."  No. 06-C-6411, 2007 WL 3407132, at *6 (N.D. Ill. Nov. 14, 2007).  Such a recitation—which is likewise all that Plaintiff alleges here—failed to state a federal securities claim because the plaintiff did not adequately "allege … that those omissions rendered statements that [d]efendants actually made misleading," nor did the plaintiff "explain *how* any information allegedly omitted from the proxies had such an effect on a specific statement actually made."  *Id.* (emphasis in original).  The Seventh Circuit affirmed this decision, aptly

---

[5] While *Dixon* involved a proxy statement rather than a tender offer, and therefore a different provision of the securities laws (Section 14(a) of the Exchange Act and SEC Rule 14a-9 enacted thereunder), the same requirement of a false statement or one caused to be misleading by virtue of an omission was involved.  Indeed, the only relevant difference between a claim under Section 14(e) and a claim under Rule 14a-9 is that the requirements for Section 14(e) liability are even steeper because, as discussed below (pp. 10-11, *infra*), *scienter* is also required for a Section 14(e) violation.

7

characterizing the disclosure claims alleged as "feeble." 559 F.3d 680 (7th Cir. 2009).

The Complaint here suffers from precisely the same defects. None of the "omissions" alleged is tied with particularity to an affirmative statement rendered false or misleading. Nor does the Complaint explain (much less with particularity) *why* these purported omissions rendered any affirmative statements false or misleading, or in what way. To take but one example, while the Complaint acknowledges the Recommendation Statement's disclosure that "the Board held a special telephonic meeting during which the Board considered potential strategic opportunities involving the Company and Party A," the Complaint complains of a failure to disclose "whether Tellabs and/or Goldman Sachs reached out to Company A, or if Company A contacted the Company *sua sponte*." (Compl. ¶ 70.) But nowhere does the Complaint explain how the statement regarding the Board's meeting is "misleading" in the absence of this level of detail. Instead, the Complaint is simply a list of requests for "more" information, a demand that can always be made with respect to any recommendation statement, and which would threaten to bury the shareholders in an avalanche of trivial information. *See Brody*, 280 F.3d at 1006 ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."); *see also Beck*, 559 F.3d at 685 ("The plaintiff contends that the shareholders might have liked to have more backup information, and perhaps some of them would have. But there is nothing in the complaint to suggest that any shareholder was misled or was likely to be misled by the dearth of backup information—that is, that the shareholder drew a wrong inference from that dearth.").

Similarly, the Complaint improperly seeks to treat the Recommendation Statement as if it were a Q&A session or an interrogatory response, claiming that the Recommendation Statement is somehow unlawful unless it recites details such as "why the Company chose [to permit Party

A to conduct due diligence with respect to the data business]" (Compl. ¶ 71), "whether Tellabs engaged in a strategic alternative process before the fall of 2012" (*id.* ¶ 72), "the identity of [the] shareholders" whom the Board authorized management to contact in order to ascertain their views on a potential sale of the Company (*id.* ¶ 73), "at whose behest did Tellabs' management refine the Company's base case projections" (*id.* ¶ 74), and the "quantif[ication of] the dollar value of those services performed" by Goldman Sachs for Marlin affiliates (*id.* ¶ 75). It is not. The existence of additional conceivable questions that a shareholder could ask related to the sales process does not state a claim for violation of Section 14(e). *See Brody*, 280 F.3d at 1006.

Finally, Plaintiff's recitation of additional information that he conclusorily asserts would have assisted shareholders "to fully understand Goldman Sachs' analysis," is similarly deficient. (Compl. ¶¶ 63-68.) Again, the Complaint is devoid of particularized allegations connecting any of the alleged omissions relating to Goldman Sachs' work to any statement in the Registration Statement that was allegedly rendered *false or misleading* by the omission. Instead, the purported "omissions" largely consist of requests for additional information about why Goldman Sachs did what it did in its analyses. But nothing in Section 14(e) requires this level of detail, or requires a company to anticipate and answer the additional "why" inquiries that a creative claimant will always be able to fashion.

At bottom, Plaintiffs' disclosure claims are an attempt to expand and rewrite the information required to be included in a recommendation statement. But that is the task of the SEC, and the SEC has done so by creating a list of Schedule 14D-9 requirements – none of which are alleged to have been violated. The failure to include much "more" is not at all the same as statements being false or misleading, and it is no accident that the Complaint's

9

allegations of falsity are bereft of required particulars. Plaintiff's Section 14(e) claims are based on a fundamentally erroneous legal theory and should be dismissed.[6]

### B. Plaintiff's Section 14(e) Claim Also Fail to Allege Particularized Facts Supporting a Strong Inference of *Scienter*, as Required by the PSLRA.

Courts consistently have held that *scienter* is a required element of a Section 14(e) claim. *Jacob M. Scheiner IRA v. Midas, Inc.*, No. 12-C-2653, 2013 WL 329006, at *6, 7 (N.D. Ill. Jan. 29, 2013); *see also In re Digital Island Sec. Litig.*, 357 F.3d 322, 328 (3d Cir. 2004) ("[S]cienter is an element of a Section 14(e) claim."); *Taro Pharm. Indus. v. Sun Pharm. Indus.*, No. 09-cv-8262, 2010 U.S. Dist. LEXIS 84163, at *22 (S.D.N.Y. July 13, 2010) (citing, *inter alia*, *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2d Cir. 1987) ("In order to prove a violation of [Section] 14(e), a party must establish … that the defendant acted with either knowledge of falsity, or a reckless disregard for the truth.") (internal quotations omitted). Indeed, Section 14(e) was specifically added by Congress to fill a perceived loophole in the application of Section 10(b) of the Exchange Act to tender offers, and Section 10(b) of course also requires *scienter*. *See, e.g.*, *Schreiber v. Burlington N., Inc.*, 472 U.S. 1, 10 (1985) ("Section

---

[6] In addition, much of what Plaintiff complains was not disclosed actually was disclosed. For example, Plaintiff argues that the Recommendation Statement failed to disclose "whether Tellabs engaged in a strategic alternative process before the fall of 2012." (Compl. ¶ 72.) But the Recommendation Statement clearly states that "[o]ver the years, the Board has periodically reviewed the Company's strategic alternatives. (Schedule 14D-9 at 9.) Similarly, Plaintiff alleges that the Recommendation Statement "fails to disclose in the *Selected Companies Analysis* the basis for selecting the companies in the Mid-Cap Group, the Large-Cap Group, and the Historically Declining Revenue Group as the comparable companies to Tellabs." (Compl. ¶ 68.) However, the Recommendation Statement states that "the companies included were chosen because they are publicly traded companies with operations that for purposes of analysis may be considered similar to certain operations of the Company." (Schedule 14D-9 at 27.) Plaintiff also alleges that the Recommendation Statement "omits to quantify the dollar value of those services performed" by Goldman Sachs for Marlin affiliates. (Compl. ¶ 75.) But the Recommendation Statement disclosed that "none of [these services] involved the Investment Banking Division of Goldman Sachs receiving compensation." (Schedule 14D-9 at 29.) Moreover, the additional information that Plaintiff seeks in paragraph 64 of the Complaint regarding the assumptions Goldman Sachs relied upon to make its calculations is provided at page 25 of the Recommendation Statement. (*Id.* at 25.)

14(e) adds a 'broad antifraud prohibition,' modeled on the antifraud provisions of § 10(b) of the Act and Rule 10b–5, 17 CFR § 240.10b–5.") (internal citation omitted); *H. K. Porter Co., Inc. v. Nicholson File Co.*, 482 F.2d 421, 425-26 (1st Cir. 1973) ("We interpret the enactment of § 14(e) in 1968, dealing specifically with tender offers, as recognition of the inadequacy of other provisions of securities laws, especially § 10(b) and Rule 10b-5, to provide a comprehensive and sure remedy, at least for those who were not purchasers or sellers of securities.").

Plaintiff simply ignores this *scienter* element, however. The PSLRA requires the pleading with particularity of facts that give rise to a "strong inference" of *scienter* as to each defendant. 15 U.S.C. § 78u-4(b)(2)(A). But the Complaint makes no reference to *scienter* and makes no attempt at all to satisfy this requirement. This failure provides an independent basis for the dismissal of the Section 14(e) claim.

### C. The Dismissal of Plaintiff's Section 14(e) Claim Requires the Dismissal of His Section 20(a) Claim.

Plaintiff's failure to plead a Section 14(e) claim also requires the dismissal of his Section 20(a) claim. "[T]o state a claim under § 20(a), a plaintiff must first adequately plead a primary violation of securities laws …." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008). Because Plaintiff fails to allege a primary violation of Section 14(e), Plaintiff's Section 20(a) claim must also be dismissed.

## II. THE COURT SHOULD DECLINE TO EXERCISE JURISDICTION OVER THE REMAINING STATE-LAW CLAIMS.

The dismissal of Plaintiff's federal-law claims should also result in dismissal of Plaintiff's state-law claims. The pendency of the state-law claims is explicitly premised solely upon the Court's supplemental jurisdiction, and the Complaint does not allege any alternative basis for the Court's jurisdiction over the state-law claims. *See* Compl. ¶ 11. In the absence of

11

the federal claim continuing, dismissal is therefore appropriate and the "general rule."[7] *Wright v. Associated Ins. Co. Inc.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994) (stating that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendant state-law claims"). "Although the decision is discretionary, '[w]hen all federal claims in a suit in federal court are dismissed before trial, the *presumption* is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'" *RWJ Mgmt. Co., Inc.*, 672 F.3d at 479-80 (emphasis added) (quoting *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)).

Moreover, dismissal of the remaining state law claims is particularly appropriate here given that those claims are governed by Delaware law, and the same putative class is proceeding on those claims in Delaware state court against the same defendants. Moreover, as the Delaware courts have made clear, they have a particular interest in adjudicating claims of breaches of fiduciary duty made with respect to Delaware corporations. *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 118 (Del. Ch. 2009) ("Citigroup is incorporated in Delaware, and the fiduciary duties owed by its officers and directors are governed by Delaware law.… Delaware has an ongoing interest in applying our law to director conduct in the context of current market conditions—conditions which change rapidly and pose new challenges for directors and officers of Delaware corporations."); *Ryan v. Gifford*, 918 A.2d 341, 349 (Del. Ch. 2007) ("Delaware courts have a significant and substantial interest in overseeing the conduct of those owing fiduciary duties to shareholders of Delaware corporations.") (internal quotation marks omitted). Thus, if the Court dismisses Plaintiff's federal claims, the Court should decline to exercise

---

[7] The supplemental jurisdiction statute gives the Court discretion to "decline to exercise supplemental jurisdiction" over state-law claims if the Court "has dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3).

supplemental jurisdiction over Plaintiff's state-law claims. *See Scheiner*, 2013 WL 329006, at *9-10 (declining to exercise supplemental jurisdiction over plaintiff's state-law breach of fiduciary duty claims where plaintiff's Section 14(e) and 20(a) claims had been dismissed).[8]

## CONCLUSION

For the foregoing reasons, the Tellabs Defendants respectfully request that this Court grant their motion to dismiss Counts III and IV with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and decline to exercise supplemental jurisdiction over the state law claims in Counts I and II, thereby resulting in the dismissal of those claims without prejudice.

Dated: November 20, 2013

Respectfully submitted,

*Tellabs Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Srigl, Jan H. Suwinski, and Mikel H. Williams*

By: \_/s/ James W. Ducayet_____
    One of Their Attorneys

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Melanie E. Walker
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

---

[8] In any event, even if the Complaint could be deemed to allege diversity jurisdiction with respect to the state-law claims—and it cannot—the Court may exercise *Colorado River* abstention and dismiss Plaintiff's state-law claims or, at a minimum, stay the action with respect to those claims. *See, e.g.*, *Beck*, 559 F.3d at 686 (affirming district court's dismissal of state-law claims following the dismissal of federal-law disclosure claims pursuant to the *Colorado River* doctrine).

13

## CERTIFICATE OF SERVICE

James W. Ducayet, an attorney, hereby certifies that on November 20, 2013, he caused a true and correct copy of the foregoing **Memorandum of Law in Support of the Tellabs Defendants' Motion to Dismiss the Complaint** to be filed electronically with the Clerk of Court to be filed and served upon all parties via the Court's CM/ECF system.

s/ James W. Ducayet