# Exhibit A

**LDG**
ATTORNEYS AT LAW

**LITE DePALMA**
**GREENBERG, LLC**
Newark • Chicago

ONE SOUTH DEARBORN, SUITE 2100
CHICAGO, IL 60603

TEL: 312.212.4383
FAX: 312.212.5919
www.litedepalma.com

November 25, 2013

**VIA HAND-DELIVERY**
Honorable Ronald A. Guzman
United States District Court
Chambers 1278
219 South Dearborn Street
Chicago, IL 60604

        Re:    *Lambert v. Tellabs, Inc. et al.*
                **No.: 1:13-cv-07945**

Dear Judge Guzman:

      We are counsel to Plaintiff in the above-captioned action. We write to respectfully inform the Court that the parties have entered into a Memorandum of Understanding dated November 24, 2013 (a copy of which is enclosed) settling this matter, subject to Your Honor's approval.

      Plaintiff is in the process of conducting further discovery and if satisfactory, the parties anticipate negotiating a formal Stipulation of Settlement in the near future and submitting an Order to the Court requesting to schedule a fairness hearing and directing notice to be provided to the Class.

      Counsel for the parties are available should the Court have any questions.

                Respectfully submitted,

                Katrina Carroll

KC:al
Encls.

cc:    All Counsel (via e-mail)

314194 v1

## MEMORANDUM OF UNDERSTANDING

**WHEREAS,** the parties to the matter pending in the United States District Court for the Northern District of Illinois, styled *Lambert v. Tellabs, Inc. et al.*, Case No. 1:13-cv-7945 (the "Action") ("the Parties") have reached an agreement-in-principle providing for the settlement of the Action on the terms and subject to the conditions set forth below;

**WHEREAS,** on October 18, 2013, Tellabs, Inc. ("Tellabs" or the "Company") entered into an Agreement and Plan of Merger (as amended or modified from time to time, the "Merger Agreement"), by and among the Company, Blackhawk Merger Sub Inc., and Blackhawk Holding Vehicle LLC, which, *inter alia*, contemplates a cash tender offer ("Offer") by Blackhawk Merger Sub Inc. and, following the consummation of the Offer and subject to the satisfaction or, if permissible, waiver of the other conditions set forth in the Merger Agreement, Blackhawk Merger Sub Inc. will merge with and into the Company (collectively, the "Proposed Transaction"), with the Company surviving the Merger;

**WHEREAS,** on November 1, 2013, Tellabs filed a Schedule 14D-9 relating to the Offer;

**WHEREAS,** on November 5, 2013, the Action was filed as a putative stockholder class action complaint by Kerry Lambert ("Plaintiff") against Tellabs, the members of the Tellabs Board of Directors, Marlin Equity Partners, Blackhawk Merger Sub Inc., and Blackhawk Holding Vehicle LLC (collectively, "Defendants"), alleging certain violations of the federal securities laws in connection with the Schedule 14D-9 and claims of breaches of fiduciary duties in connection with the Proposed Transaction;

**WHEREAS,** on November 5, 2013, Plaintiff filed a motion seeking expedited discovery;

**WHEREAS,** counsel for Plaintiff ("Plaintiff's Counsel") and counsel for Defendants ("Defendants' Counsel") met and conferred regarding expedited discovery and reached an agreement regarding the production of documents;

**WHEREAS,** the Defendants and Plaintiff (collectively "Parties") negotiated a protective order to govern the exchange of confidential discovery (the "Protective Order"), which was executed by the Parties and filed with the Court on November 15, 2013;

**WHEREAS,** pursuant to the terms of the Protective Order, Tellabs provided to Plaintiff key documents relating to his claims, including minutes of meetings of the Tellabs Board and extensive presentations to the Tellabs Board by its financial advisor and Tellabs management, which Plaintiff' counsel has reviewed;

**WHEREAS,** after assessing the merits of Plaintiff's case with the benefits of the documents produced by Tellabs, on November 20, 2013, Plaintiff's counsel sent a formal demand letter to Defendants' Counsel in an effort to resolve the Action (the "Demand Letter");

**WHEREAS,** Defendants' Counsel and Plaintiff's Counsel have engaged in arm's length discussions and negotiations regarding a potential resolution of the claims asserted in the Action;

**WHEREAS,** following these arm's length negotiations, Tellabs has agreed, solely for purposes of settlement of the Action, to file an amendment to the Schedule 14D-9 in the form

attached hereto as Exhibit A (the "Amendment") containing certain additional disclosures (the "Supplemental Disclosures") sought by Plaintiff;

**WHEREAS,** without in any way admitting or conceding that any additional disclosures are or have been material or required, Tellabs acknowledges that the filing of the Action and negotiations with Plaintiff's Counsel in connection with a potential settlement of the Action have been and will be a cause of the Supplemental Disclosures contained in Exhibit A;

**WHEREAS,** Defendants have vigorously denied and continue to deny all allegations of wrongdoing, fault, liability or damage to the Plaintiff or the Class (defined below), deny that they have engaged in any wrongdoing whatsoever, deny that they committed any violation of law, deny that any disclosures in connection with the Proposed Transaction (including those included in the Schedule 14D-9) are or at any time have been in any way deficient, deny that they acted improperly in any way, believe that they acted properly at all times, believe the Action has no merit, and maintain that they have committed no disclosure violations or any other breach of duty whatsoever in connection with the Proposed Transaction or any public disclosures relating thereto, but have determined to enter into a settlement for the reasons set forth herein;

**WHEREAS,** the entry by Plaintiff into this Memorandum of Understanding ("MOU") is not an admission as to the lack of any merit of any claims asserted in the Action;

**WHEREAS,** the Parties recognize the time and expense that would be incurred by further litigation and the uncertainties inherent in such litigation;

**WHEREAS,** the Parties have reached an agreement-in-principle for settlement of the Action on the terms and conditions set forth below, including but not limited to a release of all claims which were or could have been asserted in the Action;

**WHEREAS,** Plaintiff's Counsel has concluded that the terms contained in this MOU are fair, reasonable, and in the best interests of Tellabs' stockholders and members of the Class (as defined below); and

**WHEREAS,** the Parties wish to document their agreement-in-principle by entering into this MOU.

**NOW THEREFORE,** as a result of the prosecution of the Action and the foregoing as well as the negotiations among counsel to the Parties, the Parties have reached the following agreement-in-principle which is intended to be more fully documented in a settlement agreement ("Settlement Agreement"), consistent with the terms of this MOU and containing other customary and standard terms (as used in this MOU, the term "Settlement" refers to the settlement to be consummated pursuant to this MOU and the Settlement Agreement):

1. **Supplemental Disclosures.** As soon as practicable following the execution of this MOU by all Parties, Tellabs will make the Supplemental Disclosures to its stockholders by filing with the SEC the Amendment. Without in any way admitting or conceding that any additional disclosures are or have been material or required, Defendants acknowledge that the filing of the Action and negotiations with Plaintiff's Counsel in connection with a potential settlement of the Action have been and will be a significant cause of the

Supplemental Disclosures. Plaintiff's Counsel in the Action have proposed, reviewed, commented on, and approved the Supplemental Disclosures.

2. **Certification of Class.** The Settlement Agreement shall provide for and require the conditional certification in the Action, for settlement purposes only, of a class, pursuant to Rules 23(a), 23(b)(1), and 23(b)(2) of the Federal Rules of Civil Procedure, that includes any and all record holders and beneficial owners of any share(s) of Common Stock who held any such share(s) at any time during the period beginning on and including October 18, 2013, through and including the date of consummation of the Proposed Transaction, including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, but excluding the Defendants (the "Class"). The Settlement Agreement will provide for the certification of Kerry Lambert as Class Representative in the Action.

3. **Representations of the Parties and Counsel.** Plaintiff and Plaintiff's Counsel represent that Plaintiff has been a continuous stockholder of Tellabs throughout the period referenced in paragraph 2 and that he has not assigned, encumbered, or otherwise transferred, in whole or in part, the claims in the Action. Each of the undersigned attorneys affirms that he or she has been duly empowered and authorized to enter into this MOU on behalf of his or her respective client(s) as identified in connection with any signature hereto.

4. **Further Disclosures and Modifications to the Proposed Transaction.** Plaintiff acknowledges and agrees that, as a condition of this Settlement, he will not seek any further disclosures beyond those set forth in the Supplemental Disclosures, recognizing that the provision of the Supplemental Disclosures is designed to provide an agreed resolution of this Action. Plaintiff also acknowledges and agrees that the parties to the Proposed Transaction may make amendments or modifications to the Proposed Transaction, including amendments or modifications to the Merger Agreement, prior to the consummation of the Proposed Transaction ("Modifications to the Proposed Transaction"). Plaintiff agrees that he will not challenge or object to any Modifications to the Proposed Transaction so long as they are not inconsistent with the material terms of the Settlement set forth in this MOU or are, in the aggregate, no less favorable to the stockholders of Tellabs than the existing terms of the Proposed Transaction.

5. **Stay Pending Court Approval.** Pending negotiation, execution and Final Approval of the Settlement Agreement and Settlement by the court before which the Action is pending (the "Court"), Plaintiff agrees to stay the proceedings in the Action and not to initiate any proceedings other than those incident to the Settlement itself. The Parties agree to seek to have all respective deadlines in the Action extended indefinitely pending the Court's consideration of the Settlement. As used in this MOU, the term "Final Approval" of the Settlement means that the Court has entered a final order and judgment certifying the Class for settlement purposes only, approving the Settlement, dismissing the Action with prejudice on the merits and with each party to bear its own costs (except those costs set forth in paragraphs 7 and 8 below) and providing for such release

language as set forth in paragraph 6 below, and that such final order and judgment is final and no longer subject to further appeal or review, whether by affirmance on or exhaustion of any possible appeal or review, lapse of time or otherwise; provided, however, and notwithstanding any provision to the contrary in this MOU, Final Approval shall not include (and the Settlement is expressly not conditioned on) the approval of attorneys' fees and the reimbursement of expenses to Plaintiff's Counsel as provided in paragraph 8 below, and any appeal related thereto. The Parties also agree to use their best efforts to prevent, stay or seek dismissal of or oppose entry of any interim or final relief in favor of any member of the Class in any other litigation against any of the Defendants that challenges the Settlement, the Proposed Transaction (including any transactions contemplated thereby), or otherwise involves, directly or indirectly, a Released Claim (defined below).

6. **General Release, Dismissal With Prejudice and Certain Other Settlement Provisions.** The Settlement Agreement shall also provide:

    a) for the full and complete discharge, dismissal with prejudice on the merits, settlement and release of, and a permanent injunction barring, any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (defined below), that Plaintiff or any or all other members of the Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, against any of the Released Parties (defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal securities laws or state law regarding disclosure or fiduciary obligations or any claims that could be asserted derivatively on behalf of Tellabs), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, failures to act, transactions, occurrences, statements, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were or could have been alleged, asserted, set forth, claimed, or referred to in the Action or the subject matter of the Action, including, without limitation, any and all claims which are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) the Proposed Transaction, including but not limited to the terms and conditions thereof, (ii) the Merger Agreement, including but not limited to the terms and conditions thereof, (iii) any and all occurrences or matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (iv) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the potential sale of Tellabs, (v) negotiations in connection with the Merger Agreement, the Proposed Transaction and with any actual or potential acquirer, (vi) the consideration to be received by Class members or by any other Person in connection with the Proposed Transaction, (vii) the payment of a termination fee in connection with the termination of the Merger Agreement, (viii) the Schedule 14D-9, any amendment thereto or any other disclosures, public filings, periodic reports, press releases, proxy statements or other

statements issued, made available or filed relating, directly or indirectly, to the Proposed Transaction, the Merger Agreement or Tellabs' consideration of strategic alternatives, including but not limited to claims under the federal securities laws, (ix) the fiduciary obligations of the Released Parties (defined below) in connection with the Proposed Transaction, the Merger Agreement or any of the matters mentioned or referred to in the Schedule 14D-9 , any amendment thereto or Supplemental Disclosures, (x) claims for fees, expenses or costs incurred in prosecuting or settling the Action, or in connection with any claim for benefits conferred on the Class, except as set forth in paragraph 8 below (xi) any of the matters referred to or alleged in any complaint or amendment(s) thereto filed in the Action (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "Released Claims"); provided, however, that the Released Claims shall not include the right to enforce the Settlement or any claims for statutory appraisal with respect to the merger of Blackhawk Merger Sub Inc. with and into Tellabs by Tellabs stockholders who properly perfect such appraisal claims and do not otherwise waive their appraisal rights;

       b)     that "Released Parties" means (i) Tellabs, Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, Mikel H. Williams, Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.; and (ii) the respective past, present, or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributees, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, shareholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing;

       c)     that "Unknown Claims" means any claim that Plaintiff or any other member of the Class does not know or suspect exists in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement. With respect to any of the Released Claims, the Parties stipulate and agree that upon Final Approval of the Settlement, Plaintiff shall expressly and each member of the Class shall be deemed to have, and by operation of the final order and judgment by the Court shall have, expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR

HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Plaintiff acknowledges and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiff, and by operation of law the members of the Class, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. Plaintiff acknowledges, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement and was relied upon by each and all of Defendants in entering into the Settlement Agreement;

d)    that all Defendants have vigorously denied, and continue to deny vigorously, any wrongdoing or liability with respect to all claims asserted in the Action, including that they have committed any violations of law, that they have acted improperly in any way, that they have any liability or owe any damages of any kind to Plaintiff and/or the Class, and deny that any additional disclosures (including the Supplemental Disclosures) are required under any applicable rule, regulation, statute, or law, but are entering into the Settlement Agreement solely because they consider it desirable that the Action be settled and dismissed with prejudice in order to eliminate the burden, inconvenience, expense, risk and distraction of further litigation;

e)    that after conducting confirmatory discovery, Plaintiff and his counsel believe that the Settlement is fair, reasonable, adequate, and in the best interests of the Class;

f)    that all Defendants shall have the right, in their sole discretion, to withdraw from the Settlement in the event that (i) any court temporarily, preliminarily, or permanently enjoins or otherwise precludes the Proposed Transaction or any part thereof, or (ii) any claim related to the subject matter of the Action, the Proposed Transaction, or the Released Claims is commenced or prosecuted against any of the Released Parties in any court prior to Final Approval of the Settlement, and (following a motion by any of the defendant Released Party(ies)) such claim is not dismissed with prejudice or stayed during the pendency of Settlement approval proceedings before the Court. In the event that any such claim is commenced or prosecuted against any of the Released Parties, the Parties shall cooperate and use best efforts to secure the dismissal with prejudice thereof (or a stay thereof in contemplation of dismissal with prejudice following Final Approval of the Settlement);

g)    that, upon approval of the Settlement by the Court, there shall be entry of a final and binding judgment dismissing the Action with prejudice and, except as set forth in paragraphs 7 and 8 herein, without costs to any Party, and providing for releases consistent with paragraphs 6(a)-(c) above and paragraph 6(j) below;

h) that in the event the Settlement does not obtain Final Approval for any reason, Defendants reserve the right to oppose certification of any plaintiff class in any future proceedings;

i) that Plaintiff's entry into the Settlement is not an admission as to the lack of any merit of any of the claims asserted in the Action; and

j) that Defendants, including any and all of their respective successors in interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns or transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under any of them, and each of them, release Plaintiff and Plaintiff's counsel from any and all claims arising out of or relating to their filing and prosecution of the Action.

7. **Notice.** Tellabs (or its successor(s) in interest) shall be responsible for providing notice of the proposed Settlement to the members of the Class and Tellabs or its successor(s) in interest shall pay all reasonable costs and expenses incurred in providing notice of the Settlement to the members of the Class.

8. **Fees.** The Plaintiff and his counsel intend to petition the Court for an award of fees and expenses in connection with the Action (the "Fee Application"), which petition shall be the sole fee application made in the Action. Defendants reserve all rights with respect to the Fee Application. Following execution of this MOU, the Parties may attempt to reach an agreement regarding the amount of any Fee Application, but, to date, have not discussed the amount of a Fee Application or reached any agreements pertaining thereto. The Parties further acknowledge that their subsequent ability to reach an agreement regarding the amount of a Fee Application is not a condition to this MOU or to the Settlement. The Parties acknowledge and agree that Tellabs or its successor(s) in interest shall pay, or cause their respective insurers to pay, on behalf of the Tellabs Board and the Company, any fees and expenses awarded by the Court to Plaintiff's Counsel, *i.e.*, Faruqi & Faruqi, LLP, in connection with the Fee Application within ten (10) business days after the later of (i) the date when the Settlement receives Final Approval, (ii) the date when the order by the Court approving any award of fees and expenses becomes final and non-appealable, or (iii) the date on which the Company and any applicable insurer is provided with the payee's properly executed W-9 and wire transfer information. Neither Plaintiff nor Plaintiff's Counsel shall make any other application for an award of fees and expenses in connection with the Action or the subject matter of the Action. Final resolution by the Court of the Fee Application shall not be a precondition to the Settlement or the dismissal of the Action in accordance with the Settlement, and the Fee Application may be considered separately from the proposed Settlement. Any failure by the Court to approve the Fee Application in whole or in part shall have no impact on the effectiveness of the Settlement.

9. **Effect of Termination or Failure to Obtain Final Approval on Fees.** In the event that the Settlement is terminated or Preliminary or Final Approval of the Settlement is not achieved, Plaintiff's Counsel agrees not to seek, at any time or in any legal proceeding, an award of fees and expenses in connection with any claimed benefit conferred as a result of the Supplemental Disclosures.

10. **Approval.** The Settlement Agreement is subject to approval of the Court; provided, however, that the Court's approval of the Settlement is not contingent on approval of the Fee Application. The Parties will attempt in good faith and use their best efforts to negotiate and mutually agree promptly upon the content and form of all documentation as may be required to obtain Final Approval of the Settlement and dismissal of the Action.

11. **Confirmatory Discovery.** Confirmatory discovery by Plaintiff designed to confirm certain matters set forth in the Supplemental Disclosures shall be permitted. The parties agree to meet and confer on the appropriate scope of confirmatory discovery, which shall include depositions and will occur within sixty days after the execution of this MOU (or at such other time as the Parties may mutually agree).

12. **Binding Effect and Conditions.** The Settlement is to be further memorialized in a Settlement Agreement consistent with the terms of this MOU and is expressly conditioned on and subject to the following conditions, which shall be included in the Settlement Agreement: (a) certification of the Class for settlement purposes only; (b) preliminary and Final Approval of the Settlement by the Court; (c) dismissal with prejudice of the Action as to all members of the Class (including Plaintiff) without the award of any damages, costs, fees or the grant of further relief except for the payments contemplated by this Settlement; and (d) the Court's entry of the release of all Released Claims as to all Released Parties and dismissal with prejudice of the Action. All provisions of the MOU and Settlement, with the exception of paragraphs 9 and 13 through 16 hereof, shall be rendered null and void and of no force and effect in the event that Final Approval of the Settlement consistent with the terms hereof is not obtained. Additionally, Defendants may, but are not obligated to, render this MOU and the Settlement null and void in the event that any claim related to the subject matter of the Action, the Proposed Transaction, or the Released Claims is commenced or prosecuted against any of the Released Parties and (subject to a motion by such defendant Released Party(ies)) such claim is not dismissed with prejudice, withdrawn or stayed during the pendency of Settlement approval proceedings before the Court. In any event of nullification of this MOU or the Settlement, the Parties shall be deemed to be in the position they were in prior to the execution of this MOU and the statements made herein (including any exhibit hereto) and in connection with the negotiation of the MOU or the Settlement shall not be deemed to prejudice in any way the positions of the Parties with respect to the Action or any other litigation or judicial proceeding, or to constitute an admission of fact of wrongdoing by any Party, shall not be used or entitle any Party to recover any fees, costs or expenses incurred in connection with the Action or in connection with any other litigation or judicial proceeding, and neither the existence of this MOU nor its contents (including any exhibit hereto) nor any statements made in connection with the negotiation of this MOU or any settlement communications shall be admissible in evidence or shall be referred to for any purpose in the Action, or in any other litigation or judicial proceeding.

13. **Return of Documents.** Plaintiff's Counsel agree that within ten (10) days of receipt of a written request by any producing party following Final Approval of the Settlement, they will return to the producing party all discovery material obtained from such producing party, including all documents produced by any of Defendants (including, without limitation, their employees, affiliates, agents, representatives, attorneys, and third party advisors) and any materials containing or reflecting discovery material ("Discovery

Material"), or certify in writing (including by electronic mail) that such Discovery Material has been destroyed; provided, however, that Plaintiff's Counsel shall be entitled to retain all filings, court papers, and attorney work product containing or reflecting Discovery Material, subject to the requirement that Plaintiff's Counsel shall not disclose any Discovery Material contained or referenced in such materials to any person except pursuant to court order or agreement with Defendants. The Parties agree to submit to the Court any dispute concerning the return or destruction of Discovery Material.

14. **No Admission.** The fact of and provisions contained in this MOU (including any exhibit hereto) or the Settlement, and all negotiations, discussions, actions and proceedings in connection with this MOU or the Settlement shall not be deemed or constitute a presumption, concession or an admission by any Party in the Action, any signatory hereto or any Released Party of any fault, liability or wrongdoing or lack of any fault, liability or wrongdoing, as to any facts or claims alleged or asserted in the Action, or any other actions or proceedings, and shall not be interpreted, construed, deemed, involved, invoked, offered or received in evidence or otherwise used by any person in the Action, or any other action or proceeding, whether civil, criminal or administrative, except in connection with any proceeding to enforce the terms of this MOU or the Settlement. The fact of and provisions contained in this MOU (including any exhibit hereto), and all negotiations, discussions, actions and proceedings leading up to the execution of this MOU, are confidential and intended for settlement discussions only. If the Settlement does not receive Final Approval, the Parties shall revert to their respective litigation positions as if this MOU never existed.

15. **Choice of Law.** This MOU, and the Settlement Agreement and Settlement contemplated by it, and any dispute arising out of or relating in any way to this MOU, the Settlement Agreement or the Settlement, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the state of Illinois, without regard to conflict of laws principles. Each of the Parties (a) irrevocably submits to the personal jurisdiction of any state or federal court sitting in Chicago, Illinois, as well as to the jurisdiction of all courts to which an appeal may be taken from such courts, in any suit, action or proceeding arising out of or relating to this MOU, the Settlement and/or the Settlement Agreement, (b) agrees that all claims in respect of such suit, action or proceeding shall be brought, heard and determined exclusively in the United States District Court for the Northern District of Illinois (provided that, in the event that subject matter jurisdiction is unavailable in the United States District Court for the Northern District of Illinois, then all such claims shall be brought, heard and determined exclusively in any other state or federal court sitting in Chicago, Illinois), (c) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such court, (d) agrees not to bring any action or proceeding arising out of or relating to this MOU, the Settlement or the Settlement Agreement in any other court, and (e) expressly waives, and agrees not to plead or to make any claim that any such action or proceeding is subject (in whole or in part) to a jury trial. Each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding brought in accordance with this paragraph.

16. **Miscellaneous.** This MOU constitutes the entire agreement among the Parties with respect to the subject matter hereof, supersedes all written or oral communications, agreements or understandings that may have existed prior to the execution of this MOU,

and may be modified or amended only by a writing signed by the signatories hereto. This MOU shall be binding upon and inure to the benefit of the Parties and their respective agents, executors, heirs, successors and assigns, provided that no Party shall assign or delegate its rights or responsibilities under this MOU without the prior written consent of the other Parties. The Released Parties who are not signatories hereto shall be third party beneficiaries under this MOU entitled to enforce this MOU in accordance with its terms. This MOU may be executed in multiple counterparts by any of the signatories hereto, including by facsimile, and so executed shall constitute one agreement. This MOU shall only take effect once executed by all signatories.

*[Signatures Appear On The Following Pages]*

FARUQI & FARUQI, LLP
Juan E. Monteverde
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331

*Counsel for Plaintiff*

SIDLEY AUSTIN LLP
David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*

SCHULTE ROTH & ZABEL LLP
Michael E. Swartz
William H. Gussman, Jr.
Frank LaSalle
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000
Fax: (212) 593-5955

*Counsel for Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.*

FARUQI & FARUQI, LLP
Juan E. Monteverde
Peter B. Andrews
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331

*Counsel for Plaintiff*

SIDLEY AUSTIN LLP
David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*

SCHULTE ROTH & ZABEL LLP
Michael E. Swartz
William H. Gussman, Jr.
Frank LaSalle
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000
Fax: (212) 593-5955

*Counsel for Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.*

FARUQI & FARUQI, LLP
Juan E. Monteverde
Peter B. Andrews
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331

*Counsel for Plaintiff*

SIDLEY AUSTIN LLP
David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*

SCHULTE ROTH & ZABEL LLP
Michael E. Swartz
William H. Gussman, Jr.
Frank LaSalle
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000
Fax: (212) 593-5955

*Counsel for Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.*

**EXHIBIT A**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

---

## SCHEDULE 14D-9

**(Amendment No. 2)**
**(Rule 14d-101)**

### SOLICITATION/RECOMMENDATION STATEMENT
### UNDER SECTION 14(d)(4) OF THE SECURITIES EXCHANGE ACT OF 1934

---

# TELLABS, INC.
#### (Name of Subject Company)

---

# TELLABS, INC.
#### (Name of Persons Filing Statement)

---

**COMMON STOCK, PAR VALUE $0.01 PER SHARE**
(Title of Class of Securities)

**879664100**
(CUSIP Number of Class of Securities)

**James M. Sheehan, Esq.**
**Executive Vice President,**
**General Counsel, Chief Administrative Officer and Secretary**
**Tellabs, Inc.**
**One Tellabs Center**
**1415 West Diehl Road**
**Naperville, Illinois 60563**
**Telephone (630) 798-8800**
(Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications
on Behalf of the Person Filing Statement)

*COPIES TO:*

**Beth E. Flaming**
**Imad Qasim**
**Sidley Austin LLP**
**1 South Dearborn Street**
**Chicago, Illinois 60603**
**Telephone (312) 853-7000**
**Fax (312) 853-7036**

---

☐    Check the box if the filing relates solely to preliminary communications made before the commencement of a tender offer.

This Amendment No. 2 to Schedule 14D-9 (this "**Amendment**") amends and supplements the Schedule 14D-9 filed with the Securities and Exchange Commission (the "**SEC**") on November 1, 2013 (as amended or supplemented from time to time, the "**Schedule 14D-9**"), by Tellabs, Inc., a Delaware corporation ("**Tellabs**" or the "**Company**"). The Schedule 14D-9 relates to the cash tender offer by Blackhawk Merger Sub Inc., a Delaware corporation ("**Purchaser**") and a wholly-owned subsidiary of Blackhawk Holding Vehicle LLC, a Delaware limited liability company ("**Parent**"). Parent and Purchaser are affiliates of Marlin Equity III, L.P., a Delaware limited partnership, Marlin Equity IV, L.P., a Delaware limited partnership, and Marlin Management Company, LLC, a Delaware limited liability company, as disclosed in the Tender Offer Statement on Schedule TO filed by Parent and Purchaser with the SEC on November 1, 2013 (as amended or supplemented from time to time, the "**Schedule TO**"). The Schedule TO relates to Purchaser's offer to purchase any and all of the outstanding Shares at a price per Share of $2.45, net to the seller thereof in cash, without interest, and less any applicable withholding taxes, upon the terms and subject to the conditions set forth in the Offer to Purchase, dated November 1, 2013 (the "**Offer to Purchase**"), and the related letter of transmittal (the "**Letter of Transmittal**"). The Offer to Purchase and the Letter of Transmittal have been filed as Exhibits (a)(1)(A) and (a)(1)(B) to the Schedule 14D-9, respectively.

Capitalized terms used, but not otherwise defined, in this Amendment shall have the meanings ascribed to them in the Schedule 14D-9. The information in the Schedule 14D-9 is incorporated into this Amendment by reference to all applicable items in the Schedule 14D-9, except that such information is hereby amended and supplemented to the extent specifically provided herein.

**Item 4.    The Solicitation or Recommendation.**

Item 4 ("**The Solicitation or Recommendation**") of the Schedule 14D-9 is hereby amended as follows:

*The following disclosure supplements and restates the third sentence of the last paragraph on page 10 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Background of the Offer and the Merger":*

After discussion regarding the Company's outlook and the attendant uncertainties, the Board determined that it desired additional information regarding the Company's financial and business outlook in order to assist the Board in considering various strategic options. For this reason, the Board decided to suspend the Company's discussions with third parties regarding a potential sale of the entire Company for the time being. However, the Board did authorize management to continue to permit Party A to conduct due diligence with respect to the data business and to contact other parties that might be interested in acquiring the Company's data business.

*The following disclosure supplements and restates the second-to-last sentence in the second paragraph on page 11 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Background of the Offer and the Merger":*

The Board discussed the strategic alternatives presented and then authorized the Company to formally engage Goldman Sachs as its financial advisor in connection with a potential sale of the Company. The Board also decided that, although there had been communications with various parties regarding a potential sale of the entire Company, the Company would be more likely to maximize stockholder value in connection with a potential sale of the entire Company if the Company were to conduct a more formal, non-public process of identifying and contacting the strategic and financial sponsor parties that would be the most likely to be interested in acquiring the Company (other than those as to which there were any material competitive concerns), and the Board directed Goldman Sachs, working with management, to begin such a process.

*The following disclosure supplements and restates the second sentence in the second full paragraph on page 17 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Background of the Offer and the Merger":*

The same day, the Company also provided Marlin with the Company's refined base case projections, which Company management had prepared on its own initiative to reflect refined assumptions regarding certain cash flow items.

*The following disclosure supplements and restates the last sentence of the first full paragraph on page 25 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

Goldman Sachs first calculated the implied values per Share as of December 31 for each of the calendar years 2014 through 2016, by applying illustrative price to one-year forward earnings per Share multiples of 12.0x to 18.0x, which were derived by Goldman Sachs utilizing its professional judgment and experience, taking into account current and historical trading data and the current P/E multiples for the Company and the selected companies (as defined below), to earnings per Share estimates for each of the calendar years 2015 through 2017. These theoretical future values of the Company's equity on a per Share basis were then discounted to present values to June 30, 2013, using an illustrative discount rate of 12.7% derived by application of the Capital Asset Pricing Model, which takes into account certain company-specific metrics, including the company's target capital structure and historical beta, as well as certain financial metrics for the United States financial markets generally and adding a size premium.

*The following disclosure supplements and restates the first sentence of the second paragraph on page 25 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

Goldman Sachs then calculated the implied values per Share as of December 31 for each of the calendar years 2014 through 2016, by applying illustrative price to one-year forward cash adjusted earnings per Share multiples of 8.0x to 14.0x, which were derived by Goldman Sachs utilizing its professional judgment and experience, taking into account current and historical trading data and the current cash adjusted P/E multiples for the Company and selected

2

companies, to cash adjusted earnings per Share estimates for each of the calendar years 2015 through 2017. These theoretical future values of the Company's equity on a per Share basis were then discounted to present values to June 30, 2013, using an illustrative discount rate of 12.7% derived by application of the Capital Asset Pricing Model, which takes into account certain company-specific metrics, including the company's target capital structure and historical beta, as well as certain financial metrics for the United States financial markets generally and adding a size premium.

*The following disclosure supplements and restates the first full paragraph on page 26 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

*Illustrative Discounted Cash Flow Analysis.* Goldman Sachs performed an illustrative discounted cash flow analysis on the Company using the Forecasts, the Company's cash balance and basic Share count as of June 28, 2013, and incorporating the present value (using a discount rate of 10.2%) of the Company's tax carryforwards of approximately $36 million (approximately $0.10 per share). In addition, stock based compensation expense was treated as a cash expense for purposes of determining unlevered free cash flow. Goldman Sachs calculated implied prices per Share using illustrative terminal values in the year 2017 based on perpetuity growth rates ranging from (2.0)% to 2.0%, estimated by Goldman Sachs utilizing its professional judgment and experience, taking into account the Forecasts and market expectations regarding long-term real growth of gross domestic product and inflation, to terminal year projected free cash flow and illustrative discount rates ranging from 16.6% to 20.6%. This analysis resulted in a range of implied present values per Share of $1.74 to $1.79.

*The following disclosure supplements and restates the second paragraph beginning on page 26 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

*Selected Companies Analysis.* Goldman Sachs reviewed and compared certain financial information for the Company to corresponding financial information, ratios and public market multiples for the following publicly traded corporations in the technology industry, separated into the Mid-Cap group (companies with market capitalizations of less than $10 billion), the Large-Cap group (companies with market capitalizations of $10 billion or more) and the Historically Declining Revenue group (collectively referred to as the "selected companies"). The following table presents the results of Goldman Sachs' analysis:

| Company | Enterprise Value as a multiple of | | | | Equity Value as a multiple of | | | |
|---|---|---|---|---|---|---|---|---|
| | CY2013E Revenue | CY2014E Revenue | CY2013E EBITDA | CY2014E EBITDA | CY2013E EPS | CY2014E EPS | CY2013E Cash Adjusted EPS | CY2014E Cash Adjusted EPS |
| **Large Cap** | | | | | | | | |
| Cisco | 1.85x | 1.76x | 6.0x | 5.6x | 11.1x | 10.5x | 6.7x | 6.3x |
| Ericsson | 1.02x | 0.98x | 8.6x | 7.2x | 19.4x | 14.7x | 15.0x | 11.3x |
| Juniper Networks | 1.79x | 1.69x | 7.9x | 6.8x | 17.4x | 15.5x | 11.6x | 10.3x |
| Motorola Solutions | 1.80x | 1.73x | 9.1x | 8.4x | 13.7x | 15.2x | 11.0x | 12.2x |
| **Median** | **1.80x** | **1.71x** | **8.2x** | **7.0x** | **15.6x** | **14.9x** | **11.3x** | **10.8x** |

3

| Mid-Cap | | | | | | | |
|---|---|---|---|---|---|---|---|
| ADTRAN | 1.59x | 1.41x | 16.5x | 11.3x | 35.9x | 27.6x | 24.9x | 18.9x |
| ADVA | 0.61x | 0.56x | 5.2x | 4.4x | 32.2x | 21.0x | 22.1x | 14.2x |
| Alcatel-Lucent | 0.55x | 0.54x | 9.4x | 6.6x | NM | NM | NM | 19.4x |
| Calix | 1.43x | 1.26x | 16.2x | 13.1x | 25.6x | 16.6x | 23.1x | 14.9x |
| Ciena | 1.84x | 1.66x | 19.5x | 15.0x | 38.9x | 24.8x | 34.5x | 21.8x |
| Harmonic | 1.43x | 1.33x | 13.2x | 10.9x | 46.0x | 24.5x | 38.2x | 20.0x |
| Infinera | 2.21x | 2.01x | NM | 17.6x | NM | 46.5x | NM | 37.2x |
| Sonus Networks | 2.54x | 2.40x | NM | NA | 173.5x | 69.4x | NA | 51.9x |
| **Median** | **1.51x** | **1.37x** | **14.7x** | **11.3x** | **37.4x** | **24.8** | **24.9x** | **19.7x** |
| **Historically Declining Revenue** | | | | | | | |
| Alcatel-Lucent | 0.55x | 0.54x | 9.4x | 6.6x | NM | NM | NM | 19.4x |
| Blackberry | 0.14x | 0.17x | 1.5x | 1.4x | NM | NM | NM | NM |
| Nokia | 0.31x | 0.31x | 5.0x | 4.0x | NM | 22.5x | NM | 2.5x |
| **Median** | **0.31x** | **0.31x** | **5.0x** | **4.0x** | **NM** | **22.5x** | **NM** | **10.9x** |

Note that Blackberry market data and projections are as of September 22, 2013, one day prior to the announcement of the sale of the company to a consortium of investors. Nokia market data and projections are as of September 1, 2013, one day prior to announcement of the sale of the Devices & Services Business to Microsoft.

*The following disclosure supplements and restates the first full paragraph on page 27 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

   Although none of the selected companies is directly comparable to the Company, the selected companies were chosen because they are publicly traded companies in the communications technology industry with operations and product profiles that for purposes of analysis may be considered similar to certain of the Company's operations and product profiles.

**Item 8.    Additional Information.**

   Item 8 ("***Additional Information***") of the Schedule 14D-9 is hereby amended and supplemented by adding the following after the fourth paragraph under the heading "***Certain Litigation***":

   "On November 24, 2013, the Company entered into a memorandum of understanding (the "***MOU***") with the plaintiffs in the *Lambert* action, which sets forth the parties' agreement in principle for settlement. The Company believes that no further disclosure is required to

4

supplement this Schedule 14D-9 under applicable laws; however, to avoid the risk that the *Lambert* action may delay or otherwise adversely affect the consummation of the Merger and to minimize the expense of defending the *Lambert* action, the Company has agreed, pursuant to the terms of the MOU, to make certain supplemental disclosures in this Schedule 14D-9, which are set forth in Amendment No. 2 to this Schedule 14D-9. Pursuant to the MOU, subject to certain confirmatory discovery by the plaintiffs in the *Lambert* action, the parties expect to execute a stipulation of settlement, which will be subject to approval by the United States District Court for the Northern District of Illinois, following the filing of Amendment No. 2 to this Schedule 14D-9. There can be no assurance that the settlement will be finalized or that the United States District Court for the Northern District of Illinois will approve the settlement."

5

## SIGNATURE

After due inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

**TELLABS, INC.**

By: /s/ Daniel P. Kelly _____
    Daniel P. Kelly
    President and Chief Executive Officer

Dated: November 25, 2013

6