# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>v. )<br><br>TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., )<br><br>Defendants. ) | Case No. |

**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND VIOLATION OF SECTIONS 14(e) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Kerry Lambert ("Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1.      This is a stockholder class action brought by Plaintiff on behalf of holders of the common stock of Tellabs, Inc. ("Tellabs" or the "Company") to enjoin the acquisition of the publicly owned shares of Tellabs by Marlin Equity Partners through its wholly-owned subsidiaries Blackhawk Holding Vehicle, LLC ("Holdco") and Blackhawk Merger Sub Inc. ("Merger Sub") (collectively, "Marlin").

2.      On October 21, 2013, Tellabs announced that the Company had entered into an Agreement and Plan of Merger (the "Merger Agreement") for Marlin to acquire Tellabs, via a

tender offer, in a deal with an aggregate transaction value of approximately $891 million. Under the terms of the Proposed Transaction (defined below), Tellabs common stockholders will receive $2.45 per share in cash for each Tellabs share they elect to tender to Marlin.

3.       Pursuant to the Merger Agreement, Merger Sub commenced the tender offer (the "Offer") on November 1, 2013 for all of Tellabs' outstanding shares of common stock at a purchase price of $2.45 per share in cash. The Offer is set to expire at 11:59 p.m. on December 2, 2013 and is subject to the condition that there be a validly tendered number of Tellabs shares that constitutes a majority (one share more than 50%) of all of the Tellabs outstanding shares and entitled to vote in the election of directors. Following the close of the Offer period, Merger Sub will acquire any Tellabs shares not purchased in the Offer in a second-step merger (collectively the Offer and the second-step merger are referred to herein as the "Proposed Transaction").

4.       As discussed in more detail below, the Proposed Transaction is the product of a conflicted process that is designed to ensure the sale of Tellabs to Marlin on terms preferential to Marlin and other Tellabs insiders and to subvert the interests of Plaintiff and other public stockholders of the Company.

5.       Specifically, Dialectic Capital Management ("Dialectic Capital"), Tellabs' lead activist stockholders, has been pushing to revamp the Company since 2012 and has successfully nominated three directors to the Board. Now, in order to liquidate their Tellabs holdings, Dialectic Capital, along with Tellabs' second largest stockholder and co-founder of the Company Michael J. Birck ("Birck"), the Board, and Company management, have improperly caused the Company to be sold to Marlin for inadequate consideration. As a result, the Offer price of $2.45 per share in cash that offers a meager 4.3% premium undervalues the Company. For example, the Company's 52-week high is $3.63 on December 3, 2012, which is significantly above the

deal consideration being offer pursuant to Proposed Transaction. More importantly, the Company's book value, as of the end of its most recently reported fiscal quarter ended June 30, 2013 is $2.81 per share, almost 15% higher than the Offer price.

6.     Yet, the Proposed Transaction offers substantial liquidity, and if the transaction closes, Dialectic Capital, Birck, the Board, and senior management will receive approximately $110 million of their investment in Tellabs without causing a run in Tellabs stock. Thus, the Board was not interested in maximizing stockholder value.

7.     The Proposed Transaction is also designed to preclude other potential bidders from emerging with superior offers while also precluding stockholders from voicing opposition, as the Merger Agreement contains certain deal protection devices, including (i) a no solicitation provision, (ii) a matching rights provision, (iii) an information rights provision, and (iv) a termination fee of $26,720,000.

8.     Further, on November 1, 2013, Tellabs filed a recommendation statement on Schedule 14D-9 (the "Recommendation Statement") with the Securities and Exchange Commission (the "SEC") voicing the Board's support for the Proposed Transaction. The Recommendation Statement however misrepresents and fails to disclose material information necessary for the Company's stockholders to make an informed decision as to whether to tender their shares in the Proposed Transaction. Specifically, the Recommendation Statement fails to disclose, in violation of the Board's duty of candor under state law and in violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), (i) certain information regarding the financial analysis performed by Goldman Sachs & Co. ("Goldman Sachs"), Tellabs' adviser on the fairness of the Proposed Transaction and (ii) several important details regarding the process leading up to the signing of the Merger Agreement.

9.      Thus, in pursuing the unlawful plan to facilitate the acquisition of Tellabs by Marlin for inadequate consideration, through a flawed process, each of the Defendants (defined below) violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, good faith, and candor.

10.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction and/or the Offer or, in the event the Offer and/or the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, due care, good faith, and candor.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Sections 14(e) and 20(a) of the Exchange Act.  The Court has supplemental jurisdiction over any claims arising under the state law pursuant to 28 U.S.C. § 1367.

12.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Tellabs has its primary place of business in this District.

13.      In connection with the acts alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

14.      Plaintiff is, and at all relevant times was, a stockholder of Tellabs since prior to the wrongs complained of herein.

15.      Tellabs is a corporation organized and existing under the laws of the state of

4

Delaware, with its principal executive offices located at One Tellabs Center, 1415 W. Diehl Road, Naperville, Illinois 60563. Tellabs designs, develops, and supports telecommunication networking products for communication service providers domestically and internationally. The Company serves wireline and wireless service providers, multiple system operators, and competitive service providers, as well as distributors, original equipment manufacturers, system integrators, and government agencies. Tellabs trades on the NASDAQ Stock Market under the ticker symbol "TLAB."

16.     Defendant Vincent H. Tobkin ("Tobkin") has been a director of the Company since 2010 and is currently the Chairman of the Board. Tobkin is also a member of the Compensation Committee.

17.     Defendant Bo Hedfors ("Hedfors") has been a director of the Company since 2003 and is a member of the Compensation and Nominating and Governance Committees.

18.     Defendant Frank Ianna ("Ianna") has been a director of the Company since 2004 and is a member of the Audit and Ethics and the Nominating and Governance Committees.

19.     Defendant Vincent D. Kelly ("Kelly") has been a director of the Company since 2012 and is a member of the Audit and Ethics Committee. He was nominated to the Board by Dialectic Capital.

20.     Defendant Michael E. Lavin ("Lavin") has been a director of the Company since 2003 and is a member of the Compensation and the Audit and Ethics Committees.

21.     Defendant Stephanie Pace Marshall ("Marshall") has been a director of the Company since 1996 and is a member of the Compensation and the Nominating and Governance Committees.

22.     Defendant Alex Mashinsky ("Mashinsky") has been a director of the Company

since 2013.

23.     Defendant Gregory J. Rossmann ("Rossmann") has been a director of the Company since 2012 and is a member of the Audit and Ethics Committee. Rossmann was nominated to the Board by Dialectic Capital.

24.     Defendant Dennis F. Strigl ("Strigl") has been a director of the Company since 2012.

25.     Defendant Jan H. Suwinski ("Suwinski") has been a director of the Company since 1997 and is a member of the Compensation and the Audit and Ethics Committees.

26.     Defendant Mikel H. Williams ("Williams") has been a director of the Company since 2012. Williams was nominated to the Board by Dialectic Capital.

27.     Defendants Tobkin, Hedfors, Ianna, Kelly, Lavin, Marshall, Mashinsky, Rossmann, Strigl, Suwinski, and Williams are collectively referred to hereinafter as the "Individual Defendants" or the "Board".

28.     Each of the Individual Defendants herein is sued individually and collectively, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

29.     Defendant Marlin Equity Partners is a global investment firm with over $2.6 billion of capital under management. Marlin primarily invests in businesses that are in the process of undergoing varying degrees of operational, financial, or market-driven change.

30.     Defendant Holdco is a Delaware limited liability company and is a subsidiary of Marlin.

31.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Holdco. Upon completion of the Proposed Transaction, Merger Sub will merge with and into

6

Tellabs and will cease to exist as a separate corporate entity.

32.     Collectively, the Individual Defendants, Marlin, Tellabs, Holdco, and Merger Sub are referred to herein as the "Defendants."

### THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANT

33.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other stockholders of Tellabs and owe Plaintiff and the other members of the Class (defined herein) the duties of loyalty, due care, good faith, and candor.

34.     By virtue of their positions as directors and/or officers of Tellabs, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Tellabs to engage in the practices complained of herein.

35.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's stockholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly-traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value stockholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the stockholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's stockholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

    (c)      discourages or inhibits alternative offers to purchase control of the corporation or its assets;

    (d)      will otherwise adversely affect their duty to search for and maximize the value of the corporation's stockholders; or

    (e)      will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public stockholders.

36.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other Tellabs stockholders, including their duties of loyalty, due care, good faith, and candor, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the other stockholders of Tellabs common stock.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of Tellabs common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

38.     This action is properly maintainable as a class action.

39.     The Class is so numerous that joinder of all members is impracticable. As of October 25, 2013, there were 355,740,338 shares of Tellabs common stock issued and outstanding. The actual number of public stockholders of Tellabs will be ascertained through discovery.

40.     Questions of law and fact that are common to the Class, including, among others:

(a) Whether the Individual Defendants have breached their fiduciary duties of loyalty, due care, good faith, and candor with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b) Whether the Individual Defendants have breached their fiduciary duty to maximize stockholder value for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c) Whether the Individual Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction;

(d) Whether Marlin aided and abetted the Individual Defendants' breaches of fiduciary duty;

(e) Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(f) Whether Plaintiff and the other members of the Class would suffer irreparable harm were the transaction complained of herein consummated.

41. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

42. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications

with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

43.     Accordingly, injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

### A.     Background

44.     Tellabs was founded in 1974. The Company operates through four segments: Optical, Data, Access, and Services. The Optical segment offers digital cross-connect systems, managed transport systems, optical transport systems, and metro ethernet switching products that enable service providers to manage network bandwidth by adding capacity, as well as to provide triple-play voice, video, and data services for residential consumers. The Data segment provides next-generation packet-switched products that enable wireless and wireline carriers to deliver mobile voice and Internet services. The Access segment provides multiservice access series and optical network terminal series products that enable service providers to deliver bundled voice, video, and high-speed Internet/data services. Finally, the Services segment delivers deployment services, including project management, engineering, material furnishing, installation, testing, and acceptance.

### B.     Investor Activism

45.     On February 3, 2012, Dialectic Capital sent a letter to the Board (the "Dialectic Nomination Letter") seeking to nominate new directors in order to influence a shift in the corporate strategy at the Company. In an attempt to avoid a proxy battle that could see several directors ousted, the Board instead elected to enter into an agreement with Dialectic Capital (the

"Dialectic Standstill Agreement") allowing the fund to appoint three directors to the Board if it withdrew the Dialectic Nomination Letter.

46. On April 6, 2012, the Company announced the terms of the Dialectic Standstill Agreement, which was to run from the earlier of the date eighteen (18) months from April 5, 2012 and the date that is 10 days prior to the deadline for stockholders to nominate director candidates for election to the Board at the 2014 Annual Meeting. In exchange for the appointment of Kelly and Rossmann to the Board, Dialectic Capital agreed to withdraw the Dialectic Nomination Letter and also refrain from doing, in part, the following for the duration of the agreement:

(a) Engage in any solicitation of proxies or consents or become a "participant" in a "solicitation" with respect to securities of the Company;

(b) Seek to advise, encourage, support, cooperate with, or influence any person with respect to the voting or disposition of any securities of the Company at annual or special meetings of stockholders;

(c) Form, join, or in any way participate in any "group" with respect to the Company's securities;

(d) At any time be the beneficial owner, in the aggregate, of more than 5% of the outstanding shares of the Company's common stock;

(e) Control, influence, or seek to control or influence the Board other than through Kelly or Rossmann;

(f) Seek or encourage any person to submit nominations in furtherance of a "contested solicitation" for the election or removal of directors with respect to the Company or any other solicitation or nomination;

(g)     (1) Make any proposal for consideration by stockholders at any annual or special meeting of stockholders or (2) make any offer or proposal (with or without conditions) with respect to a merger, acquisition, disposition or other business combination involving the Dialectic Capital and the Company; or

(h)     Seek, alone or in concert with others, representation on the Board.

47.     On December 12, 2012, in accordance with the Dialectic Standstill Agreement, Williams was also nominated to the Board by Dialectic Capital.

## C.     Proposed Transaction

48.     On October 21, 2013, only weeks after the standstill provision of the Dialectic Standstill Agreement expired, Marlin and Tellabs issued a joint press release announcing the Proposed Transaction which stated, in relevant part, the following:

> **Naperville, Ill.**—Tellabs (NASDAQ: TLAB) today announced that it has entered into a definitive merger agreement with entities affiliated with Marlin Equity Partners ("Marlin"), which provides that Marlin entities will acquire all of the outstanding shares of Tellabs for $2.45 per share in cash.
>
> The price per share represents a premium of 4.3% over the closing share price on October 18, 2013, and 13.3% over the 180-day volume-weighted average closing share price as of the same day. . . . The transaction value represents a total equity value of approximately $891 million on a fully diluted basis.
>
> Under the terms of the merger agreement, an affiliate of Marlin is required to commence a tender offer to acquire all outstanding shares of Tellabs' outstanding common stock for $2.45 per share in cash no later than November 1, 2013. The merger agreement provides that, promptly after the closing of the tender offer, any shares not tendered in the tender offer (other than shares for which appraisal is properly sought under applicable law) will be acquired in a second-step merger at the same cash price as paid in the tender offer.
>
> Closing of the tender offer and closing of the merger are subject to certain conditions, including the tender of at least a majority of the outstanding shares of Tellabs common stock (on a fully-diluted basis) and the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The transaction is expected to close in the fourth quarter of 2013. The transaction is not subject to a financing condition.

The Tellabs Board of Directors has unanimously approved the transaction. In addition, Michael J. Birck, Tellabs's co-founder and second-largest stockholder, has communicated to Tellabs that he supports the transaction.

. . . .

"We are excited to back the Tellabs team and we view Tellabs' business as an ideal opportunity to capitalize on the growth in the telecom network equipment sector," said Nick Kaiser, partner at Marlin. "We are committed to extending Tellabs' market leadership by continuing to make significant investments in research and development, and in providing a superior customer experience."

Goldman, Sachs & Co. is acting as financial advisor, and Sidley Austin LLP is acting as legal counsel, to Tellabs. Credit Suisse and Evercore are acting as financial advisors and Schulte Roth & Zabel LLP is acting as legal counsel to Marlin.

49.     Commenting on the deal, Pat DiPietro, an operating partner at Marlin, stated that "Tellabs has an exceptionally strong heritage of technology innovation and customer-centric solutions, and we look forward to working closely with the Tellabs team to enhance long-term value for its premier customer base."

50.     Bob Leggett, another operation partner at Marlin, added the following:

As part of Marlin's portfolio of telecommunications companies, the Tellabs business will expand and complement our existing set of customers and product offerings, allowing us to serve a broader market, harness a deeper pool of networking expertise, and create compelling cross-selling opportunities. Combined with Marlin's deep operational expertise and financial support, we believe these capabilities will significantly strengthen our competitive market position.

51.     Unsurprising, Dialectic Capital Management "was pleased that the Board has evaluated all alternatives and are choosing what they feel is the best option for all stakeholders." Birck has also indicated he supports the Proposed Transaction.

**D.     The Unfair Price**

52.     The Proposed Transaction is however the product of a conflicted process that is designed to ensure the sale of Tellabs to Marlin on terms preferential to Marlin and other Tellabs

insiders and to subvert the interests of Plaintiff and the other public stockholders of the Company. In pursuing the unlawful plan to facilitate the acquisition of Tellabs by Marlin for inadequate consideration, through a flawed process, each of the Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, good faith, and candor.

53.     Specifically, having nominated (and ultimately appointed) three new directors, Dialectic Capital, along with Birck, the other members of the Board, and Company management, then determined that despite the Company's prospect for long-term growth, it would be better to liquidate their Tellabs holdings at any price available rather than maximize stockholder value. For example, the Offer price, which is only a 4.5% premium, undervalues the Company's prospects and seeks to take advantage of the vacuum created by the untimely death last year of the Company's then CEO Robert Pullen, and Birck's retirement from the Board after being diagnosed with a rare form of leukemia. Most importantly, the Offer price is below the Company's book value as of June 30, 2013 of $2.81 and significantly lower than the 52-week high of $3.63.

54.     Commenting on the Proposed Transaction, Analyst Jon C. Ogg of the 24/7 Wall St. Blog wrote an article titled "Tellabs Gives Itself Away in Private Equity Buyout," unsurprisingly noting that "Tellabs had nearly $800 million in cash and short-term equivalents as of June 30. Even after you back out all the liabilities, its total shareholder equity was $999 million and its net tangible assets came to almost $875 million."

55.     Moreover, Birck, Dialectic Capital, the Board, and senior management control approximately 13% of Tellabs' outstanding stock, and if the Proposed Transaction closes, they stand to receive *over $110 million in liquidity from the deal*. Because the Proposed Transaction

is being effectuated pursuant to § 251(h) of the Delaware General Corporation Law, Marlin only needs one share more than 50% of Tellabs' outstanding shares to tender in the Proposed Transaction in order to then cash out the remaining stockholders in a short-form merger. Therefore, only 37% of the outstanding shares need to be tendered for the Proposed Transaction to close.

**E.     The Unreasonable Deal Protection Devices**

56.     In order to further lock up the Proposed Transaction, and to the detriment of the Plaintiff and other members of the Class, the terms of the Merger Agreement also substantially favor Marlin and are calculated to unreasonably dissuade potential suitors from making competing offers.

57.     For example, § 5.03(a) of the Merger Agreement includes a "no solicitation" provision barring the Board and any Company personnel from soliciting, initiating, facilitating or encouraging alternative proposals in an attempt to procure a price in excess of the amount offered by Marlin. This section also demands that the Company terminate any and all prior or on-going discussions with other potential suitors.

58.     Similarly, § 5.03(b)–(d) of the Merger Agreement provides a matching rights provision whereby the Company must notify Marlin of any unsolicited competing bidder's offer within 24 hours after receipt. Then, if and only if, the Board determines that the competing offer constitutes a "Superior Proposal" (as defined in the Merger Agreement), Marlin is granted at least three (3) business days (the "Notice Period") to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal." Moreover, Marlin will be able to match the unsolicited offer because it will be granted unfettered access to the details of the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving the unsolicited

offer. The Merger Agreement thus unfairly assures that any "auction" will favor Marlin and piggy-back upon the due diligence of the foreclosed alternative bidder.

59. To further ensure the success of the Proposed Transaction, the Board locked up the deal by agreeing to pay a termination fee of $26,720,000 (§ 7.02 of the Merger Agreement). The terms of the Merger Agreement essentially requires that the alternative bidder agree to pay a naked premium for the right to provide Tellabs stockholders with a superior offer.

60. These provisions cumulatively discourage bidders from making a competing bid for the Company.

**F.     The Materially Misleading Recommendation Statement**

61. On November 1, 2013, Tellabs filed the Recommendation Statement with the SEC. The Recommendation Statement fails to provide the Company's stockholders with material information in contravention to the Board's duty of candor and in violation of Sections 14(e) and 20(a) of the Exchange Act.

62. Without such information, Tellabs' stockholders will be unable to make a fully-informed decision as to whether to tender their shares in the Proposed Transaction.

**a.     Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs' Financial Analysis**

63. The Recommendation Statement discloses certain information regarding Goldman Sachs' financial analyses used to support its fairness opinion. These disclosures concerning Goldman Sachs' financial analyses are materially incomplete and misleading in several ways.

64. First, the Recommendation Statement, on pages 25 to 26, fails to disclose what assumptions Goldman Sachs relied upon to calculate the one-year forward earnings per share multiples of 12.0x to 18.0x and the illustrative discount rate of 12.7% in the *Illustrative Present Value of Future Share Price Analysis*. This information is particularly material given that

Goldman Sachs has also failed to disclose in the *Illustrative Present Value of Future Share Price Analysis* the assumptions used to determine how it calculated the one-year forward cash adjusted earnings per share multiples of 8.0x to 14.0x. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

65. Second, the Recommendation Statement, on page 26, omits the criteria used by Goldman Sachs for selecting the perpetuity growth rate ranging from (2.0%) to 2.0% and the illustrative discount rates ranging from 16.6% to 20.6% in the *Illustrative Discounted Cash Flow Analysis*. The Recommendation Statements further omits to disclose whether the illustrative discount rates were calculated based on the Capital Asset Pricing Model and if a Weighted Average Cost of Capital analysis was performed, then the Recommendation Statement also omits to disclose the market assumptions for such calculations and whether it included stock-based compensation. The analysis also does not state if Net Operating Losses were considered and valued. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

66. Third, the Recommendation Statement, on page 26, also omits to disclose the terminal value adjusted EBITDA multiples in the *Illustrative Discounted Cash Flow Analysis* and whether such multiples were derived from the *Selected Companies Analysis* or a precedent transactions analysis (if performed). In fact, the Recommendation Statement should also disclose whether a precedent transaction analysis was performed and if it was not performed,

then the Recommendation Statement should explain why Goldman Sachs chose not to perform said analysis. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

67. Fourth, the Recommendation Statement, on page26 to 27, fails to disclose the company by company multiples observed by Goldman Sachs in the *Selected Companies Analysis*. This information is particularly material to Tellabs stockholders here given that the range of multiples for the CY 2013E EBITDA, CY 2014E EBITDA, CY 2013E EPS, and CY 2014E EPS vary by a significant amount. Without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

68. Finally, the Recommendation Statement also fails to disclose in the *Selected Companies Analysis* the basis for selecting the companies in the Mid-Cap Group, the Large-Cap Group, and the Historically Declining Revenue Group as the comparable companies to Tellabs. More critically, the Recommendation Statement further fails to disclose the implied value range resulting from the *Selected Companies Analysis*. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

**b. Materially Incomplete and Misleading Disclosures Regarding the Flawed Process**

69. The Recommendation Statement also omits several important details regarding

the process leading up to the signing of the Merger Agreement.

70.     For example, on page 9, the Recommendation Statement discloses that on December 18, 2012, "the Board held a special telephonic meeting during which the Board considered potential strategic opportunities involving the Company and Party A." The Recommendation Statement however omits whether Tellabs and/or Goldman Sachs reached out to Company A, or if Company A contacted the Company *sua sponte*. This information is material because it evinces the process the Board took to maximize stockholder value.

71.     On page 10, the Recommendation Statement discloses that on March 27, 2013, "the Board decided to suspend the Company's discussions with third parties regarding a potential sale of the entire Company for the time being; however, the Board did authorize management to continue to permit Party A to conduct due diligence with respect to the data business. . . ." The Recommendation Statement however fails to disclose why the Company chose to take this course of action, especially in light the fact that (i) Tellabs had a non-binding indication of interest regarding the acquisition of the entire Company for $2.25 to $2.50 on the table from Party E and (2) the Board ultimately determined to sell the entire Company rather than sell the data business to Company A. This information is material because it evinces the process the Board took to maximize stockholder value.

72.     Also on page 10, the Recommendation Statement discloses that Party E made the $2.25 to $2.50 offer based on "due diligence with respect to the Company in early 2012." Yet, the Recommendation Statement begins the discussion of the strategic alternatives process in the fall of 2012. This information is material because it reveals whether Tellabs engaged in a strategic alternative process before the fall of 2012 (*i.e.*, at time when the Company's stock at a higher price per share).

73.     On page 15, the Recommendation Statement discloses that the "Board also authorized the Company's management to contact, on a confidential basis, certain of the Company's stockholders to ascertain their views on a potential sale of the Company." The Recommendation Statement however fails to disclose the identity of these shareholders. This information is material in light of Dialectic's substantial involvement in the affairs of the Company and potential improper influence exerted by the fund on the Board thereby.

74.     On page 17, the Recommendation Statement discloses that on October 3, 2013, the Company provided Marlin with the Company's refined base case projections. The Recommendation Statement however omits to disclose at whose behest did Tellabs' management refine the Company's base case projections. This information is material because it evinces the process the Board took to maximize shareholder value, or whether the Board merely sought to improperly sell the Company to Marlin.

75.     Finally, the Recommendation Statement states on page 29 that "[d]uring the two-year period ended October 18, 2013, Goldman Sachs also has provided certain investment banking services to [Marlin] and its affiliates from time to time . . ." However, the Recommendation Statement omits to quantify the dollar value of those services performed. This information is material because it evinces if Goldman Sachs had any conflict of interest when it issued the fairness opinion in support of the Proposed Transaction.

76.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

### FIRST CAUSE OF ACTION

#### Claim for Breach of Fiduciary Duties Against the Individual Defendants

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.     The Individual Defendants have violated fiduciary duties of loyalty, due care, good faith, and candor owed to public stockholders of Tellabs.

79.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Tellabs.

80.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, due care, good faith, and candor owed to Tellabs stockholders because, among other reasons, they failed to take steps to maximize shareholder value, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of Tellabs stockholders. Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding whether to tender their shares in the Proposed Transaction.

81.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

82.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Tellabs's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

83.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable

harm of the members of the Class.

84.    Plaintiff and the members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against Tellabs, Marlin, Holdco, and Merger Sub for
Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty**

85.    Plaintiff incorporates by reference and realleges each and every allegation
contained above, as though fully set forth herein.

86.    Tellabs, Marlin, Holdco, and Merger Sub (collectively the "Entities") have acted
and are acting with knowledge of, or with reckless disregard to, the fact that the Individual
Defendants are in breach of their fiduciary duties to Tellabs' public stockholders, and have
participated in such breaches of fiduciary duties.

87.    The Entities knowingly aided and abetted the Individual Defendants' wrongdoing
alleged herein.  In so doing, the Entities rendered substantial assistance in order to effectuate the
Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary
duties.

88.    Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against Tellabs and the Individual Defendants for
Violations of Section 14(e) of the Exchange Act**

89.    Plaintiff incorporates by reference and realleges each and every allegation
contained above, as though fully set forth herein.

90.    Tellabs and the Individual Defendants have caused the Recommendation
Statement to be issued with the intention of soliciting stockholder support of the Proposed
Transaction.

91.    Section 14(e) of the Exchange Act requires full and fair disclosure in connection

with the Proposed Transaction. Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The [SEC] shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

92. By virtue of the foregoing, Tellabs and the Individual Defendants have violated Section 14(e) of the Exchange Act. The Recommendation Statement violates Section 14(e) because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Tellabs and the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render then non-misleading.

93. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the stockholder vote on the Proposed Transaction.

### FOURTH CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

94. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95. The Individual Defendants acted as controlling persons of Tellabs within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as

23

officers and/or directors of Tellabs, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

96.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

97.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

98.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

99.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

100.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

101.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.     Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction or the Offer, unless and until the Company adopts and implements a procedure or process to obtain a Merger Agreement providing the best possible terms for stockholders and disclosing all material information;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing the Individual Defendants to account to Plaintiff  and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.     Awarding  Plaintiff  the  costs  and  disbursements  of  this  action,  including reasonable attorneys' and experts' fees; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

25

Dated: November 5, 2013

**LITE DEPALMA GREENBERG, LLC**

By: _/s/ Katrina Carroll_
      Katrina Carroll
One South Dearborn, Suite 2100
Chicago, IL 60603
Tel: (312) 212-4383
Fax: (312) 212-5919
Email: kcarroll@litedepalma.com
Bar No. 6291405

*Of Counsel*:

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Ave., Tenth Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Plaintiff*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Kerry Lambert ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Tellabs, Inc. ("TLAB") and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Tellabs, Inc. ("TLAB") securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this _4_ day of November 2013.

_Kerry P Lambert_
Kerry Lambert

| Transaction (Purchase or Sale) | Trade Date | Price Per Share | Quantity |
|---|---|---|---|
| Purchase | 12/14/2011 | $3.83 | 1,000.00 |
| Purchase | 1/4/2012 | $3.88 | 1,000.00 |
| Purchase | 6/15/2012 | $3.33 | 1,000.00 |
| Purchase | 10/15/2012 | $2.94 | 650.00 |
| Purchase | 11/9/2011 | $4.32 | 6,000.00 |
| Purchase | 11/15/2011 | $4.17 | 1,000.00 |
| Purchase | 11/18/2011 | $4.02 | 1,000.00 |
| Purchase | 11/22/2011 | $3.94 | 1,000.00 |
| Purchase | 12/2/2011 | $3.96 | 1,000.00 |
| Purchase | 12/14/2011 | $3.85 | 1,000.00 |
| Purchase | 2/2/2012 | $3.84 | 1,000.00 |
| Purchase | 2/2/2012 | $3.84 | 1,000.00 |
| Purchase | 7/20/2012 | $3.14 | 2,000.00 |
| Purchase | 10/25/2012 | $2.97 | 3,000.00 |
| Purchase | 11/21/2012 | $2.84 | 2,000.00 |
| Purchase | 10/27/2011 | $4.28 | 1,000.00 |
| Purchase | 11/23/2011 | $3.88 | 500 |
| Purchase | 7/24/2012 | $3.06 | 500 |
| Purchase | 7/27/2012 | $3.06 | 1,000.00 |
| Purchase | 11/1/2011 | $4.24 | 2,000.00 |
| Purchase | 11/22/2011 | $3.96 | 1,000.00 |
| Purchase | 1/12/2012 | $3.93 | 1,000.00 |
| Purchase | 2/2/2012 | $3.84 | 1,000.00 |
| Purchase | 5/9/2012 | $3.78 | 1,000.00 |
| Purchase | 11/8/2012 | $2.93 | 1,000.00 |
| Purchase | 11/28/2012 | $2.93 | 3,000.00 |
| Purchase | 11/8/2011 | $4.46 | 2,900.00 |
| Purchase | 11/14/2011 | $4.31 | 1,000.00 |
| Purchase | 11/15/2011 | $4.22 | 1,000.00 |
| Purchase | 11/16/2011 | $4.20 | 1,000.00 |
| Purchase | 11/18/2011 | $4.02 | 1,000.00 |