**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | Case No. 1:13-cv-07945 |
| v. ) ) | **CLASS ACTION** |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., ) ) ) ) ) ) ) ) ) ) | Hon. Ronald A. Guzman |
| Defendants. ) | |

**PLAINTIFF KERRY LAMBERT'S POSITION
IN RESPONSE TO THE APRIL 2, 2014 COURT ORDER**

Pursuant to the Court's request, Plaintiff Kerry Lambert ("Plaintiff"), by his undersigned counsel ("Plaintiff's Counsel") submits the following memorandum of points and authorities addressing the following three issues: (1) whether the claims in the *Lambert*[1] and *Englehart*[2] actions are brought directly or derivatively and the specific legal basis for each claim, with citations to authority; (2) the extent to which Federal Rule of Civil Procedure 23, including the opt-out provision, impacts the *Lambert* and *Englehart* actions; and (3) the effect, if any, of the Private Securities Litigation Reform Act ("PSLRA") on the *Lambert* and *Englehart* actions.

## INTRODUCTION

As detailed below, first, the claims asserted in the *Lambert* Action are direct claims challenging "the fairness or validity of a merger." *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1245 (Del. 1999). Second, the parties to the *Lambert* Action have agreed to amend the Settlement Agreement[3] to seek certification of the Settlement Class under Rule 23(b)(3) and will thereby provide absent Class members notice and an opportunity to opt out of the Settlement. Therefore, absent Class members have the benefit of the increased disclosures obtained through the Settlement yet simultaneously retain the ability to opt out of the Settlement and pursue their own claims, should they so choose. Third, the express terms of the PSLRA do not require that a notice of pendency of an action be published in every action, particularly where, as here, such a notice would only serve to confuse or mislead absent Class members by not disclosing that a settlement has been reached. Further, the timing of the transaction in this case would not have permitted for a PSLRA notice without detriment to Class members. Importantly, if Lambert had

---

[1] The "*Lambert* Action" refers to *Lambert v. Tellabs, Inc.,* Case No. 1:l3-cv-07945 (N.D. Ill.).
[2] The "*Englehart* Action" refers to *Englehart v. Tellabs, Inc.,* Case No. 1:14-cv-1990 (N.D. Ill.).
[3] ECF No. 67. Capitalized terms not otherwise defined herein shall have the same meaning as those found in the Settlement Agreement.

1

published the PSLRA notice of pendency the day the *Lambert* action was filed and waited 60 days to be appointed lead plaintiff before negotiating the supplemental disclosures obtained prior to the scheduled shareholder vote, the transaction would have closed long before the hearing on the appointment of lead plaintiff and counsel and the Class members never would have received the supplemental disclosures enabling shareholders to make a fully informed decision on the transaction.[4]

## FACTUAL AND PROCEDURAL BACKGROUND

### The *Lambert* Action

Both the *Lambert* and *Englehart* Actions concerned a merger announced on October 21, 2013, whereby Tellabs, Inc. ("Tellabs") was to be acquired by an affiliate of Marlin Equity Partners ("Marlin") through a tender offer that expired on December 2, 2013 (the "Transaction"). On November 1, 2013, Tellabs filed a Schedule 14D-9 ("14D-9") with the SEC recommending shareholders tender their shares in the Transaction, effectively voting to approve the Transaction. Decisive intervention was necessary and Lambert filed this Action on November 5, 2013, just four days after the issuance of the 14D-9, alleging that Tellabs' Board of Directors breached its fiduciary duties to Tellabs' stockholders by entering into and approving the Transaction and that Marlin aided and abetted such breaches. Lambert also asserted that Tellabs' disclosures in connection with the Transaction omitted certain material information in violation of Rules 14(e) and 20(a) promulgated under the Securities Exchange Act of 1934. Parallel litigation was also brought by other plaintiffs who purported to be Tellabs stockholders in Delaware State Court[5],

---

[4] Alternatively, since the transaction was scheduled to close less than 30 days after the filing of the *Lambert* Action, *Lambert* would have been faced with completing sufficient discovery to meet the heavy burden to obtain a preliminary injunction.

[5] *In re Tellabs, Inc. Stockholders Litig.*, No. 9028-VCL (Del. Ch.)

Illinois State Court[6] and Illinois Federal Court[7].

After obtaining expedited discovery, and with the date for consummation of the Transaction fast approaching, Lambert's counsel commenced settlement negotiations. On November 24, 2013, nineteen days after the filing of the action, but after documentary discovery and consultation with experts, the parties entered into a Memorandum of Understanding ("MOU") to settle the *Lambert* Action in exchange for additional disclosures made to Tellabs' shareholders in connection with the Transaction, which mooted the litigation, including Plaintiff's federal securities claim premised on non-disclosure of material facts.

Pursuant to the terms of the MOU, on November 25, 2013, Tellabs filed an amended 14D-9 with the SEC containing additional material disclosures on the following matters:

> (1) In Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis,* additional information regarding the basis for the earnings per share multiples and discount rate used by Goldman Sachs for this analysis;
>
> (2) In Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, additional information regarding how Goldman Sachs treated certain factors when conducting this analysis;
>
> (3) In Goldman Sachs *Selected Companies Analysis*, (a) the results of such analysis, and (b) additional information about Goldman Sachs' basis for choosing the selected companies the multiples observed for each of the selected transactions; and
>
> (4) In the *Background of the Merger* section, (a) additional information regarding the basis for the Tellabs Board's March 27, 2013 decision to suspend discussions with third parties regarding a potential sale of the entire company for the time being, (b) additional information regarding the basis for the Tellabs Board's April 30, 2013 decision to begin a more formal non-public process of

---

[6] *Englehart v. Hedfors,* No. 13 CH 23886 (Cook Cnty. Ct.); *Jackson v. Tellabs, Inc.,* No. 13CH2988 (DuPage Cnty. Ct.); *City of Lakeland Emps. Pension Plan v. Tellabs, Inc.*, No. 13 CH 23890 (Cook Cnty. Ct.); *McCoomb v. Tellabs Inc.*, No. 13 CH 24411 (Cook Cnty. Ct.); *Reynolds v. Tellabs, Inc.*, No. 13 CH 24519 (Cook Cnty. Ct.); *Russell v. Tellabs, Inc.*, No. 13 CH 24567 (Cook Cnty. Ct.); *Walpole v. Tellabs, Inc.*, No. 13 CH 24757 (Cook Cnty. Ct.); *Rodriguez v. Tellabs, Inc.*, No. 13 CH 24889 (Cook Cnty. Ct.).

[7] The *Englehart* Action.

3

>identifying and contacting certain parties that would be the most likely to be interested in acquiring Tellabs, and (c) additional details regarding the refined base case projections that Tellabs provided to Marlin on October 3, 2013.

Notably, the amended 14D-9 expressly stated that these increased disclosures were only made as a result of the "*Lambert* action." Also importantly, there was no discussion of attorneys' fees and expenses between the parties through the date of the execution of the Settlement Agreement.

On November 25, 2013, the parties also provided this Court with a copy of the MOU, Tellabs publicly announced in an SEC filing that it had entered into the MOU, and the additional disclosures provided for in the MOU were made by Tellabs in SEC filings that day. The MOU was, by its terms, subject to certain additional confirmatory discovery, which has now been conducted, and is ultimately subject to this Court's approval.

### The *Engelhart* Action

The *Englehart* Plaintiffs[8] are already parties to state court litigation regarding the Transaction. Specifically, Robert Englehart filed a lawsuit challenging the Transaction in the Circuit Court of Cook County on October 22, 2013 (No. 13 CH 23886). On November 4, 2013, Jorge Rodriguez also filed a lawsuit challenging the Transaction in the Circuit Court of Cook County (No. 13 CH 24889). *Englehart* and *Rodriguez* are represented by the same counsel in those state court actions as appear on the papers in the federal *Englehart* Action.

After a motion by *Englehart* seeking expedited discovery was denied, defendants nonetheless agreed to provide certain documents that they had already agreed to produce in the *Lambert* Action. *Englehart* and *Rodriguez*, in turn agreed to stay their Illinois state court actions until after the close of the Transaction, and an agreed court order imposing such a stay was subsequently entered on November 25, 2013. On February 19, 2014, the Circuit Court entered a

---

[8] Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust are defined as the "*Englehart* Plaintiffs."

further agreed stay order "pending resolution of the [Lambert] Action." *Englehart* Action, Agreed Order at 2 (Cook Cnty. Ct. Feb. 19, 2014).

Then on March 20, 2014, after Plaintiff filed his motion for preliminary approval of the settlement, the *Englehart* Plaintiffs filed a new action in this Court, and shortly thereafter moved on March 24, 2014 to stay these proceedings. Rather than simply filing objections to the proposed settlement, as all class members will have the ability to do after receiving notice, the *Englehart* Plaintiffs seek to shut down these proceedings altogether at the very last possible moment.

## ARGUMENT

### I. THE *LAMBERT* AND *ENGELHART* ACTIONS ARE DIRECT ACTIONS

The complaints in both the *Lambert* Action and the *Engelhart* Action assert claims against the Tellabs directors for breach of fiduciary duty and violation of §§ 14(e) and 20(a) of the Exchange Act arising from the negotiation, consummation and disclosures made in conjunction with the acquisition of Tellabs by Marlin. In considering which state's law applies to the determination of whether the claims asserted are direct or derivative, the Court looks to the choice-of-law provisions of the forum state, here Illinois. *See Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941). Illinois follows the internal affairs doctrine as its choice-of-law principle in cases alleging impropriety of actions implicating corporate governance. *Kellers Sys., Inc. v. Transp. Int'l Pool, Inc.*, 172 F. Supp. 2d 992, 1000 (N.D. Ill. 2001). Since Tellabs was a Delaware corporation, Delaware law therefore governs the determination of whether a claim is direct or derivative. *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 383 (7th Cir. 1990) (determining whether claims were direct or derivative based upon Delaware law).

Under Delaware law, to determine whether claims are direct or derivative, the Court must consider "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy." *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). In applying this test, Delaware courts have held that actions challenging change-in-control transactions which include elections of directors, amendments to the certificate of incorporation, mergers, consolidations, sales of all or substantially all of the assets of the corporation, and dissolution are direct claims. *See, e.g.*, *N.J. Carpenters Pension Fund v. infoGROUP, Inc.*, No. 5334-VCN, 2011 Del. Ch. LEXIS 147, at *40-42 (Del. Ch. Sept. 30, 2011) (where a plaintiff "directly challenges the merger, and alleges that the merger was invalid due to the fact that a majority of the Board was interested or lacked independence… it is a clear case of a direct claim."); *Parnes*, 722 A.2d at 1245 ("A stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated."); *In re Ply Gem Indus., S'holders Litig.*, No. 15779-NC, 2001 Del. Ch. LEXIS 84, at *16 (Del. Ch. June 26, 2001) ("The attack on Silverman's conduct during the course of the merger negotiations, and the board's acquiescence in it, is a challenge by Plaintiffs to the fairness of the merger process . . . [and therefore] must be treated as individual claims and not as derivative claims."). Accordingly, the *Lambert* and *Englehart* actions are direct, <u>not</u> derivative actions.

## II. LAMBERT AND DEFENDANTS HAVE MODIFIED THE STIPULATION OF SETTLEMENT TO SPECIFICALLY ALLOW CLASS MEMBERS TO OPT OUT OF THE SETTLEMENT

The *Lambert* Action sought both damages and injunctive relief. Specifically, the Complaint sought (1) to enjoin the transaction "until the Company adopts and implements a procedure or process to obtain a Merger Agreement providing the best possible terms for

6

stockholders and disclosing all material information," and (2) to hold Defendants accountable "for all damages suffered as a result of the Individual Defendants wrongdoing." *See Lambert* Complaint, Prayer for Relief at B and D [ECF No. 1]. Because disclosures made in the context of a tender offer or merger are uniform as to all affected shareholders, as is typically also the case with respect to the consideration offered to shareholders, classes are ordinarily certified pursuant to Rule 23(b)(1) and Rule 23(b)(2), as provided by the Settlement submitted to this Court on March 21, 2014. Putative class members in classes certified under 23(b)(1) and Rule 23(b)(2) are typically not entitled to opt out because the injunction will usually have the same effect on all members of the class as individual suits would, ensuring uniform treatment of class members. *See* Fed. R. Civ. P. 23(c)(2)(A); *In re Allstate Ins. Co.*, 400 F.3d 505, 506 (7th Cir. 2005); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 889 n.4 (7th Cir. 2011).

In contrast, under Rule 23(b)(3), putative classes are certified where a class action is superior to other available methods for fairly and efficiently adjudicating the controversy because questions of law or fact common to class members predominate over any questions affecting only individual members. In 23(b)(3) cases, putative class members are entitled to statutorily prescribed notice of the pending action – "including individual notice to all members who can be identified through reasonable effort" – and an opportunity to opt out of the class. Fed. R. Civ. P. 23(c)(2)(B); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 897 (7th Cir. 1999) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999)). This mechanism allows plaintiffs who are not satisfied with the terms of the settlement, for example those who believe they have suffered greater-than-average damages, to opt out of the settlement, sue on their own behalf, and

7

pursue their own judgment. *Allstate Ins.*, 400 F.3d at 507.[9] These notice and opt-out procedural safeguards automatically attach to all classes certified under Rule 23(b)(3). *Id.*; *Kartman*, 634 F.3d at 889 n.4.

In the present case, the parties to the *Lambert* Action have agreed to amend the Settlement Agreement to seek certification of the Settlement Class only under Rule 23(b)(3) and provide Class members with the increased level of notice required by Rule 23(c)(2)(B) and the ability to opt out of the Settlement. This provides Class members with the best of both worlds: Class members have already received the benefit of the increased disclosures that Defendants have unequivocally stated would not have been made absent the litigation, yet they still retain their ability to opt out of the Settlement and pursue a judgment or recovery on their own.

### III. LAMBERT AND THE DEFENDANTS REACHED A SETTLEMENT PROVIDING FOR MATERIAL MEANINGFUL DISCLOSURES BEFORE THE NOTICE PROVISIONS OF THE PSLRA WERE IMPLICATED

The Private Securities Litigation Reform Act provides that ***as a general matter*** within 20 days of the filing of an action governed by the PSLRA a plaintiff shall give notice of the "pendency of an action," as follows:

> *In general*. Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--
>
> > (I) of the pendency of the action, the claims asserted therein, and the purported class period; and
> >
> > (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

---

[9] In class actions brought under Rule 23(b)(3), and where settlement or judgment will result in res judicata effect to any unnamed class members who did not opt out. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974); *Robinson v. Sheriff of Cook Cnty.*, 167 F.3d 1155, 1157-1158 (7th Cir. 1999).

15 U.S.C. §78u-4(a)(3)(A)(i) (emphasis added).

The *Engelhart* plaintiffs have argued that Lambert's counsel did not have the authority to negotiate any settlement before: (1) giving the notice set forth in the PSLRA; and (2) obtaining Court appointment as lead counsel 60 days later. Such an argument ignores the plain wording of the PSLRA, would prevent parties from obtaining the most meaningful remedy for disclosure violations, and ignores the requirements for obtaining Court approval of any settlement of a class action under Rule 23(e).

First, the PSLRA states that "[i]n general," notice of the pendency of the action must be given within 20 days of the filing of the action. By claiming that the PSLRA requires the notice of pendency be published in every case – regardless of the circumstances – the *Engelhart* Plaintiffs effectively ignore the statement that such notice be given "[i]n general." The disregard of this portion of the statutes violates one of the principal canons of statutory interpretation that this Court "give effect to each word when interpreting statutes." *Seitz v. City of Elgin*, 719 F.3d 654, 657 (7th Cir. 2013); *see also Damato v. Hermanson*, 153 F.3d 464, 470 (7th Cir. 1998) ("Statutes must be interpreted, if possible, to give each word some operative effect." (quoting *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 209 (1997)).

Moreover, the PSLRA also limits what can be included in the notice of pendency to a description of "the claims asserted therein, and the purported class period;" and the right to "move the court to serve as lead plaintiff of the purported class" within 60 days. 15 U.S.C. §78u-4(a)(3)(A)(i). As one Court has explained, the PSLRA notice of pendency should be scrutinized by the Court and "[t]he generality of the notice description in section 21D(a)(3)(A)(I)(I) does not suggest that the Reform Act permits notice to be perfunctory, misleading or even uninformative." *Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal. 1997). The PSLRA, however, is quite simply silent on what a party is allowed to disclose where a

9

settlement has been reached and a MOU has been executed within the 20 day period in which the notice of pendency may be given. In the present case, it would have been false and misleading to publish a notice of pendency limited to only those items permitted by 15 U.S.C. §78u-4(a)(3)(A)(i) without further disclosure of the MOU.[10] Any such notice of settlement, however, must be approved by the Court under Rule 23(e)(1).

Second, Courts have recognized that the most meaningful remedy for a violation of disclosure obligations in conjunction with a merger or acquisition is increased disclosure, not a subsequent attempt to ""unscramble the eggs"" through rescission. *See, e.g.*, *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 728 (Del. Ch. 1999) (quoting *Gimbel v. Signal Cos.*, 316 A.2d 599, 603 (Del. Ch. 1974), *aff'd*, 316 A.2d 619 (Del. 1974)), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000). In the present case, *Lambert* could not have published the PSLRA notice of pendency the day the action was filed to then wait 60 days to be appointed lead plaintiff before negotiating for supplemental disclosures necessary for shareholders to make a fully informed decision on the transaction prior to closing.[11]

Finally, the *Engelhart* plaintiffs' argument ignores Rule 23(e)'s safeguards concerning the settlement of class action which requires Court approval of both the notice of settlement and the settlement itself. Through these safeguards, the Court can verify that any notice delivered to absent class members accurately describe the settlement and provide them with the opportunity

---

[10] Under Rule 23(g)(4), "Class counsel must fairly and adequately represent the interests of the class." This has been described as creating fiduciary responsibilities to the class. *See In re Trans Union Corp. Privacy Litig.*, 741 F.3d 811, 816 (7th Cir. 2014); *Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 471 (7th Cir. 2004). A disclosure of the pending action without simultaneous disclosure of the MOU of settlement could be deemed a violation of these responsibilities.

[11] Alternatively, since the transaction was scheduled to close less than 30 days after the filing of the *Lambert* Action, *Lambert* would have been faced with completing sufficient discovery to meet the heavy burden to obtain a preliminary injunction.

to opt out of the Class. Moreover, in certification of the Settlement Class, the Court must make a finding that the class representative and their counsel meet each of the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). These safeguards can accomplish the same purposes envisioned by the PSLRA, while permitting the parties to secure increased disclosure to absent class members before the closing of the transaction, providing absent class members with a meaningful ability to cast an informed vote.

DATED: April 18, 2014	Respectfully submitted

**LITE DEPALMA GREENBERG, LLC**

By: */s/ Katrina Carroll*
    Katrina Carroll
One South Dearborn, Suite 2100
Chicago, IL 60603
Tel: (312) 212-4383
Fax: (312) 212-5919
Email: kcarroll@litedepalma.com


**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Ave., Tenth Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff Kerry Lambert and the Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 18, 2014, the foregoing Position in Response to the April 2, 2014 Court Order was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

> By:/s/ *Katrina Carroll*
> One of the Attorneys for Plaintiff
> Kerry Lambert and the Proposed Class