IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated,<br><br>                 Plaintiff,<br><br>     v.<br><br>TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC.,<br><br>                 Defendants. | Case No. 1:13-cv-07945<br><br>Hon. Ronald A. Guzman |

## DEFENDANTS' JOINT RESPONSE TO THE COURT'S APRIL 2, 2014 ORDER

Pursuant to the Court's April 2, 2014 Order ("Order"), Defendants[1] hereby submit this brief addressing the issues set forth in the Court's Order.

**I.    The Claims Asserted In The *Lambert* And *Englehart* Actions Are Direct Claims.**

As an initial matter, and in response to the first question posed in the Court's April 2, 2014 Order, Defendants understand the claims in both the *Lambert* and *Englehart* Actions to be direct claims, not derivative claims. In *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004), the Delaware Supreme Court[2] set forth the following test to determine whether a stockholder's claim is derivative or direct: "(1) who suffered the alleged harm (the corporation

---

[1] Defendants are Tellabs, Inc. ("Tellabs"), Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, Mikel H. Williams, Marlin Equity Partners ("Marlin"), Blackhawk Holding Vehicle LLC and Blackhawk Merger Sub Inc.

[2] Tellabs has been incorporated in Delaware. Delaware law therefore governs what constitutes a derivative claim on behalf of the corporation.

or the suing shareholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Id.* at 1033. Here, both lawsuits have alleged that Tellabs' stockholders suffered the alleged harm. And all claims in both lawsuits seek recovery for shareholders in their individual capacities, not any recovery that would flow to corporate coffers.

Moreover, Delaware courts have recognized that claims such as those asserted here – i.e., claims that purport to directly attack the fairness or validity of a merger – are filed directly on behalf of shareholders, and not derivatively on behalf of the company. *See, e.g., Parnes v. Bally Entmt. Corp.*, 722 A.2d 1243, 1245 (Del. 1999) ("Stockholders may sue on their own behalf (and, in appropriate circumstances, as representatives of a class of stockholders) to seek relief for direct injuries that are independent of any injury to the corporation. A stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated."); *Chaffin v. GNI Group, Inc.*, 1999 WL 721569, at *7-8 (Del. Ch. Sept. 3, 1999).

Indeed, given that the merger transaction that is the subject of both actions closed on December 2, 2013 – resulting in Tellabs being acquired by an affiliate of Marlin, and there being no other Tellabs shareholders remaining – if the claims asserted in the complaints were derivative claims, plaintiffs would no longer have standing to pursue such claims. *Parnes*, 722 A.2d at 1245 ("Since a stockholder suing derivatively is bringing a corporate claim, not a personal one, the stockholder must maintain his or her status as a stockholder in order to continue the litigation."); *Lewis v. Ward*, 852 A.2d 896, 901 (Del. 2004) ("When a merger eliminates a plaintiff's shareholder status in a company, it also eliminates her standing to pursue derivative claims on behalf of that company.").

## II. The Impact of Federal Rule of Civil Procedure 23 On The *Lambert* And *Englehart* Actions.

The Court's Order also asked the parties to address the extent to which Federal Rule of Civil Procedure 23, including the opt out provision, impacts the *Lambert* and *Englehart* Actions.

The Settlement Agreement in the *Lambert* Action, which was submitted to the Court on March 21, 2014, originally provided that the parties agreed to certification of the proposed class for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2). (Dkt. #67.) Because disclosures made in the context of a tender offer/merger are uniform as to all affected shareholders, as is typically also the case with respect to the consideration offered to shareholders (as was true here), lawsuits of this sort are commonly certified under these provisions or their state law counterparts. *See, e.g., Davis v. Central Vermont Public Service Corp.*, 2012 WL 4471226, at *6 (D. Vt. Sept. 27, 2012) (certifying similar class under Fed. R. Civ. P. 23(b)(1)); *In re Cox Radio, Inc. S'holders Litig.*, 2010 WL 1806616, at *8 (Del. Ch. May 6, 2010) (recognizing that "Delaware courts repeatedly have held that actions challenging the propriety of director conduct in carrying out corporate transactions are properly certifiable under both subdivisions (b)(1) and (b)(2)" and certifying class under those provisions). And precisely because matters such as disclosures and tender offer consideration are required to be uniform in nature, lawsuits of this sort are also typically certified on a non-opt out basis.

In light of the filing of the *Englehart* Action, however, the parties to the *Lambert* Action have conferred and agreed to amend the Settlement Agreement to provide for certification of the proposed class for settlement purposes only pursuant to Federal Rule of Civil Procedure 23(b)(3). The *Englehart* plaintiffs and other members of the putative settlement class will therefore have the right to opt out of the proposed class settlement in *Lambert*. The parties to the

*Lambert* Action will shortly submit a conforming revised settlement agreement and accompanying revised class notice to the Court.

Pursuant to the proposed revised settlement agreement outlined above, the impact of Federal Rule of Civil Procedure 23 on the *Englehart* Action will be limited in nature. Assuming that the plaintiffs in the *Englehart* Action choose to opt out of the proposed settlement, they will be free to pursue their claims on an individual basis (as will any other plaintiffs who choose to request exclusion from the proposed settlement in the *Lambert* Action). And if the *Englehart* plaintiffs elect to opt out and pursue their individual damages claims, there is no reason to consolidate the *Englehart* action with *Lambert*. Rather, the *Englehart* action should remain separate and proceed separately. The case should still be transferred to this Court as a related proceeding, however.

As to the impact of Rule 23 and an opt out provision on the *Lambert* Action, this Court will, of course, ultimately have to determine the reasonableness of the settlement and compliance of the proposed settlement class and its representatives with the requirements of Rules 23(a) and (b)(3). The inclusion of an opt out provision has a bearing on these matters, however, because it allows a safety valve for those who purport to wish to pursue a different path and object to a release of their individual claims.

### III. The Limited Effect Of The PSLRA On The *Lambert* And *Englehart* Actions.

Finally, the Court's Order asked the parties to address the effect, if any, of the Private Securities Litigation Reform Act (the "PSLRA") on the *Lambert* and *Englehart* Actions. The short answer is that the effect of the PSLRA on both the *Lambert* and *Englehart* Actions is limited.

4

### A. Plaintiffs' Federal Securities Law Claims Are Limited in Nature.

As an initial matter, only two of the claims in each of the *Lambert* and *Englehart* Actions are federal securities law claims governed by the PSLRA – i.e., plaintiffs' claims pursuant to Sections 14(e) and 20(a) of the Securities Exchange Act of 1934. These claims are based on Tellabs' alleged failure to include certain information in the November 1, 2013 recommendation statement regarding the proposed acquisition of Tellabs (the "Schedule 14D-9" or the "Recommendation Statement"). But the federal securities law claims are the tail wagging the dog. The bulk of plaintiffs' claims, and those that remain most relevant, are state law claims governed by Delaware law (the state of Tellabs' incorporation) and alleging purported breaches of fiduciary duties.

Moreover, because the transaction that is the subject of both the *Lambert* and *Englehart* Actions closed months ago, on December 2, 2013, the disclosure claims are largely secondary, if not moot. With respect to the *Lambert* Complaint, the settlement specifically addressed the disclosure claims, and plaintiff agreed that the amended Schedule 14D-9 filed on November 25, 2013 would constitute adequate disclosures. As to the *Englehart* plaintiffs, while they continue to purport to make claims of inadequate disclosures under the federal securities laws, because the transaction has closed any damages would have to be based upon a claim of inadequate price in connection with the transaction. The claims of price inadequacy, however, are the subject of the state law fiduciary duty claims.[3] In any event, the *Englehart* plaintiffs are in no position to

---

[3] The lawyer-driven and contrived nature of the assertions of inadequate price are underscored by the fact that none of the *Englehart* plaintiffs timely pursued an appraisal procedure under Delaware law – a procedure specifically made available to those Tellabs' stockholders who may have believed that the acquisition price was less than fair value and were willing to abide, for better or worse, by whatever value a Delaware court determined. Del. Code Annot., tit. 8, § 262. (*See* Recommendation Statement at 37-41 & Annex B (discussing availability of appraisal option).) In other words, an appraisal proceeding requires that a stockholder put its money where its mouth is. Not surprisingly, the *Englehart* plaintiffs elected not to do so.

maintain that they were somehow misled by the purported omissions from the Schedule 14D-9. To the contrary, the fact that they filed a complaint alleging those disclosure violations prior to the closing of the transaction makes clear that they cannot satisfy the reliance requirements for a Section 14(e) damages claim. *See Scheiner v. Midas, Inc.*, 2013 WL 329006, at *5 (N.D. Ill. Jan. 29, 2013) ("[t]o state a claim for damages under § 14(e), a plaintiff must allege that he or she relied on misstatements to his or her detriment.").

### B. The Effect of the PSLRA.

While, as discussed above, the federal securities law claims are of limited relevance at this juncture, to the extent that those claims remain, the PSLRA is relevant in several respects.

*First*, the PSLRA requirements that plaintiffs plead with particularity are applicable *See* 15 U.S.C. § 78u-4(b)(1) (requiring plaintiffs to identify allegedly false statements "with particularity" and to provide facts indicating *how* or *why* each identified statement is "false" or "misleading").

*Second*, scienter is an element for a claim for damages under Section 14(e). *Scheiner*, 2013 WL 329006, at *6-7; *In re Digital Island Sec. Litig.*, 357 F.3d 322, 328 (3d Cir. 2004). Accordingly, the PSLRA's requirement that a plaintiff must plead facts that give rise to a strong inference of scienter, 15 U.S.C. § 78u-4(b)(2)(A), is applicable for purposes of determining whether either of the complaints would survive a motion to dismiss. *Scheiner*, 2013 WL 329006, at *6-7; *Digital Island*, 357 F.3d at 328; *Conn. Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 961 (2d Cir. 1987). And, of course, there would have to be proof of scienter – i.e., that the defendants knew or recklessly disregarded that the Schedule 14D-9 was false or misleading in the absence of additional information – in order for plaintiffs to establish any liability. *See Taro Pharm. Indus. v. Sun Pharm. Indus., Ltd.*, 2010 WL 2835548, at *2-3 (S.D.N.Y. July 13, 2010) (citing,

*inter alia*, *Conn. Nat'l Bank.*, 808 F.2d at 961 ("In order to prove a violation of [Section] 14(e), a party must establish…that the defendant acted with either knowledge of falsity, or a reckless disregard for the truth.") (internal quotations omitted).

*Third*, for purposes of determining satisfaction of these PSLRA requirements, it is highly relevant that complaints of the sort the *Englehart* plaintiffs have brought about the failure to include additional information have repeatedly been dismissed by other federal courts, including in the Seventh Circuit. *See, e.g., Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009); *Himmel v. Bucyrus Int'l, Inc.*, 2014 WL 1406279 (E.D. Wis. Apr. 11, 2014); *IBEW Local 98 Pension Fund, et al. v. Central Vermont Public Service Corp.*, 2012 WL 928402 (D. Vt. Mar. 19, 2012); *Dixon v. Ladish Co., Inc.*, 785 F. Supp. 2d 746 (E.D. Wis. 2011); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 552 (D. Del. 2002), *aff'd*, 357 F.3d 322 (3d Cir. 2004). Those courts have held that allegations that it would have been beneficial to provide more information to shareholders do not suffice to state a claim under Section 14(e), which by its terms only renders disclosures actionable if they are either false or affirmatively misleading in the absence of additional information. Indeed, as courts have recognized, it is all to easy to fashion a complaint criticizing the "omission" of additional information. *See Brody v. Transitional Hosps. Corp.*, 280 F.3d 998, 1006 (9th Cir. 2002) ("No matter how detailed and accurate disclosure statements are, there are likely to be additional details that could have been disclosed but were not."). But that does not begin to mean that the disclosures made were false or misleading, or even that the omitted information was in any way material. *See Beck*, 559 F.3d at 685 ("The plaintiff contends that the shareholders might have liked to have more backup information, and perhaps some of them would have. But there is nothing in the complaint to suggest that any shareholder was misled or

was likely to be misled by the dearth of backup information – that is, that the shareholder drew a wrong inference from that dearth.").

Finally, the PSLRA is also relevant inasmuch as it contains provisions regarding the settlement of a class action containing securities law claims, including provisions setting forth the requirements of what must be in the notice that the Court has been asked to approve. 15 U.S.C. § 78u-4(a)(4)-(7). As to the notice requirements under the PSLRA with respect to the appointment of Lead Plaintiff, Defendants believe that this is an issue best addressed by plaintiffs' counsel in the *Lambert* and *Englehart* Actions. Defendants note, however, that there is a potential overlap between the Court's approval of the settlement and its determination as to whether a lead plaintiff candidate is adequate.

Dated: April 18, 2014

Respectfully submitted,

/s/ David F. Graham_____
SIDLEY AUSTIN LLP
David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036
dgraham@sidley.com
jducayet@sidley.com
rniewoehner@sidley.com
kathleen.carlson@sidley.com

*Counsel for Defendants Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace*

8

*Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*

/s/ David M. Friebus_____
BAKER HOSTETLER
John M. Touhy
David M. Friebus
191 North Wacker Drive
Suite 3100
Chicago, Illinois 60606-1901
jtouhy@bakerlaw.com
dfriebus@bakerlaw.com

SCHULTE ROTH & ZABEL LLP
William H. Gussman, Jr.
Frank LaSalle
Michael Swartz
919 Third Avenue
New York, New York 10022
bill.gussman@srz.com
frank.lasalle@srz.com
michael.swartz@srz.com

*Counsel for Defendants Marlin Equity Partners, Blackhawk Holding Vehicle LLC, and Blackhawk Merger Sub Inc.*

**CERTIFICATE OF SERVICE**

      Kathleen L. Carlson, an attorney, hereby certifies that on April 18, 2014, she caused a true and correct copy of the foregoing to be filed electronically with the Clerk of Court to be filed and served upon all parties via the Court's CM/ECF system.

                                        s/ Kathleen L. Carlson