UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated,

                     Plaintiff,

    vs.

TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC.,

                     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:13-cv-07945

The Honorable Ronald A. Guzman

ROBERT ENGLEHART, JORGE RODRIGUEZ and THE JUDITH KANE RODRIGUEZ 2012 FAMILY TRUST, On Behalf of Themselves and All Others Similarly Situated,

                     Plaintiffs,

    vs.

TELLABS, INC., MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE LLC, BLACKHAWK MERGER SUB INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI and MIKEL H. WILLIAMS,

                     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:14-cv-01990

The Honorable John W. Darrah

**PLAINTIFFS ROBERT ENGLEHART, JORGE RODRIGUEZ, AND
THE JUDITH KANE-RODRIGUEZ 2012 FAMILY TRUST'S POSITION PAPER
IN RESPONSE TO THE COURT'S APRIL 1, 2014 ORDER**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 3

ARGUMENT .............................................................................................................................. 7

I.      PLAINTIFFS' CLAIMS ARE DIRECT, NOT DERIVATIVE ......................................... 7

II.     THE PSLRA GOVERNS BOTH THE *LAMBERT* AND *ENGLEHART*
ACTIONS .................................................................................................................... 10

III.    THE PROPOSED SETTLEMENT IS A NON-OPT OUT SETTLEMENT THAT
WILL RELEASE THE CLAIMS OF THE CLASS AND THE *ENGLEHART*
PLAINTIFFS ............................................................................................................... 16

CONCLUSION ......................................................................................................................... 19

933645_1

# TABLE OF AUTHORITIES

**Page**

## CASES

*2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*,
   656 F. Supp. 2d 707 (E.D. Ky. 2009) ........................................................................8

*Abelow v. Symonds*,
   156 A.2d 416 (Del. Ch. 1959)..................................................................................8

*Brister v. Schlinger Found.*,
   469 F. Supp. 2d 371 (E.D. La. 2007)........................................................................8

*Burke v. Ruttenburg*,
   102 F. Supp. 2d 1280 (N.D. Ala. 2000)...................................................................16

*CalPERS v. Chubb Corp.*,
   127 F. Supp. 2d 572 (D.N.J. 2001) ....................................................................11, 12

*Cent. Cmty. Church of God v. Ent & Imler CPA Group, PC*,
   No. 1:03-cv-0678-DFH-VCS, 2005 U.S. Dist. LEXIS 8679
   (S.D. Ind. May 9, 2005) .....................................................................................3, 12

*Chaffin v. GNI Group, Inc.*,
   No. 16211-NC, 1999 Del. Ch. LEXIS 182
   (Del. Ch. Sept. 3, 1999) ........................................................................................8

*Christman v. Brauvin Realty Advisors, Inc.*,
   191 F.R.D. 142 (N.D. Ill. 1999)............................................................................15

*Coggins v. New Eng. Patriots Football Club*,
   492 N.E.2d 1112 (Mass. 1986) ...............................................................................9

*In re BankAmerica Corp. Secs. Litig.*,
   263 F.3d 795 (8th Cir. 2001) ..................................................................................3

*In re General Motors Corp. Engine Interchange Litig.*,
   594 F.2d 1106 (7th Cir. 1979) ..............................................................................15

*In re Motorola Sec. Litig.*,
   No. 03 C 287, 2003 U.S. Dist. LEXIS 12651
   (N.D. Ill. July 16, 2003).......................................................................................11

*In re Price/Costco S'holder Litig.*,
   No. C-94-1874C, 1995 WL 786631
   (W.D. Wash. Oct. 30, 1995) .................................................................................10

**Page**

*In re Select Comfort Corp. Secs. Litig.*,
   No. 99-884, 2000 U.S. Dist. LEXIS 22697
   (D. Minn. Jan. 27, 2000) ................................................................................15

*In re SemCrude L.P.*,
   No. 11-1174-SLR, 2012 U.S. Dist. LEXIS 163236
   (D. Del. Nov. 15, 2012) ..................................................................................8

*In re Tri-Star Pictures, Inc. Litig.*,
   634 A.2d 319 (Del. 1993) ..............................................................................9

*Jefferson v. Ingersoll Int'l Inc.*,
   195 F.3d 894 (7th Cir. 1999) .......................................................................18

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
   No. RDB 05-841, 2005 U.S. Dist. LEXIS 26837
   (D. Md. Nov. 3, 2005) .....................................................................................8

*Kennedy v. Venrock Assoc.*,
   348 F.3d 584 (7th Cir. 2003) .........................................................................7

*King v. Livent, Inc.*,
   36 F. Supp. 2d 187 (S.D.N.Y. 1999) ...........................................................12

*Lightner v. Lightner*,
   266 P.3d 539 (Kan. Ct. App. 2011) ...............................................................8

*McCarthy v. Middle Tenn. Elec. Membership Corp.*,
   466 F.3d 399 (6th Cir. 2006) .........................................................................8

*Neil v. Zell*,
   275 F.R.D. 256 (N.D. Ill. 2011) ...................................................................18

*Parnes v. Bally Entertainment Corp.*,
   722 A.2d 1243 (Del. 1999) .............................................................................8

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) .............................................................3, 15

*Potter v. Janus Inv. Fund*,
   No. 03-cv-0692-DRH, 2004 U.S. Dist. LEXIS 9181
   (S.D. Ill. Feb. 9, 2004) ...................................................................................7

*Rabkin v. Philip A. Hunt Chemical Corp.*,
   547 A.2d 963 (Del. Ch. 1986) .......................................................................8

- iii -

**Page**

*Rael v. Page*,
  222 P.3d 678 (N.M. Ct. App. 2009)..................................................................8

*Rand v. Western Airlines, Inc*.,
  No. 8632, 1989 Del. Ch. LEXIS 118
  (Del. Ch. Sept. 11, 1989) .........................................................................8, 9

*Shenker v. Laureate Educ., Inc.*,
  983 A.2d 408 (Md. 2009) ..........................................................................8

*Tooley v Donaldson, Lufkin & Jenrette, Inc.*,
  845 A.2d 1031 (Del. 2004) ........................................................................8

*Topaz Realty v. Northfield Labs., Inc.*,
  No. 06 C 1493, 2006 U.S. Dist. LEXIS 77613
  (N.D. Ill. June 19, 2006) ...........................................................................16

*Weiner v. Naegele*,
  No. 11-855(DSD/AJB), 2012 U.S. Dist. LEXIS 97925
  (D. Minn. July 16, 2012)............................................................................8

*Yudell v. Gilbert*,
  949 N.Y.S.2d 380 (N.Y. App. Div. 1st Dept. 2012)....................................8

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78n(a) ........................................................................12, 13, 15, 18
  §78n(e) ...........................................................................1, 10, 19
  §78t(a) ..........................................................................2, 10, 13, 18
  §78u-4(a)(1) ...........................................................................10
  §78u-4(a)(2) ...........................................................................13
  §78u-4(a)(3)(A)...........................................................11, 12, 13, 14
  §78u-4(a)(3)(A)(i).....................................................................2, 12
  §78u-4(a)(3)(B)(iii)......................................................................3

Federal Rules of Civil Procedure
  Rule 23 ....................................................................................7
  Rule 23(a).............................................................................17, 18
  Rule 23(b)(1).........................................................................17, 18
  Rule 23(b)(2).........................................................................17, 18

933645_1

**Page**

S. Rep. No. 104-98 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 679 ...............................................................................12, 15

H.R. Conf. Rep. No. 104-369 (1995),
   *reprinted in* 1995 U.S.C.C.A.N. 730 ...............................................................................3, 11

**SECONDARY AUTHORITIES**

Elliott J. Weiss and John S. Beckerman, *Let the Money Do the Monitoring: How Institutional
   Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J. 2053
   (June 1995)......................................................................................................................12

*Manual for Complex Litigation (Fourth)* §31.3
   (2004)...............................................................................................................................13

933645_1

Plaintiffs Robert Englehart ("Englehart"), Jorge Rodriguez ("Rodriguez"), and The Judith Kane-Rodriguez 2012 Family Trust, of which Rodriguez is the Trustee (the "Trust," collectively the "*Englehart* Plaintiffs"), respectfully submit this response to the Court's request for a Position Paper concerning the *Englehart* Plaintiffs' motion to Reassign, Consolidate, and Stay Proceedings Pending Appointment of Lead Plaintiff and Lead Counsel. *Lambert* Dkt. No. 74.

## PRELIMINARY STATEMENT

According to Cornerstone Research's Review of 2013 mergers and acquisitions litigation, the acquisition of Delaware corporation Tellabs Inc. ("Tellabs" or the "Company") by Marlin Equity Partners and affiliates ("Marlin") through a tender offer ("Tender Offer") for $2.45 per share of Tellabs common stock (the "Acquisition"),[1] was the second most litigated deal of 2013 – so outraging shareholders that sixteen separate lawsuits were filed in response to the Acquisition announcement.[2] Of these sixteen cases, all but this one were filed in state courts because the wrongs alleged were common law claims for breaches of fiduciary duties, including allegations that the $2.45 per share price of the Acquisition (the "Acquisition Price") undervalued Tellabs and that the Acquisition was subject to unfair deal protection devices. *Lambert v. Tellabs, Inc.*, No. 13-cv-7945 (N.D. Ill.), was filed in this Court on November 5, 2013 (the "*Lambert* Action"), after numerous similar lawsuits had already been filed in Illinois and Delaware state courts. The *Lambert* Action included the same breach of fiduciary duty claims as the fifteen previously filed state court actions. However, in addition to the state claims, in order for Plaintiff Lambert and his counsel to be able to litigate in federal court, the *Lambert* Action alleged violations of §14(e) of the Securities Exchange

---

[1]     The Acquisition was announced on October 21, 2013. The Tender Offer commenced on November 1, 2013 and closed on December 2, 2013.

[2]     Shareholder Litigation Involving Mergers and Acquisitions – Review of 2013 M&A Litigation, Cornerstone Research, attached to this Position Paper as Ex. A at 2.

Act of 1934 (the "Exchange Act"), 15 U.S.C. §78n(e), against Tellabs and the Individual Defendants,[3] and violations of §20(a) of the Exchange Act, 15 U.S.C. §78t(a), against the Individual Defendants.

Because the *Lambert* Action is a class action alleging violations of the Exchange Act, it is governed by the requirements of the Private Securities Litigation Reform Act (the "PSLRA"). Under the PSLRA, a Court-appointed Lead Plaintiff and his/her/its Lead Counsel alone have the authority to prosecute an action on behalf of a class. Plaintiff Lambert acknowledged that his action was governed by the PSLRA by attaching to his complaint a PSLRA required "Certification of Proposed Lead Plaintiff" (*Lambert* Dkt. No. 1-1) and by filing an "Emergency Motion to Partially Lift the PSLRA Discovery Stay in Order to Conduct Limited Expedited Discovery" (*Lambert* Dkt. No. 4).

The PSLRA required that within twenty days of filing the complaint in the *Lambert* Action, Plaintiff Lambert publish a notice, "in a widely circulated national business-oriented publication or wire service," that informs the prospective class "(I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff Lambert never issued the required PSLRA notice. Without that notice, the deadline to seek appointment as Lead Plaintiff and for approval of Lead Counsel was not triggered, and therefore, no Lead Plaintiff or Lead Counsel was appointed to represent the prospective Class of Tellabs shareholders. Yet, Plaintiff Lambert, through his counsel, negotiated, and is attempting to finalize, a settlement of the *Lambert*

---

[3]     Defendants Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski and Mikel H. Williams, who are members of the Board of Directors of Tellabs (the "Board"), are also known as the "Individual Defendants."

Action on behalf of the Class which will release the claims of absent Class members, including those who have commenced 15 substantially identical cases in other courts.

"The PSLRA was enacted to combat certain perceived abuses of securities class actions arising out of lawyer-driven lawsuits brought on behalf of 'professional plaintiffs,' or plaintiffs with at best nominal interest in the securities at issue." *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 622 (E.D. Wis. 2009) (quoting H.R. Conf. Rep. No. 104-369, at 32-35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731-34; *In re BankAmerica Corp. Secs. Litig.*, 263 F.3d 795, 800 (8th Cir. 2001); and *Manual for Complex Litigation (Fourth)* §31.3, at 529-30 (2004)).[4] "The PSLRA thus creates a rebuttable presumption that the person having 'the largest financial interest in the relief sought by the class' should be named lead plaintiff." *Plumbers & Pipefitters Local 562 Pension Fund*, 256 F.R.D. at 622 (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)); *see also Cent. Cmty. Church of God v. Ent & Imler CPA Group, PC*, No. 1:03-cv-0678-DFH-VCS, 2005 U.S. Dist. LEXIS 8679, at *9 (S.D. Ind. May 9, 2005) (the "[notice and lead plaintiff provisions of the PSLRA] are intended to protect the interests of a plaintiff class of investors by inviting competition to ensure that the best available class representative takes the lead").

Lambert's counsel's failure to publish the mandatory PSLRA notice precluded the most appropriate plaintiff from moving the Court for appointment as lead plaintiff, thwarting the very purpose of the PSLRA.

## FACTUAL AND PROCEDURAL BACKGROUND

As noted above, before the *Lambert* Action was filed, more than a dozen actions were pending in Illinois and Delaware state courts. Plaintiff Englehart and the City of Lakeland Employees' Pension Plan (who was a plaintiff in another Illinois state court action concerning the

---

[4]     Unless otherwise noted, all emphasis is added, and citations and footnotes are omitted.

Acquisition), whose counsel is participating in representing the *Englehart* Plaintiffs, moved for expedited discovery in advance of the Acquisition. In response, Defendants moved to dismiss, or in the alternative, stay the actions pending in Illinois state court, arguing that the Illinois courts should stand down in favor of the actions being litigated in Delaware Chancery Court. Defendants' brief argued that "Delaware courts have made clear that fiduciary duty breach challenges of the sort asserted here, which are governed by Delaware law and involve a transaction by a Delaware corporation, are matters that Delaware courts have a special interest in adjudicating." Ex. B at 7. During the November 13, 2013 hearing on the motions before Judge Rita M. Novak of Illinois Circuit Court, Cook County, Defense Counsel argued that "Delaware law applies to this case. It's a Delaware corporation, Delaware law claims, and the Court of [C]hancery is uniquely situated to resolve those claims."[5] Defense Counsel further described "[t]he situation in Illinois" as "a free for all," and repeated that "[t]he case should proceed in one jurisdiction in Delaware. That's the law that applies. That's the case that's been consolidated. The judge has appointed lead plaintiff. The matter is further along."[6] When Plaintiffs suggested a middle ground that Defendants produce documents that they have already produced to plaintiffs in the Delaware actions, Defendants told the court that "[w]e don't think that's appropriate. If [plaintiffs] want[] documents in Delaware, [they] should come to Delaware. That's where this case belongs."[7] After the hearing, in order to avoid further time and expense for all parties, the *Englehart* Plaintiffs and City of Lakeland (in their separately filed stated actions) agreed to stay the Illinois state court actions until the Acquisition closed.

---

[5]       Ex. C at 21:17-20.

[6]       *Id.* at 21:22-23, 22:24-23:4.

[7]       *Id.* at 26:21-24.

933645_1

Between the time of the stipulation to stay the Illinois state cases and the close of the Tender Offer, rather than litigate in Delaware as Defendants vigorously argued was the only appropriate way to proceed, the Defendants, in classic "reverse auction" fashion, apparently found their patsy and entered into a Memorandum of Understanding on or about November 24, 2013 with Plaintiff Lambert regarding settlement of the *Lambert* Action and the claims of the Class. *See Lambert* Dkt. No. 57 (1/15/2014 Joint Status Report). The settlement contemplates no monetary compensation for the Class, yet provides for a fee to Lambert's counsel. *See Lambert* Dkt. Nos. 66 (3/21/2014 Memorandum in Support of Motion for Preliminary Approval of Settlement) and 67 (3/21/2014 Settlement Agreement).[8]

The Tender Offer closed on December 2, 2013, and the Acquisition was consummated through a short-form merger on or about December 3, 2013. Following the Acquisition's consummation, the *Englehart* Plaintiffs were no longer precluded from proceeding in Illinois state court. However, on January 15, 2014, Plaintiff Lambert and the Defendants filed a joint status report, informing the Court of the confirmatory discovery that would take place as part of the settlement, including document production and three depositions. *Lambert* Dkt. No. 57. On or about January 24, 2014, the *Englehart* Plaintiffs served document requests on Defendants asking for all documents produced in the confirmatory discovery process, and also served notices of deposition on the same three deponents listed in the January 15, 2014 Joint Status Report. In response, on or about February 10, 2014, Defendants again moved to stay the Illinois state court proceedings, this time changing their argument for a "stay in favor of litigation pending in the Northern District of Illinois." Ex. D at 1. To save time and expense on all parties, the *Englehart* Plaintiffs agreed to

---

[8] While the settlement provides for corrective disclosures as the basis for consideration, a number of the disclosures had been raised in the pleadings by plaintiffs in the state court cases before the disclosures were settled for in the *Lambert* Action. Thus, the cause of these disclosures was not solely the *Lambert* Action.

withdraw their discovery and to a temporary stay, but reserving their right to participate in the federal *Lambert* Action, in exchange for production of all documents produced in *Lambert*, and transcripts of the depositions taken, during the confirmatory discovery process. Ex. E. Defendants failed to produce those documents and transcripts until April 9, 2014 (after the *Englehart* Plaintiffs filed to be Lead Plaintiffs in this case).

On March 17, 2014, the parties in the *Lambert* Action filed a Joint Status Report, which stated that they expected to move for preliminary approval of their settlement by March 21, 2014. *Lambert* Dkt. No. 64.

On March 20, 2014, the *Englehart* Plaintiffs filed *Englehart v. Tellabs, Inc.*, No. 14-cv-1990, in this Court against the same defendants in the *Lambert* Action (the "*Englehart* Action"). As the *Englehart* Complaint was filed after the Acquisition closed, its allegations are made in the past tense, and its alleged class more specifically identifies those former Tellabs stockholders who were injured by defendants' conduct: "(a) all holders of Tellabs common stock whose common stock was converted to the Acquisition Price through the short-form merger and who were harmed by defendants' breaches of fiduciary duties as described herein; and (b) all holders of Tellabs common stock who tendered their common stock through the Tender Offer or whose common stock was converted to the Acquisition Price through the short-form merger and were harmed by defendants' violations of the Exchange Act as described herein." *Englehart* Compl., ¶33.

On March 20, 2014, the *Englehart* Plaintiffs published the required PSLRA notice, and informed former Tellabs' stockholders that the deadline to move to be appointed Lead Plaintiff is May 19, 2014. *See* Ex. F.

On March 24, the *Englehart* Plaintiffs moved this Court to Reassign the *Englehart* Action to this Court, consolidate the *Englehart* and *Lambert* Actions, and to stay all proceedings in the

consolidated action pending appointment of Lead Plaintiff and Lead Counsel under the provisions of the PSLRA (the "Motion"). *Lambert* Dkt. No. 68.

On April 1, 2014, the Court directed all parties in *Lambert* and counsel in *Englehart* to

each file a position paper no later than April 18, 2014 addressing the following issues: (1) whether the claims in the Lambert and Englehart actions are brought directly or derivatively and the specific legal basis for each claim, with citations to authority; (2) the extent to which Federal Rule of Civil Procedure 23, including the opt out provision, impacts the Lambert and Englehart actions; and (3) the effect, if any, of the Private Securities Litigation Reform Act on the Lambert and Englehart actions.

*Lambert* Dkt. No. 74. Each of the issues upon which the Court requested briefing is addressed herein.

## ARGUMENT

## I.     PLAINTIFFS' CLAIMS ARE DIRECT, NOT DERIVATIVE

As an initial matter, plaintiffs in both the *Lambert* and *Englehart* Actions filed shareholder class action complaints.[9]  There is nothing in either complaint to suggest that either action was brought derivatively on behalf of Tellabs.

 "The state of incorporation governs whether a shareholder's action is derivative or based on his individual right."  *Potter v. Janus Inv. Fund*, No. 03-cv-0692-DRH, 2004 U.S. Dist. LEXIS 9181, at *10 (S.D. Ill. Feb. 9, 2004) (citing *Kennedy v. Venrock Assoc.*, 348 F.3d 584, 589 (7th Cir. 2003)).  Delaware courts (and other states following Delaware's lead) have explicitly and repeatedly recognized that shareholder claims challenging a merger due to a tainted process and because of inadequate consideration are direct, not derivative.  In marking the determination as to whether a claim is direct or derivative, the Delaware Supreme Court has held that courts should consider, as to

---

[9]     The *Englehart* Complaint states at ¶1: "This is a direct shareholder class action brought by Plaintiffs individually and on behalf of the holders of Tellabs common stock against Tellabs . . . ." The *Lambert* Complaint states at ¶1: "This is a stockholder class action brought by Plaintiff on behalf of the holders of the common stock of Tellabs . . . ."

the individual shareholder or the corporation, (1) who suffered the alleged harm and (2) who would receive the benefit of any recovery or other remedy. *Tooley v Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004).[10]

A claim by a shareholder challenging the fairness of a merger transaction is a direct, not derivative, claim that may be brought in a class action lawsuit. As the Delaware Supreme Court has made clear, a "stockholder who directly attacks the fairness or validity of a merger alleges an injury to the stockholders, not the corporation, and may pursue such a claim even after the merger at issue has been consummated." *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1245 (Del. 1999); *see also Chaffin v. GNI Group, Inc.*, No. 16211-NC, 1999 Del. Ch. LEXIS 182, at *23-*24 (Del. Ch. Sept. 3, 1999) (plaintiff's claims constituted a challenge to the validity of the merger itself, and, therefore were not derivative claims); *Rand v. Western Airlines, Inc.*, No. 8632, 1989 Del. Ch. LEXIS 118, at *5-*7 (Del. Ch. Sept. 11, 1989) (same); *Rabkin v. Philip A. Hunt Chemical Corp.*, 547 A.2d 963, 969 (Del. Ch. 1986) (class claim stated where merger attacked directly); *Abelow v. Symonds*, 156 A.2d 416 (Del. Ch. 1959) (plaintiff given leave to amend to allege class claim when he was directly attacking the fairness of merger and had sought to enjoin it.)

---

[10]     Many state courts and federal courts applying state law have followed the *Tooley* test since its articulation by the Delaware Supreme Court. *See Yudell v. Gilbert*, 949 N.Y.S.2d 380 (N.Y. App. Div. 1st Dept. 2012); *Lightner v. Lightner*, 266 P.3d 539 (Kan. Ct. App. 2011); *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408 (Md. 2009); *Rael v. Page*, 222 P.3d 678 (N.M. Ct. App. 2009); *In re SemCrude L.P.*, No. 11-1174-SLR, 2012 U.S. Dist. LEXIS 163236 (D. Del. Nov. 15, 2012) (applying Oklahoma law); *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. RDB 05-841, 2005 U.S. Dist. LEXIS 26837 (D. Md. Nov. 3, 2005) (applying Maryland law); *Brister v. Schlinger Found.*, 469 F. Supp. 2d 371 (E.D. La. 2007) (applying Nevada law and finding a claim was derivative because plaintiff alleged a diminution in share value applicable to all stockholders); *McCarthy v. Middle Tenn. Elec. Membership Corp.*, 466 F.3d 399 (6th Cir. 2006) (applying Tennessee law); *2815 Grand Realty Corp. v. Goose Creek Energy, Inc.*, 656 F. Supp. 2d 707 (E.D. Ky. 2009) (applying Kentucky law); *Weiner v. Naegele*, No. 11-855(DSD/AJB), 2012 U.S. Dist. LEXIS 97925 (D. Minn. July 16, 2012) (applying Minnesota law).

Here, the *Englehart* Complaint directly attacks the Tellabs Acquisition by challenging the fairness of the Acquisition and the inadequate and misleading disclosures made in order to induce Class members to vote in favor of the transaction which caused each Class member, individually, to suffer money damages (*i.e.* the difference between the fair value of their shares on the Acquisition Price). For example, the *Englehart* Plaintiffs claim that the Acquisition Price is grossly inadequate (*see, e.g.*, ¶¶2, 7, 71-72); that the inadequate price resulted from, among other things, an entirely unfair sales process including the Board's deference to conflicted management and a conflicted financial advisor (*see, e.g.*, ¶¶3, 5-6) and from favoring Marlin over other potential acquirers (*see, e.g.*, ¶¶3-4, 9); and that the Individual Defendants failed to disclose certain facts, including facts relating to the value of the Company (*see, e.g.*, ¶¶10, 79). These allegations constitute direct attacks on the validity of the Acquisition and, therefore, can be brought directly by a class, rather than through a derivative, action. *See, e.g.*, *Rand*, 1989 Del. Ch. LEXIS 118, at *5-*7 (finding virtually identical allegations gave rise to direct claims and, consequently, rejecting defendants' argument "that the complaint states only derivative claims"); *In re Tri-Star Pictures, Inc. Litig.*, 634 A.2d 319, 330 (Del. 1993) (the Supreme Court of Delaware overruled lower court's finding that claims alleged were derivative and held that minority shareholders could bring direct class claims where the case "involve[ed] the right of the minority to compensation for harm caused them by a controlling stockholder who breached its duty of loyalty to the minority class"); *Coggins v. New Eng. Patriots Football Club*, 492 N.E.2d 1112, 1118 (Mass. 1986) (permitting class claims to proceed on behalf of minority shareholders where the "trial judge correctly considered the totality of circumstances," "including the purpose of the merger, the accuracy and adequacy of disclosure in connection with the merger, and the fairness of the price" in concluding that the merger was designed for the personal benefit of the controlling stockholder).

The claims for violation of §14(e) of the Exchange Act that are alleged in the *Lambert* Complaint and *Englehart* Complaint are also direct and not derivative. Federal and Delaware law concerning "the determination of whether the claim is direct or derivative . . . do not differ." *In re Price/Costco S'holder Litig.*, No. C-94-1874C, 1995 WL 786631, at *7 (W.D. Wash. Oct. 30, 1995). Section 14(e) imposes liability for untrue statements of material fact or omissions of fact with respect to a tender offer. 15 U.S.C. §78n(e). The *Lambert* Complaint and the *Englehart* Complaint allege violations of §14(e) due to "untrue statements of material fact concerning the Tender Offer and the Acquisition" in the 14D-9. *Englehart* Compl., ¶103; *see also Lambert* Compl., ¶92. The *Price/Costco* court held that claims for violation of §14(e) due to inadequate and misleading information in a tender offer prospectus "are direct, not derivative; the aggrieved shareholders sue for individual injury allegedly caused by director misrepresentation and fraud, not for injuries to the corporation itself." *Price/Costco*, 1995 WL 786631, at *8.[11]

All claims alleged in the *Lambert* and *Englehart* Actions are direct, not derivative, because they involve alleged injuries to the shareholders themselves, not the Company.

## II. THE PSLRA GOVERNS BOTH THE *LAMBERT* AND *ENGLEHART* ACTIONS

The PSLRA expressly provides that the statute "shall apply in each private action arising under this title that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Both the *Lambert* and *Englehart* Actions are class actions arising under §14(e) and §20(a) of the Securities Exchange Act of 1934. *See Lambert* Compl., ¶¶11,

---

[11] Section 20(a) imposes liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of" the Exchange Act. 15 U.S.C. §78t(a). As liability under §20(a) in the *Lambert* and *Englehart* Actions is premised upon an underlying violation of §14(e) of the Exchange Act, the claims for violation of §20(a) are also direct.

- 10 -

37-43, 89-101; *Englehart* Compl., ¶¶1, 12, 33-42, 100-117.  Thus, it is axiomatic that the PSLRA governs both the *Lambert* and *Englehart* Actions.

One of the PSLRA's components is the "early notice to class members."  15 U.S.C. §78u-4(a)(3)(A).  This provision mandates that "[n]ot later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class" of the "pendency of the action, the claims asserted therein, and the purported class period" and "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  *Id.*  Neither plaintiff nor counsel complied with this requirement in the *Lambert* Action.

The early notice requirement is part of the package of reforms enacted by Congress in 1995 in response to perceived abuses in securities litigation "through which a race to the courthouse often resulted in non-representative plaintiffs and their attorneys controlling the litigation and reaping disproportionate fee awards at the end of the case."  *CalPERS v. Chubb Corp.*, 127 F. Supp. 2d 572, 575 (D.N.J. 2001).  The PSLRA's lead plaintiff provisions were designed to alter this practice by requiring courts to appoint the "most adequate plaintiff" that complies with the PSLRA as lead plaintiff rather than "'selecting as the governing plaintiff in a securities class action the first plaintiff to reach the courthouse door.'"  *Id.*  Indeed, the "purpose behind the PSLRA is to prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff[']s counsel.'"  *In re Motorola Sec. Litig.*, No. 03 C 287, 2003 U.S. Dist. LEXIS 12651, at *8-*9 (N.D. Ill. July 16, 2003) (Pallmeyer, J.) (quoting H.R. Rep. No. 104-369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731).

- 11 -

Thus, Congress requires that, in *every* class action securities case, "[w]ithin 20 days of filing a complaint, the plaintiff ***must*** publish in a widely circulated business publication notice of the complaint." S. Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690; 15 U.S.C. §78u-4(a)(3)(A). Courts have long recognized that the "fundamental purpose of the §78u-4(a)(3)(A)(i) notice requirement is to provide class members with sufficient information about the suit and inform class members of their right to move to be appointed lead plaintiff so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status." *Chubb*, 127 F. Supp. 2d at 576.[12] "The timetable is significant for it provides an interested class member a sixty day period after the notice of the filing of the complaint to review the complaint and to determine whether or not to seek appointment as a class representative." *King v. Livent, Inc.*, 36 F. Supp. 2d 187, 189-90 (S.D.N.Y. 1999). In short, these "provisions are intended to protect the interests of a plaintiff class of investors by inviting competition to ensure that the best available class representative takes the lead." *Cent. Cmty. Church of God*, 2005 U.S. Dist. LEXIS 8679, at *10. The Class' ability to decide whether to actively participate in and direct this case – not to mention the Court's ability to implement Congress' mandate – was thwarted by the decision of Lambert's counsel to circumvent the PSLRA's early notice procedure here.

---

[12] The basis for the PSLRA's lead plaintiff provision was an article, Elliott J. Weiss and John S. Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 Yale L.J. 2053 (June 1995). *See* S. Rep. No. 104-98, at 11 n.32. In their article, Weiss and Beckerman noted that "[l]ack of notice that a class action is pending and of information about the progress of a pending case makes it difficult for class members to determine whether intervention is necessary to protect their interests." 104 Yale L.J. at 2103.

The *Lambert* Complaint was filed on November 5, 2013. *See Lambert* Dkt. No. 1. Pursuant to the PSLRA, Lambert or his counsel was required to publish notice 20 days later, by no later than November 25, 2013. 15 U.S.C. §78u-4(a)(3)(A). ***No notice was published.***[13]

Plaintiff Lambert and his counsel cannot credibly feign ignorance of the PSLRA's requirements. Plaintiff Lambert complied with one of the PSLRA's other provisions by filing a Certification of Proposed Lead Plaintiff with the *Lambert* Complaint. *See Lambert* Dkt. No. 1-1; 15 U.S.C. §78u-4(a)(2) ("Certification filed with complaint."). Plaintiff Lambert, through his counsel, also filed an Emergency Motion to Partially Lift the PSLRA Discovery Stay in Order to Conduct Limited Expedited Discovery. *Lambert* Dkt. No. 4.

Nor is Plaintiff Lambert's counsel ignorant of the PSLRA early notice provision. On November 18, 2013, Lambert's Counsel, Mr. Monteverde, filed a securities fraud class action complaint governed by the PSLRA in the District of Arizona alleging violations of §§14(a) and 20(a) of the Exchange Act and breaches of state law fiduciary duty in connection with the proposed acquisition of Cole Real Estate Investments, Inc. by American Realty Capital Properties, Inc. and Clark Acquisition, LLC and on November 20, 2013, Mr. Monteverde's law firm issued the required PSLRA notice for the litigation with Mr. Monteverde identified as the contact on the press release. Exs. G-H.

In fact, Mr. Monteverde's law firm published at least 74 wire service announcements concerning at least 47 separate actions during 2013 that specifically mentioned the PSLRA's lead plaintiff provisions, at least two dozen of which were issued between November 5 (when the *Lambert* complaint was filed) and November 25 (when the early notice was due). *See* Ex. I. Also of note, on November 25, 2013, the deadline to issue the PSLRA required notice in the *Lambert*

---

[13]     By contrast, counsel for the *Englehart* Plaintiffs caused notice to be published on March 20, 2014, the same day the *Englehart* Action was filed. *See* Ex. F.

933645_1

Action, Lambert's counsel published a press release announcing an investigation into potential breaches of fiduciary duties by the board of directors of a different corporation. *See* Ex. J. Counsel's decision to not comply with the PSLRA's early notice provision in this case was neither ignorance nor oversight.

This is also not the first time Plaintiff Lambert's counsel has ignored the PSLRA's early notice provision in a class action securities case. In *Todic v. Star Scientific Inc.*, No. 1:13cv1994 (D. Del.), Mr. Monteverde, lead counsel for Plaintiff Lambert, filed a class action complaint alleging §14(a) violations as well as breaches of fiduciary duty on December 4, 2013, yet no PSLRA early notice to investors was published. *See* Ex. K. Likewise, in *Masters v. Avanir Pharms. Inc.*, No. 8:14-cv-0053 (C.D. Cal.), Mr. Monteverde filed a class action complaint alleging §14(a) violations as well as breaches of fiduciary duty on January 14, 2014; again, no PSLRA early notice to investors was published. *See* Ex. L.[14]

Because Plaintiff Lambert (and counsel) failed to issue the mandatory notice, the time period to seek appointment as lead plaintiff was never triggered, the proposed Class was deprived of the ability to evaluate the litigation and determine whether to seek appointment as lead plaintiff, motions for appointment as lead plaintiff were not filed, and the Court was precluded from appointing a lead plaintiff and lead counsel pursuant to the PSLRA. Instead, Plaintiff Lambert and his counsel operated outside the purview of the PSLRA as self-anointed lead plaintiff and lead counsel. Of note, on November 25, 2013, the deadline to publish notice under the PSLRA, was also the date on which the parties informed the Court via letter that they had reached a settlement in principle of the *Lambert* Action. *See Lambert* Dkt. No. 54. This is troubling as plaintiff Lambert and his counsel

---

[14]      While notice was not issued pursuant to 15 U.S.C. §78u-4(a)(3)(A) in *Masters*, a press release containing Mr. Monteverde's name in the lead paragraph was issued on December 30, 2013 announcing that "Faruqi & Faruqi, LLP Launches an Investigation Against Avanir Pharmaceuticals, Inc. For Potential Breaches of Fiduciary Duties By Its Board of Directors." *See* Ex. M.

lack authority to litigate, much less settle, this case on behalf of the putative Class because they have not been appointed by the Court as lead plaintiff and lead counsel. *In re Select Comfort Corp. Secs. Litig.*, No. 99-884 (DSD/JMM), 2000 U.S. Dist. LEXIS 22697, at *41-*42 (D. Minn. Jan. 27, 2000) (finding that plaintiff who failed to comply with the PSLRA's notice requirements "was not appointed as a Lead Plaintiff in this matter, and is therefore without standing to assert any claims on behalf of the Class").

In *Christman v. Brauvin Realty Advisors, Inc.*, 191 F.R.D. 142 (N.D. Ill. 1999), Judge Gottschall recognized the impropriety of a plaintiff "negotiating a class settlement at a time when [it is] not representing the class" as the court-appointed lead plaintiff pursuant to the PSLRA. *Id.* at 152. In fact, the court duly noted that in such a circumstances, "there would be substantial questions about the propriety of the settlement negotiations" and "[i]t is questionable if [the non-lead plaintiff was] negotiating from a position of strength." *Id.*; *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1125 (7th Cir. 1979) (noting that "unauthorized settlement negotiations create the possibility of negotiation from a position of weakness by the attorney who purports to represent the class"). This very concern was one of the factors motivating Congress when it enacted the PSLRA: "lawyers can decide when to sue and when to settle, based largely on their own financial interests, not the interests of their purported clients." S. Rep. No. 104-98, at 5 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 684; *Plumbers & Pipefitters Local 562 Pension Fund*, 256 F.R.D. at 625 n.6 (recognizing that "the PSLRA seeks to discourage the 'race to the courthouse,' and its notice provisions are part of the reforms designed to remove advantages gained by litigants who file the first lawsuit").

There is no question that the PSLRA applies to the *Lambert* and *Englehart* Actions. There is also no question that Plaintiff Lambert and his counsel failed to comply with the PSLRA's early notice provision, and then compromised the Class' claims on or before the notice deadline expired.

- 15 -

As one court aptly stated, "the appointment of the most adequate plaintiff is meant to empower investors by placing behind the driver's seat on the plaintiffs' side an experienced investor or capable investors who have substantial and genuine interests in the outcome of the litigation." *Burke v. Ruttenburg*, 102 F. Supp. 2d 1280, 1307 (N.D. Ala. 2000). That process was undermined by counsel's failure to comply with the PSLRA in this case, resulting in something far worse than a mere race to the courthouse: a 19-day sprint to avoid the PSLRA.

As Judge Marovich recognized, the PSLRA's provisions "'were designed to prevent races to the courthouse by removing any presumption in favor of the first plaintiff (and law firm) to file a securities fraud claim.'" *Topaz Realty v. Northfield Labs., Inc.*, No. 06 C 1493, 2006 U.S. Dist. LEXIS 77613, at *7-*8 (N.D. Ill. June 19, 2006). These provisions "'were also designed to avoid situations in which a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him.'" *Id.* Yet, that is precisely what transpired here when Plaintiff Lambert's counsel issued a press release on October 21, 2013 "[a]nnounc[ing] the Investigation of the Tellabs Inc. (TLAB) Board of Directors Over the Proposed Sale of the Company." *See* Ex. N. Plaintiff Lambert's counsel's tactic of issuing a press release to recruit plaintiffs, followed by failure to comply with the PSLRA early notice requirement and settlement of the Class' claims, is undoubtedly ***not*** what Congress intended.

The PSLRA applies to these cases. Plaintiff's and counsel's failure to comply with the PSLRA early notice requirements makes both inadequate (and ineligible) to serve as lead plaintiff/lead counsel.

## III. THE PROPOSED SETTLEMENT IS A NON-OPT OUT SETTLEMENT THAT WILL RELEASE THE CLAIMS OF THE CLASS AND THE *ENGLEHART* PLAINTIFFS

Beyond lacking authority to litigate much less settle the case, the Settlement Agreement further overreaches by attempting to release claims of the Class and the *Englehart* Plaintiffs against

- 16 -

Tellabs, its former directors, and Marlin, in connection with the Acquisition, and seeks to prohibit Class Members from opting out of the Class. *Lambert* Dkt. No. 67.

The Settlement Agreement defines "Released Claims" as including "any and all manner of claims . . . of any kind . . . that Plaintiff or any or all other members of the Settlement Class ever had, now have, or may have . . . against any of the Released Parties [which includes the defendants and their affiliates]." *Id.* at 7. Released Claims also comprise eleven different categories of claims loosely related to the Acquisition, including "any and all claims which are based upon . . . (i) the Transaction . . . , (ii) the Merger Agreement . . . , (iii) any and all occurrences or matters mentioned or referred to in the Schedule 14D-9 . . . , (iv) the process conducted . . . , (v) negotiations in connection with the Merger Agreement . . . , (vi) the consideration to be received [sic] by Class Members . . . , (vii) the payment of a termination fee . . . , (viii) the Schedule 14D-9 . . . , (ix) the [Defendants'] fiduciary obligations . . . , (x) claims for fee, expenses or costs . . . , or (xi) any of the matters referred to or alleged in [Plaintiff Lambert's complaint] . . . ." *Id.* at 7-8. The latitudinous definition of Released Claims clearly covers the *Englehart* Plaintiffs' pending claims against Defendants.

If the Court approves the Settlement, "the Released Claims shall be dismissed with prejudice, on the merits and without costs." *Id.* at 11. Moreover, "[a]s of the Effective Date, Plaintiff and all Class Members . . . shall fully, finally and forever release, settle and discharge the [Defendants and, essentially, their successors, predecessors, and representatives] from and with respect to the Released Claims . . . ." *Id.* Given their historical ownership of Tellabs common stock, the *Englehart* Plaintiffs are all members of the purported Class. *Id.* at 6.

The Settlement Agreement also reflects the parties' intent to certify the Class as a mandatory, non-opt-out class. *Id.* at 6 ("Plaintiff seeks, for the purposes of the Settlement only, conditional certification as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1) and

933645_1

23(b)(2)."); *id.* at 11 ("The Parties agree to the certification of the Settlement Class and certification of Kerry Lambert as class representative ('Class Representative') for purposes of this Settlement only pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1) and 23(b)(2)."). Class actions certified pursuant to Rule 23(b)(1) or (b)(2) are certified as mandatory, non-opt-out class actions. *Neil v. Zell*, 275 F.R.D. 256, 260, 267 (N.D. Ill. 2011) (explaining that Rule 23(b)(1) and (b)(2) provides for the certification of non-opt-out class actions). Accordingly, under the terms of the Settlement Agreement, the Class' claims (including those of the *Englehart* Plaintiffs) will be released.[15]

The *Englehart* Action seeks monetary damages for the Class in connection with Defendants' conduct regarding the Acquisition. The *Englehart* Complaint alleges that the $2.45 Acquisition Price was inadequate (*Englehart* Compl., ¶¶71-78) and requests monetary damages or rescissiory damages. *Englehart* Compl. at 38. A non-opt out class will prevent Class members from opting out of the settlement to pursue claims for damages.

Under the circumstances, the Court should not grant the release requested. Plaintiff Lambert settled the case by clandestinely usurping the roles of plaintiff and lead counsel without judicial consent or knowledge, agreed to release all claims, including damages claims, with no monetary payment to the Class, and agreed to a settlement structure with no way for Class members to opt out and pursue their own damages claims. *See also Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 896 (7th Cir. 1999) (explaining that the problem is that Rule 23(b)(2) provides for binding litigation on

---

[15] The *Englehart* Plaintiffs allege in their Complaint that Tellabs' Board members breached their fiduciary duties with respect to the Acquisition by agreeing to inadequate consideration pursuant to a flawed sales process that was tainted with self-interest. *Englehart* Compl., ¶¶1-11, 54-99. The *Englehart* Plaintiffs also allege violations of §§14(e) and 20(a) of the Exchange Act and further breaches of the Board's fiduciary duties based on material misrepresentations in and omissions from the 14D-9 in which the Board recommended Tellabs' stockholders to tender their shares. *Id.* at ¶¶1, 100-138. The *Englehart* Plaintiffs seek, among other things, monetary damages, rescission or rescissory damages, and declaratory relief against Defendants. *Id.* at 38.

all class members without guarantees of personal notice and the opportunity to opt out of the suit).  If the Court is inclined to grant any release at all, it should be expressly limited to the purported disclosures made pursuant to the *Lambert* Action, but should be no broader.  It should not release any disclosure claims beyond those already made because the *Englehart* Complaint contains viable §14(e) claims, and should certainly not include any release for damages claims at all, which are the crux of Plaintiff Englehart's post-merger claims.

### CONCLUSION

For all of the foregoing reasons the *Englehart* Plaintiffs respectfully request that the Court grant their Motion, reassign *Englehart* to this Court, consolidate *Lambert* and *Englehart*, and stay all proceedings in the consolidated action pending the Court's appointment of Lead Plaintiff and Lead Counsel.

DATED:  April 18, 2014

Respectfully Submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
RANDALL J. BARON
A. RICK ATWOOD, JR.
DAVID T. WISSBROECKER
EDWARD M. GERGOSIAN
DANIELLE S. MYERS

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

- 19 -

933645_1

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)

GREENE AND LETTS
MARTIN P. GREENE
ZACHARY BUDDEN
55 Monroe Street, Suite 600
Chicago, IL  60603
Telephone:  312/346-1100
312/346-4571 (fax)

WOLF POPPER LLP
ROBERT M. KORNREICH
CHET B. WALDMAN
JOSHUA W. RUTHIZER
NATALIE M. MACKIEL
845 Third Avenue
New York, NY  10022
Telephone:  212/759-4600
212/486-2093 (fax)

JOHNSON & WEAVER, LLP
W. SCOTT HOLLEMAN
99 Madison Avenue, 5th Floor
New York, NY  10016
Telephone:  212/802-1486
212/602-1592 (fax)

Attorneys for Plaintiffs Robert Englehart, Jorge
Rodriguez, and The Judith Kane-Rodriguez 2012
Family Trust

LASKY & RIFKIND, LTD.
NORMAN RIFKIND
AMELIA S. NEWTON
351 West Hubbard Street, Suite 401
Chicago, IL  60654
Telephone:  312/634-0057
312/634-0059 (fax)

Local Counsel for Plaintiffs

- 20 -

933645_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 18, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 18, 2014.

s/ Danielle S. Myers
DANIELLE S. MYERS

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

E-mail: danim@rgrdlaw.com

# Mailing Information for a Case  1:13-cv-07945 Lambert v. Tellabs, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Kathleen Louise Carlson**
  kathleen.carlson@sidley.com,efilingnotice@sidley.com

- **Katrina Carroll**
  kcarroll@litedepalma.com,alee@litedepalma.com

- **James Wallace Ducayet**
  jducayet@sidley.com,efilingnotice@sidley.com

- **David Michael Friebus**
  dfriebus@bakerlaw.com,mherrera@bakerlaw.com

- **David F. Graham**
  dgraham@sidley.com,efilingnotice@sidley.com

- **William H Gussman , Jr**
  bill.gussman@srz.com,courtfilings@srz.com,evan.melluzzo@srz.com

- **Frank Joseph Lasalle**
  frank.lasalle@srz.com

- **Juan E Monteverde**
  jmonteverde@faruqilaw.com,ecf@faruqilaw.com

- **Danielle S. Myers**
  dmyers@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Amelia Susan Newton**
  newton@laskyrifkind.com

- **Rachel B. Niewoehner**
  rniewoehner@sidley.com,efilingnotice@sidley.com

- **Norman Rifkind**
  rifkind@laskyrifkind.com

- **Michael E Swartz**
  michael.swartz@srz.com,courtfilings@srz.com,evan.melluzzo@srz.com

- **John Michael Touhy**
  jtouhy@bakerlaw.com

- **Melanie Elizabeth Walker**
  mewalker@sidley.com,lholt@sidley.com,efilingnotice@sidley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`