EXHIBIT G

Richard G. Himelrick, Arizona Bar #004738
J. James Christian, Arizona Bar #023614
**TIFFANY & BOSCO, P.A.**
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016
Tel: (602) 255-6000
Fax: (602) 255-0103
rgh@tblaw.com; jjc@tblaw.com

Juan E. Monteverde
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
E-mail: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Sobon, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>   v.<br><br>Cole Real Estate Investments, Inc.; Christopher H. Cole; Thomas A. Andruskevich; Marc T. Nemer; Scott P. Sealy, Sr.; Leonard W. Wood; American Realty Capital Properties, Inc.; and Clark Acquisition, LLC,<br><br>      Defendants. | Case No:<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Robert Sobon ("Plaintiff"), by his attorneys, brings the following class action on behalf of himself and all stockholders of Cole Real Estate Investments, Inc. ("Cole Real Estate" or the "Company"), other than Defendants (defined below) and their affiliates, against Cole Real Estate, certain officers and members of Cole Real Estate's board of directors (the "Board"), and American Realty Capital Properties, Inc. and Clark Acquisition, LLC (collectively, "ARCP") for breaching their fiduciary duties (or aiding and abetting thereof) in connection with ARCP's proposed acquisition of the remaining interest of Cole Real Estate. Plaintiff also brings this action for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The allegations of the Complaint are based on information and belief, including investigation of counsel and review of publicly available information, except for Plaintiff's own acts, which are alleged on personal knowledge.

## SUMMARY OF THE ACTION

1. On October 23, 2013, Cole Real Estate and ARCP announced a definitive Agreement and Plan of Merger (the "Merger Agreement") under which ARCP will acquire all outstanding shares of stock of Cole Real Estate (the "Proposed Transaction"). Pursuant to the Proposed Transaction, Cole Real Estate's stockholders have the option of receiving 1.0929 shares of ARCP common stock or $13.82 in cash for each share of Cole Real Estate common stock they currently own, subject to proration if elections for cash exceed 20% of the Company's outstanding shares. The total value of the Proposed Transaction is approximately $11.2 billion and the deal is expected to close in the first half of 2014.

2. As described below, both the value to Cole Real Estate stockholders contemplated in the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and all other public stockholders of the Company.

3. Specifically, on March 6, 2013, Cole Credit Property Trust III, Inc. ("CCPT III") (the predecessor to Cole Real Estate)[1] announced that it had executed a definitive merger agreement to acquire Cole Holdings Corp. ("Cole Holdings"), a real estate investment management firm with more than $12 billion under management (the "Cole Holdings Transaction"). Cole Real Estate also informed investors on March 6, 2013 that it planned to seek a listing on the New York Stock Exchange ("NYSE") upon completion of the Cole Holdings Transaction. As part of the Cole Holdings Transaction, Defendants Christopher H. Cole ("C. Cole") and Marc T. Nemer ("Nemer") secured for themselves *over $340 million* in consideration, with *over $160 million* of which C. Cole received up front.

4. On March 20, 2013 and prior to the closing of the Cole Holdings Transaction, ARCP filed an open letter with the Securities and Exchange Commission ("SEC") disclosing an unsolicited bid to acquire Cole Real Estate while simultaneously arguing that the *Cole Holdings Transaction was not in the best interest of Cole Real Estate stockholders*.

5. On March 21, 2013, Cole Real Estate rejected ARCP's bid for the Company and reiterated that the Cole Holdings Transaction was in the best interests of the Company's stockholders.

6. On March 27, 2013, ARCP increased its unsolicited bid for Cole Real Estate.

7. On April 5, 2013, Cole Real Estate rejected ARCP's increased bid and announced the completion of the Cole Holdings Transaction despite increasing public criticism. For example, *Seeking Alpha* reported that "[Cole Real Estate]'s rejection of ARCP's offer is very suspect, and it raises the question as to whether or not the decision

---

[1] To maintain consistency, Plaintiff will use "Cole Real Estate" to describe both CCPT III and Cole Real Estate.

to reject the [ARCP] offer was done with the best interests of the company's shareholders in mind."

8.     ARCP then withdraw its unsolicited bid on April 7, 2013.

9.     In June 2013, Cole Real Estate followed through with listing its common stock on the NYSE. In going public, the Company touted its ability to provide liquidity to Cole Real Estate stockholders.

10.    Then, ***just four months later***, the Company and ARCP announced the Merger Agreement despite the Board's concerns as recently as April 2013 that a business combination with ARCP was not in the best interest of Cole Real Estate stockholders.

11.    Shockingly, C. Cole and Nemer were allowed to spearhead the business combination process with ARCP that led to the Proposed Transaction despite the clear conflict of interest resulting from their (1) potential golden parachutes from a change-in-control transaction and (2) the incentive and contingent consideration from the Cole Holdings Transaction. For example, C. Cole and Nemer now stand to receive a whopping ***$224,106,600 and $62,433,777***, respectively, once the Proposed Transaction is consummated. The Proposed Transaction is thus a transparent attempt by C. Cole and Nemer to immediately cash out the remainder of the consideration owed to them pursuant to the Cole Holdings Transaction at the expense of Cole Real Estate stockholders.

12.    Telling, the merger consideration is unfair and inadequate in light of Cole Real Estate's financial performance. In fact, an analyst at Ladenburg, Thalman & Co., Inc. set a price target of $15 for the Company, well above the deal consideration of $14.59 (based on ARCP's closing price per share on October 22, 2013) as of the time the Merger Agreement was announced.

13.    While Defendants intimate in the Registration Statement (defined below) that any conflicts of interests were cured by the purportedly independent special committee, the opposite is true. In fact, the three "independent" directors are also conflicted because they negotiated for themselves two positions on the board of the

merged entity.  As a result, because the Board is not independent, Defendants' conduct is subject to a higher standard of review (*i.e.*, whether the Proposed Transaction was the result of a fair process resulting in a fair price) and is not protected by the business judgment rule.

14.    To that end, each of the Defendants has breached and/or aided the other defendants' breaches of their fiduciary duties of loyalty, due care, good faith, and candor.

15.    The Individual Defendants have further exacerbated their breaches of fiduciary duty by agreeing to lock up the Proposed Transaction with deal protection devices that preclude other bidders from making successful competing offers for the Company.  Specifically, the Board agreed to: (i) a no-solicitation provision that requires the Company to terminate any ongoing discussions with other potential acquirers and from pursuing any alternative to the Proposed Transaction; (ii) an "information rights" provision that requires Cole Real Estate to disclose to ARCP the identity of any competing bidder; (iii) a "matching rights" provision that provides ARCP with three (3) business days to match any competing proposal in the unlikely event that one emerges; and (iv) a provision that requires the Company to pay ARCP a termination fee of $100 million if the Proposed Transaction is not consummated.  These provisions conjunctively and improperly restrain the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives to the Proposed Transaction.

16.    On November 5, 2013, Cole Real Estate and ARCP filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC that further misrepresents and fails to disclose material information necessary for the Company's stockholders to make an informed decision as to whether to vote their shares in favor of the Proposed Transaction.  Specifically, the Registration Statement fails to disclose, in violation of both the Board's duty of candor under state law and Section 14(a) and 20(a) of the Exchange Act, (i) certain management projection metrics relied upon by Goldman, Sachs & Co ("Goldman Sachs") and Barclays Capital Inc. ("Barclays"), the financial

advisers to Cole Real Estate and ARCP on the Proposed Transaction, to perform and render their fairness opinions; (ii) certain information regarding the analyses of Goldman Sachs and Barclays in rendering their fairness opinions; and (iii) several important details regarding the process leading up to the signing of the Merger Agreement.

17. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (defined below) from taking any steps to consummate the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, due care, good faith, and candor.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa because Plaintiff's claims arise under Sections 14(a) and 20(a) of the Exchange Act. The Court has supplemental jurisdiction over any claims arising under the state law pursuant to 28 U.S.C. § 1367.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Cole Real Estate has its primary place of business in this District.

20. In connection with the acts alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

21. Plaintiff is, and has been at all relevant times, the owner of Cole Real Estate common stock and has held such shares since prior to the wrongs complained of herein.

22. Cole Real Estate is a Maryland corporation with its principal executive offices located at 2325 East Camelback Road, Suite 1100, Phoenix, Arizona 85016. Cole Real Estate, formerly known as Cole Credit Property Trust III, Inc., was originally formed on January 22, 2008 and has elected to be taxed, and currently qualifies, as a real

estate investment trust ("REIT") for federal income tax purposes. Cole Real Estate operates through two business segments, Real Estate Investment ("REI") and Private Capital Management ("PCM"). The Company's common stock trades on the NYSE under the ticker symbol "COLE."

23. Defendant C. Cole has served as the Chairman of the Board since April 2013 and previously served as Cole Real Estate's Chief Executive Officer ("CEO") from January 2008 until April 2013.

24. Defendant Nemer has served as a director on the Board since May 2010 and is currently the CEO and President of the Company since April 2013.

25. Defendant Thomas A. Andruskevich ("Andruskevich") has served as a director of the Board since October 2008.

26. Defendant Scott P. Sealy, Sr. ("Sealy") has served as a director of the Board since 2008.

27. Defendant Leonard W. Wood ("Wood") has served as a director of the Board since 2008.

28. Defendants C. Cole, Nemer, Andruskevich, Sealy, and Wood are collectively referred to hereinafter as the "Individual Defendants."

29. Defendant ARCP is a Maryland corporation with its principal executive offices located at 405 Park Avenue, 15th Floor, New York, New York 10022. ARCP is also a REIT and it acquires, owns, and operates single-tenant, freestanding commercial real estate properties with a combination of long-term and medium-term leases. ARCP common shares trade on the NASDAQ Capital Market under the ticker symbol "ARCP."

30. Clark Acquisition, LLC ("Merger Sub") is a Delaware limited liability company and is a direct, wholly-owned subsidiary of ARCP. Upon completion of the Proposed Transaction, Cole Real Estate will merge with and into Merger Sub, with Cole Real Estate ceasing to exist as a separate corporate entity.

31.     The Individual Defendants, Cole Real Estate, ARCP, and Merger Sub are referred to as "Defendants."

### THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

32.     By reason of the Individual Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public stockholders of Cole Real Estate and owe Plaintiff and the other members of the Class the duties of loyalty, due care, good faith, and candor.

33.     By virtue of their positions as directors and/or officers of Cole Real Estate, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Cole Real Estate to engage in the practices complained of herein.

34.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's stockholders, and with due care.  To diligently comply with these duties, the directors of a corporation may not take any action that:

a.     Adversely affects the value provided to the corporation's stockholders;

b.     Contractually prohibits them from complying with or carrying out their fiduciary duties;

c.     Discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

d.     Will otherwise adversely affect their duty to search for and secure the best value reasonably available under the circumstances for the corporation's stockholders.

35.     Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other public stockholders of Cole Real Estate, including their duties of loyalty, due care, good faith, and candor.

**CLASS ACTION ALLEGATIONS**

36.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of Cole Real Estate common stock who are being and will be harmed by Defendants' actions described below (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

37.     This action is properly maintainable as a class action because:

        a.     The Class is so numerous that joinder of all members is impracticable.  As of October 31, 2013, Cole Real Estate had 469,364,805 shares of common stock outstanding.  The holders of these shares are believed to be geographically dispersed through the United States;

        b.     There are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, *inter alia*, the following:

        1.     Whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, due care, good faith, and candor with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

        2.     Whether the Individual Defendants have breached their fiduciary duty to secure and obtain the best price reasonable under the circumstances for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

        3.     Whether the Individual Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction,

4.      Whether ARCP aided and abetted the Individual Defendants' breaches of fiduciary duty;

5.      Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

6.      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transaction complained of herein consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the party opposing the Class; and

f.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**SUBSTANTIVE ALLEGATIONS**

**A.      Background**

38.      Cole Real Estate, through its REI segment, acquires, and operates a diverse portfolio of core commercial real estate investments primarily consisting of necessity retail properties located throughout the United States.  As of September 30, 2013, Cole Real Estate owned 1,026 properties, comprising 44.8 million rentable square feet of

single and multi-tenant retail and commercial space located in 48 states, which include properties owned through consolidated joint ventures. Also, as of September 30, 2013, the rentable space at these properties was 99% leased, with a weighted average remaining lease term of 11.9 years and the Company also owned 21 commercial mortgage-backed securities, three notes receivable and, through unconsolidated joint ventures, had interests in 12 properties comprising 2.3 million rentable square feet of commercial and retail space.

39. Cole Real Estate's PCM segment is responsible for managing the day-to-day affairs of certain investment programs, which primarily includes five publicly registered, non-traded REITs: Cole Credit Property Trust, Inc., Cole Credit Property Trust IV, Inc., Cole Corporate Income Trust, Inc., Cole Office & Industrial REIT, Inc. and Cole Real Estate Income Strategy. Certain of these Cole Real Estate-sponsored REITs have investment strategies substantially similar to those of the Company and ARCP. The PCM segment is further responsible for the following:

(i) identifying and making acquisitions and investments on behalf of the managed REITs, and recommending to each of the respective board of directors of the managed REITs an approach for providing investors with liquidity;

(ii) distributing the shares of common stock for certain managed REITs and advising them regarding offerings, managing relationships with participating broker-dealers, and financial advisors, and providing assistance in connection with compliance matters relating to the offerings;

(iii) receiving compensation and reimbursement for services relating to offerings by the managed REITs and investing, managing, financing, and disposing the respective assets, as applicable; and

(iv) developing new REIT offerings, including obtaining regulatory approvals from the SEC, Financial Industry Regulatory Authority, and various jurisdictions for such offerings.

**B.    The Cole Holdings Transaction**

40.    On March 5, 2013, Cole Real Estate executed a definitive merger agreement to acquire Cole Holdings via CRE Investments, LLC, a wholly-owned subsidiary of Cole Real Estate created to consummate the Cole Holdings Transaction. The press release announcing the transaction stated, in relevant part, the following:

> PHOENIX, AZ—March 6, 2013—[Cole Real Estate] announced today that, based upon the unanimous recommendation of a special committee of its board of directors, composed exclusively of independent directors, it has executed a definitive merger agreement, pursuant to which [Cole Real Estate] will acquire Cole Holdings Corporation ("Cole Holdings"), a full-scale real estate investment management firm that currently manages over $12 billion of real estate assets for over 160,000 individual investors represented by more than 13,000 financial advisors. . . .[U]pon completion of the transaction [Cole Real Estate] . . . will pursue a listing on the New York Stock Exchange ("NYSE").

> . . . . The acquisition of Cole Holdings provides [Cole Real Estate] with both a proven management team and a full-scale real estate investment management platform with over 350 employees, as well as a portfolio of more than 2,000 properties with over 76 million square feet of corporate real estate under management.  In addition, the acquisition better positions [Cole Real Estate] to pursue a listing on the NYSE.  The transaction is expected to be immediately accretive to [Cole Real Estate]'s funds from operations ("FFO") and to support an increase in the company's annualized dividend rate to $0.70 per share upon closing.  Upon a listing on the NYSE, Cole Real Estate Investments will be well positioned to achieve inclusion in a variety of indices over time, such as the Russell 1000, Russell Midcap and MSCI U.S. REIT Indices.

> As consideration for the acquisition of a premier real estate investment manager, [Cole Real Estate] will make upfront payments of $20 million in cash, subject to adjustment, and 10,711,225 shares of [Cole Real Estate] common stock, plus the following contingent amounts: (i) 2,142,245 shares of [Cole Real Estate] common stock after a listing on the NYSE; and (ii) additional shares of [Cole Real Estate] common stock potentially payable in 2017 as an "earn-out" contingent upon the acquired business' demonstrated financial success based on two criteria, the acquired business generating EBITDA above a minimum threshold and [Cole Real Estate]'s stock performance relative to its peer group.  The upfront stock consideration and the stock consideration upon listing are subject to a three-year lockup with approximately one-third of the shares paid at closing released each year.  The stock consideration payable in 2017 is subject to a lock-up until December 31, 2017.  Additional shares of [Cole Real Estate] common stock may be payable based on [Cole Real Estate]'s market value over the 30-day period beginning six months after [Cole Real Estate]'s listing, pursuant to the current advisory agreement, but Cole Holdings has agreed, as part of this transaction, to a 25% reduction from the amount payable under the current advisory agreement, if any.  The transaction is expected to close in the second quarter of 2013, upon the satisfaction of customary closing conditions and applicable regulatory approvals.

41.     The Board and Cole Real Estate did not disclose any fairness opinions in support of the Cole Holdings Transaction even though the Company said it had two (one from Goldman Sachs and one from Lazard Fréres & Co. LLC) and provided no meaningful information (*i.e.*, financial statements) on the transaction. **Indeed, the Cole Holdings Transaction was not subject to a stockholder vote**. The Board and Cole Real Estate also did not disclose that ARCP had expressed an interest in acquiring the Company.

42.     C. Cole was the sole stockholder of Cole Holdings and **thereby received all the material benefit from the Cole Holdings Transaction.** Nemer similarly stood on both sides of the Cole Holdings Transaction because at the time he was a director of Cole Real Estate and was also the President and CEO of Cole Holdings.

43.     Specifically, C. Cole secured for himself the following material benefits not provided to other Cole Real Estate stockholders through the Cole Holdings Transaction:

a)     Closing consideration: consisting of 10,711,225 shares of Cole Real Estate common stock and a cash payment of $20 million;

b)     Contingent consideration: consisting of an "Earn-Out" performance-based payment that is to be paid in Cole Real Estate stock and is calculated using a specific formulation;

c)     Listing consideration: consisting of 2,142,245 Cole Real Estate shares once Cole Real Estate listed its shares on the NYSE, including any and all dividends owed or received; and

d)     Incentive consideration: consisting of a share grant of Cole Real Estate common stock pursuant to a set formula that is driven by the trading price of Cole Real Estate shares in excess of a subordinated return to the Cole Real Estate stockholders. The incentive consideration was scheduled to be triggered over the third-day period beginning six months after Cole Real Estate's listing.

44.     C. Cole and Nemer also secured for themselves employment agreements with Cole Real Estate providing for the following:

a)      Annual base salaries of $750,000 and $625,000, respectively, "subject to increase (but not decrease)";

b)      Annual incentive bonuses of 150% of annual base salary at target and 300% of annual base salary at maximum;

c)      Starting in the 2015 fiscal year, an annual equity award grant to each;

d)      Health, fringe, and other benefits for each;

e)      Indemnification to the fullest extent applicable to directors and officers of the Company and coverage under a directors' and officers' liability insurance policy; and

f)      Long-term incentive and retention awards in respect to Cole Real Estate's shares, with an accounting expense value equal to $7.5 million for C. Cole and $6.0 million for Nemer.

## C.     ARCP's Unsolicited Bid for the Company

45.     On March 19, 2013 (and only two weeks after the announcement of the Cole Holdings Transaction), ARCP sent an unsolicited bid for the Company (the "ARCP March 19, 2013 Offer Letter"). The letter, as publicly filed with the SEC on March 20, 2013, stated, in relevant part, the following:

> As you are aware, prior to the announcement of [Cole Real Estate]'s proposed acquisition of Cole Holdings Corporation ("Cole Holdings"), we communicated to your financial advisor our interest in a potential acquisition of [Cole Real Estate]. *We were surprised to not have received any response.*

> We believe our offer for [Cole Real Estate], outlined below (the "Proposal"), represents a strength-for-strength merger of complimentary portfolios that would provide [Cole Real Estate] stockholders with certainty of value while benefiting both [Cole Real Estate] and ARCP stockholders through the creation of the largest, highest quality publicly traded REIT in the net lease sector.

*ARCP offers to purchase [Cole Real Estate] at a price of not less than $5.7 billion of equity value or $12.00 per share, representing a minimum 20% premium above the original offering price.*

We believe our Proposal (outlined below) will provide a higher level of consideration delivered sooner and with greater certainty to [Cole Real Estate] stockholders as compared to the [Cole Holdings Transaction] currently contemplated. We believe our Proposal is in the best interests of [Cole Real Estate] stockholders and is superior to that [Cole Holdings Transaction]. The [Cole Holdings Transaction] would internalize [Cole Real Estate]'s external advisor and affiliated broker-dealer, Cole Holdings, at an estimated cost to [Cole Real Estate]'s stockholders in excess of $120 million in a combination of cash and stock (the "[Cole Holdings Transaction]"). **In the event the** [Cole Holdings Transaction] **is consummated, ARCP would need to reconsider its Proposal, and potentially reduce its proposed valuation.**

Our Proposal, calling for not less than $12.00 per share, implies a minimum equity value for [Cole Real Estate] of approximately $5.7 billion (assuming 478.0 million shares of [Cole Real Estate] common stock outstanding acquired at $12.00 per share). The cash component of our Proposal is fully funded by cash on hand and borrowing capacity under ARCP's existing line of credit.

Our Proposal represents at least a 20% premium to the original [Cole Real Estate] offering price of $10.00 per share and provides [Cole Real Estate] stockholders an option to elect cash or publicly traded ARCP common stock in a tax-free stock for stock exchange (subject to proration). . . .

The terms of ARCP's Proposal are outlined immediately below.

- **[Cole Real Estate] stockholders receive at least $12.00 per share of value**: ARCP is prepared to acquire 100% of the outstanding common stock of [Cole Real Estate] for either: (i) $12.00 per share in cash or (ii) 0.80 of a share of ARCP common stock for each share of [Cole Real Estate] common stock, with a guarantee that the value of the share consideration will not be less than $12.00 per share. We are proposing that $1.15 billion (or approximately 20% of the outstanding shares of [Cole Real Estate] common stock) will be paid in cash and the balance will be paid in ARCP shares. ARCP would be willing to consider increasing the maximum consideration to be paid in cash to 40% of the outstanding shares of [Cole Real Estate] common stock, so long as [Cole Real Estate] stockholders preserve the tax-free exchange safe harbor discussed below.

- **ARCP's annual dividend to increase to 93 cents per share:** ARCP is announcing its 7th consecutive quarterly dividend increase to take effect upon closing of the transaction to an annual dividend of 93 cents per share.

- **[Cole Real Estate] stockholders who take ARCP stock will benefit from dividend increase:** [Cole Real Estate] stockholders who elect stock consideration will receive an equivalent dividend of 74.4 cents per share (93 cents x .80), a 15% increase (9.4 cents per share increase) over [Cole Real Estate]'s current 65 cent per share dividend.

15

- **Because our Proposal ultimately provides for a fixed exchange ratio, [Cole Real Estate] stockholders receive potential appreciation in ARCP shares:** Because our Proposal provides for a fixed exchange ratio (that is, 0.80 of a share of ARCP common stock), the value of the stock consideration received by [Cole Real Estate] stockholders who elect to receive ARCP shares may increase with the value of the ARCP share price.

- **[Cole Real Estate] stockholders are not "locked up":** All [Cole Real Estate] shares converted into ARCP shares will be immediately tradable on NASDAQ; stockholders will not be "locked up." Significant market support is anticipated from numerous index inclusions at and subsequent to closing.

- **[Cole Real Estate] stockholders who take ARCP stock benefit from a tax-free exchange safe harbor:** The stock-for-stock option is designed to provide [Cole Real Estate] stockholders with a tax-free exchange for those who elect to receive stock consideration.

- **There are operating synergies post merger, immediately benefiting all shareholders.** ARCP estimates general and administrative expense (G&A) savings will exceed $30 million annually. The majority of the real estate assets owned by [Cole Real Estate] are net leased properties similar to ARCP's existing property portfolio. This should result in a seamless integration requiring minimal additional resources or increased expenses.

- **Cole Holdings receives $111 million for its incentive fee:** Cole Holdings will receive its subordinated management incentive fee pursuant to the terms of [Cole Real Estate]'s existing advisory agreement of approximately $111 million (based on $12.00 per share and a hurdle price of $10.45 per share, as disclosed in the [Cole Holdings Transaction]), payable concurrently with the closing of the transaction in a combination of cash and ARCP common stock, in a manner to be determined by the Boards of Directors of ARCP and [Cole Real Estate].

46. The ARCP March 19, 2013 Offer Letter further noted that their unsolicited bid was superior to the Cole Holdings Transaction because:

- **Our Proposal provides [Cole Real Estate] stockholders immediate liquidity and greater certainty of value and successful execution.** Our Proposal provides immediate liquidity, certainty of value and stronger long-term growth potential for [Cole Real Estate] stockholders. Additionally, we believe no regulatory approval is required, unlike the FINRA approval required in the [Cole Holdings Transaction].

- **Our Proposal creates the largest, highest quality publicly traded REIT in the net lease sector.**

    o  Largest net lease REIT in sector by total capitalization and square footage;

    o  Diversified asset base including 1,706 properties with over 400 tenants;

    o  Diversified income stream with less than 33% of annualized gross rents from the ten largest tenants;

    o  Superior portfolio with best in class investment grade tenancy: 60% overall investment grade tenancy and 74% of top ten tenants;

    o  Longest weighted average lease duration in the net lease sector of 12.4 years; and

    o  Highly qualified management team with more than 51 years collective experience operating publicly traded REITs.

- **Our Proposal results in an increase to pro forma 2013 and 2014 AFFO.** Our Proposal results in an increase to combined ARCP and [Cole Real Estate] pro forma 2013 and 2014 AFFO, resulting in part from a significant reduction in operating costs, namely elimination of [Cole Real Estate] asset management fees and a pronounced reduction of G&A expenses.

- **Our Proposal results in an increase in dividends per share.** [Cole Real Estate] stockholders will enjoy an increase in the annualized [Cole Real Estate] dividend per share of more than 9 cents, or approximately 15%, from 65 to 74 cents per share.

- **Our Proposal is fully financed.** Our Proposal is fully financed, eliminating execution risk and valuation ambiguity, while furnishing [Cole Real Estate] stockholders immediate liquidity at closing. We have received commitments to upsize our existing credit facility by $1.65 billion, with an accordion feature to further increase the facility to an aggregate of $2.5 billion.

- **Our Proposal results in increased liquidity.** Our Proposal results in increased liquidity from index inclusions, including MSCI (RMZ), Russell 2000, S&P 400 and potentially S&P 500.

- **Our Proposal includes an experienced management team.** Our Proposal includes an experienced management team that has been responsible for more than $9 billion of liquidity events in the past 15 months, and has experience in managing public companies with total enterprise value in excess of $20 billion.

- **Our Proposal affords immediate access to the public capital markets.** ARCP benefits from a demonstrated access to the public

capital markets, including ARCP's existing well-known seasoned issuer (WKSI) shelf registration.

- **Our Proposal enhances the attributes of the combined companies, adheres to industry "best practices," and avoids combining unrelated businesses that could detract from stockholder value.** ARCP has a focused and proven business strategy that avoids the pitfalls in the [Cole Holdings Transaction], which includes the acquisition and operation of Cole Holding's non-real estate related business lines such as a broker-dealer.

- We believe that these transaction benefits are very compelling for [Cole Real Estate] stockholders, as well as ARCP stockholders, and make our Proposal more attractive than the proposed [Cole Holdings Transaction].

We believe that these transaction benefits are very compelling for [Cole Real Estate] stockholders, as well as ARCP stockholders, and make our Proposal more attractive than the proposed [Cole Holdings Transaction].

47. The ARCP March 19, 2013 Offer Letter finally concluded that the Cole Holdings Transaction *failed* to maximize stockholder value because:

We believe that the [Cole Holdings Transaction] raises significant conflict issues —it only delivers certainty of value to Cole Holdings with no guarantee that [Cole Real Estate] stockholders will benefit in any way. This result is in clear contrast to market norms, including recent high-performing and market-supported comparables, such as the announced merger between Cole Credit Property Trust II, Inc. ("CCPT II") and Spirit Realty Capital, Inc. (NYSE: SFC), the successful merger of American Realty Capital Trust III, Inc. with ARCP, and American Realty Capital Trust, Inc.'s merger with Realty Income Corp. **Why aren't [Cole Real Estate] stockholders being afforded the same benefits as the CCPT II stockholders?**

Noted below are the significant shortcomings of the [Cole Holdings Transaction] presently proposed. These same disadvantages have already been identified by [Cole Real Estate] stockholders, independent broker dealers, due diligence officers and industry commentators. The disadvantages include:

- **Unseasoned Management Team:** The [Cole Real Estate] and Cole Holdings senior management teams have either no or very limited prior experience running a publicly listed company.

- **Non-Qualifying REIT Income:** Based on the significant consideration being paid to Cole Holdings as a result of the [Cole Holdings Transaction], one could assume [Cole Real Estate] will be a REIT with material non-qualifying income for REIT qualification test purposes.

- **FINRA Approval Required:** There is no certainty that FINRA will approve [Cole Real Estate]'s acquisition of Cole Holding's broker dealer unit without restrictions or conditions that could adversely impact the transaction.

- **Undue Complexity:** Complexities arising from the operation of non-real estate related businesses, including a registered broker dealer, could detract from the combined company's business strategy and its potential valuation.

- **No Stockholder Vote:** There is no prior record of non-traded REITs merging with their affiliated advisors for a fee without a stockholder vote.

- **Greater Potential for Poor Stock Price Performance:** There is a history of poor stock performance and below average total stockholder returns from non-listed REITs that have completed listings, resulting primarily from a lack of institutional sponsorship and buy-side support, imposed trading restrictions on common stock owned by legacy, non-traded stockholders and limited operating, portfolio and balance sheet transparency and sell-side research coverage.

- **Multiple Unaddressed Risks:** [Cole Real Estate] has failed adequately to address, explain and quantify the risks of achieving a listing, including:

  o _Market risk_—the risk that changes in the macro-economic or global geo-political climate could result in market dislocations, potentially delaying (possibly indefinitely) the planned stock market listing of [Cole Real Estate] or potentially reducing the listing price of shares of [Cole Real Estate] common stock;

  o _Trading / liquidity risk_—[Cole Real Estate] has failed to affirm that shares of [Cole Real Estate] common stock will be listed and fully tradable without restriction at the time of listing; if [Cole Real Estate] were to impose restrictions on trading, these restrictions would impair the liquidity for [Cole Real Estate] stockholders; and

  o _Lack of market support_—prior successful listing transactions have included a market support mechanism, typically in the form of an issuer self-tender offer, that provides trading liquidity and reduces trading volatility in the days following a listing. [Cole Real Estate] has not provided [Cole Real Estate] stockholders assurance that any such market support will be provided or, if market support is provided, at what price level such support might be offered, and whether the dollar value of such support will be sufficient given the size of [Cole Real Estate]'s equity capitalization.

. . . .

**_[Cole Holdings Transaction] is contrary to industry norms._**

As leaders in the direct investment non-traded REIT industry, the management of ARCP strongly opposes the imposition of the internalization fees that are the

crux of the [Cole Holdings Transaction]. Internalization fees serve to misalign the interests of REIT stockholders and the owners of the advisor, enrich the advisor at the expense of stockholders without regard to investment performance, and are generally a "black eye" for the non-traded REIT industry.

In particular, the [Cole Holdings Transaction] fails to protect the interests of [Cole Real Estate] stockholders in the following ways:

- ***Cole Holdings interests are not aligned with those of [Cole Real Estate] shareholders.*** Cole Holdings is paid a very substantial sum, without regard to performance, before the [Cole Real Estate] stockholders are paid. [Cole Real Estate] stockholders are compensating Cole Holdings, prior to [Cole Real Estate] stockholders receiving visibility on the value of their common stock or accompanying liquidity, and with no assurance of future liquidity or profitability.

- ***Lack of transparency makes financial fairness of transaction difficult to judge.*** The lack of transparency of the current assets, financial condition, business prospects, and relative operating cash flow contribution of Cole Holdings and [Cole Real Estate] deprives [Cole Real Estate] stockholders' of the ability to analyze the relative value of these firms and the consideration being paid to Cole Holdings.

**Perhaps most unsettling, the independent directors of [Cole Real Estate] may have denied the [Cole Real Estate] stockholders a voice in the [Cole Holdings Transaction], as well as the opportunity to understand the merits and valuation of the [Cole Holdings Transaction], by structuring the [Cole Holdings Transaction] to avoid the requirement of an affirmative vote by [Cole Real Estate] stockholders.** Regardless of the legal requirement for such a vote, every preceding internalization in the non-traded REIT industry in which an internalization fee was paid provided stockholders with the right to consider and vote in connection with such high cost, privately negotiated related party transactions. For these reasons, all recently completed non-traded REIT liquidity events, including those of American Realty Capital Trust, Inc., Healthcare Trust of America, Inc., CCPT II and American Realty Capital Trust III, Inc., have excluded any internalization fees.

48.     On March 21, 2013, the Special Committee of the Board (the "Cole Special Committee"), consisting of the defendants Andruskevich, Sealy, and Wood, succumbed to the pressure of C. Cole and Nemer and publicly rejected ARCP's unsolicited business combination proposal described in the ARCP March 19, 2013 Offer Letter.

49.     Shocked at the rejection, ARCP filed the following press release with the SEC on March 21, 2013, stating, in part, the following:

**New York, New York, March 21, 2013**—American Realty Capital Properties, Inc. ("ARCP" or the "Company") (NASDAQ: ARCP) announced today that it was not only surprised, but disappointed, by today's ***utterly unresponsive statement*** by [Cole Real Estate] to ARCP's offer to acquire all of

the outstanding shares of [Cole Real Estate]'s common stock. ARCP finds it remarkable that [Cole Real Estate] and its board of directors have rejected the Company's proposal, which offers [Cole Real Estate]'s stockholders superior value and certainty as compared to the proposed acquisition and internalization of Cole Holdings, *without seeking to contact ARCP or better understand its offer in any way*. In its apparent rush to close its inferior and affiliated internalization transaction, [Cole Real Estate] continues to deprive its stockholders a voice or a choice. It is insufficient for [Cole Real Estate] merely to assert that its previously announced insider transaction is superior to ARCP's proposal without providing stockholders and the broker community a single reason why that may be the case. Yesterday's outsized trading volume in ARCP (14.5 million shares traded) and 5.24% increase in the stock price, should be proof enough that the public markets support ARCP's proposed transaction and disagree with the unilateral decision made by [Cole Real Estate]'s board of directors.

ARCP is deeply disappointed that [Cole Real Estate] would neglect to explore ARCP's highly attractive offer fully and continue to press forward with its highly controversial and, the Company believes, conflicted internalization transaction—one that offers [Cole Real Estate]'s stockholders uncertain value, uncertain liquidity, and an uncertain future, all while refusing to allow them a vote. ARCP also believes that, should the [Cole Holdings Transaction] be consummated, there exists significant potential for a diminution of value for [Cole Real Estate]'s stockholders, which may result in the reduction of ARCP's proposed valuation of [Cole Real Estate].

ARCP remains strongly committed to its offer, which it believes is clearly in the best interests of the stockholders of both companies and the entire broker dealer community. ARCP urges the many members of the non-traded REIT community who have expressed their strong support for ARCP's proposal and their dismay at [Cole Real Estate]'s planned internalization transaction to speak up and let [Cole Real Estate] know what its stockholders desire. Finally, ARCP encourages the [Cole Real Estate] board of directors to give our proposal the careful consideration it deserves. ARCP remains ready, willing and able to engage in constructive discussions with [Cole Real Estate] at any time. ARCP's proposal is fully financed and the Company is positioned to close this transaction promptly with much greater surety than the internalization transaction currently contemplated and reaffirmed by [Cole Real Estate]'s board of directors. (Emphasis Added).

50. On March 27, 2013, ARCP increased its unsolicited bid in an open letter to the Company. ARCP then modified the increased unsolicited bid on April 2, 2013 in another open letter, which stated, in relevant part, the following:

Two weeks ago today, after our prior indications of interest to you and your advisors, we provided you a bona fide written proposal in a good faith effort to engage in constructive discussions regarding the acquisition of [Cole Real Estate] by American Realty Capital Properties, Inc. (NASDAQ: ARCP) ("ARCP"). We made our written proposal after your March 6th announcement that you were going to internalize Cole Holdings Corporation ("Cole Holdings"), your external advisor and wholesale broker dealer, and

subsequently seek to list your shares on the New York Stock Exchange. By making such announcement, you effectively put [Cole Real Estate] "in play."

***We attempted repeatedly to engage you to discuss a further refinement to our original proposal***. Inasmuch as we were unable to do so, we are again forced to disclose the terms of our revised offer publicly (as discussed in further detail below). After discussions with [Cole Real Estate] stockholders and the broker dealer community, we have decided to increase the surety of consideration to be paid to [Cole Real Estate] stockholders. **While your stockholders would continue to be able to receive either (i) $13.59 (floor/no cap) in ARCP common stock for each [Cole Real Estate] share post-internalization or (ii) $12.50 in cash, we are increasing the cash component to a maximum of 60% of outstanding shares of [Cole Real Estate] post-internalization. As a result, ARCP's stockholders would retain an approximate 60% ownership in the combined company**

. . . .

Your unwillingness to engage in constructive discussions for the past two weeks, we believe, can only be interpreted in one way: **you are committed to consummating an insider deal that prioritizes and monetarily benefits Cole Holdings and its management (as shown in the table below) over the interests of, and at the expense of, [Cole Real Estate]'s stockholders in what we view as a direct contravention of your fiduciary duties.**

. . . .

Here are the fees that we understand that Christopher H. Cole and his company, Cole Holdings, will receive in connection with the transaction that you are recommending (without stockholder vote):

| Description | Amount | Per Share | Note |
|---|---|---|---|
| [Cole Holdings Transaction] Stock Payment™ | $145,565,548 | | (1) |
| [Cole Holdings Transaction] | $20,000,000 | | |
| **Internalization Fees** | **$165,565,548** | **$0.33** | |
| Contingent Listing Consideration | N/A | | (2) |
| Earn Out Based on Performance | TBD | | (3) |
| Subordinated Incentive Fee | $233,616,000 | | (4) |
| *Less*: Subordinated Incentive Fee Discount | $(58,404,000) | | (5) |
| **Total Fees Paid to Cole Holdings** | **$ 340,777,548** | **$0.69** | |

(1) 10,711,225 shares at $13.59/share.

(2) 2,142,245 shares to be issued upon listing will be cancelled.

(3) Earn out is payable on a 2-year trailing average multiple of EBITDA in excess of $25 million. Cole Holdings management expects approximately $29 million of 2013E pro forma EBITDA contribution from Cole Holdings alone.

(4) ($13.59 - $10.45) x 496 million shares outstanding x 15% where $10.45 is the hurdle price and 15% is the promote interest.

(5) 25% reduction in subordinated incentive listing fee.

22

It appears to us, as well as our advisors, that your limited efforts vis-à-vis our offer are designed to misdirect the public and aimed at deflecting our highly compelling proposal while you rush to close the internalization of Cole Holdings without respecting the rights of [Cole Real Estate] stockholders to an affirmative vote on a related party transaction that fundamentally and irreversibly alters [Cole Real Estate]'s business model. **Is this your true intent?**

. . . .

***The clear and blatant disregard of your fiduciary responsibilities to your stockholders through your continued insistence on hiding behind your financial advisors, lawyers and Maryland law is incomprehensible.*** Your own financial advisors have characterized the exercise of the past week as "merely fact finding." **How can you call this engagement?** We believe that this has not reflected the good faith engagement or careful consideration that we would expect from directors trying to meet their fiduciary obligations and appropriately consider our $9.7 billion bona fide offer to acquire [Cole Real Estate]. We and others in the market are shocked. (Emphasis Added).

51. On April 5, 2013, the Cole Special Committee again rejected ARCP's revised bid and simultaneously announced the completion of the Cole Holdings Transaction.

52. The Cole Special Committee rejected ARCP's bid despite mounting industry criticism. For example, on April 2, 2013, *Seeking Alpha* reported, in an article titled "[Cole Real Estate]—To Sell or Not to Sell," that "[Cole Real Estate]'s rejection of ARCP's offer is very suspect, and it raises the question as to whether or not the decision to reject the offer was done with the best interests of the company's shareholders in mind."

53. On April 9, 2013, the *Wall Street Journal* reported that the Cole Holdings Transaction "has sparked some criticism from certain industry executives because of the more than $127 million in cash and stock that the REIT will pay Christopher Cole."

54. On April 11, 2013, ARCP withdrew its unsolicited bid for the Company, noting the following:

**New York, New York, April 11, 2013**—American Realty Capital Properties, Inc. ("ARCP" or the "Company") (NASDAQ: ARCP) announced today that it has withdrawn its proposal, valued at approximately $9.7 billion including assumption of debt, to acquire [Cole Real Estate]. The transaction would have

23

paid [Cole Real Estate]'s stockholders $12.50 per share in cash, or not less than $13.59 per share in ARCP stock, and created the largest, best managed, highest quality publicly traded REIT in the net lease sector.

For the past several weeks, ARCP has repeatedly invited [Cole Real Estate] to meet and constructively discuss its offer in an effort to create value for ARCP's stockholders and provide [Cole Real Estate]'s stockholders the surety of a transaction at a superior price with a seasoned public company, absent the price uncertainty and volatility of a public listing, as currently favored by [Cole Real Estate]'s Board. Further, despite clear market sentiment in favor of the Company's proposal, [Cole Real Estate] publicly rejected it out of hand.

[Cole Real Estate]'s actions last week speak volumes. Following denial of its stockholders' legal efforts to stop the related party "roll up" and after rejecting the Company's offer, [Cole Real Estate] immediately, within hours, consummated its insider internalization of Cole Holdings, including its FINRA-regulated securities business. This transaction went against industry best practices, lacked transparency and paid Cole Holdings and its management in excess of $127 million without the vote and at the expense of [Cole Real Estate]'s stockholders. Consequently, ARCP is compelled—despite its best intentions—to withdraw its proposal in order to safeguard its stockholders from any possible economic, legal, reputational or other risks that may arise from the related party internalization, including the numerous pending class action and derivative lawsuits filed.

55. In June 2013, Cole Real Estate and began trading on the NYSE.

56. Yet, rather than permitting the Company's stock to trade freely and allowing its public stockholders to reap the benefits of the Company's growth strategy, the Individual Defendants have now acted for their personal benefit and to the detriment of the Company's public stockholders, by entering into the Merger Agreement.

### D. The Proposed Transaction

57. On October 23 2013, Cole Real Estate and ARCP issued a joint press release announcing that they had entered into the Merger Agreement. The press release stated:

**New York, New York and Phoenix, Arizona, October 23, 2013**—American Realty Capital Properties, Inc. ("ARCP") (NASDAQ: ARCP) and Cole Real Estate Investments, Inc. ("Cole") (NYSE: COLE) announced today that they have signed a definitive agreement to merge the two companies (the "Merger Agreement"). The transaction is valued at $11.2 billion and will create the largest net lease REIT with an enterprise value of $21.5 billion. The Merger Agreement has been unanimously approved by the board of directors of each company and is subject to customary closing conditions, including stockholder votes by both companies. ARCP has secured $2.75 billion of fully committed financing from Barclays in connection with the transaction, which is expected to close in the first half of 2014.

## Transaction Highlights

- **Liquidity:** Assuming listing on the NYSE as planned, which is expected to occur in June 2013, stockholders will have even greater access to liquidity with the flexibility to sell or retain shares based on public market value.

- **AFFO Growth:** Updated ARCP AFFO pro forma 2014 guidance of $1.13 to $1.19 per share, as described in Annex A; target payout ratio of 85% to 90%.

- **Dividend Increase:** ARCP dividend per share on closing increases to $1.00.

- **Significant Deleveraging:** ARCP net debt to EBITDA ratio declines from 9.1x to 7.7x by year end 2014.

- **Expense Synergies:** $70 million of year one expense synergies expected.

- **Scale and Competiveness:** 64% larger than the closest comparable net lease REIT. Size and scale create operating and revenue efficiencies, including lower cost of capital, superior growth opportunities and higher investor returns.

- **Portfolio Quality:** Superior diversification by asset type, tenancy, industry and geography; 47% investment grade tenancy; 99% occupied; 11 years remaining average lease term.

- **Optimization of Core Capabilities:** In addition to the durability provided by the single tenant net lease portfolio, the multi-tenant retail properties coupled with the "vintage" (mid-term) net leased properties provide significant rent growth potential.

- **Cost of Capital Advantages:** ARCP's investment grade rating allows for significantly lower cost of financing, which is highly accretive to its overall corporate earnings.

- **Increased Institutional Coverage:** Transaction positions ARCP for potential inclusion in the S&P 500.

. . . .

## Strategic Benefits of the Transaction

- **Enhanced Scale and Competitiveness:** The nature and evolution of the net lease industry is conducive to consolidation. The combination of ARCP and Cole creates the world's largest net lease REIT and the 14th largest publicly traded REIT, with a pro forma enterprise value of approximately $21.5 billion, approximately 64% larger than its closest net lease REIT comparable. With its enhanced scale and balance sheet flexibility, the company will be well-positioned to compete for transactions, grow and invest in existing relationships, maintain a cost

of capital advantage, and leverage the talents of both companies. Company stockholders will have the opportunity to share in the compelling upside potential of the merger.

- **Enhanced Portfolio Diversification:** The pro forma ARCP and Cole combined company will have superior portfolio diversification by asset type, industry and geography, best-in-class lease maturity profile and investment grade tenancy. The combined portfolio will increase the number of distinct corporate credit tenants to over 600, occupying over 100 million square feet in 49 states plus Puerto Rico. The combined portfolio is expected to total 3,732 properties with approximately 11 years of average remaining lease duration as of year-end 2013.

- **Optimization of Both Companies' Core Capabilities and Talent:** ARCP's combined single-tenant net lease portfolio, together with Cole's multi-tenant retail portfolio, will allow the company to leverage its capabilities across two complementary sectors. The multi-tenant retail properties coupled with the "vintage" (mid-term) net leased properties provide significant rent growth potential, especially in an improving economy. This complements the stability inherent in the combined company's net leased portfolio. In addition, the merger will bring together the industry's best talent to form a single, leading professional bench comprising the best acquisition teams in the business with some of the most important tenant relationships in the net lease space. ARCP and Cole have significant integration experience having conducted over $20 billion transactions in the past 12 months combined and expect that the integration of Cole into ARCP will be seamless.

- **Potential for Increased Institutional Coverage / Ownership:** Following the completion of the merger, ARCP will be well-positioned for a potential inclusion in the S&P 500 Index. Such a potential inclusion would broaden ARCP's investor base, enhance its visibility and provide added liquidity.

### Financial Benefits of the Transaction

- **AFFO Growth:** ARCP updates AFFO guidance on a pro forma basis for 2014 of $1.13 to $1.19 per share, compared with 2013 guidance of $0.91 to $0.95 per share. Updated guidance allows for potential future dividend growth.

- **Continued Strong and Secure Dividends:** Stockholders will benefit from ARCP's stable and secure dividend with significant growth potential. ARCP will increase its annualized dividend by $0.06, from $0.94 to $1.00 per share to take effect upon the close of the Cole merger. Each company intends to continue its current dividend rate until the close of the transaction, including ARCP's previously declared $0.03 annual dividend increase to take effect upon the earlier to close of the pending CapLease or ARCT IV transactions. For Cole stockholders who elect to receive stock consideration, annualized dividends per share will increase by approximately $0.37, or 52%. The projected AFFO payout ratio falls within the ARCP Board target of 85% to 90%.

- **Operational Efficiencies and Expense Reductions:** ARCP expects approximately $70 million of combined expense synergies and expense savings in the first year largely through the reduction and elimination of duplicate overhead costs and other non-essential expenses.

- **Cost of Capital Advantage:** ARCP's investment grade rating allows for significantly lower cost of financing, which is highly accretive to its overall corporate earnings.

- **Significant Value Creation for Cole Stockholders:** ARCP's offer is valued at $14.59 per Cole common share based on the fixed exchange ratio of 1.0929 and ARCP's closing price of $13.35 on October 22, 2013. The offer price represents a premium of 13.8% based on Cole's closing price on October 22, 2013 of $12.82.

### E.    The Deficient Sales Process

58.    The Proposed Transaction is the result of a deficient sales process aimed at cashing out the benefits that C. Cole and Nemer negotiated for themselves in the Cole Holdings Transaction. For instance, rather than designate the Cole Special Committee to handle the Proposed Transaction, the entire Board (including C. Cole and Nemer) negotiated the deal. C. Cole and Nemer were consequently able to negotiation the immediate payment of ***$217,544,614*** and ***$38,390,226*** respectively for the Incentive Consideration and Contingent Consideration (and employment agreements) from the Cole Holdings Transactions. *See supra* ¶¶ 43–44. C. Cole also stands to receive an additional $6,561,986 and Nemer an additional $24,043,551 in golden parachutes compensation for change-in-control payments. The Board was therefore controlled by C. Cole and Nemer for the duration of the sales process.

59.    Indeed, the Cole Special Committee was just window dressing in order to give the appearance of independence and legitimacy to the Cole Holdings Transaction, so that C. Cole and Nemer could flip their improperly negotiated benefits at the expense of Cole Real Estate stockholders in the Proposed Transaction. The members of the Cole Special Committee (*i.e.*, Andruskevich, Sealy, or Wood) are also conflicted as to the Proposed Transaction because they negotiated for themselves two seats on the combined entity's board.

60.     As such, because four out of five directors are interested, and at the very least C. Cole and Nemer improperly dominated the sales process leading up to the Proposed Transactions, the Board is not shielded by the business judgment rule.  The Board thus has the burden of establishing that it performed a fair process that resulted in a fair price to Cole Real Estate stockholders.  As discussed herein, Defendants cannot show either fair process or fair price.

**F.     The Unfair Share Price**

61.     Rather than allow Cole Real Estate's common stock to trade freely and permit its public stockholders to share in the benefits of the Company's improving growth prospects, the Individual Defendants have acted for the benefit of themselves, and to the detriment of the Company's public stockholders, by entering into the Proposed Transaction.  In so doing, the Individual Defendants have agreed to a transaction that places a cap on Cole Real Estate's corporate value at a time when the Company is primed for substantial future growth, as evidenced by the chart below.  Indeed, at least one analyst has set a price target of $15 for the Company, well above the highest possible consideration as of the date of the signing of the Merger Agreement.

**NYSE: COLE**



62.     The consideration offer by ARCP on April 5, 2013 was also superior, as it provided for a floor of $13.59 per share in ARCP common stock and the cash component

was at a maximum of 60% of the outstanding shares. The deal consideration in the Proposed Transactions provides no price floor on ARCP common stock and only proves for a maximum of 20% of the outstanding shares in cash.

63.     The consideration offered to Cole Real Estate's public stockholders in the Proposed Transaction is thus unfair and inadequate because, among other things, the intrinsic value of Cole Real Estate's common stock is materially in excess of the amount offered for those securities in the Proposed Transaction given the Company's prospects for future growth and earnings.

**G.     The Unreasonable Deal Protection Devices**

64.     To the further detriment of the Company's stockholders, on October 23, 2013, the Individual Defendants agreed to certain deal protection devices that operate conjunctively to ensure that the Proposed Transaction is successful and no competing offers will emerge for the Company.

65.     Specifically, Section 6.5(a) of the Merger Agreement is a restrictive no-solicitation provision that prohibits the members of the Board from taking any affirmative action to comply with their fiduciary duties to get the best price for Cole Real Estate stockholders, including initiating, soliciting, knowingly encouraging, or knowingly facilitating any inquiries or proposals and engaging or participating in any negotiations or discussions concerning "Acquisition Proposals" (defined in the Merger Agreement).

66.     Section 6.5(b)-(c) of the Merger Agreement provides a limited situation in which the Board may enter into discussions and negotiations in response to an unsolicited "Superior Proposal" (as defined in the Merger Agreement). The Superior Proposal must be one that (a) was not the result of any breach of, or any action inconsistent with any of the provisions set forth in Section 6.5(a) of the Merger Agreement and (b) the Board concludes in good faith, after having consulted with its outside legal counsel, that failure to take such action would reasonably constitute a breach of the fiduciary duties of the Board to the Company's stockholders under applicable law.

67.     Even then, however, in the event the Company receives "Acquisition Proposals," Cole Real Estate must notify ARCP, orally and in writing, at least twenty-four (24) hours after receipt, of the identity and material terms of the person making the "Acquisition Proposal."

68.     Thereafter, if the Board determines that the competing "Acquisition Proposal" constitutes a "Superior Proposal," (defined in the Merger Agreement), Section 6.5(e) requires the Board to grant ARCP at least three (3) business days to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."

69.     Furthermore, the Merger Agreement provides that Cole Real Estate must pay to ARCP a termination fee of $100 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

70.     Ultimately, these deal protection devices restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.  The circumstances under which the Board may respond to an unsolicited alternative acquisition proposal that constitutes, or would reasonably be expected to constitute, a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances.  Likewise, these provisions will foreclose the new bidder from providing the needed market check of ARCP's inadequate offer.

## H.     The Materially Misleading Registration Statement

71.     On November 5, 2013, Cole Real Estate and ARCP filed the Registration Statement with the SEC.  The Registration Statement failed to provide the Company's stockholders with material information in contravention to the Board's duty of candor and in violation of Sections 14(a) and 20(a) of the Exchange Act.

72.     Without such information, Cole Real Estate's stockholders will be unable to make a fully-informed decision as to whether to vote their shares for or against the Proposed Transaction.

### 1. Materially Incomplete and Misleading Statements/Omissions Regarding Management's Financial Projections

73.     The Registration Statement discloses that Barclays and Goldman Sachs relied on certain management projections from the Company to render their fairness opinions.  However, the Registration Statement, on pages 130 and 140, fails to disclose certain management projection metrics, including (i) Depreciation and Amortization, (ii) Taxes, (iii) Effective Tax Rate, (iv) Capital Expenditures, and (v) Change in Net Working Capital.  This information is material because the Registration Statement states on page 127 that Barclays calculated unlevered free cash flows, yet it does not provide the actual unlevered free cash flows or the inputs necessary to calculate unlevered free cash flows.  Cole Real Estate's stockholders are thus unable to independently calculate unlevered free cash flows and are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote for or against the Proposed Transaction.

### 2. Materially Incomplete and Misleading Disclosures Concerning Barclay's Financial Analysis

74.     The Registration Statement also discloses certain information regarding Barclays' financial analyses used to support its fairness opinion.  These disclosures concerning Barclays' financial analyses are materially incomplete and misleading in several ways.

75.     First, the Registration Statement, on pages 124 to 125, fails to disclose the multiples and metrics observed by Barclays for the list of REITs used to compare against Cole Real Estate and ARCP in the *Selected Comparable Companies Analysis*.  For instances, the Registration Statement should disclose the comparison of each company's ratio of its current stock price to its calendar year 2014 estimated Adjusted Funds from Operations ("AFFO") and comparison of each company's annualized, quarterly, and

monthly dividends, as applicable. Additionally, the Registration Statement should disclose if any other metric outside of current stock price to AFFO was considered (*i.e.*, Enterprise Value to LTM, Enterprise Value to AFFO, Enterprise Value to 2013 EBITDA, Enterprise Value to 2014 EBITDA, etc.) and why Barclays used future multiples in the *Selected Comparable Company Analysis* for Cole Real Estate and ARCP (as opposed to historic multiples). These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

76. Second, on pages 124 to 125, the Registration Statement fails to disclose in sufficient detail the criteria used by Barclays to pick the list of REITs in the *Selected Comparable Companies Analysis*[2] or the exact sources of the "Wall Street research consensus estimates." These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

77. Third, the Registration Statement, on pages 125 to 126, fails to disclose the metrics and multiples observed by Barclays in the *Selected Precedent Transactions Analysis* (*i.e.*, the dollar value of each transaction, the observed multiples of each transaction, etc.) or the criteria Barclays used to select the aforementioned precedent transactions. The Registration Statement also fails to disclose if other metrics and multiples were considered but excluded for the chosen precedent transactions, and/or whether observed multiples and metrics were considered for excluded transactions. These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to

---

[2] In fact, Goldman Sachs, on pages 136 to 137 of the Registration Statement, chose a different set of comparable companies.

determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

78.     Fourth, on pages 125 to 126, the Registration Statement fails to define "Capitalization Rate."  This omission is material because without this information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

79.     Fifth, the Registration Statement, on page 126, omits the criteria used by Barclays to select capitalization rates ranging from 5.75% to 6.5% for Cole Real Estate and 6.0% to 6.5% for ARCP in the *Net Asset Value/Sum-of-the-Parts Analysis*.  These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

80.     Sixth, the Registration Statement, on pages 127 to 128, fails to disclose what market assumptions Barclays used to calculated the weighted average cost of capital ("WACC") of Cole Real Estate and ARCP in the *Discounted Cash Flow Analysis*.  This omission is material because Cole Real Estate stockholders are unable to determine whether Barclays' discount rate was properly calculated.  Without this information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

81.     Seventh, also on pages 127 to 128, the Registration Statement omits to disclose whether stock-based compensation was treated as a cash or non-cash expense. This information is material because if stock-based compensation was treated as a cash expense, then the implied value range increases, but if stock-based compensation was treated as a non-cash expense, then the implied value range decreases.  Without this

information, Cole Real Estate's stockholders are unable to fully understand Barclays' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

82.     Finally, the Registration Statement fails to quantify on page 127 exactly how much of the implied value range increase was attributable to the potential synergies of the Proposed Transaction.  This omission is material because without this information, Cole Real Estate's stockholders are unable to fully understand whether the merger consideration has provided Cole Real Estate stockholders with a substantial premium as a result of those synergies.

### 3.   Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs' Financial Analysis

83.     The Registration Statement further discloses certain information regarding Goldman Sachs' financial analyses used to support its fairness opinion.   These disclosures concerning Goldman Sachs' financial analyses are materially incomplete and misleading in several ways.

84.     First, the Registration Statement, on page 136, fails to disclose how Goldman Sachs calculated the discount rates in the *Illustrative Standalone Levered Discounted Cash Flow Analysis* ranging from 9.00% to 10.50%.  If the WACC was used to calculate the discount rates, then the Registration Statements also fails to disclose the market assumptions used to calculate the WACC.  These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

85.     Second, the *Illustrative Standalone Levered Discounted Cash Flow Analysis* also fails to disclose what metric was used to calculate the terminal values determined to be 11.8x to 14.8x to Cole Real Estate's estimated AFFO for 2016, and

from 11.5x to 14.5x to ARCP's estimated AFFO for 2016. These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

86.    Third, the Registration Statement, on pages 136 to 138, omits to disclose the multiples and metrics observed by Goldman Sachs for the list of REITs used to compare against Cole Real Estate and ARCP in the *Illustrative Trading Comparable Analysis*. For instances, the Registration Statement should disclose the comparison of each selected company's ratio of the Enterprise Value to EBITDA for 2013, Enterprise Value to EBITDA for 2014, Closing Price Per Share to Funds from Operations ("FFO") for 2013, Closing Price Per Share to FFO for 2014, Closing Price Per Share to AFFO for 2013, and Closing Price Per Share to AFFO for 2014. Additionally, the Registration Statement should disclose if any other metrics were considered (*i.e.*, Enterprise Value to LTM) and if Goldman Sachs considered historic multiples in the *Illustrative Trading Comparable Analysis* for Cole Real Estate and ARCP. These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

87.    Fourth, the Recommendation Statement fails to disclose whether Goldman Sachs performed a precedent transaction analysis and if it was not performed, then the Recommendation Statement must explain why Goldman Sachs chose not to perform said analysis. These omissions are material because without this information, Cole Real Estate stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

88. Fifth, the Registration Statement, on pages 136 to 137, fails to disclose how Goldman Sachs calculated the discount rates in the *Illustrative Combined Company Levered Discounted Cash Flow Analysis*. If the WACC was used to calculate the discount rates, then the Registration Statements must disclose the market assumptions used to calculate the WACC. These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

89. Finally, the *Illustrative Combined Company Levered Discounted Cash Flow Analysis* also fails to disclose what metric was used to calculate the terminal values determined to be 11.7x to 14.7x for 2016. These omissions are material because without this information, Cole Real Estate's stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining how to vote on whether to approve the Proposed Transaction.

### 4. Materially Incomplete and Misleading Disclosures Regarding Barclays' and Goldman Sachs' Compensation

90. On Page 128, the Registration Statement discloses Barclays "in connection with the proposed transaction . . . will receive fees for its services a portion of which are payable upon rendering this opinion and a substantial portion of which is contingent upon the consummation of the proposed transaction." The Registration Statement however fails to quantify what Barclays stands to receive for services rendered in regards to the Proposed Transaction. This information is material because it evinces if Barclays had any conflict of interest when it issued the fairness opinion in support of the Proposed Transaction.

91.     On Pages 138 to 139, the Registration Statement discloses that Goldman Sachs "acted as financial advisor to American Realty Capital Trust, Inc., a company formerly sponsored by AR Capital, in connection with its acquisition by Realty Income Corporation in January 2013."   American Realty Capital Trust, Inc. ("ARCT") was closely affiliated with ARCP.  For instance, Nicholas S. Schorsch was the former CEO and non-executive chairman of the board of directors of ARCT and is currently the CEO and chairman of the board of ARCP.  The Registration Statement however fails to quantify that Goldman Sachs earned approximately $14.5 million dollars from the services it rendered in regards to the ARCT transaction in January 2013.   This information is material because it evinces if Goldman Sachs had any conflict of interest when it issued the fairness opinion in support of the Proposed Transaction.

92.     Finally, on page 139, the Registration Statement fails to quantify the dollar value of the services Goldman Sachs previously rendered for Cole Real Estate.  This information is material because it evinces if Goldman Sachs had any conflict of interest when it issued the fairness opinion in support of the Proposed Transaction.

### 5.    Materially Incomplete and Misleading Disclosures Regarding the Flawed Process

93.     The Registration Statement also omits several important details regarding the process leading up to the signing of the Merger Agreement.

94.     For example, on page 103, the Registration Statement discloses that the Board "determined to engaged Goldman Sachs to assist the [] Board in evaluating a range of potential strategic opportunities for Cole . . . ," but omits the process undertook by the Board to hire a financial advisor.  This is particularly material given Goldman Sachs' previous ties to directors and management at ARCP.  *See supra* ¶ 91. Without this information, Cole Real Estate stockholders do not know whether the Board conducted a thorough conflict check on Goldman Sachs before engaging the investment banking to render a fairness opinion on the Proposed Transaction.

95.     Then, on page 110, the Registration Statement discloses that on October 18, 2013, "the Cole Board asked numerous questions of Mr. Schorsch regarding his strategic plans and discussed various issues in respect of these plans and the proposed transaction." However, the Registration Statement omits to disclose the substance of those discussions. This information is material because it evinces the process the Board took to obtain the best price possible under the circumstances, especially given that it previously rejected ARCP's business combination proposal in favor of the Cole Holdings Transaction.

96.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff and the Class Against the Individual Defendants for Breach of Fiduciary Duties

97.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

98.     The Individual Defendants have violated fiduciary duties of loyalty, due care, good faith, and candor owed to Cole Real Estate stockholders.

99.     By the acts, transactions, and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Cole Real Estate.

100.    As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, due care, good faith, and candor owed to Cole Real Estate stockholders because, among other reasons, they failed to take steps to obtain the best price possible under the circumstances, by, among other things, failing to adequately consider potential acquirers, instead favoring their

own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of Cole Real Estate stockholders. Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding whether to vote in favor of the Proposed Transaction.

101. By reason of the foregoing acts, practices and courses of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

102. As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Cole Real Estate's assets and businesses and have been and will be prevented from obtaining a fair price for their common shares of stock.

103. Unless the Court enjoins Defendants, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the members of the Class.

104. Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff and the Class Against Cole Real Estate and/or ARCP for Aiding and Abetting the Individual Defendants' Breach of Fiduciary Duty**

105. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

106. Cole Real Estate and/or ARCP have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of

their fiduciary duties to Cole Real Estate stockholders, and have participated in such breaches of fiduciary duties.

107.    Cole Real Estate and/or ARCP knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Cole Real Estate and/or ARCP rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

108.    Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT III

**On Behalf of Plaintiff and the Class Against Cole Real Estate, ARCP, and the Individual Defendants for Violations of Section 14(a) of the Exchange Act**

109.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.    Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

111.    Cole Real Estate, ARCP, and the Individual Defendants have caused the Registration Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

112.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC]  may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

113.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

114. By virtue of the foregoing, Cole Real Estate, ARCP, and the Individual Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9. The Registration Statement violates Section 14(a) and SEC Rule 14a-9 because it omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Cole Real Estate, ARCP, and the Individual Defendants should have known that the Registration Statement is materially misleading and omits material facts that are necessary to render then non-misleading.

115. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the stockholder vote on the Proposed Transaction.

## COUNT IV

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

116. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

117. Plaintiff brings this Exchange Act claim on behalf of himself as an individual only.

118. The Individual Defendants acted as controlling persons of Cole Real Estate within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cole Real Estate, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the

power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

119. Each of the Individual Defendants were provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

120. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

121. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

122. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

123. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

124. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against Defendants jointly and severally, as follows:

1. Declaring this action to be a Class Action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

2. Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing fair terms to shareholders and requiring Defendants to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding whether to vote in favor of the Proposed Transaction;

3. Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

4. Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

5. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance for attorneys' and expert fees and expenses; and

6. Granting Plaintiff and other members of the Class such further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  November 18, 2013

Respectfully submitted,

**TIFFANY & BOSCO, P.A.**

By:   */s/ Richard G. Himelrick*
Richard G. Himelrick (#004738)
J. James Christian (#023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Avenue, 10th Floor
New York, NY 10017

*Attorneys for Plaintiff*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Robert Sobon ("Plaintiff"), declare, as to the claims asserted under the federal

securities laws, that:

1.  Plaintiff has reviewed a draft complaint against Cole Real Estate Investments, Inc.
    ("COLE") and has authorized the filing of a complaint substantially similar to the
    one I reviewed.

2.  Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the
    purpose of prosecuting this action as my counsel for purposes of prosecuting my
    claim against defendants.

3.  Plaintiff did not purchase the security that is the subject of the complaint at the
    direction of Plaintiff's counsel or in order to participate in any private action
    arising under the federal securities laws.

4.  Plaintiff is willing to serve as a representative party on behalf of a class, including
    providing testimony at deposition and trial, if necessary.

5.  Plaintiff held and continues to hold 25,131 shares of Cole Real Estate
    Investments, Inc. ("COLE") securities as of the close of the trading day on
    October 22, 2013.

6.  In the past three years, Plaintiff has not sought to serve nor has served as a
    representative party on behalf of a class in an action filed under the federal
    securities laws, except as specified below:

7.  Plaintiff will not accept any payment for serving as a representative party on
    behalf of a class beyond Plaintiff's pro rata share of any recovery, except such
    reasonable costs and expenses (including lost wages) directly relating to the
    representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the
foregoing information is correct to the best of my knowledge.

Signed this _12_ day of November 2013.

_____
Robert Sobon