# EXHIBIT K

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENNIS TODIC, Individually And On Behalf Of All Others Similarly Situated, | |
| Plaintiff, | Case No.: |
| v. | |
| STAR SCIENTIFIC, INC., PAUL L. PERITO, JONNIE R. WILLIAMS, CHRISTOPER C. CHAPMAN, NEIL L. CHAYET, RALPH B. EVERETT, and BURTON J. HAYNES, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Dennis Todic ("Plaintiff"), by his attorneys, alleges upon information and belief, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.      This is a shareholder class action brought by Plaintiff individually and on behalf of shareholders of Star Scientific, Inc. ("Star Scientific" or the "Company") to enjoin the shareholder vote on Proposal 4 scheduled to be held at the annual general meeting of Star Scientific shareholders on December 27, 2013 at the Mayfair Court Room of the Westin Georgetown Hotel, 2350 M Street, NW, Washington, D.C. 20037 (the "Shareholder Vote").

2.      On November 18, 2013 Star Scientific filed a Proxy Statement on Schedule 14A (the "Proxy") with the Securities and Exchange Commission (the "SEC") in connection with the Shareholder Vote on six Company proposals.  In the Proxy, the Star Scientific board of directors

1

(the "Board" or "Individual Defendants") recommends that Star Scientific's public shareholders vote to approve two amendments to the Company's 2008 Incentive Award Plan (the "Plan") to, (a) increase the number of shares available for issuance thereunder by 18,300,000 shares **and** (b) to increase the maximum number of shares of common stock that can be issued to any one participant in any one calendar year from 5,000,000 to 6,000,000 ("Proposal 4").

3.　The Proxy, with regard to Proposal 4 violates the "unbundling rules" promulgated by SEC under Section 14 of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), including SEC Rules 14a-4(a)(3) and 14a-4(b)(1) promulgated thereunder. The Proxy requires Plaintiff and Star Scientific shareholders to cast one single vote on separate matters by combining the amendments to the Plan into one single Proposal 4 asking shareholders to vote to, (a) increase the number of shares available for issuance thereunder by 18,300,000 shares **and** (b) to increase the maximum number of shares of common stock that can be issued to any one participant in any one calendar year from 5,000,000 to 6,000,000 ("Proposal 4"). The unbundling rules require that shareholders be allowed to vote on each separate matter presented in a proxy for shareholder vote.

4.　The combination of multiple amendments in Proposal 4 violated the SEC's unbundling rules set out in Rules 14a-4(a)(3 and 14a-4(b)(1) under the Exchange Act by aggregating two separate and unrelated amendments to Star Scientific's Plan and thus impermissibly attempts to force shareholders to cast a single vote on fundamentally separate matters.

5.　Adding insult to injury, Proposal 4 is not fully and accurately described in the Proxy. In fact, the Proxy contains several material disclosure violations regarding the reasons for, consideration and effects of Proposal 4, including how, and at what rate, the Plan may dilute

Star Scientific's public shareholders.  Without proper disclosure of this information, the Company's public shareholders will be unable to cast an informed vote on Proposal 4.

6.     By failing to disclose this material information, the Individual Defendants (as defined below) have violated their fiduciary duties of care, loyalty, good faith, and complete candor owed to Star Scientific's public shareholders.

7.     The dissemination of a materially misleading and incomplete Proxy in connection with the Shareholder Vote on Proposal 4 and the acts of the Individual Defendants, as more particularly alleged herein, constitute a breach of Defendants' fiduciary duties to Plaintiff and the Class (defined below), as well as a violation of applicable legal standards governing Defendants defined herein.

8.     Plaintiff seeks judicial relief to enjoin the vote until the Company complies with SEC Rules 14a-4(a)(3) and 14a-4(b)(1) by unbundling the two amendments in Proposal 4 and discloses all material information related to Proposal 4.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise in part under the Constitution and the laws of the United States, including Section 14(a) of the Exchange Act.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Star Scientific is incorporated in the district of Delaware.

## PARTIES

11.     Plaintiff is, and at all material times was, a shareholder of Star Scientific's common stock since prior to the wrongs complained of herein.

12.     Defendant Star Scientific is a corporation duly organized and existing under the laws of the State of Delaware.  Star Scientific maintains its principal executive offices at 4470 Cox Rd, Glen Allen, VA 23060.  Star Scientific develops, manufactures and sells nutraceutical dietary supplements and consumer products.  Star Scientific trades on the NASDAQ Stock Market under the ticker symbol "STSI."

13.     Defendant Paul L. Perito ("Perito") is the Company's President, Chief Operating Officer, and Chairman of the Board. He has served as a director of the Board since November 1999.

14.     Defendant Jonnie R. Williams ("Williams") is the Company's Chief Executive Officer. He has served as a director of the Company's Board since October 1998.

15.     Defendant Christopher C. Chapman ("Chapman") has served as a director of the Company's Board since September 2005.

16.     Defendant Neil L. Chayet ("Chayet") has served as a director of the Company's Board since September 2007.

17.     Defendant Ralph B. Everett ("Everett") has served as a director of the Company's Board since December 2012.

18.     Defendant Burton J. Haynes ("Haynes") has served as a director of the Company's Board since October 2010.

19.     Defendants Perito, Williams, Chapman, Chayet, Everett, and Haynes are sometimes collectively referred to herein as the "Individual Defendants."

20.     Collectively, the Individual Defendants and Star Scientific are referred to herein as the "Defendants."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of Star Scientific common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

22.     This action is properly maintainable as a class action.   The Class is so numerous that joinder of all members is impracticable.  As of November 9, 2013, there were 169,122,155 common shares outstanding.   The holders of these shares are believed to be geographically dispersed throughout the U.S.   The actual number of Star Scientific shareholders will be ascertained through discovery.

23.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.   The common questions include the following:

a.      Whether Defendants have breached their fiduciary duties of loyalty, independence, or due care, including disclosure, with respect to Plaintiff and the other members of the Class in connection with Proposal 4 and the issuance of the Proxy;

b.      Whether Defendants have breached any of their other fiduciary duties to Plaintiff and the other members of the Class in connection with Proposal 4 and the issuance of the Proxy, including the duties of good faith, diligence, honesty, fair dealing, and complete candor;

c.      Whether Defendants have violated Section 14(a) of the Exchange Act and SEC Rules 14a-4(a)(3) and 14a-4(b)(1) promulgated thereunder; and

d.      Whether Plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

24.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

25.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class.

27.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

28.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A.     The Company And The Proxy

29.     Star Scientific develops, manufactures, produces, and sells dietary supplements and consumer products. Through its Rock Creek Pharmaceuticals, Inc. subsidiary, the Company is engaged in the manufacture, sale, marketing and development of non-nicotine nutraceutical and dietary supplements, including Anatabloc for anti-inflammatory support, and CigRx for fighting the urge to smoke cigarettes. The Company also provides Anatabloc Facial Crème, an anatabine citrate based face cream to enhance the appearance of the skin; and other nutraceuticals, dietary supplements, and pharmaceutical products, which have a botanical-based component and designed to treat a range of conditions, including Alzheimer's disease,

6

Parkinson's disease, multiple sclerosis, schizophrenia, depression, and tobacco dependence. As of November 9, 2012, Anatabloc was being sold through the Company's interactive Website, a customer service center and on a consignment basis through GNC, a retailer of dietary supplements.

30.     On November 18, 2013, Star Scientific filed the Proxy with the SEC, informing shareholders of the Shareholder Vote on six proposals, including Proposal 4.  In Proposal 4, the Board recommends that Star Scientific's public shareholders vote to approve two amendments to the Company's 2008 Omnibus Incentive Award Plan to increase the total number of shares available for issuance thereunder by 18,300,000 shares **and** to increase the maximum number of shares of common stock that can be issued to any one participant in any one calendar year from 5,000,000 to 6,000,000.

**B.     The Proxy's Proposal 4 Violates The Federal Securities Laws**

31.     The Proxy, with regard to Proposal 4 seeks a single vote on separate matters by tying the amendments to increase the total number of shares available for issuance and the amendment to increase the maximum number of shares of common stock available for issuance for any one participant in any one calendar year together in a single proposal.

32.     Proposal 4 seeks: "an amendment to the Company's 2008 Incentive Award Plan to increase the number of shares available for issuance from 16,900,000 to 35,200,000, **and** to increase the maximum number of shares of common stock with respect to which awards may be granted under the 2008 Plan to any one participant in any one calendar year from 5,000,000 to 6,000,000."  Shareholders can only vote for both the proposed amendments, or against both of the proposed amendments.

33.     This "bundling of the proposed amendments to the Plan violates Rule 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act.

34.     Rule 14a-4(a)(3) provides:

(a) The form of proxy. . .

(3) Shall identify clearly and impartially *each matter intended to be acted upon,* whether or not related to or conditioned on the approval of other matters . . .
(emphasis added)

35.     Rule 14a-4(b)(1) provides:

Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention *with respect to each separate matter referred to therein as intended to be acted upon*, other than elections to office. (emphasis added).

36.     Each of the proposed amendments to the Plan constitute separate matters. Accordingly, Star Scientific shareholders are being wrongfully denied the right to vote separately on each separate matter, as contemplated by Rules 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act.

## C.      The Materially Misleading and Incomplete Proxy Regarding Proposal 4

37.     The Proxy provides that the purpose of the Company's Plan is designed to "facilitate the Company's ability to continue to issue equity incentive awards to the Company's officers, employees and directors."

38.     In particular, Proposal 4 of the Proxy states, in relevant part, the following:

## PROPOSAL 4:

## APPROVAL OF AN AMENDMENT TO THE 2008 PLAN

\* \* \*

**Amendment to the 2008 Plan**

The Board of Directors has adopted an amendment to the 2008 Plan to (a) increase the number of shares of common stock available for issuance under the

8

2008 Plan by 18,300,000 shares from 16,900,000 to 35,200,000 shares, and (b) to increase the maximum number of shares of common stock with respect to which awards may be granted under the 2008 Plan to any one participant in any one calendar year from 5,000,000 to 6,000,000. The proposed amendment to the 2008 Plan is designed to facilitate the Company's ability to continue to issue equity incentive awards to the Company's officers, employees and directors.

The principal features of the 2008 Plan, as amended, are described in summary form below and a copy of the amendment to the 2008 Plan is included as <u>Appendix C</u> to this Proxy Statement. The summary below is qualified in its entirety by reference to the 2008 Plan and the amendment included in <u>Appendix C</u> to this Proxy Statement. If this Proposal 4 is not approved by our stockholders, the amendment will not become effective, but the 2008 Plan will remain in effect in accordance with its present terms.

**Summary of 2008 Plan**

*General*. The 2008 Plan provides for the award of options to purchase common stock, restricted shares of common stock and certain other equity and equity-based awards to directors, officers, employees and consultants or advisors of the Company and certain affiliated entities. Both incentive stock options and nonstatutory stock options may be granted. Incentive stock options are intended to be treated as "incentive stock options" within the meaning of Section 422 of the Internal Revenue Code of 1986, as amended.

*Administration*. Our Board of Directors will administer the 2008 Plan, unless and until our Board of Directors delegates administration of the 2008 Plan to a committee, except with respect to any award granted to our independent directors, which must be administered by our Board of Directors. Subject to the terms and conditions of the 2008 Plan, the Board of Directors or a duly authorized committee thereof, has the authority to select the persons to whom awards are to be made, to determine the type or types of awards to be granted to each person, the number of awards to grant, the number of shares to be subject to such awards, the terms and conditions of such awards, the form of each award agreement, and to make all other determinations and decisions and to take all other actions necessary or advisable for the administration of the 2008 Plan.

*Eligibility*. Options, stock appreciation rights, or "SARs," restricted stock, restricted stock units, or "RSUs," and other awards under the 2008 Plan may be granted to individuals who are then employees, consultants or independent directors of our Company or one of our subsidiaries. As of October 30, 2013 we had approximately 30 employees and consultants, and six directors, including four Independent Directors (one of whom is standing for reelection at the Annual Meeting) who are eligible to receive grants under the 2008 Plan. The Compensation Committee determines which of our employees, consultants and directors will be granted awards under the 2008 Plan. No employee is entitled to participate in the 2008 Plan as a matter of right, nor does any such participation

constitute assurance of continued employment or service. Only those employees and consultants who are selected to receive grants by the Compensation Committee may participate in the 2008 Plan. The 2008 Plan also provides that certain stock option awards will be automatically granted to our independent directors, as described below under the heading "Automatic Option Grants to Directors." If this Proposal 4 is approved, the maximum number of shares that may be subject to awards granted under the 2008 Plan to any individual in any calendar year will be increased from 5,000,000 to 6,000,000.

*Share Reserve*. If this Proposal 4 is approved, up to 35,200,000 shares of our common stock (increased from 16,900,000) will be available for issuance under the 2008 Plan. If an award under the 2008 Plan expires or is terminated or canceled without having been exercised or settled in full, is forfeited back to or repurchased by our Company, the terminated portion of the award (or forfeited or repurchased shares subject to the award) will become available for future grant or sale under the 2008 Plan. If the exercise or purchase price of an award is settled through the tender of shares, or withholding obligations are met through the tender or withholding of shares, those shares tendered or withheld will again be available for issuance under the 2008 Plan. The payment of dividend equivalents in cash in conjunction with any outstanding awards are not counted against the shares available for issuance under the 2008 Plan.

*Awards*. The 2008 Plan provides for the award of stock options, SARs, restricted stock, RSUs, dividend equivalents, performance share awards, performance stock units, stock payments, deferred stock and performance-based awards or any combination thereof. Each award will be set forth in a separate agreement with the person receiving the award and will indicate the type, terms and conditions of the award.

·     Nonqualified stock options will provide for the right to purchase shares of our common stock at a specified price, and will become exercisable either on the grant date or in one or more installments after the grant date, subject to the participant's continued employment or service with us and/or subject to the satisfaction of pre-established performance targets. Nonqualified stock options will be granted with exercise prices no less than the fair market value of a share of our common stock on the date of grant, as determined in accordance with the 2008 Plan.

·     ISOs will be designed to comply with the provisions of the Internal Revenue Code and will be subject to specified restrictions contained in the Internal Revenue Code. Among such restrictions, ISOs must have an exercise price of not less than the fair market value of a share of common stock on the date of grant, may only be granted to employees, must expire within a specified period of

time following the optionee's termination of employment, and must be exercised within ten years after the date of grant.

· Restricted stock may be granted to participants and made subject to such restrictions as may be determined by the administrator. Typically, restricted stock may be forfeited for no consideration if the conditions or restrictions are not met, and may not be sold or otherwise transferred to third parties until restrictions are removed or expire. Recipients of restricted stock, unlike recipients of options, may have voting rights and may receive dividends, if any, prior to the time when the restrictions lapse.

· RSUs may be awarded to participants, typically without payment of consideration or for a nominal purchase price, but typically subject to vesting conditions including continued employment or pre-established performance targets. Stock underlying RSUs will not be issued until the RSUs have vested and in certain cases the issuance of the underlying stock may be delayed beyond vesting, and recipients of RSUs will have no voting or dividend rights with respect to the underlying shares prior to the time when the shares are issued.

· SARs granted under the 2008 Plan typically will provide for payments to the holder based upon increases in the price of our common stock over the base price of the SARs. Similar to nonqualified stock options, SARs will become exercisable on the grant date or in one or more installments after the grant date, subject to the participant's continued employment or service with us and/or subject to the satisfaction of pre-established performance targets. The administrator may elect to pay SARs in cash or in common stock or in a combination of both.

· Dividend equivalents represent the value of the dividends, if any, per share paid by us, calculated with reference to the number of shares covered by the stock options, SARs or other awards held by the participant.

· Performance share awards, performance stock units, and performance-based awards are stock-based awards that may be granted under the 2008 Plan. The right to vest in these awards generally will be based upon achievement of specific performance targets and these awards may generally be paid in cash or in

11

> common stock or in a combination of both. Performance awards also may include "phantom" stock awards that provide for cash payments based upon increases in the price of our common stock over a predetermined period.

Stock payments and the ability to defer certain awards also may be authorized by the administrator.

*Performance Criteria*. The performance criteria that will be used to establish performance goals are limited to the following: net sales, revenue, revenue growth or product revenue growth, operating income (before or after taxes, pre- or after-tax income (before or after allocation of corporate overhead and bonus), net earnings, earnings per share, net income (before or after taxes), return on equity, total shareholder return, return on assets or net assets, appreciation in and/or maintenance of share price, market share, gross profits, earnings (including earnings before taxes, earnings before interest and taxes or earnings before interest, taxes depreciation and amortization), economic value-added models or equivalent metrics, comparisons with various stock market indices, reductions in costs, cash flow or cash flow per share (before or after dividends), return on capital (including return on total capital or return on invested capital) cash flow return on investment, improvement in or attainment of expense levels, operating margins, gross margins or cash margin, year-end cash, debt reductions, shareholder equity, market share, regulatory achievements, and implementation, completion or attainment of measurable objectives with respect to research, development, products or projects and recruiting and maintaining personnel.

*Automatic Option Grants to Directors*. The 2008 Plan provides that each new Independent Director is granted a stock option to purchase up to 50,000 shares of common stock on the date such Independent Director is first elected to the Board of Directors, vesting in equal installments on each of the first two anniversaries of the date of grant. In addition, the 2008 Plan provides that each Independent Director receives a stock option to purchase up to 50,000 shares of common stock granted on each anniversary of such Independent Director's initial election to the Board of Directors, exercisable immediately. The exercise price of the options automatically granted to Independent Directors is equal to 100% of the fair market value of a share of our common stock on the date of grant (as determined in accordance with the 2008 Plan). No portion of an option automatically granted to an Independent Director is exercisable after the tenth anniversary after the date of option grant.

*Transferability of Awards*. Unless the administrator determines otherwise, the 2008 Plan does not allow for the transfer of awards other than by will or by the laws of descent and distribution, and only the participant may exercise an award during his or her lifetime.

*Corporate Transactions*. If there is a nonreciprocal transaction between our Company and its stockholders such as a stock dividend, stock split, spin-off, or

recapitalization through a large, nonrecurring cash dividend, then the administrator will make proportionate adjustments (if any), as the administrator in its discretion may deem appropriate, to the number and type of securities subject to each outstanding award under the 2008 Plan, and the exercise price or grant price of such outstanding award (if applicable).

If there is any other distribution, merger, consolidation, combination, exchange or other corporate event affecting our common stock or the share price of our common stock (other than a nonreciprocal transaction as described above), the administrator:

- may appropriately adjust the aggregate number and type of shares of our common stock subject to the 2008 Plan, the terms and conditions of any outstanding awards, and the grant or exercise price per share of outstanding awards;

- may provide for the termination of any award in exchange for an amount of cash (if any) equal to the amount that would have been attained upon the exercise of such award or realization of the participant's rights;

- may provide for the replacement of any award with other rights or property selected by the administrator in its sole discretion;

- may provide that any outstanding award cannot vest, be exercised, or become payable after such event;

- may provide that all awards shall be exercisable, payable, or fully vested as to all shares of our common stock covered thereby;

- may provide that any surviving corporation (or its parent or subsidiary) shall assume awards outstanding under the 2008 Plan or shall substitute similar awards for those outstanding under the 2008 Plan, with appropriate adjustment of the number and kind of shares and the prices of such awards; or

- may make adjustments (i) in the number and type of shares of our common stock (or other securities or property) subject to outstanding awards or in the number and type of shares of restricted stock or deferred stock or (ii) to the terms and conditions of (including the grant or exercise price) and the criteria included in, outstanding rights, options, and awards or future rights, options, and awards.

In the event of our change in control where the successor entity does not assume or substitute awards granted under the 2008 Plan, awards issued under the 2008

13

Plan will become fully vested and exercisable immediately prior to the change in control.

*Amendment and Termination of the 2008 Plan*. Our Board of Directors or a duly authorized committee may terminate, amend or modify the 2008 Plan. However, stockholder approval of any amendment to the 2008 Plan will be obtained to the extent necessary and desirable to comply with any applicable law, regulation or stock exchange rule, or for any amendment to the 2008 Plan that increases the number of shares available under the 2008 Plan (other than any adjustment as provided by the 2008 Plan with respect to changes in capital structure). Absent approval of the stockholders, no option may be amended to reduce the per-share exercise price of shares subject to such option below the per-share exercise price as of the date the option is granted, and except as permitted by the 2008 Plan with respect to changes in capital structure, no option may be granted in exchange for, or in connection with, the cancellation or surrender of an option having a higher exercise price. If not terminated earlier by the Board of Directors, or a duly authorized committee thereof, the 2008 Plan will terminate ten years after the plan is approved by our Board of Directors.

\* \* \*

**Plan Benefits**

The table below shows, as to our Named Executives and the various indicated groups, the number of shares of our common stock subject to outstanding awards granted under the 2008 Plan as of October 30, 2013. All future awards under the 2008 Plan will be subject to the discretion of the Board of Directors, except that in accordance with the terms of the 2008 Plan, each of our Independent Directors is granted a stock option to purchase up to 50,000 shares of common stock on the date such Independent Director is first elected to the Board of Directors and on each anniversary of such Independent Director's initial election to the Board of Directors thereafter.

| Name and Position | Number of Shares Subject to Stock Option Awards(1) |
|---|---|
| Jonnie R. Williams, Sr., *Chief Executive Officer* | 6,150,000 |
| David M. Dean, *Vice President Sales and Marketing* | 500,000 |
| Park A. Dodd, III, *Chief Financial Officer* | 85,000 |
| Paul L. Perito, *Chairman, President and Chief Operating Officer* | 5,250,000 |
| Robert E. Pokusa, *General Counsel* | 35,000 |

| | |
|---|---|
| All current executive officers as a group | 12,020,000 |
| All employees and officers who are not executive officers as a group | 2,100,000 |
| All current directors who are not executive officers as a group | 1,050,000 |
| | 15,170,000 |

(1) The weighted average exercise price of these options is $2.85 and the weighted remaining contractual life of these options is 7.26 years. Includes amounts transferred into the 2008 Plan from the 1998 Stock Option Plan and the 2000 Equity Incentive Plan.

39. The Proxy, however, is deficient in its disclosure regarding Proposal 4, as follows:

- The dilutive impact of issuing the requested additional shares may have on existing shareholders, including a burn rate and overhang analysis. The Board fails to disclose any concrete estimate of the dilutive effect the Company's stockholders can expect from the issuance of more than double the number of available shares by increasing the Plan by an additional 18,300,000 shares;

- The projected stock grants under consideration for executives and directors and the Company's historical grant practices;

- The quantitative data used by the Board to determine the number of additional shares requested to be authorized. While the Proxy at page 38 recommends that the Company's shareholders approve the authorization of an additional 18,300,000 shares, the Proxy fails to disclose what the Board considered before recommending that the Company's shareholders approve these additional shares;

- The criteria or measures which the Compensation Committee relied upon when issuing Stock Appreciation Rights or Restricted Stock. The Proxy at page 39 provides that the Plan "provides for the award of stock options, SARs, restricted stock, RSUs, dividend equivalents, performance share awards, performance stock units, stock payments, deferred stock and performance-based awards or any combination thereof," but the Proxy fails to disclose the criteria used by the Board to grant such awards.

Not only is the Proxy materially misleading and incomplete for the reasons stated above, but the effects of Proposal 4 if approved are dramatic and merit full disclosure to Star Scientific's public

shareholders.  The graph below illustrates the dilutive effects of Proposal 4 in different scenarios

corresponding to share price increases and are not disclosed to the Company's shareholders:



*Appreciation of Star Scientific Stock from Current Price*

40.     It is clear that Star Scientific has failed to disclose material information in its

Proxy.  Absent this Court's intervention, Star Scientific's public shareholders will be irreparably

harmed by being forced to cast an uninformed vote in favor of Proposal 4 without full and

adequate disclosure.   Monetary damages will not compensate shareholders for the value of

material information necessary for the Company's public shareholders' right to cast this fully-

informed vote.

41.     Accordingly,  the  Shareholder  Vote  should  be  enjoined  until  the  Company

provides adequate disclosures  regarding Proposal 4 and unbundles the proposed amendments in

Proposal 4 to comply with Rules 14a-4(a)(3) and 14a-4(b)(1) under the Exchange Act.

### FIRST CAUSE OF ACTION
### <u>CLAIM FOR VIOLATIONS OF SECTION 14(a) OF THE EXCHANGE ACT AND SEC RULES 14a-4(a)(3) and 14a-4(b)(1)</u>

42.     Plaintiff repeats and realleges each allegation set forth herein.

43.     Section 14(a) of the Exchange Act provides:

It shall be unlawful for any persons by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security registered pursuant to Section 12 of this act.

44.     Star Scientific's issuance of the Proxy contravened rules and regulations prescribed by the Commission and therefore violated Section 14(a) of the Exchange Act. SEC Rule 14a-4(a)(3) provides:

(a) The form of proxy. . .

(3) Shall identify clearly and impartially *each matter intended to be acted upon*, whether or not related to or conditioned on the approval of other matters . . .
(emphasis added)

45.     Rule 14a-4(b)(1) provides:

Means shall be provided in the form of proxy whereby the person solicited is afforded an opportunity to specify by boxes a choice between approval or disapproval of, or abstention *with respect to each separate matter referred to therein as intended to be acted upon*, other than elections to office. (emphasis added).

46.     The Proxy violate SEC Rule 14a-4(a)(3) and 14a-4(b)(1) because they tie together two separate matters including (a) the amendment to increase the total number of shares available for issuance by 18.3 million shares, from the 16.9 million shares currently authorized to 35.2 million; **and** (b) an amendment to increase the maximum number of shares of common stock available for issuance for any one participant in any one calendar year.  In doing so, Star Scientific attempts to prevent shareholders from exercising their rights to separately vote on each item in Proposal 4, as contemplated by the "unbundling rules" promulgated under the Exchange Act.

47.     Plaintiff and the members of the Class have no adequate remedy at law.

17

## SECOND CAUSE OF ACTION
## <u>CLAIMS FOR BREACHES OF FIDUCIARY DUTIES AGAINST THE INDIVIDUAL DEFENDANTS</u>

48.     Plaintiff repeats and realleges each allegation set forth herein.

49.     The Individual Defendants have violated fiduciary duties of care, loyalty, good faith, and complete candor owed to Star Scientific's public shareholders.

50.     Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding Proposal 4.

51.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

52.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury if they are forced to vote on Proposal 4 without adequate information.

53.     Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD CAUSE OF ACTION
## <u>CLAIM AGAINST STAR SCIENTIFIC FOR AIDING AND ABETTING THE INDIVIDUAL DEFENDANTS' BREACH OF FIDUCIARY DUTIES</u>

54.     Plaintiff repeats and realleges each allegation set forth herein.

55.     Star Scientific has acted and is acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Star Scientific's public shareholders, and has participated in such breaches of fiduciary duties by allowing the issuance of a materially misleading and incomplete Proxy.

56.     Star Scientific knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, Star Scientific rendered substantial assistance in order

to effectuate the Individual Defendants' plan to seek approval of Proposal 4 in the Proxy in breach of their fiduciary duties.

57.     Plaintiff and the members of the Class have no adequate remedy at law.

### <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and Plaintiff's counsel as class counsel;

B.     Declaring and decreeing that the Proxy with regard to Proposal 4 was issued in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful;

C.     Declaring that Star Scientific aided and abetted the Individual Defendants in connection with the issuance of a materially misleading and incomplete Proxy with regard to Proposal 4;

D.     Declaring that the Proxy, with regard to Proposal 4 violated SEC Rules 14a-4(a)(3) and 14a-4(b)(1) of the Exchange Act;

E.     Enjoining Defendants from accepting votes or consummating the Shareholder Vote on Proposal 4, until the Company provides adequate disclosure and complies with the unbundling rules promulgated by SEC Rules 14a-4(a)(3) and 14a-4(b)(1) of the Exchange Act;

F.     Imposing a constructive trust over the newly authorized shares if the Shareholder Vote occurs prior to supplemental disclosure of the material information or compliance with Rules 14a-4(a)(3) and 14a-4(b)(1) sought herein;

G.      Rescinding, to the extent already implemented, the Shareholder Vote on Proposal 4 if the vote occurs prior to supplemental disclosure of the material information or compliance with Rules 14a-4(a)(3) and 14a-4(b)(1) sought herein; and

H.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:   December 4, 2013                    Respectfully submitted,


                                              **FARUQI & FARUQI, LLP**

                                              By:  */s/ Peter B. Andrews*
                                              Peter B. Andrews (Del. Bar No. 4623)
                                              20 Montchanin Road, Suite 145
                                              Wilmington, DE 19807
                                              Tel: (302) 482-3182
                                              E-mail: pandrews@faruqilaw.com



**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Ave., Tenth Floor
New York, NY  10017
Tel:  212-983-9330
E-mail: jmonteverde@faruqilaw.com

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dennis Todic

**DEFENDANTS**

Star Scientific, Inc., Paul L. Perito, Jonnie R. Williams, Christopher C. Chapman, Neil L. Chayet, Ralph B. Everett and Burton J. Haynes

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Peter B. Andrews, Faruqi & Faruqi, LLP, 20 Montchanin Road, Suite 145, Greenville, DE 19807

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C Section 78a et seq.

Brief description of cause:
Violation of the Securities Exchange Act of 1934

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____

DOCKET NUMBER _____

DATE
12/04/2013

SIGNATURE OF ATTORNEY OF RECORD
/s/ Peter B. Andrews (#4623)

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG JUDGE _____