IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KERRY LAMBERT, on Behalf of Himself and All Others Similarly Situated | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-07945 |
| v. | ) ) | Hon. Ronald A. Guzman |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF KERRY LAMBERT
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

422997.1

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 3

ARGUMENT ................................................................................. 6

I.  THE PSLRA SUPPORTS APPOINTMENT OF LAMBERT AS LEAD
    PLAINTIFF FOR THE CLASS........................................................................ 6

    A.  The PSLRA's Provisions Concerning The Appointment Of Lead Plaintiff ............. 6

    B.  Under The PSLRA, Lambert Should Be Appointed Lead Plaintiff........................... 7

        1.  Lambert Filed the Complaint ........................................................ 8

        2.  Lambert Has a Substantial Financial Interest.................................. 8

        3.  Lambert Satisfies the Requirements of Rule 23............................... 9

            a.  Lambert's Claims are Typical of the Class's Claims ..................... 10

            b.  Only Lambert Meets the Adequacy of Representation
                Requirements........................................................................ 10

    C.  Under *Dollens* Lambert Should be Appointed Lead Plaintiff ................................ 11

II.  THE FARUQI FIRM AND LITE DEPALMA SHOULD BE NAMED LEAD
     AND LIAISON COUNSEL FOR THE CLASS ............................................... 13

CONCLUSION........................................................................................................ 15

422997.1

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*In re Appraisal of The Orchard Enterprises, Inc.*,
2012 WL 2923305 (Del. Ch. July 18, 2012)................................................................13

*In re Bally Total Fitness Sec. Litig.*,
2005 U.S. Dist. LEXIS 6243 (N.D. Ill. March 15, 2005)............................................7

*Bang v. Acura Pharms., Inc.*,
2011 U.S. Dist. LEXIS 2550 (N.D. Ill. Jan. 11, 2011)............................................10

*Booth Family Trust v. Jeffries*,
640 F.3d 134 (6th Cir. 2011)....................................................................................14

*City of Sterling Heights Gen. Emps. Retirement Health Sys. v. Hospira, Inc.*,
2012 U.S. Dist. LEXIS 54081 (N.D. Ill. April 18, 2012)........................................10

*In re Cree, Inc., Sec. Litig.*,
219 F.R.D. 369 (M.D.N.C. 2003)...............................................................................2

*Dollens v. Zionts*,
2001 U.S. Dist. LEXIS 19966 (N.D. Ill. Dec. 4, 2001)...................................*passim*

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996).....................................................................................12

*Knee v. Brocade Communications Systems, Inc.*,
No. 1-12-CV-220249, slip op.
(Cal. Super. Santa Clara Cnty. Apr. 10, 2012).......................................................14

*Kubiak v. Barbas*,
2011 U.S. Dist. LEXIS 65903 (S.D. Ohio June 14, 2011).......................................14

*In re Lucent Techs. Sec. Litig.*,
194 F.R.D. 137 (D.N.J. 2000)..........................................................................2, 13, 15

*In re Lukens Inc. S'holders Litig.*,
757 A.2d 720 (Del. Ch. 1999), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000)....8, 9

*Midcon Corp. v. Freeport-McMoran, Inc.*,
625 F. Supp. 1475 (N.D. Ill. 1986)............................................................................9

422997.1

*In re Milestone Sci. Sec. Litig.*,
  187 F.R.D. 165 (D.N.J. 1999) ...................................................................................15

*In re Motorola Sec. Litig.*,
  2003 U.S. Dist. LEXIS 12651 (N.D. Ill. July 16, 2003) ..........................................10

*In re Orchard Enterprises, Inc. Stockholder Litigation*,
  C.A. No. 7840-VCL (Del. Ch.) ..................................................................................13

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
  256 F.R.D. 620 (E.D. Wis. 2009) ..............................................................................13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) ...............................................................................12

*Salyers v. Boomer*,
  2011 U.S. Dist. LEXIS 73238 (N.D. Ill. July 5, 2011)........................................2, 15

*In re Staples S'holders Litig.*,
  792 A.2d 934 (Del. Ch. 2001).......................................................................................9

*Takara Trust v. Molex Inc.*,
  229 F.R.D. 577 (N.D. Ill. 2005)..................................................................................10

*In re Talley Indus., Inc. S'holders Litig.*,
  1998 WL 191939 (Del. Ch. Apr. 13, 1998) ...............................................................12

## Statutes

15 U.S.C. §§ 78u-4(a) .................................................................................... *passim*

## Other Authorities

6A Charles Alan Wright & Arthur R. Miller,
  Federal Practice and Procedure: Civil 2d § 1522....................................................12

Kerry Lambert ("Lambert" or "Plaintiff") respectfully submits this memorandum of law pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of his motion for the entry of an order (1) appointing Lambert as Lead Plaintiff for the above-captioned action (the "Action"); and (2) approving his selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel and Lite DePalma Greenberg, LLC ("Lite DePalma" and, together with the Faruqi Firm, "Plaintiff's Counsel") as Liaison Counsel.

## PRELIMINARY STATEMENT

This Action arises in the unique context of litigation regarding a tender offer transaction (the "Transaction"). Plaintiff filed this Action on November 5, 2013, just four days after Defendants filed a Schedule 14D-9 ("14D-9") recommending a merger whereby Tellabs, Inc., ("Tellabs" or the "Company") would be acquired by an affiliate of Marlin Equity Partners ("Marlin"). Perhaps more importantly, the tender offer was set to expire on December 2, 2013, less than thirty days after the filing of this Action. Decisive intervention was necessary.

With the date for consummation of the Transaction fast approaching, Lambert, through Plaintiff's Counsel, obtained expedited discovery, consulted experts, evaluated the facts and law applicable to his claims, and commenced settlement negotiations. On November 24, 2013, nineteen days after the filing of the Action, the parties entered into a Memorandum of Understanding ("MOU") to settle this Action in exchange for additional disclosures made to Tellabs' shareholders in connection with the Transaction. Thus, through the prompt and zealous advocacy of Plaintiff and his counsel, Tellabs provided supplemental disclosures to its shareholders prior to the expiration of the Tender Offer (defined below), providing shareholders with material information to decide whether to tender their shares or to seek appraisal rights.

1

Under the standards set forth by the PSLRA for appointment of the most adequate lead plaintiff, regardless of whether another plaintiff comes forward with a greater financial interest, Lambert should be appointed as Lead Plaintiff not only because he filed the Complaint (defined below) in this Action, but also because he is the only plaintiff who already has and will continue to fairly and adequately protect the interests of the class. Moreover, by virtue of Lambert's diligent and timely actions, Lambert alone will not be subject to unique defenses which would apply to any other party seeking appointment as Lead Plaintiff.

Moreover, appointment of Lambert as Lead Plaintiff is consistent with the factors set forth in *Dollens v. Zionts*, 2001 U.S. Dist. LEXIS 19966, at *15 (N.D. Ill. Dec. 4, 2001) (hereinafter the "*Dollens* factors") that courts within this District have long applied when appointing lead plaintiffs in actions not expressly governed by the PSLRA. Indeed, the quality of the pleadings and the vigor and zeal with which Lambert has prosecuted this Action—two out of the three *Dollens* factors—weigh heavily in favor of the appointment of Lambert as Lead Plaintiff.

As well, this Court is under an obligation to make certain that Lead Counsel best suits the needs of the class. *See In re Cree, Inc., Sec. Litig.*, 219 F.R.D. 369, 373 (M.D.N.C. 2003). The Court is not bound by the lead plaintiff's choice and the selection "is not governed by the same statutory guidelines which control the lead plaintiff determination," but is within the discretion of the court. *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 155 (D.N.J. 2000).[1] Courts within this District recognize that this discretion should be guided by three *Dollens* factors, s*ee Salyers v. Boomer*, 2011 U.S. Dist. LEXIS 73238, at *3 (N.D. Ill. July 5, 2011), and under these factors,

---

[1]     All internal quotations and citations omitted unless otherwise noted.

regardless of who is appointed Lead Plaintiff, the vigor and zeal with which this Action has been prosecuted warrant approval of the Faruqi Firm and Lite DePalma as Lead Counsel and Liaison Counsel, respectively.

## FACTUAL BACKGROUND

Tellabs is a Delaware corporation based in Naperville, Illinois that designs, develops, and supports telecommunications networking products. This Action concerns a merger announced on October 21, 2013 whereby Tellabs was to be acquired by an affiliate of Marlin through a tender offer that expired on December 2, 2013. Prior to the tender offer that is the subject of this Action, Tellabs was listed on the NASDAQ exchange under the ticker TLAB.

On or about April 30, 2013, the Tellabs Board of Directors (the "Tellabs Board") authorized a formal process to explore Tellabs' strategic alternatives. As part of this process, Goldman Sachs & Co. ("Goldman Sachs") was authorized to contact specified third parties to determine whether they were interested in pursuing a possible transaction with Tellabs.

On October 18, 2013, the Tellabs Board entered into an Agreement and Plan of Merger (as amended or modified from time to time, the "Merger Agreement"), by and among the Company, Blackhawk Merger Sub Inc., and Blackhawk Holding Vehicle LLC, which *inter alia*, contemplated a cash tender offer of $2.45 per share of Tellabs stock (the "Tender Offer") by Blackhawk Merger Sub Inc. and, following the consummation of the Tender Offer and subject to the satisfaction or, if permissible, waiver of the other conditions set forth in the Merger Agreement, Blackhawk Merger Sub Inc. would merge with and into the Company with the Company surviving the merger.

On November 1, 2013, Tellabs filed the 14D-9 with the Securities and Exchange Commission (the "SEC") related to the Tender Offer. The 14D-9 stated that the Tender Offer expired at 11:59 p.m. EST on December 2, 2013. Just four days after Tellabs filed the 14D-9, on

3

November 5, 2013 Plaintiff filed a putative stockholder class action complaint (the "Complaint") styled *Lambert v. Tellabs, Inc., et al.*, Case No. 1:13-cv-7945 (Dkt. No. 1), alleging that the Tellabs Board breached its fiduciary duties under applicable law to Tellabs' stockholders by entering into and approving the Transaction and that Marlin aided and abetted such breaches. The Complaint also asserted that Tellabs' disclosures in connection with the Transaction omitted certain material information in violation of Rules 14(e) and 20(a) of the Exchange Act.

Recognizing that prompt and decisive action was required, on November 5, 2013, Plaintiff also filed a motion seeking expedited discovery in this Action. Subsequently, Plaintiff's Counsel and counsel for Defendants ("Defendants' Counsel") met and conferred regarding expedited discovery and reached an agreement regarding the production of certain documents. Following the agreement by the parties to be bound by the terms of a protective order, Defendants provided to Plaintiff certain documents relating to his claims, including minutes of meetings of the Tellabs Board and extensive presentations to the Tellabs Board by its financial advisor, Goldman Sachs, and Tellabs management, which Plaintiff's Counsel reviewed.

On November 20, 2013, Defendants filed a Motion to Dismiss the Complaint for failure to state a claim. After receipt and analysis of the expedited discovery and consultation with experts, on the same day, Plaintiff sent a demand letter to Defendants in an effort to resolve the Action (the "Demand Letter"). Subsequent to receipt of the Demand Letter, Plaintiff and Defendants, through their respective counsel, commenced arm's-length negotiations regarding a potential resolution of the claims asserted in the Action.

Only nineteen days after the filing of this Action, the parties completed their negotiations and reached a settlement (the "Settlement") reflected in principle in the MOU executed on

4

November 24, 2013, eight days prior to the expiration of the Tender Offer.[2] Pursuant to the terms of the Settlement, Tellabs agreed to provide material supplemental disclosures (the "Supplemental Disclosures") in an amendment to the 14D-9 (the "Amendment"), addressing concerns raised by the Complaint regarding materially incomplete and misleading disclosures.

Importantly, knowing that time was of the essence, Plaintiff arranged through the Settlement for these material supplemental disclosures to be provided *prior* to the expiration of the Tender Offer, giving Tellabs shareholders material information in time to decide whether to tender their shares as well as whether to seek appraisal rights. The Amendment states that these increased disclosures were made only because of the "*Lambert* action." (*See* Ex. A.)

On November 25, 2013, Tellabs filed the Amendment with the SEC, thereby providing the class with the Supplemental Disclosures and publicly announcing that it had entered the MOU. Also on November 25, 2013, the parties informed the Court of their agreement to resolve the Action and Defendants withdrew their Motion to Dismiss without prejudice.

On December 2, 2013, the Transaction closed, and Marlin completed its acquisition of Tellabs on or about December 3, 2013.

On March 20, 2014, Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust (together, the "*Englehart* Plaintiffs") filed an action styled *Englehart v. Tellabs Inc., et al.*, Case No. 1:14-cv-01990 (the "*Englehart* Action") in this District and published a lead plaintiff notice. The *Englehart* Action also arises out of and concerns the

---

[2]     The MOU entered into by the parties provided for certain additional confirmatory discovery. In that regard, Plaintiff's Counsel took three depositions on January 30 and 31, 2014 and February 12, 2014 and reviewed thousands of pages of documents. Further, Plaintiff and his counsel also confirmed with the assistance of a reputable financial expert that the price in the Transaction was fair. Consequently, the Settlement was reached through arm's-length negotiations at a time when Plaintiff and Plaintiff's Counsel had a thorough understanding of the strengths and weaknesses of the claims asserted in the Action.

Transaction, names the same defendants as this Action, and was filed on behalf of the same putative class, however, since it was filed after the consummation of the Tender Offer it seeks rescission of the acquisition or, if not feasible, damages. In contrast, the Complaint in this Action was filed before the Tender Offer had expired and sought relief prior to the consummation of the Transaction—enjoining the Transaction due to misrepresentations and omissions in the 14D-9. (Dkt. No. 1.)

On March 21, 2014, Plaintiff's Counsel submitted the finalized Settlement papers to the Court. The Settlement Agreement was subsequently amended providing for certification for settlement purposes pursuant to Fed. R. Civ. P. 23(b)(3), thus allowing for individual opt-outs. (*See* Ex. B.)

On March 24, 2014, the *Englehart* Plaintiffs filed a motion in this Action seeking to reassign the *Englehart* Action to this Court, to consolidate the *Englehart* Action and this Action, and to stay all proceedings in the consolidated action. (Dkt. No. 68.) On April 25, 2014 this Court issued an order denying the *Englehart* Plaintiffs' motion to reassign and consolidate the *Englehart* Action and stay this Action. This Court noted that it would address Lambert's motion for preliminary approval of the Settlement after lead plaintiff and lead counsel issues are resolved. (Dkt. No. 79.) Pursuant to the Court's order, on May 14, 2014, Plaintiff's Counsel issued via *PR Newswire* a notice of the filing of the class action against Tellabs. (*See* Ex. C.)

**ARGUMENT**

**I.    THE PSLRA SUPPORTS APPOINTMENT OF LAMBERT AS LEAD PLAINTIFF FOR THE CLASS**

**A.    The PSLRA's Provisions Concerning The Appointment Of Lead Plaintiff**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules

6

of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) & (a)(3)(B)(i). Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is to consider any motion made by a class member and is to appoint as the lead plaintiff the "member or members" that the Court determines to be "most capable of adequately representing the interests of class members." Further, the PSLRA "[i]n general" establishes a ***rebuttable presumption*** that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice (published by a complainant);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the presumptive lead plaintiff is determined, the presumption can be rebutted upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

While the PSLRA provides the above factors for the Court to take into consideration when naming the lead plaintiff, "the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case." *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *11 (N.D. Ill. March 15, 2005).

### B. Under The PSLRA, Lambert Should Be Appointed Lead Plaintiff

Lambert should be appointed Lead Plaintiff in this Action under both the PSLRA and the *Dollens* factors. Lambert not only filed the Complaint, but, to date, **has already** fairly and adequately protected the interests of the class, advocated zealously for the class, and vigorously prosecuted this Action on behalf of the class. Lambert will continue to do so in the future.

### 1.      Lambert Filed the Complaint

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa), the first factor a court should consider when determining which plaintiff is the most adequate plaintiff is whether such plaintiff either filed the complaint or made a motion for lead plaintiff.  Lambert filed the Complaint in this Action on November 5, 2013, and thus meets this first factor.

### 2.      Lambert Has a Substantial Financial Interest

The PSLRA instructs the Court, to adopt a *rebuttable* presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  As evidenced by Lambert's certification attached to the Complaint (Dkt. No. 1), Lambert has a substantial financial interest in the litigation.

The PSLRA, however, only states that "*[i]n general*" the class member with the greatest financial interest is presumptively the most adequate plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).  But, there is nothing "general" or routine about this Action.  Unlike traditional 10b-5 litigation under the PSLRA, time was of the essence in this Action due to the expiration date of the Tender Offer.  Through the substantive and improved Supplemental Disclosures in the Amendment, Tellabs stockholders received additional material information necessary to evaluate the fairness of the Transaction and the accuracy of the disclosures and/or the reliability of the financial advisor's valuation analyses and opinion, and to ultimately determine whether or not to exercise their appraisal rights.

Courts have recognized that the most meaningful remedy for a violation of disclosure obligations in conjunction with a merger or acquisition is increased disclosure before the Transaction is closed, not a subsequent claim for money damages or an attempt to "unscramble the eggs" through rescission.  *See, e.g.*, *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 728

(Del. Ch. 1999), *aff'd Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000); *see also In re Staples S'holders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001) (the most "appropriate relief" for disclosure based claims is increased disclosure, because "an after-the-fact damages case is not a precise or efficient method by which to remedy disclosure deficiencies"); *Midcon Corp. v. Freeport-McMoran, Inc.*, 625 F. Supp. 1475, 1479 (N.D. Ill. 1986) (After the merger is complete "it would be virtually impossible to 'unscramble the eggs' and return the two companies to the status quo."). Thus, to obtain meaningful relief for the class, Plaintiff did not have time under the normal PSLRA process to conduct discovery, complete the investigation of his claims, and secure additional disclosure either through settlement or through a preliminary injunction.

In other cases not expressly governed by the PSLRA, Courts within this District, as well as the Delaware courts, have long applied the *Dollens* factors to select a lead plaintiff. Specifically, courts analyze three factors to select a lead plaintiff: "(1) the quality of the pleading that appears best able to represent the interests of the . . . plaintiffs; (2) the shareholder plaintiff that has the greatest economic interest in the action; and (3) whether a particular litigant has prosecuted its lawsuit with greater energy, enthusiasm or vigor than have other similarly situated litigants." *Dollens*, 2001 U.S. Dist. LEXIS 19966, at *15. Given the unique posture of this Action, regardless of whether another class member comes forward with a greater financial interest in this litigation, the quality of the pleadings and the vigor and zeal with which Lambert has prosecuted this Action—or two out of the three *Dollens* factors—weigh heavily in favor of the appointment of Lambert as Lead Plaintiff.

### 3.  Lambert Satisfies the Requirements of Rule 23

The PSLRA provides that the presumptive lead plaintiff must also satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). The typicality and adequacy elements of Rule 23 are the only relevant

9

considerations to the appointment of a lead plaintiff under the PSLRA. *See City of Sterling Heights Gen. Emps. Retirement Health Sys. v. Hospira, Inc.*, 2012 U.S. Dist. LEXIS 54081, at *24 (N.D. Ill. April 18, 2012).

### a. Lambert's Claims are Typical of the Class's Claims

Typicality is established where each class member's claims "arise out of the same event or practice or course of conduct that gives rise to the claims of other class members and its claims are based on the same legal theory." *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 580 (N.D. Ill. 2005).

The claims of Lambert are clearly typical of the class's claims: Lambert and the class members each held Tellabs stock from the time the Transaction was announced through the expiration of the Tender Offer, each suffered damages as a result of the Company's false and misleading statements, and each possess claims against Tellabs under the Exchange Act and state law. Because the factual and legal bases of Lambert's claims are similar, if not identical, to those of the class's claims, Lambert satisfies the typicality requirement. *See Bang v. Acura Pharms., Inc.*, 2011 U.S. Dist. LEXIS 2550, at *10 (N.D. Ill. Jan. 11, 2011) (finding typicality where plaintiff "provide[d] detailed information regarding the purchase and sale of [the company's] stock during the [c]lass [p]eriod and the resulting losses its investors suffered").

### b. Only Lambert Meets the Adequacy of Representation Requirements

"To meet the adequacy requirement, the plaintiff must demonstrate that (1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; and (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at *11 (N.D. Ill. July 16, 2003).

10

First, the claims of Lambert are not antagonistic to the class's claims. Lambert and the class members each held Tellabs stock from the time the Transaction was announced through the expiration of the Tender Offer and suffered damages as a result of the Company's false and misleading statements. The Supplemental Disclosures provided both Lambert and the rest of the class with material information to decide whether to tender their shares in support of the Transaction as well as whether to seek appraisal rights

Second, Lambert and his counsel have already undertaken zealous advocacy of this Action from inception through Settlement, most importantly securing the Supplemental Disclosures. Lambert is represented by competent, experienced counsel which, if appointed, will continue prosecute the litigation vigorously. Indeed, Lambert has already submitted finalized Settlement papers to the Court.

## C. Under *Dollens* Lambert Should be Appointed Lead Plaintiff

As detailed above, while this Action is governed by the PSLRA, due to the timing of the Tender Offer, Plaintiff could not secure meaningful supplemental disclosure—the preferred remedy for the class's claims—and allow the PSLRA process for the appointment of Lead Plaintiff to run its course. As a result, the Court should apply the *Dollens* factors to select a lead plaintiff. Two out of these three factors—the quality of the pleadings and the vigor of prosecution—strongly favor the appointment of Lambert over any other class member who may seek appointment. Therefore, even if another class member comes forward with a greater financial interest in the Action, this Court should appoint Lambert as Lead Plaintiff.

Indeed, Lambert timely filed the Complaint and a motion for expedited discovery that was of sufficient quality and merit to convince Defendants to voluntarily provide Plaintiff with documents on an expedited basis. It was the Complaint and discovery which ultimately led to

11

Tellabs providing class members with the Supplemental Disclosures. Thus, the quality of Lambert's pleadings are demonstrated by the results obtained.

Lambert, through his counsel, vigorously prosecuted this Action. Lambert filed the Complaint, secured, reviewed, and analyzed expedited discovery, consulted with experts, drafted a compelling Demand Letter, obtained the MOU and Settlement, conducted confirmatory discovery, and filed a motion for preliminary approval of the Settlement. As a result of Lambert's zealous prosecution, Tellabs issued curative disclosures which conferred a substantial benefit to the class. *See In re Talley Indus., Inc. S'holders Litig.*, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998) ("[T]he timely disclosure of the information in the supplement was presumably of greater value to the class than any potential award of damages based on the failure to disclose the same information, as such information is of the greatest utility when it is available in a timely manner to inform the stockholders' decision making process.").

Thus, Lambert was able to obtain the Settlement in time to provide meaningful benefits to the class. The Seventh Circuit has endorsed as an overriding public interest the settling of litigation, particularly class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."). In fact, "settlement should be facilitated at as early a stage of the litigation as possible." 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1522, at 225-26 (citing 1983 Advisory Committee Notes); s*ee also In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("Instead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery for the Class.").

## II.  THE FARUQI FIRM AND LITE DEPALMA SHOULD BE NAMED LEAD AND LIAISON COUNSEL FOR THE CLASS

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the class, subject to the Court's approval.  The Court's approval of lead counsel "is a matter within the court's discretion, and it contemplates an independent evaluation of the effectiveness of the proposed counsel."  *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625-26 (E.D. Wis. 2009); *Lucent Techs.*, 194 F.R.D. at 155. Lambert has selected the Faruqi Firm to be Lead Counsel and Lite DePalma to be Liaison Counsel for the class.  As reflected in the firms' resumes, the Faruqi Firm and Lite DePalma possess extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions.  (*See* Exs. D & E.)

The attorneys at the Faruqi Firm have successfully prosecuted shareholder class actions arising out of corporate transactions.  By way of example, recently, the Faruqi Firm acted as co-lead counsel with two other firms in *In re Orchard Enterprises, Inc. Stockholder Litigation*, C.A. No. 7840-VCL (Del. Ch.), which involved the approval of a merger by Orchard's Board of Directors with a cash out price of $2.05 per share.  On April 11, 2014, the parties reached an agreement to settle their claims for a payment of $10.725 million to be distributed among the class, which exceeds considerably the $2.62 per share difference between the $2.05 buyout price and the $4.67 appraisal price determined in *In re Appraisal of The Orchard Enterprises, Inc.*, 2012 WL 2923305 (Del. Ch. July 18, 2012).  Also recently, in *In Re Energysolutions, Inc. Shareholder Litigation*, Consol. C.A. No. 8203-VCG (Del. Ch.), EnergySolutions announced a merger pursuant to which stockholders would receive $3.75 per share in cash, without interest, in exchange for each share of EnergySolutions common stock.  On January 22, 2013, the Delaware Court appointed the Faruqi Firm as Co-Lead Counsel.  The action settled after EnergySolutions

filed additional disclosures concerning the merger agreement and signed an amendment to the merger agreement which increased the merger consideration to $4.15 in cash for each share of EnergySolutions common stock or approximately $36 million in aggregate consideration for its stockholders.

Moreover, the attorneys from the Faruqi Firm are not afraid to challenge corporate wrongdoings and will fight to ensure justice prevails. In April 2012, the Faruqi Firm obtained an unprecedented injunction in *Knee v. Brocade Communications Systems, Inc.*, No. 1-12-CV-220249, slip op. at 3 (Cal. Super. Santa Clara Cnty. Apr. 10, 2012) (Kleinberg, J.) (enjoining the 2012 shareholder vote because information relating to projected executive compensation that had a potential dilutive effect on shareholders was not properly disclosed in the proxy statement). The Faruqi Firm has changed the landscape of disclosure related to compensation plans.

Similarly, the Faruqi Firm prevailed in a years-long effort to overturn a decision of a federal district court dismissing a shareholder derivative action upon the recommendation of a special litigation committee appointed under Delaware law. The Faruqi Firm appealed the decision to the U.S. Court of Appeals for the Sixth Circuit which reversed the decision of the district court and sided with the Faruqi Firm's interpretation of a complex area of Delaware law related to the independence of a special litigation committee. *Booth Family Trust v. Jeffries*, 640 F.3d 134 (6th Cir. 2011).

Furthermore, after a recent lead battle in Ohio federal court, Judge Timothy S. Black appointed the Faruqi Firm as lead counsel and said, "[a]lthough all of the firms seeking appointment as Lead Counsel have impressive resumes, the Court is most impressed with Faruqi & Faruqi. *Kubiak v. Barbas*, 2011 U.S. Dist. LEXIS 65903, at *8-9 (S.D. Ohio June 14, 2011). Accordingly, the Faruqi Firm and Lite DePalma are well qualified to represent the class, and

14

Lambert requests that the Court approve Lambert's selection of the Faruqi Firm as Lead Counsel and Lite DePalma as Liaison Counsel for the putative class.

In addition, the approval of Lead Counsel pursuant to Section 21D(a)(3)(B)(v) is not governed by the same statutory guidelines which control the lead plaintiff determination. *See Lucent*, 194 F.R.D. at 155. As explained in *In re Milestone Sci. Sec. Litig.*:

> The legislative history of the PSLRA reveals that Congress wished to encourage the exercise of discretion in approving the selection of lead counsel. "[Congress] does not intend to disturb the court's discretion under existing law to approve or disapprove the lead plaintiff's choice of counsel when necessary to protect the interests of the plaintiff class." Conference Report at 685. The exercise of such discretion necessitates an inquiry into the appropriateness of the appointment of several lead counsel; the nature and extent of such inquiry may vary from case to case.

187 F.R.D. 165, 175-76 (D.N.J. 1999). Courts within this District have applied the *Dollens* factors to the appointment of lead counsel, as well as lead plaintiff. *See Salyers*, 2011 U.S. Dist. LEXIS 73238, at *3. For the same reasons the *Dollens* factors favor the appointment of Lambert as Lead Plaintiff, these same factors strongly favor the appointment of the Faruqi Firm and Lite DePalma as Lead and Liaison Counsel. Therefore, regardless of who may have the greatest financial interest in the litigation or who is appointed Lead Plaintiff, based upon the quality of the pleadings and the vigor and zeal with which this Action has been prosecuted, the Faruqi Firm and the Lite DePalma should be appointed Lead Counsel and Liaison Counsel, respectively.

## CONCLUSION

Lambert respectfully requests that the Court: (1) appoint Lambert as Lead Plaintiff; (2) approve Lambert's selection of the Faruqi Firm as Lead Counsel and Lite DePalma as Liaison Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated: July 14, 2014                         Respectfully submitted,

                                             By: */s/ Katrina Carroll*

**LITE DEPALMA GREENBERG, LLC**
Katrina Carroll, Esq.
One South Dearborn
Suite 2100
Chicago, IL 60603
Tel: 312-212-4383
Fax: 312-212-5919
Email: kcarroll@litedepalma.com

*Attorneys for Plaintiff Kerry Lambert and Proposed Liaison Counsel*

**FARUQI & FARUQI, LLP**
Juan E. Monteverde, Esq.
369 Lexington Avenue, 10th Floor
New York, New York 10017
Tel: 212-983-9330
Fax: 212-983-9331
Email: jmonteverde@faruqilaw.com

*Attorneys for Plaintiff Kerry Lambert and Proposed Lead Counsel*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2014, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted in the attached Electronic Mail Notice List.

*/s/ Katrina Carroll*

17