IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KERRY LAMBERT, individually and on behalf of all others similarly situated, | ) ) | |
| Plaintiff, | ) ) | No. 13-cv-07945 |
| v. | ) ) | Judge Ronald A. Guzmán |
| TELLABS, INC. *et al.*, | ) ) | |
| Defendants. | ) | |

### ORDER

Plaintiff's Motion for Preliminary Approval [109] is granted in part and denied in part.

### MEMORANDUM OPINION AND ORDER

The parties have reached a settlement agreement, and on November 21, 2014 the Plaintiff moved the Court for preliminary approval of the settlement. At the motion hearing held December 9, 2014 the Court directed the parties to file a brief addressing specific concerns with the settlement regarding (1) mootness and (2) benefit to the class. The parties have filed such brief and the Court now grants in part and denies in part the motion for preliminary approval.

### Background

This action arises from a shareholder suit challenging a merger between Defendant Tellabs and the acquiring corporation, Marlin. Plaintiff, a shareholder of Tellabs, filed a class action complaint on behalf of all shareholders against Tellabs, members of its Board, and certain large shareholders. (Compl., Dkt. # 1.) Plaintiff alleged that (1) the merger inadequately

compensated shareholders for their stock, (2) Tellab's Board violated its fiduciary duty by failing to maximize shareholder value, and (3) Tellab's disclosures asking shareholders to approve the merger omitted critical information in violation of §14(a) of the Securities Exchange Act. For these violations Plaintiff sought primarily injunctive relief to prevent the merger, but also sought damages in the alternative if the merger were finalized.

The parties negotiated a Memorandum of Understanding in November of 2013, in which Defendants agreed to send out supplemental disclosures to shareholders and thereby cure the alleged defects in their prior disclosures. In December, the shareholders approved the merger and the sale of Tellabs closed. Pursuant to their Memorandum of Understanding, the parties then moved for preliminary approval of their settlement and certification of a class for settlement purposes only. (Pl.'s Mot. Preliminary Approval, Dkt. # 109.) The settlement terms provide that all class members (essentially, all record shareholders of Tellabs in late 2013 other than Defendants) release all known or unknown claims they may have against the Defendants for any conduct associated with this merger transaction. Class members are permitted to opt out of this settlement to preserve their claims. The terms require nothing further of Defendants, asserting that they have already fulfilled their end of the bargain by issuing the supplemental disclosures prior to the merger. Defendants' only obligation under the settlement terms is the payment of Plaintiff's attorney fees up to a maximum of $700,000.00 and costs of up to $50,000.00.

At the December 9, 2014 motion hearing for preliminary approval, the Court expressed concerns about the one-sidedness of the proposed settlement and the fact that Defendants appear to have already fulfilled their obligations under it by issuing the supplemental disclosures. The parties were directed to file briefs addressing (1) why the case is not moot, thus depriving the

Court of subject matter jurisdiction, (2) what benefit the proposed class members will receive that they otherwise would not by certifying a class at this stage of the litigation, and (3) any other issues the parties wish to address.

### Legal Standard

The preliminary approval process is not tantamount to full approval of the settlement, as it is "not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 314 (7th Cir. 1980). To secure preliminary approval, parties need only show something analogous to "probable cause" to proceed with the settlement review process. *Id.* at 314 n. 13. However, settlement matters in which the opposing parties behave in non-adversarial fashion place the reviewing judge "at a disadvantage in evaluating the fairness of the settlement to the class." *Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014). This disadvantage is partially remedied by the ability of class members to object at the full fairness hearing. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014) ("When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors").

### Discussion

For the reasons below, the Court concludes that this case is not moot and that the proposed settlement benefits class members. However, the proposed Preliminary Approval Order is deficient in several respects regarding the notice to class members and the procedures and

deadlines for opting out or objecting to the settlement. The Court therefore directs the parties to file a renewed motion to address these concerns, as explained below.

MOOTNESS

When a case becomes moot, a federal court lacks subject matter jurisdiction and the case must be dismissed. *See In re Repository Techs., Inc.*, 601 F.3d 710, 716–17 (7th Cir. 2010). Mootness occurs when some event "makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009). An action is therefore not mooted so long as it is still possible for the court to "fashion some form of meaningful relief." *Flynn v. Sandahl*, 58 F.3d 283, 287 (7th Cir. 1995). A plaintiff's "entire claim is not mooted simply because the *specific* relief it sought has been rendered moot," though a claim for attorney's fees alone cannot save a case from becoming moot. *Cornucopia*, 560 F.3d at 676 (emphasis in original).

The parties argue that this action is not moot even though Defendants have already done all that is required of them in the settlement agreement, because if the settlement is not approved, Plaintiff's claim for damages is still unresolved and can go forward. The Court agrees. While injunctive relief is typically the preferred method for remedying disclosure violations under §14(e), courts in this circuit have suggested that damages are available for such violations where the merger has already been consummated. *See Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009); *Panter v. Marshall Field & Co.*, 646 F.2d 271 (7th Cir. 1981). Here, the initial complaint sought not only an injunction to prevent the merger, but also damages if the merger did go through. If the Court rejects the proposed settlement, the parties agree that this case will revert to the point

before the Memorandum of Understanding and Plaintiff's damages claims will proceed to litigation on the merits. It is also possible that the supplemental disclosures do not render Plaintiff's disclosure-related claims moot because they addressed only seven of the eleven omissions Plaintiff alleged in her complaint. As such, Plaintiff can still pursue damages under the federal securities laws for the remaining disclosure inadequacies if this settlement is rejected. Moreover, Plaintiff's other damages claims – for inadequate buyout price and breach of fiduciary duty in the sale negotiations – are not affected by the Defendant issuing supplemental disclosures. For all these reasons, there are still active claims that will go forward if the settlement is not finalized, and the case is therefore not moot.

BENEFIT TO THE CLASS

The Court's concern with the proposed settlement as expressed at the motion hearing was that because supplemental disclosures have already issued, this settlement appears to confer no benefit on class members. Shareholders are, in essence, giving up something (all future known and unknown claims relating to this merger process) for disclosures that have already occurred and cannot be undone. The parties justify the unusual timing of this settlement – first Defendants fulfill their end of the bargain by supplementing disclosures, and only then do the parties move for settlement – by pointing to the time-sensitive nature of merger deals. According to the parties, this sort of procedure is common in merger situations because curative disclosures do no good after the sale closes, yet plaintiffs are unwilling to release their claims until discovery has revealed the full extent of wrongdoing. Even though the exchange of consideration (disclosures for release of claims) was not simultaneous, it still conferred a benefit on class members who

enjoyed more complete information before having to vote on the merger. As the parties note, a handful of federal and Delaware state courts have approved precisely this kind of settlement in a merger situation – including at least one in the Seventh Circuit. *See Collier v. Brightpoint*, No. 1:12–cv–1016–TWP–DKL, 2013 WL 652448 (S.D. Ind. Feb. 21, 2013). However, none of the reasoning in any of these cases discusses the propriety of preliminarily approving these kinds of settlements, as the opinions are mostly devoted to the reasonableness of attorney's fees after the settlement was already approved. As such, there is little guidance to support a ruling in either direction.

At this stage, however, the Court is only concerned with granting preliminary approval and the parties therefore face a relatively low bar with regard to demonstrating benefit to the class. The supplemental disclosures Defendants issued addressed the majority of the alleged disclosure deficiencies raised in Plaintiff's complaint, and this additional information was likely of at least some benefit to shareholders. *See Finkel v. Am. Oil & Gas, Inc.*, No. 10-CV-01808-CMA-MEH, 2012 WL 171038, at *2 (D. Colo. Jan. 20, 2012) ("In the instant case, the agreement reached by the parties produced a nonmonetary, 'disclosure-only' settlement… the disclosures were sufficient to support the settlement"). Moreover, this settlement provides an unusual situation because it is potentially costless to class members. In several of the cases approving settlements similar to the instant one, class members were not permitted to opt out. *See, e.g.*, *Davis v. Cent. Vermont Pub. Serv. Corp.*, No. 5:11-CV-181, 2012 WL 4471226, at *7 (D. Vt. Sep. 27, 2012)("Because Plaintiff has satisfied the requirements of Fed.R.Civ.P. 23(a) and (b)(1), the court hereby certifies the class as a non-opt out class for settlement purposes"). Here, by contrast, any shareholders who want to pursue claims relating to the merger are free to

opt out – and in fact lose absolutely nothing by doing so, having already benefitted from Defendants' performance under the settlement deal. Moreover, because the merger resulted in a short-form buyout of all shareholders, none of the class members now have an ownership stake in Tellabs – and Tellabs is the entity committed to paying Plaintiff's attorney's fees. Thus, unlike in most class action settlements, class members' benefit is not reduced in any way as a result of the payment of attorney's fees and costs. Because the supplemental disclosures benefitted class members, opting out is costless, and Plaintiff's attorney's fees are not drawn from a pool of money on which class members hold any claim, preliminary approval of the settlement is appropriate.

DEFICIENCIES OF THE PROPOSED ORDER

While the Court is satisfied that this action is not moot and that the settlement provides a benefit to class members, the proposed Preliminary Approval Order is nonetheless deficient in other ways. The proposed order sets substantive and temporal requirements for notices and submissions leading up to the fairness hearing for final approval of the settlement, including the requirement that class members declare their intention to opt out before plaintiffs have filed their final briefs and documents in support of the settlement and fee application. This proposed sequence of events also requires class members to file objections to the proposed settlement or fee application on the same day that plaintiffs file their final briefs and documents in support of the settlement and fee application. It would appear more logical to allow the proposed class members an opportunity to review the papers in support of the proposed settlement and fee application *before* they decide whether to opt out or object. The number of opt outs and/or objections by class members is a factor to consider when ruling on final approval of the settlement, and it is therefore important that class

members have as much information as possible before being required to opt out or object. Moreover, it is likely that many of the shares will be held by "record holders" who are not the actual beneficiaries of the stock and/or are not authorized to make an opt-out determination; they merely held the shares for the benefit of the investors who purchased them. These "record holders" will then have to pass the notice along to the actual beneficial owners. Furthermore, because the class members' shares have been sold in the course of the merger and the prior "record holders" may no longer have the beneficial owners as clients, actual incentive to pass on this notice – or even the means to do so – may be lacking. As such, the proposed timeline for opting out or objecting is unduly short.

Some of the requirements for filing opt-out notices and/or objections appear to be onerous. For example, requiring a class member to state the total number of Tellabs shares he or she held at any time during the class-defining period would seem to be unnecessarily burdensome. If a person is seeking to opt out, the number of shares he or she owned makes little difference. Further, much of this information must already be known and readily available to the parties. In order to send out the class notices, Plaintiff must have compiled a list of shareholders. Defendants must also have had the same information available to them in order to effectuate the close of the merger. Similarly, the proposed order requires proof of ownership for a class member to file objections. Owners who have already sold their shares (which, again, describes all class members owing to the merger process here) may have difficulty meeting this requirement. As noted above, both Plaintiff and Defendants must already have a list of shareholders which they can use to determine the legitimacy of anyone seeking to opt out or to object. Only if there appears to be some doubt as to the legitimacy of a purported shareholder should such proof of ownership then be required.

In order to make the process of opting out or objecting less onerous, the notice to shareholders should include a simple form that class members can fill out and return. This would make the process simpler, and would thereby increase the likelihood that notices would have the required information. Such returns would be presumptively authentic as they would come from persons who have already been determined to be class members/shareholders. In addition, a website or webpage on an existing site (such as the site on which the Settlement Agreement is already viewable, www.faruqilaw.com) should be established where the notice to class members, this order, and forms – possibly interactive forms – for opting out or objecting will be posted and made available.

Finally, the descriptions in sections 5, 9, and 10 of the proposed notice to class members fail to adequately apprise shareholders of what they are giving up if they fail to opt out of the settlement. It makes no or inadequate mention of the fact that in approving the settlement, class members are giving up the right to pursue money damages as a class for the alleged breach of fiduciary duty and inadequate price claims that were included in Plaintiff's complaint yet were not remedied by the supplemental disclosures. Without such an explanation, there is no way the shareholders can make an informed decision as to whether to approve a settlement which provides relief only in the form of supplemental disclosures which have already taken place. While the notice does refer class members to the settlement agreement itself, the fact that the complaint they are already a part of includes a request for money damages must be clearly spelled out in any such notice to the class. Additionally, class members may not realize that by approving this settlement, they are waiving their membership in other *existing* classes pursuing similar claims. In Defendants' motion to dismiss this litigation, they note that as of November 2013 at least fifteen other state lawsuits were pending involving this same merger process. (Def's' Mem. Supp. Mot. Dismiss, Dkt. # 38, at 1

9

n. 1) ("There are three lawsuits challenging the Proposed Transaction that are pending in the Delaware courts, five actions pending in the Circuit Court for DuPage County (where Tellabs is headquartered) and seven actions pending in the Circuit Court of Cook County.") While it is unclear how many of these suits are shareholder class actions or whether any of them are still ongoing, class members who approve the proposed settlement in this case will have forfeited their right to be included in any of those suits. The proposed notice to class members makes no mention of these state court actions, noting only that class members will lose their ability to be part of "other lawsuits." To the extent that other class action lawsuits are currently pending against Tellabs relating to this merger process, the notice should identify such suits specifically and inform shareholders that unless they opt out they will waive their right to recover as class members in those cases.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part the motion for preliminary approval [109]. The parties are directed to file a renewed motion containing a proposed order and notices which address the concerns articulated herein.

**SO ORDERED.**     **ENTERED:  March 5, 2015**

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States District Judge**