UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-07945 |
| vs. | ) ) ) | CLASS ACTION |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Ronald A. Guzman |
| Defendants. | ) ) ) | |

**DECLARATION OF JUAN E. MONTEVERDE IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

I, JUAN E. MONTEVERDE, declare as follows:

1.     I am an attorney duly licensed to practice before all of the courts of the state of New York and am admitted *pro hac vice* in this Court.  I am a Partner of the law firm of Faruqi & Faruqi, LLP ("Lead Counsel"), which, together with the law firm of Lite DePalma Greenberg, LLC, is counsel for Plaintiff Kerry Lambert ("Plaintiff") in the above-captioned matter.[1]

---

[1]     Lead Counsel, Lite DePalma Greenberg, LLC, along with Wolf Popper LLP, counsel for Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust, and Johnson & Weaver, LLP, counsel for Robert Englehart, are collectively referred to herein as "Plaintiffs' Counsel."

2.      I submit this Declaration in support of Plaintiffs' Motion for (1) Final Approval of Settlement, (2) Certification of Settlement Class, and (3) Award of Attorneys' Fees and Expenses.

3.      I have personal knowledge of the matters stated herein and, if called upon, I could testify thereto.

4.      Attached are true and accurate copies of the following documents:

Exhibit A       Schedule 14D-9 Solicitation/Recommendation Statement filed with the U.S. Securities and Exchange Commission (the "SEC") on November 1, 2013 (the "14D-9");

Exhibit B:      Amendment No. 2 to the 14D-9 filed with the SEC on November 25, 2013 (the "Amendment" or "Supplemental Disclosures");

Exhibit C:      Affidavit of M. Travis Keath, CFA, CPA/ABV In Support Of Motion for Final Approval of Proposed Settlement;

Exhibit D:      Settlement Objections;

Exhibit E:      Final Approval Order in *Butler v. Am. Cable & Tel., LLC*, No. 09 CV 5336 (N.D. Ill. Jan. 23, 2012);

Exhibit F:      Declaration of Katrina Carroll in Support of Award of Attorneys' Fees and Expenses;

Exhibit G:      Declaration of Juan E. Monteverde in Support of Award of Attorneys' Fees and Expenses;

Exhibit H:      Declaration of Chet B. Waldmen in Support of Award of Attorneys' Fees and Expenses;

Exhibit I:      Declaration of W. Scott Holleman in Support of Award of Attorneys' Fees and Expenses;

Exhibit J:      Declaration of Eileen M. Letts in Support of Award of Attorneys' Fees;

Exhibit K:      *National Law Journal 2015 Billing Survey* (Jan. 5, 2015);

| Exhibit L: | Final Judgment and Order of Dismissal with Prejudice in *Plumbers Local #65 Pension Fund v. Nicor Inc.*, No. 10-CH-52627 (Cook Cnty. Ill. Cir. Ct. Dec. 7, 2011); |
|---|---|
| Exhibit M: | Final Judgment and Order of Dismissal with Prejudice in *Stein v. Pactiv Corp.*, No. 10-CH-35455 (Cook Cnty. Ill. Cir. Ct. Apr. 26, 2011); |
| Exhibit N: | Final J. and Order of Dismissal with Prejudice in *IBEW Local 164 Pension Fund v. Hewitt Assocs., Inc.*, No. 10 CH 31612 (Cook Cnty. Ill. Cir. Ct. Feb. 15, 2011); |
| Exhibit O: | Order and Final Judgment in *In Re ICX Technologies, Inc. Shareholder Class Action*, Consolidated Civil Action No. 1:10-cv-941 (E.D. Va. July 8, 2011); |
| Exhibit P: | Order and Final Judgment in *Nichting v. DPL, Inc.*, No. 3:11-cv-141 (S.D. Ohio Feb. 24, 2012); |
| Exhibit Q: | Order and Final Judgment in *County of New York Employees Retirement Plan v. Merrill Lynch*, C.A. No. 4066-VCN (Del. Ch. Ct. Aug. 31, 2009); |
| Exhibit R: | Final Order and Judgment in *In re The Trizetto Group, Inc. S'holders Litig.*, C.A. No. 3694-VCN (Del. Ch. Ct. Dec. 4, 2008); and |
| Exhibit S: | Transcript of Settlement Hearing in *Globis Capital Partners, LP v. Safenet, Inc.*, C.A. No. 3694-VCN (Del. Ch. Ct. Dec. 20, 2007). |

## I.    OVERVIEW OF THE CHALLENGED TRANSACTION

5.     This action arises out of the 2013 acquisition of Tellabs, Inc. ("Tellabs" or the "Company") by Marlin Equity Partners ("Marlin"), whereby Marlin, through affiliates Blackhawk Holding Vehicle, LLC ("Merger Parent"), and Blackhawk Merger Sub Inc. ("Merger Sub") (collectively, with Marlin, the "Marlin Defendants"), acquired all of the outstanding shares of Tellabs for $2.45 per share in cash through a tender offer (the "Tender Offer") and subsequent short-form merger between Tellabs and Merger Sub Inc. (the "Merger," collectively with the Tender Offer, the "Transaction").

6.      Tellabs is a company that designs, develops, and supports telecommunication networking products for communication service providers domestically and internationally. The Company serves wireline and wireless service providers, multiple system operators, and competitive service providers, as well as distributors, original equipment manufacturers, system integrators, and government agencies. Before the Transaction, Tellabs traded on the NASDAQ Stock Market under the ticker symbol "TLAB."

7.      On or about April 30, 2013, the Tellabs Board of Directors (the "Board" or the "Individual Defendants")[2] authorized a formal process to explore Tellabs' strategic alternatives. As part of this process, Goldman Sachs & Co. ("Goldman Sachs"), which Tellabs hired to serve as its financial advisor and authorized to contact specified third parties to determine whether they were interested in pursuing a possible transaction with Tellabs.

8.      On October 18, 2013, the Board caused Tellabs to enter into an Agreement and Plan of Merger (as amended or modified from time to time, the "Merger Agreement") with Marlin affiliates Merger Parent and Merger Sub under which, *inter alia*, Merger Sub would commence a Tender Offer to acquire Tellabs common stock for $2.45 per share in cash. Following the consummation of the Tender Offer and subject to other customary closing conditions set forth in the Merger Agreement, Merger Sub would merge with, and into, Tellabs, with Tellabs surviving as a wholly owned subsidiary of Merger Parent, which, in turn, is controlled by Marlin.

9.      On October 21, 2013 Tellabs publicly announced the Transaction by issuing a press release, and on the same day the Company also filed a Form 8-K with the U.S. Securities

---

[2]      The Individual Defendants are Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams.

and Exchange Commission (the "SEC"), which attached the Merger Agreement and the press release.

10.     On November 1, 2013, Merger Sub commenced the Tender Offer by filing a Schedule TO-T with the SEC, setting an expiration date for the Tender Offer of December 2, 2013 at 11:59 p.m. E.S.T.

11.     Also on November 1, 2013, Tellabs filed a Schedule 14D-9 (the "14D-9") with the SEC related to the Tender Offer. The 14D-9 recommended that Tellabs stockholders tender their shares in the Tender Offer.

## II.     THE LITIGATION

12.     On November 5, 2013, Lead Plaintiff filed this Action against Tellabs, the Individual Defendants, and the Marlin Defendants (collectively, the "Defendants"). ECF No. 1. The complaint filed in the Action, a putative class action on behalf of Lambert and all other public stockholders of Tellabs, alleged the Individual Defendants breached their fiduciary duties to Tellabs' stockholders by entering into and approving the Transaction and by failing to disclose material information relevant to the Transaction. The Action further alleged the Marlin Defendants aided and abetted such breaches. The Action also alleged the 14D-9 omitted certain material information in further breach of the Board's fiduciary duties and also in violation of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78n(e) and 78t(a). Parallel litigation also was brought by other Tellabs stockholders in Illinois State Court[3] and Delaware State Court.[4]

---

[3]     *Freedman v. Tobkin, et al.*, Case No.: 2013L000994 (DuPage Cnty. Ct.) (filed Oct. 21, 2013); *Phelps v. Tellabs, Inc., et al.*, Case No. 2013L000999 (DuPage Cnty. Ct.) (Oct. 22, 2013); *Englehart v. Hedfors, et al.*, Case No. 13 CH 23886 (Cook Cnty. Ct.) (Oct. 22, 2013); *City of Lakeland and Employees Pension Plan v. Tellabs, Inc., et al.*, Case No. 13 CH 23890 (Cook Cnty. Ct.) (Oct. 22, 2013); *McCoomb v. Tellabs, Inc., et al.*, Case No. 13 CH 24411 (Cook Cnty.

13.     Also on November 5, 2013, Lambert filed a motion seeking expedited discovery in the Action. Subsequently, Lead Counsel and counsel for Defendants ("Defendants' Counsel") met and conferred regarding expedited discovery and reached an agreement regarding the production of certain documents. ECF No. 4. After discussions with Defendants' Counsel concerning production of documents, on November 12, 2013, Lead Plaintiff withdrew his motion for expedited discovery. ECF No. 10.

14.     On November 14, 2013, the Parties executed a protective order to govern the exchange of confidential discovery ("Protective Order"). Following the execution of the Protective Order, Defendants provided to Lead Plaintiff certain requested non-public documents relating to his claims, including minutes of meetings of the Board and extensive presentations to the Board by Goldman Sachs and Tellabs management.

15.     On November 20, 2013, Tellabs and the Individual Defendants filed a Motion to Dismiss the Complaint for failure to state a claim. ECF No. 37. On November 21, 2013, the Marlin Defendants filed a Motion to Join Tellabs and the Individual Defendants' Motion to Dismiss. ECF No. 47.

## III.   SETTLEMENT OF THE LITIGATION

16.     On November 20, 2013, after reviewing the expedited discovery produced by Defendants and consulting with a financial and valuation expert, Lead Counsel sent a formal demand letter to Defendants' Counsel in an effort to resolve the Action (the "Demand Letter"). Subsequent to receipt of the Demand Letter, Lead Plaintiff and Defendants, through their

---

Ct.) (Oct. 29, 2013); *Russell v. Tellabs, Inc., et al.*, Case No. 13 CH 24567 (Cook Cnty. Ct.) (Oct. 30, 2013); *Reynolds v. Tellabs, Inc., et al.*, Case No. 13 CH 24519 (Cook Cnty. Ct.) (Oct. 30, 2013).

[4]     *In re Tellabs, Inc. Stockholders Litig.*, C.A. No. 9028-VCL (Del. Ch. Oct. 23, 2013).

respective counsel, commenced arm's-length discussions and negotiations regarding the Demand

Letter and a potential resolution of the claims asserted in the Action.

17.     On November 24, 2013, the Parties, by and through their counsel, completed their

negotiations and executed a Memorandum of Understanding ("MOU") containing the terms of

the Parties' agreement-in-principle to resolve the Action.  Among other things, the MOU set

forth the Parties' agreement-in-principle that in consideration for the full and final settlement and

dismissal with prejudice of the Action, and the release of any and all Released Claims (as

defined in the MOU), Tellabs would make additional disclosures concerning the Tender Offer

and the Transaction.

18.     On November 25, 2013, Lead Plaintiff and the Defendants (the "Parties")

informed the Court of their agreement-in-principle to resolve the Action, and Tellabs and the

Individual Defendants withdrew their Motion to Dismiss without prejudice (the Marlin

Defendants' Motion to Join having already been granted).  Also on November 25, 2013, Tellabs

filed Amendment Number 2 to the 14D-9 with the SEC (the "Amendment"), which included the

additional disclosures agreed to in the MOU.  The disclosures included in the Amendment are

more fully discussed below.

19.     In particular, the Amendment included the following supplemental disclosures,

which are indicated in underlined text.  Any information deleted through the Amendment is

indicated in strikethrough text.

a.      In Goldman Sachs' Illustrative Present Value of Future Share Price

Analysis, additional information regarding the basis for the earnings per share multiples and

discount rate used by Goldman Sachs for this analysis:

*Illustrative Present Value of Future Share Price Analysis.*  Goldman Sachs
performed an illustrative analysis of the implied present value of the future price

per Share, which is designed to provide an indication of the present value of a theoretical future value of a company's equity as a function of such company's estimated future earnings and its assumed price to future earnings per Share multiple. For this analysis, Goldman Sachs used the Forecasts for each of the calendar years 2015 through 2017. Goldman Sachs first calculated the implied values per Share as of December 31 for each of the calendar years 2014 through 2016, by applying illustrative price to one-year forward earnings per Share multiples of 12.0x to 18.0x, which were derived by Goldman Sachs utilizing its professional judgment and experience, taking into account current and historical trading data and the current P/E multiples for the Company and the selected companies (as defined below), to earnings per Share estimates for each of the calendar years 2015 through 2017, and. These theoretical future values of the Company's equity on a per Share basis were then discounted these theoretical future values of the Company's equity on a per Share basis to present values to June 30, 2013, using an illustrative discount rate of 12.7% reflecting estimates of the Company's cost of equity and taking into account derived by application of the Capital Asset Pricing Model, which takes into account certain company-specific metrics, including the company's target capital structure and historical beta, as well as certain financial metrics for the United States financial markets generally and adding a size premium.

Goldman Sachs then calculated the implied values per Share as of December 31 for each of the calendar years 2014 through 2016, by applying illustrative price to one-year forward cash adjusted earnings per Share multiples of 8.0x to 14.0x, which were derived by Goldman Sachs utilizing its professional judgment and experience, taking into account current and historical trading data and the current cash adjusted P/E multiples for the Company and selected companies, to cash adjusted earnings per Share estimates for each of the calendar years 2015 through 2017, and. These theoretical future values of the Company's equity on a per Share basis were then discounted these theoretical future values of the Company's equity on a per Share basis to present values to June 30, 2013, using an illustrative discount rate of 12.7% reflecting estimates of the Company's cost of equity and taking into account derived by application of the Capital Asset Pricing Model, which takes into account certain company-specific metrics, including the company's target capital structure and historical beta, as well as certain financial metrics for the United States financial markets generally and a size premium. Cash adjusted earnings per Share was calculated for this purpose by subtracting tax-adjusted interest income earned per Share from unadjusted earnings per Share, and implied values per Share were then calculated using cash adjusted earnings per Share multiplied by cash adjusted earnings per Share multiples and adding the applicable net cash balance from the Forecasts.

   b.  In Goldman Sachs' Illustrative Discounted Cash Flow Analysis, additional

information regarding how Goldman Sachs treated certain factors, including the discount rate,

amount of tax carryforwards, and components of unlevered free cash flows, when conducting this analysis:

> *Illustrative Discounted Cash Flow Analysis.* Goldman Sachs performed an illustrative discounted cash flow analysis on the Company using the Forecasts, the Company's cash balance and basic Share count as of June 28, 2013, and ~~an assumed~~ incorporating the present value (using a discount rate of 10.2%) of the Company's tax carryforwards of approximately $36 million (approximately $0.10 per ~~Share~~ share). In addition, stock based compensation expense was treated as a cash expense for purposes of determining unlevered free cash flow. Goldman Sachs calculated implied prices per Share using illustrative terminal values in the year 2017 based on perpetuity growth rates ranging from (2.0)% to 2.0%, estimated by Goldman Sachs utilizing its professional judgment and experience, taking into account the Forecasts and market expectations regarding long-term real growth of gross domestic product and inflation, to terminal year projected free cash flow and illustrative discount rates ranging from 16.6% to 20.6%. This analysis resulted in a range of implied present values per Share of $1.74 to $1.79.

   c.  In Goldman Sachs' Selected Companies Analysis, the results of such analysis, including the multiples observed and implied values for each of the comparable companies:

> *Selected Companies Analysis.* Goldman Sachs reviewed and compared certain financial information for the Company to corresponding financial information, ratios and public market multiples for the following publicly traded corporations in the technology industry, separated into the Mid-Cap group (companies with market capitalizations of less than $10 billion), the Large-Cap group (companies with market capitalizations of $10 billion or more) and the Historically Declining Revenue group (collectively referred to as the "selected companies"). The following table presents the results of Goldman Sachs' analysis:
>
> ~~Mid-Cap Group~~
>
> ~~• ADTRAN Inc.~~
>
> ~~• ADVA International Inc.~~
>
> ~~• Alcatel-Lucent USA Inc.~~
>
> ~~• Calix, Inc.~~
>
> ~~• Ciena Corp.~~
>
> ~~• Harmonic Inc.~~

~~▲ Infinera Corp.~~

~~▲ Sonus Networks Inc.~~

~~Large-Cap Group~~

~~▲ Cisco Systems, Inc.~~

~~▲ Ericsson~~

~~▲ Juniper Networks Inc.~~

~~▲ Motorola Solutions, Inc.~~

~~Historically Declining Revenue Group~~

~~▲ Alcatel-Lucent~~

~~▲ Blackberry (Blackberry market data and projections as of September 22, 2013, one day prior to the announcement of the sale of the company to a consortium of investors)~~

~~▲ Nokia (Nokia market data and projections as of September 1, 2013, one day prior to announcement of the sale of the Devices & Services Business to Microsoft)~~

| Company | Enterprise Value as a multiple of | | | | Equity Value as a multiple of | | | |
|---|---|---|---|---|---|---|---|---|
| | CY2013E Revenue | CY2014E Revenue | CY2013E EBITDA | CY2014E EBITDA | CY2013E EPS | CY2014E EPS | CY2013E Cash Adjusted EPS | CY2014E Cash Adjusted EPS |
| **Large Cap** | | | | | | | | |
| Cisco | 1.85x | 1.76x | 6.0x | 5.6x | 11.1x | 10.5x | 6.7x | 6.3x |
| Ericsson | 1.02x | 0.98x | 8.6x | 7.2x | 19.4x | 14.7x | 15.0x | 11.3x |
| Juniper Networks | 1.79x | 1.69x | 7.9x | 6.8x | 17.4x | 15.5x | 11.6x | 10.3x |
| Motorola Solutions | 1.80x | 1.73x | 9.1x | 8.4x | 13.7x | 15.2x | 11.0x | 12.2x |
| **Median** | **1.80x** | **1.71x** | **8.2x** | **7.0x** | **15.6x** | **14.9x** | **11.3x** | **10.8x** |
| | | | | | | | | |
| **Mid-Cap** | | | | | | | | |
| ADTRAN | 1.59x | 1.41x | 16.5x | 11.3x | 35.9x | 27.6x | 24.9x | 18.9x |
| ADVA | 0.61x | 0.56x | 5.2x | 4.4x | 32.2x | 21.0x | 22.1x | 14.2x |
| Alcatel-Lucent | 0.55x | 0.54x | 9.4x | 6.6x | NM | NM | NM | 19.4x |
| Calix | 1.43x | 1.26x | 16.2x | 13.1x | 25.6x | 16.6x | 23.1x | 14.9x |
| Ciena | 1.84x | 1.66x | 19.5x | 15.0x | 38.9x | 24.8x | 34.5x | 21.8x |
| Harmonic | 1.43x | 1.33x | 13.2x | 10.9x | 46.0x | 24.5x | 38.2x | 20.0x |
| Infinera | 2.21x | 2.01x | NM | 17.6x | NM | 46.5x | NM | 37.2x |
| Sonus Networks | 2.54x | 2.40x | NM | NA | 173.5x | 69.4x | NA | 51.9x |
| **Median** | **1.51x** | **1.37x** | **14.7x** | **11.3x** | **37.4x** | **24.8** | **24.9x** | **19.7x** |
| | | | | | | | | |
| **Historically Declining Revenue** | | | | | | | | |
| Alcatel-Lucent | 0.55x | 0.54x | 9.4x | 6.6x | NM | NM | NM | 19.4x |
| Blackberry | 0.14x | 0.17x | 1.5x | 1.4x | NM | NM | NM | NM |

| Nokia | 0.31x | 0.31x | 5.0x | 4.0x | NM | 22.5x | NM | 2.5x |
|---|---|---|---|---|---|---|---|---|
| **Median** | **0.31x** | **0.31x** | **5.0x** | **4.0x** | **NM** | **22.5x** | **NM** | **10.9x** |

Note that Blackberry market data and projections are as of September 22, 2013, one day prior to the announcement of the sale of the company to a consortium of investors. Nokia market data and projections are as of September 1, 2013, one day prior to announcement of the sale of the Devices & Services Business to Microsoft.

      d.    In Goldman Sachs' Selected Companies Analysis, additional information about Goldman Sachs' basis for choosing the selected companies and the multiples observed for each of the selected transactions:

Although none of the selected companies is directly comparable to the Company, the selected companies included were chosen because they are publicly traded companies in the communications technology industry with operations and product profiles that for purposes of analysis may be considered similar to certain operations of the Company's operations and product profiles.

      e.    In the Background of the Merger section, additional information regarding the basis for the Tellabs Board's March 27, 2013 decision to suspend discussions with third parties regarding a potential sale of the entire company for the time being:

The Board held a special telephonic Board meeting on March 27, 2013 at which representatives of Goldman Sachs and Sidley Austin LLP, the Company's outside legal advisors ("Sidley Austin"), were present. During the meeting, representatives of Goldman Sachs led a discussion regarding a preliminary financial analysis with respect to the Company, a process to be followed for exploring the Company's strategic alternatives and a proposed timeline for such a process. After discussion regarding the Company's outlook and the attendant uncertainties, the Board determined that it desired additional information regarding the Company's financial and business outlook in order to assist the Board in considering various strategic options. For this reason, the Board decided to suspend the Company's discussions with third parties regarding a potential sale of the entire Company for the time being; however. However, the Board did authorize management to continue to permit Party A to conduct due diligence with respect to the data business and to contact other parties that might be interested in acquiring the Company's data business. The Board also requested that management work with Goldman Sachs to prepare an update to the Company's financial and business outlook to assist the Board in considering various strategic options and to present such update at the next Board meeting.

     f.     In the Background of the Merger section, additional information regarding the basis for the Tellabs Board's April 30, 2013 decision to begin a more formal non-public process of identifying and contacting certain parties that would be the most likely to be interested in acquiring Tellabs:

> The Board held a regularly scheduled in-person Board meeting on April 30, 2013 at which representatives of Goldman Sachs and Sidley Austin were present. During the meeting, representatives of Goldman Sachs continued to review with the Board the strategic alternatives previously presented to the Board, including both strategic transactions and operational and financial strategies as a standalone Company. In addition, the Goldman Sachs representatives reviewed with the Board information regarding the Company, including information relating to the Company's past financial and share price performance and operational benchmarking compared to other industry participants. Management reviewed with the Board and representatives of Goldman Sachs the Company's business plan, as well as preliminary financial projections for the Company, and representatives of Goldman Sachs presented to the Board a preliminary financial analysis with respect to the Company. At the meeting, representatives of Sidley Austin discussed with the Board its fiduciary duties in the context of considering the Company's strategic alternatives, including a potential sale of the Company. Representatives of Goldman Sachs discussed with the Board process alternatives the Board could pursue in exploring a possible sale of the Company, including conducting a focused, non-public process for determining third-party interest in an acquisition of the Company. The Board discussed the strategic alternatives presented and then authorized the Company to formally engage Goldman Sachs as its financial advisor in connection with a potential sale of the Company ~~and directed Goldman Sachs, working with management, to begin~~. The Board also decided that, although there had been communications with various parties regarding a potential sale of the entire Company, the Company would be more likely to maximize stockholder value in connection with a potential sale of the entire Company if the Company were to conduct a more formal, non-public process of identifying and contacting the strategic and financial sponsor parties that would be the most likely to be interested in acquiring the Company (other than those as to which there were any material competitive concerns), and the Board directed Goldman Sachs, working with management, to begin such a process. The Board chose to engage Goldman Sachs given, among other things, Goldman Sachs' reputation, knowledge of the Company and the industry, and experience with transactions similar to those contemplated by the Board.

     g.     In the Background of the Merger section, additional details regarding the refined base case projections that Tellabs provided to Marlin on October 3, 2013:

On October 3, 2013, at an in-person meeting at which representatives of Marlin, the Company and Goldman Sachs were present, Company management provided Marlin with an update on the business, including estimated third quarter 2013 results and an estimated revenue forecast for 2013. The same day, the Company also provided Marlin with the Company's refined base case projections, projections, which Company management had prepared on its own initiative to reflect refined assumptions regarding certain cash flow items.

20. Plaintiffs' Counsel believe that the Amendment provided material information for Tellabs stockholders to decide whether or not to tender their shares in support of the Transaction as well as whether to seek appraisal.

21. On December 2, 2013, the Tender Offer closed. All conditions necessary for the Transaction to close were satisfied, and on that same day the Marlin Defendants completed the Transaction.

22. In addition to providing for Defendants to provide additional disclosures through the Amendment, the MOU further provided that any settlement and release of claims would be contingent upon satisfactory completion of certain confirmatory discovery by Lambert and Lead Counsel. Such confirmatory discovery was completed following the completion of the Transaction.

23. As part of confirmatory discovery, Lead Counsel reviewed thousands of pages of documents that included, *inter alia*, e-mails, correspondence, financial presentations, financial diligence materials, and Board minutes regarding the Transaction produced by Defendants. On January 30, and January 31, Lead Counsel took in San Francisco the depositions of Ryan Limaye (a representative of Tellabs' financial advisor, Goldman Sachs), and Vincent H. Tobkin (Chairman of the Tellabs Board), respectively, and on and February 12, 2014, Lead Counsel took in Chicago the deposition of Daniel Kelly (Chief Executive Officer ("CEO") of Tellabs). Further, and after thorough discovery, Lambert and his counsel also confirmed, with the

assistance of a highly respected financial expert, that the Tender Offer price fell within a range of what could be considered fair.

24. On March 21, 2014, following additional arm's-length negotiations the Parties memorialized their settlement agreement (the "March 21 Agreement").

## IV.   THE *ENGLEHART* FEDERAL LITIGATION

25. On March 20, 2014, plaintiffs Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust filed a putative stockholder class action complaint styled *Englehart v. Tellabs, Inc.*, Case No. 1:14-cv-1990 (N.D. Ill.) (the *"Englehart Action"*). The *Englehart Action* was subsequently assigned to Judge Darrah. The *Englehart Action* alleged claims arising out of the Transaction and Tender Offer similar to those brought in this Action. Prior to filing the *Englehart Action*, plaintiffs in the *Englehart Action* had litigated their claims in Illinois State Court.

26. On March 24, 2013, the plaintiffs in the *Englehart Action* filed a motion to transfer the *Englehart Action* to Judge Guzman, consolidate the *Englehart Action* with this Action, and to stay this Action pending appointment of a lead plaintiff pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.* ECF No. 68.

27. After review of the *Englehart Action*, Lambert and the Defendants agreed to amend the March 21 Agreement and provide for certification of the proposed class under Federal Rules of Civil Procedure 23(a) and 23(b)(3), thereby improving the settlement by providing members of the proposed class with the right to opt-out of the proposed settlement (the "Settlement" or the "Stipulation of Settlement").

28. On April 1, 2014, the Court requested additional submissions concerning the motion by the plaintiffs in the *Englehart Action* to transfer, consolidate, and stay. ECF No. 74.

14

On April 18, 2014, Lead Plaintiff, Defendants, and the plaintiffs in the *Englehart Action* filed supplemental briefs. ECF Nos. 76-78. Also on April 18, 2014, the Parties informed the Court of the amended Settlement.

29.     On April 25, 2014, the Court denied the motion of the plaintiffs in the *Englehart Action* to transfer, consolidate, and stay. ECF No. 79. The Court also noted that it would address Lambert's motion for preliminary approval of the Settlement after lead plaintiff and lead counsel issues were resolved and after notice pursuant to the PSLRA was issued by Lambert. *Id.* Pursuant to the Court's order, on May 14, 2014, Lambert's counsel issued via PR Newswire a notice of the filing of the class action against Tellabs. ECF No. 87-3.

30.     On July 14, 2014, Lambert and plaintiffs in the *Englehart Action* separately moved to be appointed lead plaintiff. ECF Nos. 83, 86.

31.     On September 3, 2014, after reviewing the deposition transcripts and documents produced by Defendants in this Action, and after retaining their own financial advisor to consider whether the Transaction price was fair, the plaintiffs in the *Englehart Action* withdrew their bid to be considered for lead plaintiff after agreeing to support Lambert's application for his appointment as lead plaintiff. ECF No. 101. On September 8, 2014, the Court granted that motion to withdraw. ECF No. 103. Plaintiffs in the *Englehart Action* also agreed to join and support the Settlement.

32.     Only after all terms in the Stipulation of Settlement were agreed upon in principle by the Parties, Lead Plaintiff and Defendants reached an agreement wherein Lead Plaintiff, joined by the plaintiffs in the *Englehart Action*, intend to petition the Court for an award of fees in an amount not to exceed $700,000 and expenses not to exceed $50,000 in connection with the

Settlement (the "Fee and Expense Application"), and Defendants agree not to oppose the Fee and Expense Application.

## V.   PRELIMINARY APPROVAL, CLASS CERTIFICATION, DISSEMINATION OF CLASS NOTICE, AND REACTION OF THE CLASS

33.     On November 21, 2014, Lambert moved for Preliminary Approval of the Settlement, Approval of Form and Method of Notice, and For Entry of an Order Setting a Settlement Hearing and Other Dates. ECF No. 109. On December 9, 2014, the Court held a hearing on Lambert's motion.  During the hearing, the Court questioned the Parties concerning whether the Action was moot and whether the Court had subject matter jurisdiction to approve the Settlement.    After conclusion of the hearing, the Court entered an order requesting supplemental briefing "addressing:  (1) why the case is not moot, thus depriving the Court of subject matter jurisdiction; (2) what benefit the proposed class members will receive that they otherwise would not by certifying a class at this stage of the litigation; and (3) any other issues the parties believe should be addressed based on the discussion in open court." ECF No. 112. On January 9, 2015, Lambert filed his supplemental brief in response to the Court's December 9, 2014 Order. ECF No. 113.

34.     On March 5, 2015, the Court granted in part, and denied in part, Lambert's motion for preliminary approval. ECF No. 115. In its written order, the Court "conclude[d] that this case is not moot and that the proposed settlement benefits [C]lass members." ECF No. 115 at 3. The Court concluded that that the Action was not moot because active claims remained because "Plaintiff's claim for damages is still unresolved and can go forward" and that the Amendment "[did] not render Plaintiff's disclosure-related claims moot because they addressed only seven of the eleven omissions Plaintiff alleged in [his] complaint." ECF No. 115 at 4-5. The Court further concluded that the supplemental disclosures in the Amendment provided

16

benefit to the Class, that the Settlement was costless to Class members because of the ability to opt-out (a benefit not usually present in settlements of similar cases), and that the benefit to the Class members was not reduced by the payment of attorneys' fees and costs. ECF No. 115 at 6-7. However, the Court identified certain deficiencies with the proposed form of notice to Class members, and the procedures and deadlines for objecting and opting out of the Settlement. The Court directed the parties to file a renewed motion for preliminary approval to address these concerns. ECF No. 115 at 4-5, 7-10.

35.     On April 14, 2015, Lambert filed a Renewed Motion for Preliminary Approval of Form and Method of Notice and for Entry of an Order Setting a Settlement Hearing and Other Dates. ECF No. 118. On April 20, 2015, Lambert filed corrected exhibits to his renewed motion. ECF Nos. 120-21.

36.     On April 22, 2015, the Court granted Lambert's renewed motion. ECF No. 123. In its minute order, the Court stated that "[t]he Court is satisfied that Plaintiff's renewed motion for preliminary approval adequately addresses the notice deficiencies raised in the Court's March 5, 2015 Order." *Id.*

37.     On May 5, 2015, the Court issued its written "Preliminary Approval Order," in which it "approved, for settlement purposes only, certification of [this Action] as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure." ECF No. 124 at 2. The Preliminary Approval Order certified the following class (the "Settlement Class" or "Class"):

> All record holders and beneficial owners of any share(s) of Tellabs stock who have held any such share(s) at any time during the period beginning on and including October 18, 2013, through and including December 2, 2013, including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them,

together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, but excluding the Defendants.

*Id.* The Court also found that "for the sole purpose of settlement and without an adjudication on the merits, that all requirements pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) are met for certification of the Settlement Class." *Id.* The Court certified Lambert as Class Representative pursuant to Federal Rule of Civil Procedure 23 and appointed Lambert as Lead Plaintiff and Faruqi & Faruqi LLP as Lead Counsel pursuant to the PSLRA. *Id.*

38. The Preliminary Approval Order approved forms of mailed notice to members of the Proposed Class, and scheduled the notice to be mailed on or before May 19, 2015. *Id.* at 3-4. The mailing of the Notice of Pendency of Class Action, Proposed Settlement of Class Action and Settlement Hearing (the "Notice") took place in accordance with the Preliminary Approval Order. Counsel for Defendants has represented that as of today 32,014 Notice packets were mailed to known Class members and broker nominees and that subsequent mailings have occurred. Pursuant to the Preliminary Approval Order, on or before August 24, 2015, Defendants will file with the Court proof of mailing of the Notice to the Class. *Id.* at 4.

39. In addition, the Court scheduled the final hearing on the Settlement (the "Settlement Hearing") for September 3, 2015; set an opt-out deadline of August 13, 2015, and an objection deadline of August 13, 2015; and set a schedule for the Parties to file briefs and other papers in support of final approval of the Settlement. *Id.* at 3-7.

40. As of the date of execution of this Declaration, the Class response to the Settlement and corresponding Notice overwhelmingly supports approval of the Settlement. Only five objections have been received, and not one presents a cogent basis for not approving the Settlement.

41.     The first objection by Frank Taranto states only "[m]isinformation breach of Duties to Tellabs shareholder (Me)," and does not identify any deficiency or unfairness in the Settlement or the Notice. *Id.* This objector does not intend to appear at the Settlement Hearing.

42.     The second objection by Eldor Wilfahrt, who purportedly owned just 100 shares of Tellabs stock, far less than Lambert, Englehart, and Rodriguez, states "[I was] <u>Never</u> informed as to any details [and] reasons why I would be forced to sell my shares in Tellabs. Take it or leave it approach. Disgusting." This objection does not identify any deficiency or unfairness in the Settlement or the Notice. Rather, the objection seems to enhance the crux of the Settlement, *i.e.*, remedying disclosure deficiencies.

43.     The third objection by Carl Fabiszak states that the "settlement [is] too low." This objection represents the sole comment by Tellabs stockholders on the sufficiency of the Settlement. This objector does not intend to appear at the Settlement Hearing. Initially, it must be pointed out that Mr. Fabiszak did not think enough of his legal claim to pursue it by opting out (although it is possible that his Tellabs holding were *de minimus*). More importantly, however, is the fact that Lead Counsel has considered this objection, and in light of the conclusion of its respected financial expert that the price paid by Tellabs was within the range of fairness, does not feel this objection is meritorious.

44.     The fourth and fifth objection from Anton Ledway and Harold Shutt offers no basis whatsoever to objecting to the Settlement—the pertinent section was left entirely blank— and both Mr. Ledway and Mr. Shutt represented that he does not intend to appear at the Settlement Hearing.

45.     In addition, a number of Tellabs stockholders have avail themselves to the Opt-Out rights in the Settlement and sought to Opt-Out from the Settlement. Notably, the Class

members seeking to opt out collectively held only 31507 shares of Tellabs stock.[5] Importantly, none of these individuals expressed any opposition to the Settlement.

46.     Accordingly, the Class response strongly supports final approval.

## VI.     PLAINTIFFS' COUNSEL RECOMMEND THE SETTLEMENT FOR APPROVAL

47.     On the basis of all the information available to them, including publicly-available information, non-public information and the additional discovery as described herein, Plaintiffs' Counsel have determined that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Class because it enabled the stockholders of Tellabs to make a fully informed decision on whether to approve the Transaction and whether to exercise their statutory appraisal rights.

48.     The consideration to the Class members for the Settlement is the inclusion in the Amendment of the supplemental disclosures regarding the Transaction that were omitted from the original 14D-9. In exchange for the disclosures, and after confirming that Plaintiffs would likely face an insurmountable burden in securing further relief, the Class agreed to release any and all claims relating to the Transaction except for claims to enforce the Settlement. Indeed, while Plaintiffs believed in their claims, they also recognized the inherent risk and expense that would inure from further litigation. By securing additional disclosures in the Amendment, Plaintiffs were able to provide definitive relief that would substantially benefit the Class. Moreover, Plaintiffs' Counsel are satisfied that it was not likely to obtain additional economic and/or equitable benefits over and above the Amendment, and thus any judgment against

---

[5]     This number is merely an estimate, as one of the individuals requesting to opt out did not know how many shares she owned.

Defendants following trial would not likely produce a better result than the Settlement achieved here.

49.     The Settlement also reflects the result of vigorous, hard-fought litigation. Plaintiffs' Counsel vigorously prosecuted the Action and sought to protect the rights of Tellabs' shareholders. Plaintiffs had filed their respective initial and amended complaints, filed a motion for preliminary injunction and a motion for expedited discovery, obtained, reviewed, and analyzed documents from Defendants and publicly available sources, consulted with their financial expert, researched relevant case law, and negotiated the Settlement. The Settlement was achieved only after Plaintiffs' Counsel's diligent and aggressive litigation efforts over a condensed period of time and after extensive arm's-length negotiations among the parties.

50.     Furthermore, Plaintiffs' Counsel have extensive experience in handling class action litigation, and are and were fully qualified to prosecute the claims asserted in this action, having successfully litigated many major class actions on behalf of hundreds of thousands of claimants.

51.     Plaintiffs' Counsel also submit that the lack of Class opposition supports approval of the Settlement. The Class includes thousands of former Tellabs stockholders, and for there to be only a handful of objections (and no colorable arguments, for that matter) strongly supports final approval of the Settlement.

52.     Thus, Plaintiffs and their counsel believe the Settlement is fair, reasonable, adequate, and in the best interests of the Class.

## VII.    PLAINTIFFS' COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES

53.     Pursuant to the Stipulation of Settlement, and following arm's-length negotiations between the Parties, Defendants agreed not to oppose an application by Lead Plaintiff for

attorneys' fees in an amount not to exceed $700,000 and expenses in an amount not to exceed $50,000 (the "Fee and Expense Award"). This amount is separate from the benefit already conferred on the Class, does not impact the Class in any way, and was negotiated at arm's-length with Defendants *only after* agreement was reached by the Parties concerning all other terms.

54.     Plaintiffs' Counsel have expended substantial time and resources to diligently prosecute this litigation. Specifically, the lodestar of Plaintiff's Counsel is broken down by law firm as follows:

| FIRM | HOURS | LODESTAR |
|---|---|---|
| Faruqi & Faruqi, LLP | 443.45 | $285,023.75 |
| Wolf Popper, LLP | 742.70 | $488,944.00 |
| Johnson & Weaver, LLP | 351.90 | $176,185.50 |
| Lite DePalma Greenberg, LLC | 65.00 | $44,147.50 |
| Greene and Letts | 160 | $51,246.50 |
| **TOTAL:** | **1,763.05** | **$1,045,547.25** |

55.     Based on Plaintiffs' counsel's total lodestar, the $700,000 requested for attorneys' fees represents a negative lodestar multiplier of 0.68 and an average billing rate of $397.00 per hour. These amounts are comparable to, or below, those awarded in other cases, and are reasonable, especially given the substantial and multiple benefits provided to the Class, which included the substantial Supplemental Disclosures.

56.     Plaintiffs' counsel also request reimbursement for expenses reasonably advanced in connection with the litigation in the amount of $64,892.02. A breakdown by each firm is set forth below and a more detailed breakdown of expenses is set in the

| FIRM | EXPENSES |
|---|---|
| Faruqi & Faruqi, LLP | $36,792.55 |
| Wolf Popper, LLP | $7,692.83 |

| Johnson & Weaver, LLP | $6,974.93 |
| Lite DePalma Greenberg, LLC | $617.98 |
| Greene and Letts | - |
| Robbins Geller Rudman & Dowd | $12,813.73 |
| **TOTAL** | **$64,892.02** |

57.     Based on the foregoing, Plaintiffs submit that a total Fee and Expense Award of $750,000 is reasonable and should be granted.

## VIII.  CONCLUSION

58.     For all the reasons set forth above and in the accompanying memorandum incorporated by reference, Plaintiffs and their counsel believe that the Settlement is fair, reasonable, and the best result possible for the Plaintiffs and other Tellabs' shareholders under the circumstances.   Accordingly, Plaintiffs' Counsel respectfully request that the Court grant final approval of the proposed Settlement.

59.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and accurate.

Dated: July 23, 2015

_____
JUAN E. MONTEVERDE