# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QUINN BUTLER, Individually, and on Behalf of All Others Similarly Situated, CHRISTOPHER SKILLIN, Individually and on Behalf of All Others Similarly Situated, JASON BARTH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN CABLE & TELEPHONE, LLC and C. PERRY MOORE,<br><br>Defendants. | 09 CV 5336<br><br>Magistrate Judge Michael T. Mason |

**FINAL APPROVAL ORDER**

Before the Court is the parties' joint motion for final approval of settlement [163], as well as class counsel's application for fees [160]. Because we have issued two detailed opinions in this matter, we turn to only a brief reiteration of the background information. For a thorough discussion of the factual background, procedural history, and the provisions of the settlement agreement, refer to this Court's July 12, 2011 and October 6, 2011 memorandum opinions [137, 157].

**I.   Background**

Plaintiffs, Quinn Butler, Christopher Skillin, and Jason Barth, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") brought this action against American Cable & Telephone, LLC and C. Perry Moore ("Defendants") alleging violations of the Illinois Wage Payment Collection Act, the Illinois Minimum Wage Law,

and the Fair Labor Standards Act ("FLSA").

With the assistance of this Court, the parties reached a settlement agreement on April 29, 2010. When the parties sought preliminary approval of that agreement and certification of a Rule 23 settlement class (*see* Agreed Mot. for Prelim. App. [56])*,* a group of objectors represented by attorney Marni Willenson (plaintiffs in the case of *Perez v. Comcast*, No. 10 C 1127), appeared and objected vehemently to both preliminary approval and class certification.

Following extensive briefing and a preliminary approval hearing, we denied the parties' motion after finding a number of flaws in the agreement (*see* 7/12/11 Mem. Op. and Order.) A renewed motion for preliminary approval and class certification followed a month later, to which the objectors continued to, for lack of a better word, object. Over those objections, in a thorough opinion issued on October 6, 2011, we granted the parties' renewed motion for preliminary approval, certified the Rule 23 settlement classes, conditionally certified the FLSA classes, and directed that notice be sent.

On December 15, 2011, settlement administrator Rust Consulting, Inc. ("Rust") submitted the declaration of project manager Amanda Myette [159], in which she lays out the methods used to provide class members notification of the settlement in this matter. Among other things, Rust obtained a mailing address specific to this case and a phone number for class members to call with questions regarding the settlement. (Myette Decl. ¶¶ 4-5.) Before disseminating the notices via first class mail, Rust processed and updated the addresses of the 393 potential class members using the National Change of Address Database. (*Id.* ¶ 8.) On October 21, 2011, Rust mailed the class notices and claim forms, which were previously approved by this Court.

Following a remail, only twenty-three class notices were undeliverable. (*Id.* ¶ 10.) As of December 15, 2011, Rust had received eighty-seven claim forms, one of which was submitted after the December 6 deadline to do so, and one of which was unsigned. (*Id.* ¶ 11.) Also as of December 15, 2011, nine individuals had requested to be excluded from the settlement agreement. (*Id.* ¶ 12.)

The January 4, 2012 deadline to file written objections and notices of appearance passed with none being filed or submitted to the attorneys of record. Then, on January 11, 2012, attorney Marni Willenson filed a motion for leave to withdraw her appearance [161] on behalf of the nine putative class members (and objectors) who excluded themselves from the class by filing their timely exclusions with Rust. According to that motion, "because these individuals have excluded themselves from the class, they are no longer parties to this action and are not pursuing (and have no standing to pursue) objections to the proposed settlement." (Mot. to Withdraw ¶ 2.) Willenson also sought leave to withdraw her appearance for Santiago Guzman. Guzman filed a claim under the proposed settlement agreement, but, according to the declaration of Willenson, "decided not to continue to pursue his objections." (*Id.* at Ex. A.) We granted Willenson's motion on January 17, 2012 [165].

## II. Joint Motion for Final Approval

As directed, the parties submitted their joint motion for final approval and a final fairness hearing was held on January 19, 2012. The parties now seek final approval of the settlement agreement, which we preliminarily approved on October 6, 2011. In short, that agreement provides that the Defendants will create a common fund of $250,000 to settle all of the claims of the named Plaintiffs and the class and collective

3

action members. Included in that fund are the (1) $8,000 enhancement payments to the named Plaintiffs ($3,000 to Butler, $2,500 to Barth and Skillin); (2) $17,500 in administrative fees to Rust; and (3) attorney's fees to class counsel, which, as addressed below, amount to $75,000. (*See* "Revised Class Action Settlement Agreement" [141-2].) The common fund will be allocated equally among the Rule 23 settlement classes and the FLSA settlement classes ($62,500 to each). (*Id.*) Claims will be distributed on a claims-made basis with any unclaimed funds to be redistributed to the participating class members. (*Id.*)

As we have stated a number of times, pursuant to Rule 23(e), the court may approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate," and not the product of collusion. Fed. R. Civ. P. 23(e)(2); *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir. 2002). To make this finding, the court must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement."[1] *Synfuel Techs., Inc. v. DHL Express, Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191,

---

[1] A court's review of FLSA settlements also requires a determination of whether the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. In doing so, courts often consider: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010) (quoting *Misiewicz v. D'Onofrio Gen. Contractors*, No. 08 CV 4377, 2010 WL 2545439, *4 (E.D.N.Y. May 17, 2010)).

1199 (7th Cir.1996)). Although we addressed these factors at length at the preliminary approval stage, we revisit them here.

We first address what courts consider to be the most important factor - "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Technologies,* 463 F.3d at 653. To make this comparison, courts should begin by "quantify[ing] the net expected value of continued litigation to the class." *Id.* (quoting *Reynolds*, 288 F.3d at 284-85). While a high degree of precision cannot be expected, the court must insist that the parties present evidence "that would enable possible outcomes to be estimated, so that the court can at least come up with a ballpark valuation." *Id.*

In our last opinion, understanding the importance of this factor, we advised Plaintiffs that additional evidence was necessary to fully evaluate the strength of their claims. Plaintiffs complied and submitted the affidavit of class counsel Adam Betzen [164-3], who sets forth his valuation of Plaintiffs' claims and the analysis he used to make that determination. Based on Betzen's review of extensive data and interviews with ACT employees (along with his understanding that damages in off-the-clock cases are, of course, somewhat amorphous), "the absolute best-case, pie-in-the-sky scenario for the class with regard to unpaid off-the-clock overtime" is $1.8 million. (*Id.* at ¶ 10.)

But, in the context of settlement approval, this value must be discounted to account for variance in the data and the continued risks of litigation. Particularly, as Betzen acknowledges, and as the calculations of defense expert Robert Crandall have shown throughout these proceedings, there is a wide variation in the number of hours and days worked per week by class members, and those who may have worked a great

5

deal of overtime appear to be the outliers. (Betzen Aff. at ¶ 11; *see also* Crandall Declarations [164-2, 141-1, 93-4].) To account for this variation, Betzen approximates, and we would tend to agree, that a more realistic recovery by the class for the off-the-clock claims is approximately $360,000. (*Id.* at ¶ 11.) This amount can be further reduced by 50% given the possible defenses to class certification. (*Id.* at 12.)

Betzen also addressed the value of Plaintiffs' improper deduction claims. On that issue, he opined that the "pie-in-the sky" amount of $907,000 might be more appropriately reduced to $115,000 given, among other things, Defendants' contention that class members signed written consents to allow those deductions. (Betzen Aff. at ¶¶ 14-16.)

On the other hand, participating class members receive a considerable benefit from the $250,000 Defendants have offered under the settlement agreement. As Crandall has explained, after the proper deductions, independent contractor class members will receive an average of $1,923 (average of $88 per work week) and employee class members will receive an average of $1,190 (average of $36 per work week). (Crandall Decl. ¶¶ 14-15.) These recoveries are substantial given the variation in the data and potential bars to recovery.

Further, if this case were to move forward, the length and expense of continued litigation would be great. A battle would first ensue over class certification seeing as the Defendants have reserved their right to contest certification. Of course, discovery related to that issue, and in general, would be costly. *See* Nicola Faith Sharpe, *Corporate Cooperation Through Cost–Sharing*, 16 Mich. Telecomm. & Tech. L.Rev.

Case: 1:13-cv-07945 Document #: 139-5 Filed: 07/23/15 Page 8 of 17 PageID #:1397

109, 110 (2009) ("Discovery accounts for about 50% of all litigation costs and up to 90% of the costs in the top 5% of the most expensive case."). Summary judgment proceedings (and the trial, if necessary) would require a considerable amount of time and expense.

In contrast, approving the settlement will terminate this case, thereby allowing "the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, --- F. Supp.2d ----, 2011 WL 3269340, at * 20 (N.D.Ill. July 29, 2011). We have also determined that the amount of discovery conducted here (exchange of documents, interviews, expert analysis) is sufficient to evaluate the merits of the Plaintiffs' claims.

As for opposition to the settlement, we are left with none. Although the objectors mentioned above raised a number of objections to class certification and preliminary approval (which we addressed at length in our prior opinions), those objections have since been withdrawn by way of counsel's motion to withdraw. Again, no other objections were filed with the Court by the January 4, 2012 deadline to do so, and the attorneys confirmed on the record at the final approval hearing that they did not receive any objections. Additionally, only nine of the 393 potential class members excluded themselves from the settlement, whereas 25.3% of the independent contractor classes and 21.5% of the employee classes opted to participate in the settlement. (*See* Crandall Decl.) The lack of objections and the small amount of individuals that opted out weighs in favor of approval. See *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D.Ill. 2000) (holding that the fact that more than "99.9% of class members have neither opted out nor filed objections ... is strong circumstantial evidence

7

in favor of the settlement.").

The opinion of class counsel, which we have found to be competent, also supports a finding that the agreement is fair, reasonable, and adequate. (*See* Betzen Decl.) And, as we previously determined (after a hearing on the issue), the settlement agreement was not a product of collusion as the former objectors contended. (*See* 7/12/12 Mem. Op. and Order at 15-16.)

On the issue of notice, we are confident that the notice procedures implemented here comply with the requirements of Rule 23 and the FLSA. As such, we agree that the putative class members who submitted untimely or incomplete claim forms are not entitled to participate in the monetary portion of the settlement. *See Burns v. Elrod*, 757 F.2d 151, 156 (7th Cir. 1985) (finding that where notice was proper, due process did not require late claimants to be permitted to share in the settlement); *see also Claim Form and Notice of Settlement* [164-1] (advising class members that they must *sign* and submit a *timely* claim form to participate in the settlement.)

Briefly, on the issue of certification, as the parties explain, this Court already determined that the Rule 23 settlement classes satisfied the requirements for certification under 23(a) and 23(b)(3). (*See* 10/6/11 Mem. Op. and Order at 6-15.) As for the FLSA classes, we mentioned in our prior opinion that we may require additional information to support a finding that the individuals in those classes are "similarly situated." (*Id.* at 17, n7.) This additional information came in the way of the declaration of class counsel Adam Betzen and his testimony at the final approval hearing. As Betzen explained, although there may be variance among the employees as to the amount of hours worked, Defendants implemented a common scheme of payroll

practices towards all employees. Betzen's interviews with potential class members at the outset of this litigation also confirmed that common scheme.

For all of the above reasons, we find that the settlement agreement is fair, adequate, and reasonable.

### III. Application for Fees

"In a certified class action, the court may award reasonable attorney's fees... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Pursuant to the settlement agreement, class counsel now seeks to recover 30% (or $75,000) of the common fund. As required, the class members were notified of class counsel's intention to seek such an award and their right to object, but no such objections were made.

The common fund doctrine authorizes class counsel to petition the court to recover their fees from the settlement fund. *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007). The doctrine is premised on the notion that all plaintiffs who have benefitted from the settlement should share in its costs. *Id.* To determine whether a fee sought is reasonable in a common fund case, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). The market rate depends in part on (1) the risk of nonpayment a firm agrees to bear, (2) the quality of its performance, (3) the amount of work necessary to resolve the litigation, and (4) the stakes of the case. *Id.* at 721.

Here, as in all class actions, class counsel certainly undertook a risk that they

9

would not recover any fees in this matter, especially given Defendants' possible defenses to Plaintiffs' claims. *See Sutton*, 504 F.3d at 694 ("there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). As for class counsel's performance and the amount of work necessary to resolve this case, those factors certainly support a finding that the fees are reasonable. Class counsel put in a great deal of time and effort over the lifetime of this case, all of which led to a reasonable settlement agreement that is undoubtedly beneficial to the class as a whole.

We also note that the named Plaintiffs in this matter agreed to pay attorney's fees of up to one-third of the gross recovery obtained in the case, whether by settlement or otherwise. (*See* Betzen Aff. ¶ 3.) And, as class counsel points out, the fees requested here "are consistent with the contingent fees that are commonly borne out in the market." (App. for Fees at 6); *see also Schulte*, 2011 WL 3269340, at * 31 (collecting cases and noting that "[a] number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33.3% of the settlement fund is within the reasonable range.").

A lodestar cross-check further supports class counsel's request for fees. To calculate the lodestar, the court must multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Hensley v. Eckerkart*, 461 U.S. 424, 433 (1983). Where necessary, courts can adjust the lodestar based on a number

of factors.[2]

Here, using even the lower end of counsel's range of hourly rates (which have been accepted and approved in other wage and hour cases), results in a lodestar of $93,740.00. We agree that this lodestar need not be further reduced given, among other things, the time and labor required to reach a settlement and the benefit obtained for the class. As such, class counsel's application for fees [160] is granted.

## IV. Conclusion

**For all of the above reasons, IT IS HEREBY ORDERED AND ADJUDGED:**

1. This Court has jurisdiction over the subject matter of this action and over all Parties to the action pursuant to 28 U.S.C. § 1331, 1367, 1441, 1446 and 636(c), including all members of the Settlement Classes, preliminarily certified for settlement purposes only, by Order dated October 6, 2011 (ECF # 157), and defined as follows:

   (a) Rule 23 Settlement Class 1 - Independent Contractor Sub-Class: All individuals who worked for one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois, and classified as independent contractors, holding the title of cable technician or other positions performing similar responsibilities for the Defendants at any time during the time period of February 28, 2008 through March 2009.

   (b) Rule 23 Settlement Class 2 - Employee Sub-Class: All individuals who were employed by one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois, and classified as non-exempt employees, holding the title of cable technician or other positions performing similar responsibilities for the Defendants at any time during the class period of January 10, 2009 through April 29, 2010.

---

[2] Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley,* 461 U.S. at 430, n. 2

  (c) FLSA Settlement Collective Class 1 - Independent Contractor Collective Action: All individuals who worked for one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois, and classified as independent contractors, holding the title of cable technician or other positions performing similar responsibilities of the Defendants at any time during the time period of February 28, 2009 through March 1, 2009.

  (d) FLSA Settlement Collective Class 2 - Employee Collective Action: All individuals who were employed by one or more of the Defendants, its subsidiaries or affiliated companies, in the state of Illinois, and classified as non-exempt employees, holding the title of cable technician or other positions performing similar responsibilities for the Defendants at any time during the class period of January 10, 2009 through April 29, 2010. (ECF # 157, pp. 7, 16).

  2. The Court finds that the Rule 23 Settlement Classes satisfy the requirements of Fed. R. Civ. P. 23(a), and are maintainable under Rule 23(b)(3) for purposes of settlement of this action. The Court also finds that the FLSA Settlement Collective Classes satisfy the requirements of the Fair Labor Standards Act ("FLSA"), specifically 28 U.S.C. § 216(b). Accordingly, the Court certifies the Settlement classes for purposes of the settlement of this action. The Court confirms the appointment of Plaintiffs Butler, Barth and Skillin as classes representatives as previously appointed and the Court confirms the appointment of Adam J. Betzen of Betzen Law Office, LLC and Ryan F. Stephan of Stephan Zouras, LLP as appointed class counsel.

  3. The Notice of Class Action Settlement ("Class Notice") sent to the members of the Settlement Classes ("Class Members") via First Class Mail adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the Settlement was approved, the process available to them to obtain monetary relief, their right to request exclusion from the Rule 23 Settlement Classes and pursue their own remedies, their right to opt-in to the FLSA Settlement Collective

Classes, and their opportunity to file written objections and to appear and be heard at the final approval hearing regarding the approval of the Settlement Agreement. The Class Notice also adequately informed the Class Members of toll-free numbers for the Settlement Claims Administrator, Rust Consulting, Inc. ("Settlement Administrator") and Class Counsel. The Court finds that the Class Notice satisfied the requirements of Fed. R. Civ. P. 23(e)(1)(B) and the FLSA.

  4. The Court hereby approves the proposed Settlement Agreement and finds that the Settlement is fair, reasonable, and adequate to all Class Members. The Court finds that the strength of the Plaintiffs' case on the merits, weighed against Defendants' defenses, and the complexity, length, and expense of further litigation support approval of the Settlement; the Maximum Gross Settlement Amount of $250,000, as set forth in the Settlement Agreement, is a fair, reasonable, and adequate settlement of Plaintiffs' individual claims and the claims of the Class Members; the Settlement was reached pursuant to arm's-length negotiations between the Parties; the support for the Settlement expressed by Class Counsel and counsel for Defendants, who have significant experience representing parties in complex actions, including those involving wage-and-hour claims, weighs in favor of approval of the Settlement; the absence of any objections to the Settlement by the Class Members supports approval of the Settlement; and the litigation has progressed to a stage where the Court and the Parties could evaluate the merits of the case, potential damages, and the probable course of future litigation, and that the stage of the proceedings thus warrants approval of the Settlement.

  5. In accordance with the Settlement Agreement, Defendants will mail or

otherwise transmit to the Settlement Administrator the portion of the Total Settlement Amount that represents valid claims and validly requested Enhancement Payments, as defined in the Settlement Agreement, plus Court-awarded attorneys' fees and costs within fifteen (15) calendar days of the "effective date," as defined in the Settlement Agreement.

6. The Settlement allocates a Maximum Gross Settlement Amount of $250,000 into four (4) settlement funds. $62,500 is allocated to the Rule 23 Independent Contractor Settlement Class fund; $62,500 is allocated to the Rule 23 Employee Settlement Class fund; $62,500 to the FLSA Independent Contractor Settlement Collective Class fund, and $62,500 to the FLSA Employee Settlement Collective Class fund. Any unclaimed funds shall be distributed on a pro-rata basis, as defined in the Settlement Agreement, to participating sub-class members pursuant to the formula set forth in the Settlement Agreement.

7. Enhancement Payments, as set forth in the Settlement Agreement, of $3,000 to Plaintiff Butler, $2,500 to Plaintiff Skillin and $2,500 to Plaintiff Barth, are approved. Such awards are to be paid in equal amounts from each of the four described settlement pools.

8. In light of their effort on behalf of the Plaintiffs and the classes, the Plaintiffs' Class Counsel Application for Attorneys Fees (ECF # 160) is granted and class counsel shall be paid $75,000 in fees and costs from the common fund per the terms of the Settlement Agreement.

9. Settlement administration costs, payable to Rust Consulting, Inc. in the amount of $17,500.00, are approved. Such fees are to be paid in equal amounts from

each of the four described settlement pools.

10. The Court hereby dismisses all claims released in the Settlement Agreement on the merits and with prejudice and without costs to any of the Parties as against any other settlement party, except as provided in the Settlement Agreement.

11. The Court further Orders that any potential Class Member who did not timely submit a Request for Exclusion from this case fully releases and discharges Defendants, and all other Released Parties set forth in the Settlement Agreement, from all actions or causes of action, whether known or unknown, that the Parties agreed to release in the Settlement Agreement and that only those individuals who affirmatively opted-in have released and discharged their FLSA claims against Defendants, and all other Released Parties set forth in the Settlement Agreement that the Parties agreed to release in the Settlement Agreement.

12. The Court holds that all putative class members who submitted untimely or incomplete Claim Forms to the Settlement Administrator are not entitled to participate in the monetary portion of the Settlement. As identified in the Settlement Administrator's affidavit (ECF # 159), one individual submitted an untimely Claim Form, and one individual failed to sign the Claim Form.

13. The Court grants final approval of the Settlement. This matter is dismissed with prejudice. This Court retains jurisdiction for sixty (60) days after the entry of this Order solely for the purpose of interpreting, implementing, and enforcing the Settlement Agreement consistent with its terms.

14. The Clerk is directed to enter judgment consistent with this Order and close this file.

ORDERED this 23rd day of January, 2012 in Chicago, Illinois.

_____
**The Honorable Michael T. Mason**
**United States Magistrate Judge**