# Exhibit B

November 25, 2014

To:     All "Appropriate" Federal and State Officials Per 28 U.S.C. § 1715
           (see attached distribution list)

Re:     CAFA Notice for the Proposed Amended Settlement in *Lambert v. Tellabs, Inc., et al.,*
           (N.D. Ill. Civil Action No. 13-CV-07945)

Ladies and Gentlemen:

We are writing to you on behalf of the defendants in the case of *Lambert v. Tellabs, Inc., et al.,* Civil Action No. 13-cv-07945 (N.D. Ill.) (the "*Lambert* Action"), to notify you of a proposed amended class action settlement filed with the Northern District of Illinois on November 20, 2014 (the "Proposed Settlement"). The defendants in the *Lambert* Action are as follows: members of the board of directors of Tellabs (the "Individual Defendants");[1] Tellabs, Inc. ("Tellabs"); and Marlin Equity Partners; Blackhawk Holding Vehicle, LLC; and Blackhawk Merger Sub Inc. (collectively, the "Marlin Defendants" and collectively with Tellabs and the Individual Defendants, the "Defendants").

On March 21, 2014, a proposed settlement agreement was filed in the *Lambert* Action (the "March Settlement Agreement"), and on March 27, 2014, notice was served on all "appropriate" federal and state officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Just prior to the filing of the March Settlement Agreement, a related case titled *Englehart, et al. v. Tellabs, Inc., et al.,* Civil Action No. 14-cv-1990 (N.D. Ill.) (the "*Englehart* Action") was filed. In light of the *Englehart* Action, the parties to the *Lambert* Action agreed to amend the March Settlement Agreement, ultimately resulting in the Proposed Settlement. The plaintiffs in the *Englehart* Action, who are among the members of the putative class in the *Lambert* Action, are also parties to the agreement setting forth the Proposed Settlement (the "Settlement Agreement"), and the Proposed Settlement will result in the resolution and disposition of the *Englehart* Action as well. The Proposed Settlement was filed with the court on November 20, 2014, along with a memorandum of law in support of a motion for the preliminary approval of the Proposed Settlement. This letter constitutes notice of the Proposed Settlement from each of the Defendants pursuant to CAFA.

## Compliance with 28 U.S.C. § 1715

28 U.S.C. § 1715(b) lists eight items that must be provided to you in connection with any class action settlement. Each of these items is addressed below:

---

[1] The Individual Defendants are Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossman, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams.

1.      28 U.S.C. § 1715(b)(1) – the complaint and any materials filed with the complaint. A copy of the Complaint is provided on the enclosed CD as Exhibit 1.

2.      28 U.S.C. § 1715(b)(2) – notice of any scheduled judicial hearing in the class action. The motion for preliminary approval of the Proposed Settlement is set for a hearing on December 9, 2014, before Judge Guzman, at the United States District Court for the Northern District of Illinois, Eastern Division, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. At this time, no final approval hearing for the Proposed Settlement has been set. The Proposed Settlement will also dispose of the *Englehart* Action. Pursuant to the Settlement Agreement, the plaintiffs in the *Englehart* Action are to file a motion for a stay of the *Englehart* Action until any order approving the Proposed Settlement becomes final and unappealable, at which point the *Englehart* Action will be dismissed with prejudice. A status hearing is currently scheduled to occur in the *Englehart* Action on January 20, 2015.

3.      28 U.S.C. § 1715(b)(3) – any proposed or final notification to class members. A copy of a draft version of the proposed notice of settlement and of class members' right to request exclusion from the Proposed Settlement, which will be provided to class members upon approval by the Court, is provided on the enclosed CD as Exhibit 2.

4.      28 U.S.C. § 1715(b)(4) – any proposed or final class action settlement. A copy of the Settlement Agreement is provided on the enclosed CD as Exhibit 3.

5.      28 U.S.C. § 1715(b)(5) – any settlement or other agreement contemporaneously made between class counsel and counsel for defendants. The parties to the Proposed Settlement have also entered into a Supplemental Agreement, as described in paragraph 18 of the Settlement Agreement. Unless otherwise directed by the Court, the Supplemental Agreement will be filed under seal with the Court. Pursuant to the Supplemental Agreement, the parties may terminate the Proposed Settlement if potential class members holding a certain number of shares of Tellabs stock as of December 2, 2013 (the "Opt-out Threshold") elect to opt out of the Proposed Settlement. A copy of the Supplemental Agreement with only the confidential Opt-out Threshold number redacted is provided on the enclosed CD as Exhibit 4. Upon request, Defendants will provide an unredacted copy of the Supplemental Agreement on a confidential basis.

6.      28 U.S.C. § 1715(b)(6) – any final judgment or notice of dismissal. There has been no final judgment or notice of dismissal to date. A copy of a proposed final judgment has been tendered to the Court and is provided on the enclosed CD as Exhibit 5.

7. **28 U.S.C. § 1715(b)(7)(B)**[2] – a reasonable estimate of the number of class members residing in each state and the estimated proportionate share of the claims of such members to the entire settlement.[3] Because a substantial number of the Tellabs shares were held by nominees such that Defendants do not know the identity, location or shareholdings of a large percentage of the class members, Defendants do not know the number of class members residing in each state and are unable to estimate this number with any certainty. Taking the foregoing into consideration, provided on the enclosed CD as Exhibit 6 is a breakdown by state of the number of *registered* holders of Tellabs common stock residing in each state, and the proportionate share of common stock held by these registered holders as of December 2, 2013, which is the date of the acquisition of Tellabs by an affiliate of Marlin. Defendants do not know if the number of registered holders of Tellabs common stock residing in each state as of December 2, 2013 equates to the number of class members residing in each state on that date.

Defendants believe that the information provided in Exhibit 6 is the best currently available information for purposes of providing a reasonable estimate of the number of class members residing in each state.

8. **28 U.S.C. § 1715(b)(8)** – any written judicial opinion relating to the materials described in 28 U.S.C. § 1715(b)(3) through (6). There are no written judicial opinions relating to the materials described in 28 U.S.C. § 1715(b)(3) through (6) at this time.

### Timeliness of this Notice

Section 1715 provides two timing deadlines for service of the CAFA Notice, and Defendants have and will comply with both of these deadlines. First, § 1715(b) provides that Defendants must serve this notice "[n]ot later than 10 days after a proposed settlement of class action is filed in court." Defendants have complied with this deadline because the motion for preliminary approval and Settlement Agreement were filed with the court on November 20, 2014 and this notice is being served by Federal Express on November 25, 2014. Second, § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after" service of the notice on the appropriate state officials. This notice will comply with the second deadline because the Defendants will request that any final approval hearing be set for more than 90 days after service of this notice.

---

[2] 28 U.S.C. § 1715(b)(7)(A) requires, "if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement." Because a substantial number of Tellabs shares were held by nominees, it is not feasible to identify the class members who reside in each state.

[3] Defendants note that the settlement involves increased disclosures to Tellabs shareholders; there is no settlement fund to which any class member has a claim.

\*       \*       \*       \*       \*

If you have any questions about this notice, the Proposed Settlement, or the enclosed materials, please contact counsel listed below.

SIDLEY AUSTIN LLP

Kathleen L. Carlson
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossman, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams.*

SCHULTE ROTH & ZABEL LLP

William H. Gussman, Jr.
919 Third Avenue
New York, New York 10022
Phone: (212) 756-5000
Fax: (212) 593-5955

*Counsel for Marlin Equity Partners, Blackhawk Holding Vehicle LLC, and Blackhawk Merger Sub Inc.*

4

*LAMBERT V. TELLABS, INC., ET AL.*
<u>CAFA NOTICE DISTRIBUTION LIST</u>

**ALABAMA**
The Honorable Luther Strange
Attorney General of the State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130-0152

**ALASKA**
The Honorable Michael C. Geraghty
Attorney General of the State of Alaska
1031 West 4th Avenue, Suite 200
Juneau, AK 99811-0300

**ARIZONA**
The Honorable Tom Horne
Attorney General of the State of Arizona
Office of the Attorney General
1275 West Washington Street
Phoenix, AZ 85007-2926

**ARKANSAS**
The Honorable Dustin McDaniel
Attorney General of the State of Arkansas
Office of the Attorney General
Tower Building
323 Center Street, Suite 200
Little Rock, AR 72201-2610

**CALIFORNIA**
Office of the Honorable Kamala D. Harris
Attorney General of the State of California
Attention: CAFA Coordinator, Consumer
Law Section
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004

**COLORADO**
The Honorable John W. Suthers
Attorney General of the State of Colorado
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, Colorado 80203

**CONNECTICUT**
The Honorable George C. Jepsen
Attorney General of the State of Connecticut
Office of the Attorney General
55 Elm Street
Hartford, CT 06106

**DELAWARE**
The Honorable Joseph R. "Beau" Biden, III
Attorney General of the State of Delaware
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

**DISTRICT OF COLUMBIA**
The Honorable Irvin B. Nathan
Attorney General of the District of
Columbia
Office of the Attorney General
441 4th Street, NW
Washington, DC 20001

**FLORIDA**
The Honorable Pam Bondi
Attorney General of the State of Florida
Office of Attorney General
The Capitol PL-01
Tallahassee, FL 32399-1050

**GEORGIA**
The Honorable Sam Olens
Attorney General of the State of Georgia
Office of the Attorney General
40 Capitol Square, SW
Atlanta, GA 30334-1300

**HAWAII**
The Honorable David M. Louie
Attorney General of the State of Hawaii
Department of the Attorney General
425 Queen Street
Honolulu, HI 96813

**IDAHO**
The Honorable Lawrence G. Wasden
Attorney General of the State of Idaho
Office of the Attorney General
700 West Jefferson Street, Suite 210
Boise, ID 83720-0010

**ILLINOIS**
The Honorable Lisa Madigan
Attorney General of the State of Illinois
James R. Thompson Center
100 West Randolph Street
Chicago, IL 60601

**INDIANA**
The Honorable Greg Zoeller
Attorney General of the State of Indiana
Office of the Indiana Attorney General
Indiana Government Center South
302 West Washington Street, 5th Floor
Indianapolis, IN 46204

**IOWA**
The Honorable Tom Miller
Attorney General of the State of Iowa
Hoover State Office Building
1305 East Walnut Street
Des Moines, IA 50319

**KANSAS**
The Honorable Derek Schmidt
Attorney General of the State of Kansas
Memorial Hall, 2nd Floor
120 SW 10th Street
Topeka, KS 66612-1597

**KENTUCKY**
The Honorable Jack Conway
Attorney General of the Commonwealth of
Kentucky
Office of the Attorney General
Capitol Suite 118
700 Capitol Avenue
Frankfort, KY 40601-3449

**LOUISIANA**
The Honorable James D. "Buddy" Caldwell
Attorney General of the State of Louisiana
1885 North Third Street
Baton Rouge, LA 70802

**MAINE**
The Honorable Janet T. Mills
Attorney General of the State of Maine
6 State House Station
Augusta, ME 04333

**MARYLAND**
The Honorable Douglas F. Gansler
Attorney General of the State of Maryland
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202-2202

**MASSACHUSETTS**
Office of the Honorable Martha Coakley
Attorney General of the Commonwealth of
Massachusetts
Attention: CAFA Coordinator/General
Counsel's Office
One Ashburton Place
Boston, MA 02108-1518

**MICHIGAN**
The Honorable Bill Schuette
Attorney General of the State of Michigan
Michigan Department of Attorney General
G. Mennen Williams Building, 7th Floor
525 West Ottawa Street
Lansing, MI 48909-0212

**MINNESOTA**
The Honorable Lori Swanson
Attorney General of the State of Minnesota
Minnesota Attorney General's Office
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN 55101-2131

**MISSISSIPPI**
The Honorable Jim Hood
Attorney General of the State of Mississippi
Mississippi Attorney General's Office
Walter Sillers Building
550 High Street, Suite 1200
Jackson, MS 39201

**MISSOURI**
The Honorable Chris Koster
Attorney General of the State of Missouri
Missouri Attorney General's Office
Supreme Court Building
207 West High Street
Jefferson City, MO 65102

**MONTANA**
The Honorable Tim Fox
Attorney General of the State of Montana
Department of Justice
215 North Sanders, Third Floor
Helena, MT 59620-1401

**NEBRASKA**
The Honorable Jon Bruning
Attorney General of the State of Nebraska
Office of the Attorney General
2115 State Capitol
Lincoln, NE 68509

**NEVADA**
The Honorable Catherine Cortez Masto
Attorney General of the State of Nevada
Office of the Attorney General
Old Supreme Court Building
100 North Carson Street
Carson City, NV 89701-4717

**NEW HAMPSHIRE**
The Honorable Joseph Foster
Attorney General of the State of New
Hampshire
Department of Justice
State House Annex
Office of the Attorney General
33 Capitol Street
Concord, NH 03301-6397

**NEW JERSEY**
The Honorable John Jay Hoffman
Acting Attorney General of the State of New
Jersey
Office of the Attorney General
Richard J. Hughes Justice Complex
8th Floor, West Wing
25 Market Street
Trenton, NJ 08625-0080

**NEW MEXICO**
The Honorable Gary K. King
Attorney General of the State of New
Mexico
408 Galisteo Street
Villagra Building
Santa Fe, NM 87501

**NEW YORK**
The Honorable Eric T. Schneiderman
Attorney General of the State of New York
Office of the Attorney General
Department of Law
The Capitol, 2nd Floor
Albany, NY 12224-0341

**NORTH CAROLINA**
The Honorable Roy Cooper
Attorney General of the State of North
Carolina
Attorney General's Office
9001 Mail Service Center
Raleigh, NC 27699-9001

**NORTH DAKOTA**
The Honorable Wayne Stenehjem
Attorney General of the State of North
Dakota
State Capitol
600 East Boulevard Avenue
Department 125
Bismarck, ND 58505

**OHIO**
The Honorable Mike DeWine
Attorney General of the State of Ohio
State Office Tower
30 East Broad Street, 14th Floor
Columbus, OH 43215

**OKLAHOMA**
The Honorable E. Scott Pruitt
Attorney General of the State of Oklahoma
313 NE 21st Street
Oklahoma City, OK 73105

**OREGON**
The Honorable Ellen F. Rosenblum
Attorney General of the State of Oregon
Oregon Department of Justice
1162 Court Street NE
Salem, OR 97301-4096

**PENNSYLVANIA**
The Honorable Kathleen G. Kane
Attorney General of the Commonwealth of
Pennsylvania
Pennsylvania Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

**RHODE ISLAND**
The Honorable Peter Kilmartin
Attorney General of the State of Rhode
Island
Office of the Attorney General
150 South Main Street
Providence, RI 02903

**SOUTH CAROLINA**
The Honorable Alan Wilson
Attorney General of the State of South
Carolina
Rembert Dennis Building
1000 Assembly Street, Room 519
Columbia, SC 29201

**SOUTH DAKOTA**
The Honorable Marty J. Jackley
Attorney General of the State of South
Dakota
Office of the Attorney General
1302 East Highway 14
Suite 1
Pierre, SD 57501-8501

**TENNESSEE**
The Honorable Herbert H. Slatery III
Attorney General of the State of Tennessee
Office of the Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN 37243-3400

**TEXAS**
The Honorable Greg Abbott
Attorney General of the State of Texas
Office of the Attorney General
300 West 15th Street
Austin, TX 78701

**UTAH**
The Honorable Sean D. Reyes
Attorney General of the State of Utah
Office of the Attorney General
350 North State Street, Suite 230
Salt Lake City, UT 84114-2320

**VERMONT**
The Honorable William H. Sorrell
Attorney General of the State of Vermont
109 State Street
Montpelier, VT 05609-1001

4

**VIRGINIA**
The Honorable Mark R. Herring
Attorney General of the Commonwealth of
Virginia
Office of the Attorney General
900 East Main Street
Richmond, VA 23219

**WASHINGTON**
The Honorable Bob Ferguson
Attorney General of the State of Washington
1125 Washington Street SE
Olympia, WA 98504-0100

**WEST VIRGINIA**
The Honorable Patrick Morrisey
Attorney General of the State of West
Virginia
Office of the Attorney General
State Capitol Building 1, Room E-26
1900 Kanawha Boulevard, East
Charleston, WV 25305

**WISCONSIN**
The Honorable J.B. Van Hollen
Attorney General of the State of Wisconsin
The Department of Justice
17 West Main Street
Madison, WI 53707-7857

**WYOMING**
The Honorable Gregory A. Phillips
Attorney General of the State of Wyoming
Attorney General's Office
123 Capitol Building
200 West 24th Street
Cheyenne, WY 82002

**FEDERAL GOVERNMENT**
The Honorable Eric Holder
Attorney General of the United States
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530-0001

# Exhibit 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated,    ) ) ) Plaintiff,    ) ) v.    ) ) ) TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC.,    ) ) ) ) ) ) ) ) ) ) Defendants.    ) | Case No. |

## CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND VIOLATION OF SECTIONS 14(e) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Kerry Lambert ("Plaintiff"), on behalf of himself and all others similarly situated, by his attorneys, alleges the following upon information and belief, except as to those allegations pertaining to Plaintiff which are alleged upon personal knowledge:

### NATURE OF THE ACTION

1.      This is a stockholder class action brought by Plaintiff on behalf of holders of the common stock of Tellabs, Inc. ("Tellabs" or the "Company") to enjoin the acquisition of the publicly owned shares of Tellabs by Marlin Equity Partners through its wholly-owned subsidiaries Blackhawk Holding Vehicle, LLC ("Holdco") and Blackhawk Merger Sub Inc. ("Merger Sub") (collectively, "Marlin").

2.      On October 21, 2013, Tellabs announced that the Company had entered into an Agreement and Plan of Merger (the "Merger Agreement") for Marlin to acquire Tellabs, via a

tender offer, in a deal with an aggregate transaction value of approximately $891 million. Under the terms of the Proposed Transaction (defined below), Tellabs common stockholders will receive $2.45 per share in cash for each Tellabs share they elect to tender to Marlin.

3. Pursuant to the Merger Agreement, Merger Sub commenced the tender offer (the "Offer") on November 1, 2013 for all of Tellabs' outstanding shares of common stock at a purchase price of $2.45 per share in cash. The Offer is set to expire at 11:59 p.m. on December 2, 2013 and is subject to the condition that there be a validly tendered number of Tellabs shares that constitutes a majority (one share more than 50%) of all of the Tellabs outstanding shares and entitled to vote in the election of directors. Following the close of the Offer period, Merger Sub will acquire any Tellabs shares not purchased in the Offer in a second-step merger (collectively the Offer and the second-step merger are referred to herein as the "Proposed Transaction").

4. As discussed in more detail below, the Proposed Transaction is the product of a conflicted process that is designed to ensure the sale of Tellabs to Marlin on terms preferential to Marlin and other Tellabs insiders and to subvert the interests of Plaintiff and other public stockholders of the Company.

5. Specifically, Dialectic Capital Management ("Dialectic Capital"), Tellabs' lead activist stockholders, has been pushing to revamp the Company since 2012 and has successfully nominated three directors to the Board. Now, in order to liquidate their Tellabs holdings, Dialectic Capital, along with Tellabs' second largest stockholder and co-founder of the Company Michael J. Birck ("Birck"), the Board, and Company management, have improperly caused the Company to be sold to Marlin for inadequate consideration. As a result, the Offer price of $2.45 per share in cash that offers a meager 4.3% premium undervalues the Company. For example, the Company's 52-week high is $3.63 on December 3, 2012, which is significantly above the

deal consideration being offer pursuant to Proposed Transaction.  More importantly, the Company's book value, as of the end of its most recently reported fiscal quarter ended June 30, 2013 is $2.81 per share, almost 15% higher than the Offer price.

6.      Yet, the Proposed Transaction offers substantial liquidity, and if the transaction closes, Dialectic Capital, Birck, the Board, and senior management will receive approximately $110 million of their investment in Tellabs without causing a run in Tellabs stock.  Thus, the Board was not interested in maximizing stockholder value.

7.      The Proposed Transaction is also designed to preclude other potential bidders from emerging with superior offers while also precluding stockholders from voicing opposition, as the Merger Agreement contains certain deal protection devices, including (i) a no solicitation provision, (ii) a matching rights provision, (iii) an information rights provision, and (iv) a termination fee of $26,720,000.

8.      Further, on November 1, 2013, Tellabs filed a recommendation statement on Schedule 14D-9 (the "Recommendation Statement") with the Securities and Exchange Commission (the "SEC") voicing the Board's support for the Proposed Transaction.  The Recommendation Statement however misrepresents and fails to disclose material information necessary for the Company's stockholders to make an informed decision as to whether to tender their shares in the Proposed Transaction.  Specifically, the Recommendation Statement fails to disclose, in violation of the Board's duty of candor under state law and  in violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), (i) certain information regarding the financial analysis performed by Goldman Sachs & Co. ("Goldman Sachs"), Tellabs' adviser on the fairness of the Proposed Transaction and (ii) several important details regarding the process leading up to the signing of the Merger Agreement.

9.      Thus, in pursuing the unlawful plan to facilitate the acquisition of Tellabs by Marlin for inadequate consideration, through a flawed process, each of the Defendants (defined below) violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, good faith, and candor.

10.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction and/or the Offer or, in the event the Offer and/or the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of their fiduciary duties of loyalty, due care, good faith, and candor.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under Sections 14(e) and 20(a) of the Exchange Act.  The Court has supplemental jurisdiction over any claims arising under the state law pursuant to 28 U.S.C. § 1367.

12.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Tellabs has its primary place of business in this District.

13.      In connection with the acts alleged in this Complaint, Defendants (defined below), directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## THE PARTIES

14.      Plaintiff is, and at all relevant times was, a stockholder of Tellabs since prior to the wrongs complained of herein.

15.      Tellabs is a corporation organized and existing under the laws of the state of

Delaware, with its principal executive offices located at One Tellabs Center, 1415 W. Diehl Road, Naperville, Illinois 60563.  Tellabs designs, develops, and supports telecommunication networking products for communication service providers domestically and internationally.  The Company serves wireline and wireless service providers, multiple system operators, and competitive service providers, as well as distributors, original equipment manufacturers, system integrators, and government agencies.  Tellabs trades on the NASDAQ Stock Market under the ticker symbol "TLAB."

16.     Defendant Vincent H. Tobkin ("Tobkin") has been a director of the Company since 2010 and is currently the Chairman of the Board.  Tobkin is also a member of the Compensation Committee.

17.     Defendant Bo Hedfors ("Hedfors") has been a director of the Company since 2003 and is a member of the Compensation and Nominating and Governance Committees.

18.     Defendant Frank Ianna ("Ianna") has been a director of the Company since 2004 and is a member of the Audit and Ethics and the Nominating and Governance Committees.

19.     Defendant Vincent D. Kelly ("Kelly") has been a director of the Company since 2012 and is a member of the Audit and Ethics Committee.  He was nominated to the Board by Dialectic Capital.

20.     Defendant Michael E. Lavin ("Lavin") has been a director of the Company since 2003 and is a member of the Compensation and the Audit and Ethics Committees.

21.     Defendant Stephanie Pace Marshall ("Marshall") has been a director of the Company since 1996 and is a member of the Compensation and the Nominating and Governance Committees.

22.     Defendant Alex Mashinsky ("Mashinsky") has been a director of the Company

since 2013.

23.     Defendant Gregory J. Rossmann ("Rossmann") has been a director of the Company since 2012 and is a member of the Audit and Ethics Committee.  Rossmann was nominated to the Board by Dialectic Capital.

24.     Defendant Dennis F. Strigl ("Strigl") has been a director of the Company since 2012.

25.     Defendant Jan H. Suwinski ("Suwinski") has been a director of the Company since 1997 and is a member of the Compensation and the Audit and Ethics Committees.

26.     Defendant Mikel H. Williams ("Williams") has been a director of the Company since 2012.  Williams was nominated to the Board by Dialectic Capital.

27.     Defendants Tobkin, Hedfors, Ianna, Kelly, Lavin, Marshall, Mashinsky, Rossmann, Strigl, Suwinski, and Williams are collectively referred to hereinafter as the "Individual Defendants" or the "Board".

28.     Each of the Individual Defendants herein is sued individually and collectively, and the liability of each arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein.

29.     Defendant Marlin Equity Partners is a global investment firm with over $2.6 billion of capital under management.  Marlin primarily invests in businesses that are in the process of undergoing varying degrees of operational, financial, or market-driven change.

30.     Defendant Holdco is a Delaware limited liability company and is a subsidiary of Marlin.

31.     Defendant Merger Sub is a Delaware corporation and a wholly-owned subsidiary of Holdco.  Upon completion of the Proposed Transaction, Merger Sub will merge with and into

Tellabs and will cease to exist as a separate corporate entity.

32.     Collectively, the Individual Defendants, Marlin, Tellabs, Holdco, and Merger Sub are referred to herein as the "Defendants."

### THE FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANT

33.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Plaintiff and the other stockholders of Tellabs and owe Plaintiff and the other members of the Class (defined herein) the duties of loyalty, due care, good faith, and candor.

34.     By virtue of their positions as directors and/or officers of Tellabs, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Tellabs to engage in the practices complained of herein.

35.     Each of the Individual Defendants is required to act in good faith, in the best interests of the Company's stockholders and with such care, including reasonable inquiry, as would be expected of an ordinarily prudent person.  In a situation where the directors of a publicly-traded company undertake a transaction that may result in a change in corporate control, the directors must take all steps reasonably required to maximize the value stockholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the stockholders to make an informed voting decision.  To diligently comply with this duty, the directors of a corporation may not take any action that:

(a)     adversely affects the value provided to the corporation's stockholders;

(b)     contractually prohibits them from complying with or carrying out their fiduciary duties;

(c)    discourages or inhibits alternative offers to purchase control of the corporation or its assets;

(d)    will otherwise adversely affect their duty to search for and maximize the value of the corporation's stockholders; or

(e)    will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public stockholders.

36.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated duties owed to Plaintiff and the other Tellabs stockholders, including their duties of loyalty, due care, good faith, and candor, insofar as they, *inter alia*, engaged in self-dealing and obtained for themselves personal benefits, including personal financial benefits, not shared equally by Plaintiff or the other stockholders of Tellabs common stock.

## CLASS ACTION ALLEGATIONS

37.    Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all holders of Tellabs common stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any of the Defendants.

38.    This action is properly maintainable as a class action.

39.    The Class is so numerous that joinder of all members is impracticable. As of October 25, 2013, there were 355,740,338 shares of Tellabs common stock issued and outstanding. The actual number of public stockholders of Tellabs will be ascertained through discovery.

40.    Questions of law and fact that are common to the Class, including, among others:

(a)     Whether the Individual Defendants have breached their fiduciary duties of loyalty, due care, good faith, and candor with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(b)     Whether the Individual Defendants have breached their fiduciary duty to maximize stockholder value for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

(c)     Whether the Individual Defendants have disclosed and will disclose all material facts in connection with the Proposed Transaction;

(d)     Whether Marlin aided and abetted the Individual Defendants' breaches of fiduciary duty;

(e)     Whether the Individual Defendants, in bad faith and for improper motives, have impeded or erected barriers to discourage other offers for the Company or its assets; and

(f)     Whether Plaintiff and the other members of the Class would suffer irreparable harm were the transaction complained of herein consummated.

41.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Accordingly, Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

42.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants, or adjudications

with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

43.     Accordingly, injunctive relief on behalf of the Class as a whole is entirely appropriate because Defendants have acted, or refused to act, on grounds generally applicable and causing injury to the Class.

## SUBSTANTIVE ALLEGATIONS

**A.     Background**

44.     Tellabs was founded in 1974.  The Company operates through four segments: Optical, Data, Access, and Services.  The Optical segment offers digital cross-connect systems, managed transport systems, optical transport systems, and metro ethernet switching products that enable service providers to manage network bandwidth by adding capacity, as well as to provide triple-play voice, video, and data services for residential consumers.  The Data segment provides next-generation packet-switched products that enable wireless and wireline carriers to deliver mobile voice and Internet services.  The Access segment provides multiservice access series and optical network terminal series products that enable service providers to deliver bundled voice, video, and high-speed Internet/data services.  Finally, the Services segment delivers deployment services, including project management, engineering, material furnishing, installation, testing, and acceptance.

**B.     Investor Activism**

45.     On February 3, 2012, Dialectic Capital sent a letter to the Board (the "Dialectic Nomination Letter") seeking to nominate new directors in order to influence a shift in the corporate strategy at the Company.  In an attempt to avoid a proxy battle that could see several directors ousted, the Board instead elected to enter into an agreement with Dialectic Capital (the

"Dialectic Standstill Agreement") allowing the fund to appoint three directors to the Board if it withdrew the Dialectic Nomination Letter.

46.     On April 6, 2012, the Company announced the terms of the Dialectic Standstill Agreement, which was to run from the earlier of the date eighteen (18) months from April 5, 2012 and the date that is 10 days prior to the deadline for stockholders to nominate director candidates for election to the Board at the 2014 Annual Meeting.   In exchange for the appointment of Kelly and Rossmann to the Board, Dialectic Capital agreed to withdraw the Dialectic Nomination Letter and also refrain from doing, in part, the following for the duration of the agreement:

(a)     Engage in any solicitation of proxies or consents or become a "participant" in a "solicitation" with respect to securities of the Company;

(b)     Seek to advise, encourage, support, cooperate with, or influence any person with respect to the voting or disposition of any securities of the Company at annual or special meetings of stockholders;

(c)     Form, join, or in any way participate in any "group" with respect to the Company's securities;

(d)     At any time be the beneficial owner, in the aggregate, of more than 5% of the outstanding shares of the Company's common stock;

(e)     Control, influence, or seek to control or influence the Board other than through Kelly or Rossmann;

(f)     Seek or encourage any person to submit nominations in furtherance of a "contested solicitation" for the election or removal of directors with respect to the Company or any other solicitation or nomination;

(g)     (1) Make any proposal for consideration by stockholders at any annual or special meeting of stockholders or (2) make any offer or proposal (with or without conditions) with respect to a merger, acquisition, disposition or other business combination involving the Dialectic Capital and the Company; or

(h)     Seek, alone or in concert with others, representation on the Board.

47.     On December 12, 2012, in accordance with the Dialectic Standstill Agreement, Williams was also nominated to the Board by Dialectic Capital.

## C.     Proposed Transaction

48.     On October 21, 2013, only weeks after the standstill provision of the Dialectic Standstill Agreement expired, Marlin and Tellabs issued a joint press release announcing the Proposed Transaction which stated, in relevant part, the following:

**Naperville, Ill.**—Tellabs (NASDAQ: TLAB) today announced that it has entered into a definitive merger agreement with entities affiliated with Marlin Equity Partners ("Marlin"), which provides that Marlin entities will acquire all of the outstanding shares of Tellabs for $2.45 per share in cash.

The price per share represents a premium of 4.3% over the closing share price on October 18, 2013, and 13.3% over the 180-day volume-weighted average closing share price as of the same day. . . . The transaction value represents a total equity value of approximately $891 million on a fully diluted basis.

Under the terms of the merger agreement, an affiliate of Marlin is required to commence a tender offer to acquire all outstanding shares of Tellabs' outstanding common stock for $2.45 per share in cash no later than November 1, 2013. The merger agreement provides that, promptly after the closing of the tender offer, any shares not tendered in the tender offer (other than shares for which appraisal is properly sought under applicable law) will be acquired in a second-step merger at the same cash price as paid in the tender offer.

Closing of the tender offer and closing of the merger are subject to certain conditions, including the tender of at least a majority of the outstanding shares of Tellabs common stock (on a fully-diluted basis) and the expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. The transaction is expected to close in the fourth quarter of 2013. The transaction is not subject to a financing condition.

The Tellabs Board of Directors has unanimously approved the transaction. In addition, Michael J. Birck, Tellabs's co-founder and second-largest stockholder, has communicated to Tellabs that he supports the transaction.

. . . .

"We are excited to back the Tellabs team and we view Tellabs' business as an ideal opportunity to capitalize on the growth in the telecom network equipment sector," said Nick Kaiser, partner at Marlin. "We are committed to extending Tellabs' market leadership by continuing to make significant investments in research and development, and in providing a superior customer experience."

Goldman, Sachs & Co. is acting as financial advisor, and Sidley Austin LLP is acting as legal counsel, to Tellabs. Credit Suisse and Evercore are acting as financial advisors and Schulte Roth & Zabel LLP is acting as legal counsel to Marlin.

49.     Commenting on the deal, Pat DiPietro, an operating partner at Marlin, stated that "Tellabs has an exceptionally strong heritage of technology innovation and customer-centric solutions, and we look forward to working closely with the Tellabs team to enhance long-term value for its premier customer base."

50.     Bob Leggett, another operation partner at Marlin, added the following:

As part of Marlin's portfolio of telecommunications companies, the Tellabs business will expand and complement our existing set of customers and product offerings, allowing us to serve a broader market, harness a deeper pool of networking expertise, and create compelling cross-selling opportunities. Combined with Marlin's deep operational expertise and financial support, we believe these capabilities will significantly strengthen our competitive market position.

51.     Unsurprising, Dialectic Capital Management "was pleased that the Board has evaluated all alternatives and are choosing what they feel is the best option for all stakeholders." Birck has also indicated he supports the Proposed Transaction.

## D.     The Unfair Price

52.     The Proposed Transaction is however the product of a conflicted process that is designed to ensure the sale of Tellabs to Marlin on terms preferential to Marlin and other Tellabs

insiders and to subvert the interests of Plaintiff and the other public stockholders of the Company. In pursuing the unlawful plan to facilitate the acquisition of Tellabs by Marlin for inadequate consideration, through a flawed process, each of the Defendants violated applicable law by directly breaching and/or aiding the other Defendants' breaches of their fiduciary duties of loyalty, due care, good faith, and candor.

53. Specifically, having nominated (and ultimately appointed) three new directors, Dialectic Capital, along with Birck, the other members of the Board, and Company management, then determined that despite the Company's prospect for long-term growth, it would be better to liquidate their Tellabs holdings at any price available rather than maximize stockholder value. For example, the Offer price, which is only a 4.5% premium, undervalues the Company's prospects and seeks to take advantage of the vacuum created by the untimely death last year of the Company's then CEO Robert Pullen, and Birck's retirement from the Board after being diagnosed with a rare form of leukemia. Most importantly, the Offer price is below the Company's book value as of June 30, 2013 of $2.81 and significantly lower than the 52-week high of $3.63.

54. Commenting on the Proposed Transaction, Analyst Jon C. Ogg of the 24/7 Wall St. Blog wrote an article titled "Tellabs Gives Itself Away in Private Equity Buyout," unsurprisingly noting that "Tellabs had nearly $800 million in cash and short-term equivalents as of June 30. Even after you back out all the liabilities, its total shareholder equity was $999 million and its net tangible assets came to almost $875 million."

55. Moreover, Birck, Dialectic Capital, the Board, and senior management control approximately 13% of Tellabs' outstanding stock, and if the Proposed Transaction closes, they stand to receive *over $110 million in liquidity from the deal*. Because the Proposed Transaction

is being effectuated pursuant to § 251(h) of the Delaware General Corporation Law, Marlin only needs one share more than 50% of Tellabs' outstanding shares to tender in the Proposed Transaction in order to then cash out the remaining stockholders in a short-form merger. Therefore, only 37% of the outstanding shares need to be tendered for the Proposed Transaction to close.

**E.   The Unreasonable Deal Protection Devices**

56.     In order to further lock up the Proposed Transaction, and to the detriment of the Plaintiff and other members of the Class, the terms of the Merger Agreement also substantially favor Marlin and are calculated to unreasonably dissuade potential suitors from making competing offers.

57.     For example, § 5.03(a) of the Merger Agreement includes a "no solicitation" provision barring the Board and any Company personnel from soliciting, initiating, facilitating or encouraging alternative proposals in an attempt to procure a price in excess of the amount offered by Marlin.  This section also demands that the Company terminate any and all prior or on-going discussions with other potential suitors.

58.     Similarly, § 5.03(b)–(d) of the Merger Agreement provides a matching rights provision whereby the Company must notify Marlin of any unsolicited competing bidder's offer within 24 hours after receipt.  Then, if and only if, the Board determines that the competing offer constitutes a "Superior Proposal" (as defined in the Merger Agreement), Marlin is granted at least three (3) business days (the "Notice Period") to amend the terms of the Merger Agreement to make a counter-offer that the Company must consider in determining whether the competing bid still constitutes a "Superior Proposal."   Moreover, Marlin will be able to match the unsolicited offer because it will be granted unfettered access to the details of the unsolicited offer, in its entirety, eliminating any leverage that the Company has in receiving the unsolicited

offer. The Merger Agreement thus unfairly assures that any "auction" will favor Marlin and piggy-back upon the due diligence of the foreclosed alternative bidder.

59. To further ensure the success of the Proposed Transaction, the Board locked up the deal by agreeing to pay a termination fee of $26,720,000 (§ 7.02 of the Merger Agreement). The terms of the Merger Agreement essentially requires that the alternative bidder agree to pay a naked premium for the right to provide Tellabs stockholders with a superior offer.

60. These provisions cumulatively discourage bidders from making a competing bid for the Company.

**F.    The Materially Misleading Recommendation Statement**

61. On November 1, 2013, Tellabs filed the Recommendation Statement with the SEC. The Recommendation Statement fails to provide the Company's stockholders with material information in contravention to the Board's duty of candor and in violation of Sections 14(e) and 20(a) of the Exchange Act.

62. Without such information, Tellabs' stockholders will be unable to make a fully-informed decision as to whether to tender their shares in the Proposed Transaction.

**a.    Materially Incomplete and Misleading Disclosures Concerning Goldman Sachs' Financial Analysis**

63. The Recommendation Statement discloses certain information regarding Goldman Sachs' financial analyses used to support its fairness opinion. These disclosures concerning Goldman Sachs' financial analyses are materially incomplete and misleading in several ways.

64. First, the Recommendation Statement, on pages 25 to 26, fails to disclose what assumptions Goldman Sachs relied upon to calculate the one-year forward earnings per share multiples of 12.0x to 18.0x and the illustrative discount rate of 12.7% in the *Illustrative Present Value of Future Share Price Analysis*. This information is particularly material given that

Goldman Sachs has also failed to disclose in the *Illustrative Present Value of Future Share Price Analysis* the assumptions used to determine how it calculated the one-year forward cash adjusted earnings per share multiples of 8.0x to 14.0x. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

65. Second, the Recommendation Statement, on page 26, omits the criteria used by Goldman Sachs for selecting the perpetuity growth rate ranging from (2.0%) to 2.0% and the illustrative discount rates ranging from 16.6% to 20.6% in the *Illustrative Discounted Cash Flow Analysis*. The Recommendation Statements further omits to disclose whether the illustrative discount rates were calculated based on the Capital Asset Pricing Model and if a Weighted Average Cost of Capital analysis was performed, then the Recommendation Statement also omits to disclose the market assumptions for such calculations and whether it included stock-based compensation. The analysis also does not state if Net Operating Losses were considered and valued. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

66. Third, the Recommendation Statement, on page 26, also omits to disclose the terminal value adjusted EBITDA multiples in the *Illustrative Discounted Cash Flow Analysis* and whether such multiples were derived from the *Selected Companies Analysis* or a precedent transactions analysis (if performed). In fact, the Recommendation Statement should also disclose whether a precedent transaction analysis was performed and if it was not performed,

then the Recommendation Statement should explain why Goldman Sachs chose not to perform said analysis. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

67. Fourth, the Recommendation Statement, on page 26 to 27, fails to disclose the company by company multiples observed by Goldman Sachs in the *Selected Companies Analysis*. This information is particularly material to Tellabs stockholders here given that the range of multiples for the CY 2013E EBITDA, CY 2014E EBITDA, CY 2013E EPS, and CY 2014E EPS vary by a significant amount. Without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

68. Finally, the Recommendation Statement also fails to disclose in the *Selected Companies Analysis* the basis for selecting the companies in the Mid-Cap Group, the Large-Cap Group, and the Historically Declining Revenue Group as the comparable companies to Tellabs. More critically, the Recommendation Statement further fails to disclose the implied value range resulting from the *Selected Companies Analysis*. These omissions are material because without this information, Tellabs' stockholders are unable to fully understand Goldman Sachs' analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares in the Proposed Transaction.

**b.  Materially Incomplete and Misleading Disclosures Regarding the Flawed Process**

69. The Recommendation Statement also omits several important details regarding

the process leading up to the signing of the Merger Agreement.

70.     For example, on page 9, the Recommendation Statement discloses that on December 18, 2012, "the Board held a special telephonic meeting during which the Board considered potential strategic opportunities involving the Company and Party A."   The Recommendation Statement however omits whether Tellabs and/or Goldman Sachs reached out to Company A, or if Company A contacted the Company *sua sponte*.   This information is material because it evinces the process the Board took to maximize stockholder value.

71.     On page 10, the Recommendation Statement discloses that on March 27, 2013, "the Board decided to suspend the Company's discussions with third parties regarding a potential sale of the entire Company for the time being; however, the Board did authorize management to continue to permit Party A to conduct due diligence with respect to the data business. . . ."   The Recommendation Statement however fails to disclose why the Company chose to take this course of action, especially in light the fact that (i) Tellabs had a non-binding indication of interest regarding the acquisition of the entire Company for $2.25 to $2.50 on the table from Party E and (2) the Board ultimately determined to sell the entire Company rather than sell the data business to Company A.   This information is material because it evinces the process the Board took to maximize stockholder value.

72.     Also on page 10, the Recommendation Statement discloses that Party E made the $2.25 to $2.50 offer based on "due diligence with respect to the Company in early 2012."   Yet, the Recommendation Statement begins the discussion of the strategic alternatives process in the fall of 2012.   This information is material because it reveals whether Tellabs engaged in a strategic alternative process before the fall of 2012 (*i.e.*, at time when the Company's stock at a higher price per share).

73.     On page 15, the Recommendation Statement discloses that the "Board also authorized the Company's management to contact, on a confidential basis, certain of the Company's stockholders to ascertain their views on a potential sale of the Company." The Recommendation Statement however fails to disclose the identity of these shareholders. This information is material in light of Dialectic's substantial involvement in the affairs of the Company and potential improper influence exerted by the fund on the Board thereby.

74.     On page 17, the Recommendation Statement discloses that on October 3, 2013, the Company provided Marlin with the Company's refined base case projections. The Recommendation Statement however omits to disclose at whose behest did Tellabs' management refine the Company's base case projections. This information is material because it evinces the process the Board took to maximize shareholder value, or whether the Board merely sought to improperly sell the Company to Marlin.

75.     Finally, the Recommendation Statement states on page 29 that "[d]uring the two-year period ended October 18, 2013, Goldman Sachs also has provided certain investment banking services to [Marlin] and its affiliates from time to time . . ." However, the Recommendation Statement omits to quantify the dollar value of those services performed. This information is material because it evinces if Goldman Sachs had any conflict of interest when it issued the fairness opinion in support of the Proposed Transaction.

76.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

### FIRST CAUSE OF ACTION

**Claim for Breach of Fiduciary Duties Against the Individual Defendants**

77.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

78.     The Individual Defendants have violated fiduciary duties of loyalty, due care, good faith, and candor owed to public stockholders of Tellabs.

79.     By the acts, transactions, and courses of conduct alleged herein, the Individual Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Tellabs.

80.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, due care, good faith, and candor owed to Tellabs stockholders because, among other reasons, they failed to take steps to maximize shareholder value, by, among other things, failing to adequately consider potential acquirers, instead favoring their own, or their fellow directors' or executive officers' interests to secure all possible benefits with a friendly suitor, rather than protect the best interests of Tellabs stockholders.  Moreover, the Individual Defendants have failed to fully disclose to Plaintiff and the Class all material information necessary to make an informed decision regarding whether to tender their shares in the Proposed Transaction.

81.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

82.     As a result of the actions of Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Tellabs's assets and businesses and have been and will be prevented from obtaining a fair price for their common stock.

83.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable

harm of the members of the Class.

84.     Plaintiff and the members of the Class have no adequate remedy at law.

## SECOND CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against Tellabs, Marlin, Holdco, and Merger Sub for Aiding and Abetting the Individual Defendants' Breaches of Fiduciary Duty**

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     Tellabs, Marlin, Holdco, and Merger Sub (collectively the "Entities") have acted and are acting with knowledge of, or with reckless disregard to, the fact that the Individual Defendants are in breach of their fiduciary duties to Tellabs' public stockholders, and have participated in such breaches of fiduciary duties.

87.     The Entities knowingly aided and abetted the Individual Defendants' wrongdoing alleged herein.  In so doing, the Entities rendered substantial assistance in order to effectuate the Individual Defendants' plan to consummate the Proposed Transaction in breach of their fiduciary duties.

88.     Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

**On Behalf of Plaintiff and the Class Against Tellabs and the Individual Defendants for Violations of Section 14(e) of the Exchange Act**

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     Tellabs and the Individual Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

91.     Section 14(e) of the Exchange Act requires full and fair disclosure in connection

with the Proposed Transaction.  Specifically, Section 14(e) provides that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.  The [SEC] shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

92.     By virtue of the foregoing, Tellabs and the Individual Defendants have violated Section 14(e) of the Exchange Act.  The Recommendation Statement violates Section 14(e) because it omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Tellabs and the Individual Defendants should have known that the Recommendation Statement is materially misleading and omits material facts that are necessary to render then non-misleading.

93.     The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the stockholder vote on the Proposed Transaction.

**FOURTH CAUSE OF ACTION**

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

94.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

95.     The Individual Defendants acted as controlling persons of Tellabs within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

officers and/or directors of Tellabs, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

96.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

97.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.  The Recommendation Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

98.     In addition, as the Recommendation Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Recommendation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

99.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

100.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

101.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.     Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

B.     Enjoining Defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Transaction or the Offer, unless and until the Company adopts and implements a procedure or process to obtain a Merger Agreement providing the best possible terms for stockholders and disclosing all material information;

C.     Rescinding, to the extent already implemented, the Proposed Transaction or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

D.     Directing the Individual Defendants to account to Plaintiff  and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

E.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.     Granting such other and further equitable relief as this Court may deem just and proper.

Dated: November 5, 2013

**LITE DEPALMA GREENBERG, LLC**

By: */s/ Katrina Carroll*
       Katrina Carroll
One South Dearborn, Suite 2100
Chicago, IL 60603
Tel: (312) 212-4383
Fax: (312) 212-5919
Email: kcarroll@litedepalma.com
Bar No. 6291405

*Of Counsel*:

**FARUQI & FARUQI, LLP**
Juan E. Monteverde
369 Lexington Ave., Tenth Floor
New York, NY 10017
Tel: (212) 983-9330
Fax: (212) 983-9331

*Attorneys for Plaintiff*

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, Kerry Lambert ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed a draft complaint against Tellabs, Inc. ("TLAB") and has authorized the filing of a complaint substantially similar to the one I reviewed.

2. Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3. Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5. Plaintiff's transactions in Tellabs, Inc. ("TLAB") securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6. In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 4 day of November 2013.

_Kerry P Lambert_
Kerry Lambert

| Transaction (Purchase or Sale) | Trade Date | Price Per Share | Quantity |
|---|---|---|---|
| Purchase | 12/14/2011 | $3.83 | 1,000.00 |
| Purchase | 1/4/2012 | $3.88 | 1,000.00 |
| Purchase | 6/15/2012 | $3.33 | 1,000.00 |
| Purchase | 10/15/2012 | $2.94 | 650.00 |
| Purchase | 11/9/2011 | $4.32 | 6,000.00 |
| Purchase | 11/15/2011 | $4.17 | 1,000.00 |
| Purchase | 11/18/2011 | $4.02 | 1,000.00 |
| Purchase | 11/22/2011 | $3.94 | 1,000.00 |
| Purchase | 12/2/2011 | $3.96 | 1,000.00 |
| Purchase | 12/14/2011 | $3.85 | 1,000.00 |
| Purchase | 2/2/2012 | $3.84 | 1,000.00 |
| Purchase | 2/2/2012 | $3.84 | 1,000.00 |
| Purchase | 7/20/2012 | $3.14 | 2,000.00 |
| Purchase | 10/25/2012 | $2.97 | 3,000.00 |
| Purchase | 11/21/2012 | $2.84 | 2,000.00 |
| Purchase | 10/27/2011 | $4.28 | 1,000.00 |
| Purchase | 11/23/2011 | $3.88 | 500 |
| Purchase | 7/24/2012 | $3.06 | 500 |
| Purchase | 7/27/2012 | $3.06 | 1,000.00 |
| Purchase | 11/1/2011 | $4.24 | 2,000.00 |
| Purchase | 11/22/2011 | $3.96 | 1,000.00 |
| Purchase | 1/12/2012 | $3.93 | 1,000.00 |
| Purchase | 2/2/2012 | $3.84 | 1,000.00 |
| Purchase | 5/9/2012 | $3.78 | 1,000.00 |
| Purchase | 11/8/2012 | $2.93 | 1,000.00 |
| Purchase | 11/28/2012 | $2.93 | 3,000.00 |
| Purchase | 11/8/2011 | $4.46 | 2,900.00 |
| Purchase | 11/14/2011 | $4.31 | 1,000.00 |
| Purchase | 11/15/2011 | $4.22 | 1,000.00 |
| Purchase | 11/16/2011 | $4.20 | 1,000.00 |
| Purchase | 11/18/2011 | $4.02 | 1,000.00 |

# Exhibit 2

Case: 1:13-cv-07945 Document #: 163-1 Filed: 08/24/15 Page 41 of 137 PageID #:1766
Case: 1:13-cv-07945 Document #: 107-1 Filed: 11/20/14 Page 46 of 63 PageID #:1059
EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

# If You Owned Shares of Tellabs Common Stock Between October 18, 2013 and December 2, 2013,
## Your Right To Sue May Be Affected By A Class Action Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A proposed settlement (the "Settlement") has been reached with Tellabs, Inc. ("Tellabs"), members of the Tellabs board of directors, Marlin Equity Partners ("Marlin"), and two of its affiliates (collectively "Defendants") in a class action relating to the sale of Tellabs to a Marlin affiliate, Blackhawk Merger Sub Inc. (the "Merger" or "Transaction"), and Tellabs' sales process. The terms and conditions of the Settlement are set forth in detail in the Settlement Agreement, which has been filed with the Court and which is subject to Court approval. This Notice only includes a summary of various terms of the Settlement, and does not purport to be a comprehensive description of its terms. The Settlement Agreement is available for review at www.faruqilaw.com.

- The Settlement resolves all claims against Defendants in a lawsuit over whether the members of the Tellabs board of directors breached their duties to Tellabs shareholders in connection with the sales process that was conducted, the terms of the Merger agreement with Marlin, and disclosures made to shareholders in connection with the Merger.

- As part of the Settlement, supplemental disclosures were provided regarding the Merger in an amendment to the Schedule 14D-9, which Tellabs filed with the Securities and Exchange Commission ("SEC") on November 25, 2013. Plaintiff had sought these additional disclosures, and entered into the Settlement to obtain them, so as to provide additional information for Tellabs shareholders to decide to tender their shares in connection with the Merger.

- The Court has granted preliminary approval of the Settlement and has scheduled a hearing on _____, 2015 at __:__ .m. Central Time to consider approval of the Settlement and Plaintiff's lawyers' request for an award of attorneys' fees and expenses. While you are not required to take any action in response to this notice, you have the right to request exclusion from the proposed Settlement, and object to the proposed Settlement and/or the request for an award of attorneys' fees and expenses subject to the deadlines described below. These rights and options – and the deadlines to exercise them – are explained in this notice.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| Your Legal Rights and Options in the Settlement | |
|---|---|
| **Object** | Write to the Court if you don't like the Settlement. |
| **Opt Out** | Write to the Court to request exclusion from the Settlement. |
| **Go To A Hearing** | Ask to speak in Court about the Settlement. |
| **Do Nothing** | You will not object to the Settlement and will have no right to ever sue Defendants about the legal claims in this case if the Settlement is approved. |

- These rights and options – and the deadlines to exercise them – are explained in this notice.
- The Court in charge of this case still has to decide whether to approve the Settlement.

EXHIBIT 1

## What This Notice Contains

BASIC INFORMATION........................................................................PAGE 3 to 4

      1.     Why is there a notice?
      2.     Who are the Plaintiff and Defendants?
      3.     What is this lawsuit about?
      4.     Why is this a class action?
      5.     Why is there a Settlement with Defendants?

WHO IS IN THE TELLABS SETTLEMENT CLASS...................................................PAGE 4

      6.     How do I know if I'm part of the Settlement?
      7.     Are there any exceptions to being included?
      8.     I'm still not sure I'm included.

THE TELLABS SETTLEMENT BENEFITS...........................................................PAGE 4 to 5

      9.     What does the Settlement provide?
     10.    What do I lose as a result of the Settlement?

THE LAWYERS REPRESENTING YOU... ... ... ...................................................PAGE 5 to 6

     11.    Do I have a lawyer in the case?
     12.    How will the lawyers be paid?

OPTING OUT OF THE TELLABS SETTLEMENT.............................................PAGE 6

     13.    What do I do if I want to request exclusion from the Settlement?

OBJECTING TO THE TELLABS SETTLEMENT...................................................PAGE 6 to 7

     14.    If I don't like the Settlement, how do I tell the Court?

THE COURT'S FAIRNESS HEARING .............................................................PAGE 7

     15.    When and where will the Court decide whether to approve the Settlement?
     16.    Do I have to come to the hearing?
     17.    May I speak at the hearing?

IF YOU DO NOTHING.......................................................................PAGE 8

     18.    What happens if I do nothing at all?

GETTING MORE INFORMATION.............................................................PAGE 8

     19.    How do I get more information?

Case: 1:13-cv-07945 Document #: 107-1 Filed: 11/20/14 Page 48 of 63 PageID #:1668
Case: 1:13-cv-07945 Document #: 163-1 Filed: 08/24/15 Page 48 of 63 PageID #:1768
EXHIBIT 1

## BASIC INFORMATION

### 1. Why is there a notice?

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as *Lambert v. Tellabs, Inc., et al.*, Case No. 1:13-cv-07945. The person who sued is called the Plaintiff, and the individuals and companies they sued are called the Defendants.

### 2. Who are the Plaintiff and Defendants?

Plaintiff Kerry Lambert, a Tellabs shareholder, brought this lawsuit against members of the board of directors of Tellabs for alleged violations of their duties to Tellabs' public shareholders. Plaintiff also sued Tellabs, Marlin, and two affiliates of Marlin, Blackhawk Holding Vehicle, LLC and Blackhawk Merger Sub Inc. (collectively "Marlin's Affiliates"), for aiding and abetting the board of directors' alleged violations. The Defendants are as follows:

Tellabs, Inc.
Vincent H. Tobkin
Bo Hedfors
Frank Ianna
Vincent D. Kelly
Michael E. Lavin
Stephanie Pace Marshall
Alex Mashinsky
Gregory J. Rossmann
Dennis F. Strigl
Jan H. Suwinski
Mikel H. Williams
Marlin Equity Partners
Blackhawk Holding Vehicle, LLC
Blackhawk Merger Sub Inc.

Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust filed a similar case against the same defendants, also in the United States District Court forth the Northern District of Illinois, known as *Englehart v. Tellabs, Inc., et al.*, Case No. 1:14-cv-1990. This case has been stayed, and will be dismissed with prejudice upon final resolution of the Settlement. .

### 3. What is the lawsuit about?

The lawsuit claims that the members of the Tellabs board of directors breached their fiduciary duties to Tellabs shareholders in connection with Tellabs' sales process and the Merger, including by allegedly failing to undertake an adequate sales process, obtaining an unfair and inadequate price, engaging in self-dealing, including various "deal protection devices," and failing to disclose to the Company's shareholders information necessary to make an informed decision with respect to the Merger. The lawsuit also claims that the Schedule 14D-9 filed by Tellabs in connection with the Merger contained misleading or otherwise inadequate disclosures in violation of certain federal securities laws and alleged state law fiduciary duties. Tellabs, Marlin, and Marlin's Affiliates are claimed to have aided and abetted these alleged legal violations. The Defendants have vigorously denied that they did anything wrong. The Court has not yet heard or resolved the merits of Plaintiff's claims, or determined whether Plaintiff's or Defendants' claims are true.

3

Case: 1:13-cv-07945 Document #: 167-2 Filed: 08/24/15 Page 49 of 63 PageID #:1769
Case: 1:13-cv-07945 Document #: 107-1 Filed: 12/20/14 Page 49 of 63 PageID #:1062
EXHIBIT I

### 4. Why is this a class action?

In a class action, one or more people (in this case, Kerry Lambert) sue on behalf of persons who have similar claims. In this case, Kerry Lambert has sued on behalf of other Tellabs shareholders. All these people are a Class or Class Members for purposes of the Settlement. One court resolves the issues common to all Class Members.

### 5. Why is there a Settlement with Defendants?

The Court has not decided in favor of Plaintiff or Defendants and will not do so if the Settlement is approved. There will be no trial. Instead, by settling Plaintiff and Defendants avoid the costs and risks of further proceedings, and Class Members will have obtained the benefits of this Settlement.

The Plaintiff and his attorneys, who have conducted an investigation of the facts and the law relevant to the lawsuit, think the Settlement is best for all Class Members. Specifically, Plaintiff believes that the negotiated relief he obtained in the Settlement in the form of additional disclosures made prior to the date upon which Tellabs shareholders were required to decide whether to tender their shares to an affiliate of Marlin, is and was, under the circumstances, in the best interests of all the members of the Class in exchange for the Settlement. This is particularly so given that it is apparent that Plaintiff and the Class face significant risks that they would not be able to prevail on their remaining claims and further litigation of the lawsuit would entail time, expense and additional uncertainties.

## WHO IS IN THE TELLABS SETTLEMENT CLASS

### 6. How do I know if I am part of the Settlement?

If you were the record holder or beneficial owner of shares of Tellabs common stock at any time beginning on and including October 18, 2013 through December 2, 2013, you are a Class Member.

### 7. Are there any exceptions to being included?

You are not a Class Member if you are one of the Defendants in this Action.

### 8. I'm still not sure if I'm included.

If you are still not sure whether you are a Class Member, you can ask for free help. For more information, please contact Class Counsel as follows:

Juan E. Monteverde, Esq.
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Fl.
New York, NY 10003
(212) 983-9330

## THE TELLABS SETTLEMENT BENEFITS

### 9. What does the Settlement provide?

The Settlement provides for supplemental disclosures regarding the Merger in an amendment to the Schedule 14D-9, which Tellabs filed with the SEC on November 25, 2014. The amendment to the Schedule 14D-9 can be obtained at the following web address:

http://www.sec.gov/Archives/edgar/data/317771/000119312513452363/d634181dsc14d9a.htm

4

In particular, the amendment to the Schedule 14D-9 included: (1) in Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis,* additional information regarding the basis for the earnings per share multiples and discount rate used by Goldman Sachs for this analysis; (2) in Goldman Sachs' *Illustrative Discounted Cash Flow Analysis,* additional information regarding how Goldman Sachs treated certain factors when conducting this analysis; (3) in Goldman Sachs *Selected Companies Analysis,* (a) the results of such analysis, and (b) additional information about Goldman Sachs' basis for choosing the selected companies the multiples observed for each of the selected transactions; and (4) in the *Background of the Merger* section, (a) additional information regarding the basis for the Tellabs Board's March 27, 2013 decision to suspend discussions with third parties regarding a potential sale of the entire company for the time being, and (b) additional information regarding the basis for the Tellabs Board's April 30, 2013 decision to begin a more formal non-public process of identifying and contacting certain parties that would be the most likely to be interested in acquiring Tellabs, and (c) additional details regarding the refined base case projections that Tellabs provided to Marlin on October 3, 2013.

The Settlement Agreement, available at www.faruqilaw.com, contains more details about the Settlement.

### 10. What do I lose as a result of the Settlement?

If the Settlement is approved, you can't sue Defendants, continue to sue, or be part of any other lawsuit against Defendants seeking any type of relief, including monetary damages, regarding the legal claims in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" that bars you from suing Defendants regarding Tellabs sales process, the Merger and Defendants' disclosures, is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up as a Class Member if the Settlement Agreement is approved. The Settlement Agreement is available at www.faruqilaw.com.

### THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in the case?

The Court has conditionally appointed the following law firms to represent the Class Members:

FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Fl.
New York, NY 10003
(212) 983-9330

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

### 12. How will the lawyers be paid?

The Court will decide how much Class Counsel will be paid. Class Counsel has not yet received any payment for its work on this case (and has not been reimbursed for their expenses). Class Counsel are asking the Court for an award of $750,000 in attorneys' fees, inclusive of reimbursement of the costs and expenses for investigating the facts, litigating the case, and negotiating and administering the Settlement. It is within the Court's discretion, however, to determine whether the amount requested, or a smaller amount, is reasonable and should be awarded. Defendants have agreed not to oppose Class Counsel's request for an award of fees and expenses up to $750,000. This agreement was reached after all other terms of the proposed Settlement were agreed upon.

5

Any award for attorneys' fees and expenses will NOT be paid from or lessen the $2.45 per share in cash for each Tellabs share that Tellabs shareholders have received as consideration in connection with the Merger. Instead, an award for attorneys' fees and expenses will be paid by either Tellabs, its successor, or their respective insurers.

## OPTING OUT OF THE TELLABS SETTLEMENT

> **13.  If I don't like the Settlement, how do I tell the Court?**

Any member of the Class may seek exclusion from the Settlement. If you are a member of the Class and you wish to seek exclusion from the Settlement, you must, no later than _____, 2015 deliver to the Clerk of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, via either United States mail or hand delivery, a written request for exclusion that includes the following information:

> (1) this case number (13-cv-07945);
> (2) your full name;
> (3) your current mailing address;
> (4) a statement that you request exclusion from the Settlement;
> (5) the total number of shares of Tellabs stock that you held at any time from October 18, 2013 through December 2, 2013; and
> (6) your personal signature and, if applicable, that of your authorized representative.

IF A REQUEST DOES NOT INCLUDE ALL OF THE FOREGOING INFORMATION OR IF IT IS NOT TIMELY SUBMITTED, THEN IT SHALL BE DEEMED INVALID. ANY MEMBER OF THE CLASS WHO SUBMITS AN INVALID REQUEST FOR EXCLUSION FROM THE SETTLEMENT SHALL BE TREATED AS IF HE OR SHE DID NOT SUBMIT ANY REQUEST FOR EXCLUSION AT ALL, AND SHALL BE DEEMED TO HAVE RELEASED ALL RELEASED CLAIMS IF THE COURT APPROVES THE SETTLEMENT. No member of the Class may request exclusion on behalf of any other person besides himself or herself.

## OBJECTING TO THE TELLABS SETTLEMENT

> **14.  If I don't like the Settlement, how do I tell the Court?**

If you are a member of the Class, you can object to the Settlement or to Class Counsel's request for an award of attorneys' fees and expenses. To object, you must send proof of ownership that establishes you are a member of the Class and a letter saying you object. Your objection must also include the following information:

> (1)     Your name, address, and telephone number;
> (2)     The name of the case (*Lambert v. Tellabs, Inc., et al.*, Case No. 1:13-cv-07945);
> (3)     The specific reasons you object to the Settlement or to the requested award of attorneys' fees and expenses; and
> (4)     Your signature.

Your objection, along with any supporting materials you wish to submit, must be mailed and postmarked no later than _____, 2015 to the following four addresses:

| Court | Plaintiff's Counsel | Tellabs' Counsel | Marlin's Counsel |
|-------|--------------------|-----------------|-----------------|
|       |                    |                 |                 |

EXHIBIT 1

| Clerk of the U.S. District Court, Northern District of Illinois 219 South Dearborn Street Chicago, IL 60604 | Juan E. Monteverde Faruqi & Faruqi LLP 369 Lexington Avenue, 10th Floor New York, NY 10003 | David F. Graham Sidley Austin LLP One South Dearborn Street Chicago, IL 60603 | William H. Gussman, Jr. Schulte Roth & Zabel LLP 919 Third Avenue New York, NY 10022 |
|---|---|---|---|

ANY PERSON WHO FAILS TO OBJECT AND FOLLOW THE PROCEDURES SET FORTH ABOVE SHALL BE CONSIDERED TO HAVE WAIVED ANY OBJECTION AND SHALL FOREVER BE BARRED FROM RAISING ANY OBJECTION IN THE ACTION OR ANY OTHER ACTION OR PROCEEDING.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and to consider Class Counsel's request for an award of attorneys' fees and expenses. You may attend and, if you timely filed an objection and also provided the other information described in the answer to Question 16 below, you may ask to speak, but you don't have to.

**15. When and where will the Court decide whether to approve the Settlement?**

The Court has scheduled a Fairness Hearing which will be held before Judge Ronald Guzman on _____, 2015 at __: __ .m. Central Time, in the United States District Court for the Northern District of Illinois courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who asked to speak at the hearing. The Court will also consider whether, and how much, to pay the lawyers for Plaintiff and the Class in the event the Settlement is approved. After the hearing, the Court will decide whether to approve the Settlement and, if so, whether and how much Class Counsel should be paid. We do not know how long these decisions will take.

**16. Do I have to come to the hearing?**

No. Plaintiff's lawyers will answer any questions Judge Guzman may have. But you are welcome to attend the hearing at your own expense. If you send a written objection, you do not have to come to the Court to discuss it. As long as you mailed your written objection on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it's not necessary.

**17. May I speak at the hearing?**

If you have previously submitted an objection and appear at the hearing, you may ask the Court for permission to speak. To do so, you must also send a letter saying that it is your "Notice of Intention to Appear at the Tellabs Fairness Hearing." Be sure to include your name, address, telephone number, and your signature. If you intend to present any documents or other materials at the hearing, copies of these must be included with your Notice of Intention to Appear.

You must mail your Notice of Intention to Appear to the four addresses set forth in the answer to Question 13 above, and the Notice of Intention to Appear must be mailed and postmarked no later than _____, 2015.

Case: 1:13-cv-07945 Document #: 167-1 Filed: 08/24/15 Page 48 of 137 PageID #:1773
Case: 1:13-cv-07945 Document #: 107-1 Filed: 11/20/14 Page 53 of 63 PageID #:1066
EXHIBIT 1

## IF YOU DO NOTHING

**18. What happens if I do nothing at all?**

If you do nothing, your rights will nonetheless be affected. You won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

**19. How do I get more information?**

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.faruqilaw.com.

### NOTICE TO PERSONS OR ENTITIES
### HOLDING RECORD OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks and other persons or entities who are members of the Class in their capacities as record holders, but not as beneficial holders, are requested to send this Notice promptly to beneficial holders. Additional copies of this Notice for transmittal to beneficial holders are available free of charge by contacting the following:

[INSERT]

You may also timely furnish the names and addresses of your beneficial holders in writing to Coriant (formerly Tellabs, Inc.) which will then be responsible for sending the Notice to such beneficial holders.

8

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

KERRY LAMBERT, On Behalf of Himself and
All Others Similarly Situated,

               Plaintiff,

       v.

TELLABS, INC., VINCENT H. TOBKIN, BO
HEDFORS, FRANK IANNA, VINCENT D.
KELLY, MICHAEL E. LAVIN, STEPHANIE
PACE MARSHALL, ALEX MASHINSKY,
GREGORY J. ROSSMANN, DENNIS F.
STRIGL, JAN H. SUWINSKI, MIKEL H.
WILLIAMS, MARLIN EQUITY PARTNERS,
BLACKHAWK HOLDING VEHICLE, LLC, and
BLACKHAWK MERGER SUB INC.,

               Defendants.

Case No. 1:13-cv-07945

Hon. Ronald A. Guzman

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement" or the "Agreement"), dated November 20, 2014, is entered into between Kerry Lambert, plaintiff in the above-captioned action, on behalf of himself and on behalf of the plaintiff Class defined herein, and Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust (plaintiffs in the Englehart Action (as defined below) (the plaintiffs in both lawsuits collectively being referred to herein as "Plaintiffs"), on behalf of each of themselves, and defendants Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams (the "Individual Defendants"), Tellabs, Inc. ("Tellabs" or the "Company"), Marlin Equity Partners ("Marlin"), Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc. (collectively with Marlin, the "Marlin Defendants") (Tellabs, the Individual Defendants, and the Marlin Defendants

being collectively referred to herein as the "Defendants," and Defendants and Plaintiffs together being referred to as "the Parties"), by and through the undersigned attorneys, subject to the approval of the Court, as defined herein.

### Background to the Settlement

A.      On or about April 30, 2013, the Tellabs Board of Directors (the "Board" or the "Tellabs Board") authorized a formal process to explore Tellabs' strategic alternatives. As part of this process, Goldman Sachs, which was hired by the Company to serve as its financial advisor, was authorized to contact specified third parties to determine whether they were interested in pursuing a possible transaction with Tellabs.

B.      On October 18, 2013, the Tellabs Board entered into an Agreement and Plan of Merger (as amended or modified from time to time, the "Merger Agreement"), by and among the Company, Blackhawk Merger Sub Inc., and Blackhawk Holding Vehicle LLC, which *inter alia*, contemplated a cash tender offer of $2.45 per share of Tellabs stock ("Offer") by Blackhawk Merger Sub Inc. and, following the consummation of the Offer and subject to the satisfaction or, if permissible, waiver of the other conditions set forth in the Merger Agreement, Blackhawk Merger Sub Inc. would merge with and into the Company (collectively, the "Transaction"), with the Company surviving the Merger.

C.      On November 1, 2013, Tellabs filed a Schedule 14D-9 with the Securities and Exchange Commission related to the Offer.

D.      On November 5, 2013, Plaintiff Lambert filed a putative stockholder class action complaint styled *Lambert v. Tellabs, Inc., et al.*, Case No. 1:13-cv-7945 (the "Lambert Action") against the Defendants, alleging certain violations of the federal securities laws in connection with

the Schedule 14D-9, claims of breaches of fiduciary duties in connection with the Transaction, and claims of aiding and abetting against Tellabs and the Marlin Defendants.

E.      On November 5, 2013, Plaintiff Lambert filed a motion seeking expedited discovery in the Lambert Action, and subsequently, Faruqi & Faruqi LLP (counsel for Plaintiff Lambert), and counsel for Defendants ("Defendants' Counsel") met and conferred regarding expedited discovery and reached an agreement regarding the production of certain documents.

F.      On November 14, 2013, counsel for Defendants and Plaintiff Lambert executed a protective order to govern the exchange of confidential discovery ("Protective Order").

G.      Following the agreement by counsel for Defendants and Plaintiff Lambert to be bound by the terms of the Protective Order, Defendants provided to Plaintiff Lambert certain requested documents relating to his claims, including minutes of meetings of the Tellabs Board and extensive presentations to the Tellabs Board by its financial advisor and Tellabs management, which counsel for Plaintiff Lambert has reviewed.

H.      On November 20, 2013, Tellabs and the Individual Defendants filed a Motion to Dismiss the Lambert Action for failure to state a claim.  The Marlin Defendants also filed a Motion to Join Tellabs and the Individual Defendants' Motion to Dismiss.

I.      On November 20, 2013, counsel for Plaintiff Lambert sent a formal demand letter to Defendants' Counsel in an effort to resolve the Lambert Action (the "Demand Letter").

J.      Subsequent to receipt of the Demand Letter, Plaintiff Lambert and Defendants, through their respective counsel, commenced arm's length discussions and negotiations regarding the Demand Letter and a potential resolution of the claims asserted in the Lambert Action.

K.      On November 24, 2013, Defendants and Plaintiff Lambert, by and through their counsel, completed their negotiations regarding a potential settlement and executed an MOU

containing the terms of their agreement-in-principle to resolve the Lambert Action. Among other things, the MOU set forth the agreement-in-principle between Defendants and Plaintiff Lambert that, in consideration for the full and final settlement and dismissal with prejudice of the Lambert Action and the release of any and all Released Claims, as defined therein, Tellabs would make additional disclosures (the "Supplemental Disclosures," which are attached hereto as Exhibit A) in an amendment to the Schedule 14D-9 (the "Amendment").

L.     On November 25, 2013, the Defendants and Plaintiff Lambert, through their counsel, informed the Court of their agreement-in-principle to resolve the Lambert Action, and Tellabs and the Individual Defendants withdrew their Motion to Dismiss without prejudice (the Marlin Defendants' Motion to Join having already been granted).

M.     Also on November 25, 2013, Tellabs filed the Amendment with the SEC.

N.     On December 2, 2013, the Transaction closed, and Marlin completed its acquisition of Tellabs.

O.     The MOU entered into between Defendants and Plaintiff Lambert provided for certain additional confirmatory discovery, which was subsequently completed. In that regard, on January 30 and 31 and February 12, 2014, counsel for Plaintiff Lambert took the depositions of Ryan Limaye (a representative of Tellabs' financial advisor, Goldman Sachs), Vincent H. Tobkin (Chairman of the Tellabs Board), and Daniel Kelly (CEO of Tellabs), respectively. In addition, Plaintiff Lambert reviewed thousands of pages of documents that included, *inter alia*, e-mails, correspondence, financial presentations, financial diligence and board minutes regarding the Transaction produced by Defendants.

P.     Without in any way admitting or conceding that any additional disclosures are or have been material or required, Defendants acknowledge that the filing of the Complaint in the

Lambert Action and negotiations with counsel for Plaintiff Lambert in connection with a potential settlement of the Lambert Action were a cause of the Supplemental Disclosures contained in Exhibit A hereto.

Q.      On March 20, 2014, Plaintiffs Englehart, Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust filed a putative stockholder class action complaint styled *Englehart, et al. v. Tellabs, Inc., et al.*, Case No. 1:14-cv-1990 (the "Englehart Action") (the Lambert Action and the Englehart Action collectively being referred to as the "Actions") against the Defendants, alleging certain violations of the federal securities laws in connection with the Schedule 14D-9, claims of breaches of fiduciary duties in connection with the Transaction, and claims of aiding and abetting against Tellabs and the Marlin Defendants.

R.      On March 21, 2014, Defendants and Plaintiff Lambert, through their counsel, submitted a settlement agreement to the Court (the "March 21 Agreement"), which memorialized the agreement set forth in the MOU. The March 21 Agreement provided for certification of the proposed class for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1) and 23(b)(2).

S.      On April 9, 2014 counsel for Defendants and Plaintiffs Englehart, Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust reached an agreement regarding the production by Defendants of confidential discovery. Following the agreement by counsel for Plaintiffs Englehart, Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust to be bound by the terms of the agreement regarding confidential discovery, Defendants provided to counsel for Plaintiffs Englehart, Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust the same documents previously provided to counsel for Plaintiff Lambert, as well as copies of the transcripts of the three depositions taken by counsel for Plaintiff Lambert. Counsel for Plaintiffs Englehart,

Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust subsequently reviewed these documents.

T.     On April 18, 2014, Defendants and Plaintiff Lambert informed the Court that, in light of the filing of the Englehart Action, they had agreed to amend the March 21 Agreement to provide for certification of the proposed class for settlement purposes only pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), therefore providing members of the proposed class with the right to opt out of the proposed settlement.

U.     Defendants have vigorously denied and continue to deny vigorously, any wrongdoing or liability with respect to all claims asserted in the Actions including that they have committed any violations of law, that they have acted improperly in any way, that they have any liability or owe any damages of any kind to Plaintiffs and/or the Class, and that any additional disclosures (including the additional disclosures made in the Supplemental Disclosures) are required under any applicable rule, regulation, statute, or law, but are entering into the Settlement Agreement solely because they consider it desirable that the Lambert Action be settled and that the Actions be dismissed with prejudice in order to eliminate the burden, inconvenience, expense, risk and distraction of further litigation.

V.     While Plaintiffs believe that they brought their claims in good faith, they believe that the negotiated relief obtained pursuant to this Settlement for themselves and the Class in the form of the Supplemental Disclosures is and has been, under the circumstances, fair, reasonable and adequate, and in the best interests of all the members of the Class in exchange for a compromise, settlement and release of all claims, particularly given that after additional investigation and discovery it is apparent that Plaintiffs and the Class face significant risks that

they would not be able to prevail on their remaining claims and further litigation of the Actions would entail time, expense and additional uncertainties.

W.    The Parties have reached the agreement set forth in this Settlement Agreement providing for settlement of the Lambert Action, and dismissal of the claims in the Englehart Action, on the terms and conditions set forth below, which includes, but is not limited to, a release of all claims which were or could have been asserted in the Actions.

NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND AGREED, by Plaintiffs, for themselves, by Plaintiff Lambert on behalf of the Class, and the Defendants that, subject to the approval of the Court and pursuant to Federal Rule of Civil Procedure 23 and the other conditions set forth herein, for the good and valuable consideration set forth herein and which has been conferred on Plaintiffs and the Class, the Lambert Action shall be finally and fully settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims shall be finally and fully compromised, settled, released and dismissed with prejudice as to the Released Parties, in the manner and upon the terms and conditions hereafter set forth.

**A.    Definitions.**

1.    The following capitalized terms, used in this Settlement Agreement, shall have the meanings specified below:

(a)    "Class" or "Settlement Class" means all record holders and beneficial owners of any share(s) of Common Stock who have held any such share(s) at any time during the period beginning on and including October 18, 2013, through and including December 2, 2013 (the "Class Period"), including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on

behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, but excluding the Defendants. Plaintiff Lambert seeks, for purposes of the Settlement only, conditional certification as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

(b)      "Class Member" means a member of the Class.

(c)      "Court" means the United States District Court for the Northern District of Illinois.

(d)      "Court Approval" means the entry of the Final Order and Judgment.

(e)      "Effective Date" means the first business day following the date the Final Order and Judgment has become final and unappealable, whether by affirmance on or exhaustion of any possible appeal or review, writ of certiorari, lapse of time or otherwise. The finality of the Final Order and Judgment shall not be affected by any appeal or other proceeding regarding solely an application for attorneys' fees and expenses.

(f)      "Final Order and Judgment" means the order to be entered by the Court approving the Settlement Agreement identical in all material respects to the form attached hereto as Exhibit C or as modified by agreement of the Parties.

(g)      "Opt-Out List" means the complete, final, and accurate list of all properly submitted exclusion requests received by Plaintiffs' Counsel and provided to counsel for Defendants, as required under the Agreement. The named plaintiffs in the Englehart Action, i.e., Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust, hereby promise and agree that they will remain members of the Settlement Class and not opt out.

(h)      "Plaintiffs' Counsel" means the law firms of Faruqi & Faruqi LLP, Wolf Popper LLP and Johnson & Weaver, LLP.

(i)    "Preliminary Approval Order" means the order to be rendered by the Court preliminarily approving the Settlement Agreement identical in all material respects to the form attached hereto as Exhibit B or as modified by agreement of the Parties.

(j)    "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims (defined below), that Plaintiffs or any or all other members of the Settlement Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, against any of the Released Parties (defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal securities laws or state law regarding disclosure of fiduciary obligations or any claims that could be asserted derivatively on behalf of Tellabs), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, failures to act, transactions, occurrences, statements, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were, or could have been alleged, asserted, set forth, claimed, or referred to in the Actions or the subject matter of the Actions, including, without limitation, any and all claims which are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) the Transaction, including but not limited to the terms and conditions thereof, (ii) the Merger Agreement, including but not limited to

the terms and conditions thereof, (iii) any and all occurrences or matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (iv) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the potential sale of Tellabs, (v) negotiations in connection with the Merger Agreement, the Transaction and with any actual or potential acquirer, (vi) the consideration to be received by Class Members or by any other Person in connection with the Transaction, (vii) the payment of a termination fee in connection with the termination of the Merger Agreement, (viii) the Schedule 14D-9, any amendment thereto or any other disclosures, public filings, periodic reports, press releases, proxy statements or other statements issued, made available or filed relating, directly or indirectly, to the Transaction, the Merger Agreement or Tellabs' consideration of strategic alternatives, including but not limited to claims under the federal securities laws, (ix) the fiduciary obligations of the Released Parties (defined below) in connection with the Transaction, the Merger Agreement or any of the matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (x) claims for fees, expenses or costs incurred in prosecuting or settling the Actions, or in connection with any claim for benefits conferred on the Class, except as set forth in Paragraph 13 below, or (xi) any of the matters referred to or alleged in any complaint or amendment(s) thereto filed in the Actions (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "Released Claims"); provided, however, (a) that the Released Claims shall not include (1) the right to enforce the Settlement, or (2) any claims for statutory appraisal with respect to the merger of Blackhawk Merger Sub Inc. with and into Tellabs by Tellabs stockholders who properly perfect such appraisal claims and do not otherwise waive their appraisal rights, and (b) that Class Members who submit valid requests for exclusion pursuant to the

requirements set forth in the Notice (as defined below) and the Preliminary Approval Order will not be bound by the release of any claims described in this Settlement Agreement

(k)     "Released Parties" means (i) Tellabs, Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, Mikel H. Williams, Marlin Management Company, LLC (d/b/a Marlin Equity Partners), Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.; and (ii) the respective past, present or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributes, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

(l)     "Settlement" means the settlement of the Lambert Action between and among Plaintiffs, on behalf of themselves and the Class, and the Defendants, as set forth in this Agreement.

(m)     "Settlement Hearing" means the hearing to be held by the Court to determine whether the proposed Settlement should be approved as fair, reasonable and adequate and in the best interests of the Settlement Class, whether all Released Claims should be dismissed with prejudice, whether a Final Order and Judgment approving the Settlement should be entered,

and whether and in what amount any award of attorneys' fees and reimbursement of expenses should be paid to Faruqi & Faruqi, LLP by Tellabs and/or its successor-in-interest.

(n) "Unknown Claims" means any claim that Plaintiffs or any other member of the Class does not know or suspect exists in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement. With respect to any of the Released Claims, the Parties stipulate and agree that upon Court Approval of the Settlement, Plaintiffs shall expressly and each member of the Settlement Class shall be deemed to have, and by operation of the Final Order and Judgment by the Court shall have, expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Plaintiffs acknowledge and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, and by operation of law the members of the Class, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. Plaintiffs acknowledge, and the members of the Class by operation of

law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement and was relied upon by each and all of Defendants in entering into the Settlement Agreement.

**B.     Certification of Class for Settlement Purposes.**

2.     The Parties agree to the certification of the Settlement Class and certification of Kerry Lambert  as class representative ("Class Representative") for purposes of this Settlement only pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

3.     The certification of the Settlement Class shall be binding only with respect to and for purposes of this Agreement.  In the event that this Agreement is terminated pursuant to its terms, is not approved in all material respects by the Court, or any judgment or order entered pursuant hereto is reversed, vacated, or modified in any material respect by the Court or any other court, the certification of the Settlement Class shall be deemed vacated, the Lambert Action shall proceed as though the Settlement Class had never been certified, and no reference to the Settlement Class certification for settlement purposes only, or any documents related thereto, shall be made by the Parties for any purpose, except as expressly authorized by the terms of this Agreement.

**C.     Releases, Dismissal and other Settlement Consideration.**

4.     The Supplemental Disclosures have each been agreed to and provided in consideration for the full and final settlement and dismissal with prejudice of the Lambert Action and the release of any and all Released Claims.

5.     As of the Effective Date, the Lambert Action and the Released Claims shall be dismissed with prejudice, on the merits and without costs, except as provided herein.

6.     As of the Effective Date, Plaintiffs and all Class Members, and their respective

heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, shall fully, finally and forever release, settle and discharge the Released Parties from and with respect to the Released Claims, and will be forever barred and enjoined from commencing, instituting, prosecuting or litigating any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties (the "Release of Defendants").

7.      No Released Party shall have any obligation to pay or bear any amounts, expenses, costs, damages, or fees to or for the benefit of Plaintiffs or any Class Members in connection with this Settlement, including but not limited to attorneys' fees and expenses for any counsel to any Class Member, or any costs of notice or settlement administration or otherwise; provided, however, that Tellabs, or its successor(s)-in-interest, shall be responsible for paying or providing for payment of (i) the costs of notice of the proposed Settlement to the members of the Class solely in accordance with Paragraph 9 below, and (ii) attorneys' fees and expenses awarded to Plaintiffs' Counsel by the Court solely in accordance with Paragraph 13 below.   Under no circumstances shall Plaintiffs or Plaintiffs' Counsel have any responsibility for paying the costs of notice of the proposed Settlement to the Class.

8.      As of the Effective Date, Defendants and their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of or claiming under any of them, and each of them, shall fully, finally and forever release, settle and discharge Plaintiffs and Plaintiffs' Counsel from any and all claims arising out of or relating to their filing and prosecution of the Actions (the "Release of Plaintiffs"); provided, however, that the Release of Plaintiffs shall not include Defendants' rights to enforce the Settlement.

9.      Tellabs or its successor(s)-in-interest shall be responsible for providing notice of the proposed Settlement to Class Members, and Tellabs or its successor(s)-in-interest shall pay, or cause their respective insurers to pay, the costs of any notice(s) to Class Members approved by the Court in the Preliminary Approval Order.

10.     Any Class Member (with the exception of Plaintiffs) may request exclusion from the Settlement Class.  Any Class Member who seeks exclusion from the Class must make the request in accordance with the procedures and requirements set forth in the Notice (as defined below).  Beginning on the Friday immediately following the date the Notice is mailed, and on every Friday until the time for requesting exclusion has expired, Plaintiffs' Counsel shall provide to counsel for Defendants complete and accurate copies of all exclusion requests submitted to the Court during the week ending on the previous Friday.  In addition, within ten (10) days after expiration of the deadline for Class Members to request exclusion from the Settlement Class, Plaintiffs' Counsel shall furnish the Opt-Out List to counsel for Defendants.  Only individual Class Members may submit requests for exclusion; requests for exclusion may not be submitted on behalf of a putative class or subclass of similarly situated Class Members.  Counsel for Defendants and Plaintiffs' Counsel shall take no affirmative action to encourage Class Members to exclude themselves from the Settlement Class.

**D.      Submission of the Settlement to the Court for Approval.**

11.     As soon as practicable after this Settlement Agreement has been executed, the Parties shall jointly apply to the Court for entry of a Preliminary Approval Order identical in all material respects to the form attached hereto as Exhibit B, providing for, among other things: (a) certification of the Class for settlement purposes only; (b) appointment of Kerry Lambert as Lead Plaintiff and Faruqi & Faruqi LLP as Lead Counsel pursuant to the Private Securities Litigation Reform Act;  (c) approval of the Notice of Proposed Settlement of Class Action, Settlement

Hearing and Right to Appear (the "Notice"), identical in all material respects to the form attached to the Preliminary Approval Order as Exhibit 1; (d) the procedures for Class Members who wish to request exclusion from the Settlement Class; and (e) the scheduling of a Settlement Hearing to consider, among other things: (i) the joint request of the Parties that the Final Order and Judgment identical in all material respects to the form attached hereto as Exhibit C be entered, and (ii) Plaintiffs' application for attorneys' fees and expenses, and any objections to the foregoing. At the Settlement Hearing, the Parties shall jointly request that the Final Order and Judgment identical in all material respects to the form attached hereto as Exhibit C be entered.

**E.     Conditions of Settlement.**

12.      This Settlement Agreement is expressly conditioned on and subject to each of the following conditions and, except as provided in Paragraph 17, shall be cancelled and terminated unless:

>   (a)      the Court enters the Preliminary Approval Order identical in all material respects to the form attached hereto as Exhibit B;
>
>   (b)      the Court enters the Final Order and Judgment identical in all material respects to the form attached hereto as Exhibit C; and
>
>   (c)      the Effective Date shall have occurred.

**F.     Attorneys' Fees and Expenses.**

13.      Plaintiffs and Plaintiffs' Counsel intend to petition the Court for an award of fees in an amount not to exceed seven hundred thousand dollars ($700,000) and expenses not to exceed fifty thousand dollars ($50,000) in connection with the Lambert Action (the "Fee and Expense Application"), which petition shall be the sole fee and expense application made in the Actions. Defendants agree not to oppose such Fee and Expense Application. The Parties acknowledge and agree that Tellabs or its successor(s)-in-interest shall pay, or cause their respective insurers to pay

on behalf of the Individual Defendants and the Company, any fees and expenses awarded by the Court to Plaintiffs or Plaintiffs' Counsel in connection with the Fee Application within ten (10) business days after the later of: (i) the Effective Date, (ii) the date that an order by the Court approving any award of fees and expenses becomes final and non-appealable, whether by affirmance or on exhaustion of any possible appeal or review, lapse of time or otherwise, or (iii) the date on which the Company and any applicable insurer is provided with the payee's properly executed W-9 and wire transfer information.

14.     Neither Plaintiffs nor Plaintiffs' Counsel shall make any other application for an award of fees and expenses in connection with the Actions or the subject matter of the Actions. Final resolution by the Court of the Fee and Expense Application shall not be a precondition to the Settlement or the dismissal of the Actions in accordance with the Settlement, and the Fee and Expense Application may be considered separately from the Settlement.  Any failure by the Court to approve the Fee and Expense Application, in whole or in part, shall have no impact on the effectiveness of the Settlement.

### G.     Stay Pending Court Approval and Dismissal of the Englehart Action.

15.     Plaintiffs agree to stay the proceedings in the Lambert Action, and to stay and not to initiate any and all other proceedings other than those incident to the Settlement itself pending the occurrence of the Effective Date.

16.     Plaintiffs Englehart, Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust agree to file a motion for a stay of the Englehart Action within three (3) business days of the execution of this Settlement Agreement and agree not to initiate or re-initiate any proceedings other than those incident to the Settlement itself pending the occurrence of the Effective Date. Plaintiffs Englehart, Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust further agree to file a stipulation of dismissal with prejudice in the Englehart Action within three (3) business days

of the Effective Date. The Parties also agree to use their best efforts to stay or seek dismissal of or oppose entry of any interim or final relief in favor of any member of the Settlement Class in any litigation other than the Actions against any of the Released Parties that challenges the Settlement, the Transaction, including any transactions contemplated thereby, or otherwise involves, directly or indirectly, a Released Claim.

### H.  Effect of Disapproval, Cancellation or Termination.

17.  If either (a) the Court does not enter the Preliminary Approval Order identical in all material respects to the form attached hereto as Exhibit B, (b) the Court does not enter the Final Order and Judgment identical in all material respects to the form attached hereto as Exhibit C, (c) on or following appellate review the Final Order and Judgment is modified or reversed in any material respect, or (d) any of the other conditions of Paragraph 12 is not satisfied, this Agreement shall be cancelled and terminated unless counsel for each of the Parties to this Agreement, within ten (10) business days from receipt of such ruling or event, agrees in writing with counsel for the other Parties hereto to proceed with this Agreement and Settlement, including only with such modifications, if any, as to which all other Parties in their sole judgment and discretion may agree. For purposes of this paragraph, an intent to proceed shall not be valid unless it is expressed in a signed writing. Neither a modification nor a reversal on appeal of the amount of fees, costs and expenses awarded by Court to Plaintiffs' Counsel shall be deemed a material modification of the Final Order and Judgment or this Agreement.

18.  Defendants will have the option to terminate this Settlement, in their sole discretion, if Class Members who held a certain percentage of Tellabs stock as of December 2, 2013, choose to exclude themselves from the Settlement Class (the "Opt-Out Threshold"), as set forth in a separate agreement (the "Supplemental Agreement") executed between the Parties, which is

incorporated by reference into this Agreement. The Opt-Out Threshold will be disclosed to the Court for purposes of approval of the Settlement, but such disclosure shall be carried out to the fullest extent possible so as to maintain the Opt-Out Threshold as confidential in accordance with the practices of the Court. Defendants will have twenty-one (21) days from their receipt of the final Opt-Out List in which to exercise, in their sole discretion, this right to terminate, and shall do so by providing written notice of election to terminate to Plaintiffs' Counsel. In the event of termination of this Settlement pursuant to the Supplemental Agreement, this Agreement shall become null and void and of no further force and effect.

19.     In the event that the Settlement is terminated or (a) the Court does not enter the Preliminary Approval Order identical in all material respects to the form attached hereto as Exhibit B, (b) the Court does not enter the Final Order and Judgment identical in all material respects to the form attached hereto as Exhibit C, (c) on or following appellate review the Final Order and Judgment is modified or reversed in any material respect, or (d) any of the other conditions of Paragraph 12 is not satisfied, Plaintiffs' Counsel agrees not to seek, at any time or in any legal proceeding, an award of fees and expenses in connection with any claimed benefit conferred as a result of the Supplemental Disclosures.

20.     If the Effective Date does not occur, or if this Settlement Agreement is disapproved, canceled or terminated, all of the Parties to this Settlement Agreement shall be deemed to have reverted to their respective litigation status in the Lambert Action immediately prior to the execution of the MOU, and they shall proceed in all respects in the Lambert Action as if the MOU and this Settlement Agreement had not been executed and the related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Lambert Action (including but not limited to certification of any plaintiff class) shall be preserved without

prejudice in any way; provided, however, that in the event of cancellation or termination of this Settlement Agreement, Paragraphs 16, 19, 26, 27, 28, 30 and 38 shall nonetheless survive and continue to be of effect and have binding force.

**I.  Miscellaneous Provisions.**

21.  All of the Exhibits referred to herein shall be incorporated by reference as though fully set forth herein.

22.  This Agreement may be amended, modified or waived only by a written instrument signed by counsel for all Parties hereto or their successors.

23.  The Parties represent and agree that the terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

24.  If any deadline set forth in this Agreement or the Exhibits thereto falls on a Saturday, Sunday or legal holiday, that deadline will be continued to the next business day.

25.  The headings in this Agreement are solely for the convenience of the attorneys for the Parties and the Court.  The headings shall not be deemed to be a part of this Agreement and shall not be considered in construing or interpreting this Agreement.

26.  Neither the MOU nor this Settlement Agreement, nor the fact or any terms of the Settlement, nor any negotiation, discussion, action or proceeding in connection with the MOU or Settlement Agreement, is evidence, or a presumption, admission or concession by any Party, any signatory hereto or any Released Party, of any fault, liability or wrongdoing whatsoever, or lack of any fault, liability or wrongdoing, as to any facts or claims alleged or asserted in the Actions, or any other actions or proceedings.  Neither the MOU nor this Agreement is a finding or evidence of the validity or invalidity of any claims or defenses in the Actions or any wrongdoing by any of the defendants named therein or any damages or injury to any Class Members.  Neither the MOU nor

this Agreement, nor any of the terms and provisions of the MOU or this Agreement, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the settlement proceedings, nor any statements in connection therewith, (a) shall (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of any infirmity of any defense, or of any damage to the Plaintiffs or any Class Member, or (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Actions, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any person or entity, or (b) otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Settlement Agreement and/or Final Order and Judgment may be introduced in any proceeding, whether in the Court or otherwise, as may be necessary to argue that the Settlement Agreement and/or the Final Order and Judgment has *res judicata*, collateral estoppel or other issue or claim preclusion effect or to otherwise consummate or enforce the Settlement and/or the Final Order and Judgment.

27. In the event that the Court or any other court is called upon to interpret this Settlement Agreement, no one party or group of Parties shall be deemed to have drafted this Settlement Agreement.

28. All agreements made and orders entered during the course of the Actions relating to the confidentiality of documents or information shall survive this Settlement Agreement.

29.     The waiver by any Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of that or any other prior or subsequent breach of any provision of this Settlement Agreement by any other Party.

30.     This Settlement Agreement and the Exhibits constitute the entire agreement among the Parties and supersede any prior agreements among the Parties with respect to the subject matter hereof, including but not limited to the March 21 Agreement.  No representations, warranties or inducements have been made to or relied upon by any Party concerning this Agreement or its Exhibits, other than the representations, warranties and covenants expressly set forth in such documents.

31.     This Settlement Agreement may be executed in one or more counterparts, including by facsimile and electronic mail, and as executed, shall constitute one agreement.

32.     The Parties and their respective counsel of record agree that they will use their best efforts to obtain all necessary approvals of the Court required by this Settlement Agreement (including, but not limited to, using their best efforts to resolve any objections raised to the Settlement).

33.     Plaintiffs and Plaintiffs' Counsel represent and warrant that Plaintiffs are members of the Class and that none of the Plaintiffs' claims or causes of action referred to in this Settlement Agreement have been assigned, encumbered, or otherwise transferred in any manner in whole or in part.

34.     Each counsel signing this Settlement Agreement represents and warrants that such counsel has been duly empowered and authorized to sign this Settlement Agreement on behalf of his or her respective clients.

35.     The Released Parties who are not signatories hereto shall be third party

beneficiaries under this Settlement Agreement entitled to enforce this Settlement Agreement in accordance with its terms.

36.     This Settlement Agreement shall be binding upon and shall inure to the benefit of the Parties and the Class (and, in the case of the releases, all Released Parties) and the respective legal representatives, heirs, executors, administrators, transferees, successors and assigns of all such foregoing Persons and upon any corporation, partnership, or other entity into or with which any party may merge, consolidate or reorganize.

37.     Plaintiffs' Counsel agree that within ten (10) days of receipt of a written request by any producing party following the Effective Date of the Settlement, they will return to the producing party all discovery material obtained from such producing party, including all documents produced by any of the Defendants (including, without limitation, their employees, affiliates, agents, representatives, attorneys, and third party advisors) and any materials containing or reflecting discovery material ("Discovery Material"), or certify in writing (including by electronic mail) that such Discovery Material has been destroyed; provided, however, that Plaintiffs' Counsel shall be entitled to retain all filings, court papers, and attorney work product containing or reflecting Discovery Material, subject to the requirement that Plaintiffs' Counsel shall not disclose any Discovery Material contained or referenced in such materials to any person except pursuant to court order or agreement with Defendants.  The Parties agree to submit to the Court any dispute concerning the return or destruction of Discovery Material.

38.     This Settlement Agreement and any and all disputes arising out of or relating in any way to any of them, whether in contract, tort or otherwise, shall be governed by and construed in accordance with the laws of the state of Illinois, without regard to conflict of laws principles. Each of the Parties (a) irrevocably submits to the personal jurisdiction of the Court in any suit, action or

proceeding arising out of or relating to the MOU, the Settlement and/or the Settlement Agreement, (b) agrees that all claims in respect of such suit, action or proceeding shall be brought, heard and determined exclusively in the Court (provided that, in the event that subject matter jurisdiction is unavailable in the Court, then all such claims shall be brought, heard and determined exclusively in any other state or federal court sitting in Chicago, Illinois), and (c) agrees that it shall not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such court, (d) agrees not to bring any action or proceeding arising out of or relating to the MOU, the Settlement or the Settlement Agreement in any other court, and (e) expressly waives, and agrees not to plead or to make any claim that any such action or proceeding is subject (in whole or in part) to a jury trial. Each of the Parties waives any defense of inconvenient forum to the maintenance of any action or proceeding brought in accordance with this paragraph. Each of the Parties further agrees to waive any bond, surety or other security that might be required of any other party with respect to such any action or proceeding, including an appeal thereof. Each of the Parties further consents and agrees that process in any such suit, action or proceeding may be served on such Party by certified mail, return receipt requested, addressed to such Party's counsel as designated in Paragraph 39 below.

39.     All notices under this Agreement are to be directed to the following counsel:

(a)     Tellabs and the Individual Defendants:

David F. Graham
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

(b)     The Marlin Defendants:

William H. Gussman, Jr.

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000
Fax: (212) 595-5955

(c)    Plaintiff Kerry Lambert:

Juan E. Monteverde
FARUQI & FARUQI LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331

(d)    Plaintiffs Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012
Family Trust:

Chet B. Waldman
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Phone: (212) 759-4600
Fax: (212) 486-2093

W. Scott Holleman
JOHNSON & WEAVER, LLP
99 Madison Avenue, 5th Floor
New York, NY 10016
Phone: (212) 802-1486
Fax: (12) 602-1592

*[Signatures Appear On the Following Pages]*

25

_Katrina Carroll_

Katrina Carroll
LITE DEPALMA GREENBERG, LLC
One South Dearborn Street
Suite 2100
Chicago, IL 60603
Phone: (312) 212-4383
Fax: (312) 212-5919

_Juan Monteverde_

Juan E. Monteverde
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331

*Counsel for Plaintiff Kerry Lambert*

_Martin P. Greene_

Martin P. Greene
Dartesia A. Pitts
GREENE AND LETTS
55 W. Monroe Street, Suite 600
Chicago, IL 60603
Phone: (312) 346-1100
Fax: (312) 346-4571

_Chet Waldman_ /JWR

Robert M. Korenreich
Chet B. Waldman
Joshua W. Ruthizer
Natalie M. Mackiel
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Phone: (212) 759-4600
Fax: (212) 486-2093

_W. Scott Holleman_

W. Scott Holleman
JOHNSON & WEAVER, LLP
99 Madison Avenue, 5th Floor
New York, NY 10016
Phone: (212) 802-1486

Fax: (212) 602-1592

*Attorneys for Plaintiffs Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust*

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*

John M. Touhy
David M. Friebus
BAKER HOSTETLER
191 North Wacker Drive
Suite 3100
Chicago, IL 60606
Phone: (312) 416-6200
Fax: (312) 416-6201

Michael E. Swartz
William H. Gussman, Jr.
Frank J. LaSalle
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000

Fax: (212) 602-1592

*Attorneys for Plaintiffs Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust*

_____

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*

_____

John M. Touhy
David M. Friebus
BAKER HOSTETLER
191 North Wacker Drive
Suite 3100
Chicago, IL 60606
Phone: (312) 416-6200
Fax: (312) 416-6201

_____

Michael E. Swartz
William H. Gussman, Jr.
Frank J. LaSalle
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000

Fax: (212) 602-1592

*Attorneys for Plaintiffs Robert
Englehart, Jorge Rodriguez and the
Judith Kane-Rodriguez 2012 Family
Trust*

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H.
Tobkin, Bo Hedfors, Frank Ianna,
Vincent D. Kelly, Michael E. Lavin,
Stephanie Pace Marshall, Alex
Mashinsky, Gregory J. Rossmann,
Dennis F. Strigl, Jan H. Suwinski, and
Mikel H. Williams*

John M. Touhy
David M. Friebus
BAKER HOSTETLER
191 North Wacker Drive
Suite 3100
Chicago, IL 60606
Phone: (312) 416-6200
Fax: (312) 416-6201

Michael E. Swartz
William H. Gussman, Jr.
Frank J. LaSalle
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
Phone: (212) 756-2000

Fax: (212) 595-5955

*Counsel for Marlin Equity Partners,*
*Blackhawk Holding Vehicle, LLC, and*
*Blackhawk Merger Sub Inc.*

**EXHIBIT A**

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, DC 20549

## SCHEDULE 14D-9

### (Amendment No. 2)
### (Rule 14d-101)

### SOLICITATION/RECOMMENDATION STATEMENT
### UNDER SECTION 14(d)(4) OF THE SECURITIES EXCHANGE ACT OF 1934

# TELLABS, INC.
#### (Name of Subject Company)

# TELLABS, INC.
#### (Name of Persons Filing Statement)

### COMMON STOCK, PAR VALUE $0.01 PER SHARE
##### (Title of Class of Securities)

### 879664100
##### (CUSIP Number of Class of Securities)

James M. Sheehan, Esq.
Executive Vice President,
General Counsel, Chief Administrative Officer and Secretary
Tellabs, Inc.
One Tellabs Center
1415 West Diehl Road
Naperville, Illinois 60563
Telephone (630) 798-8800

##### (Name, Address and Telephone Number of Person Authorized to Receive Notices and Communications
on Behalf of the Person Filing Statement)

*COPIES TO:*

Beth E. Flaming
Imad Qasim
Sidley Austin LLP
1 South Dearborn Street
Chicago, Illinois 60603
Telephone (312) 853-7000
Fax (312) 853-7036

☐   Check the box if the filing relates solely to preliminary communications made before the commencement of a tender offer.

This Amendment No. 2 to Schedule 14D-9 (this "*Amendment*") amends and supplements the Schedule 14D-9 filed with the Securities and Exchange Commission (the "*SEC*") on November 1, 2013 (as amended or supplemented from time to time, the "*Schedule 14D-9*"), by Tellabs, Inc., a Delaware corporation ("*Tellabs*" or the "*Company*"). The Schedule 14D-9 relates to the cash tender offer by Blackhawk Merger Sub Inc., a Delaware corporation ("*Purchaser*") and a wholly-owned subsidiary of Blackhawk Holding Vehicle LLC, a Delaware limited liability company ("*Parent*"). Parent and Purchaser are affiliates of Marlin Equity III, L.P., a Delaware limited partnership, Marlin Equity IV, L.P., a Delaware limited partnership, and Marlin Management Company, LLC, a Delaware limited liability company, as disclosed in the Tender Offer Statement on Schedule TO filed by Parent and Purchaser with the SEC on November 1, 2013 (as amended or supplemented from time to time, the "*Schedule TO*"). The Schedule TO relates to Purchaser's offer to purchase any and all of the outstanding Shares at a price per Share of $2.45, net to the seller thereof in cash, without interest, and less any applicable withholding taxes, upon the terms and subject to the conditions set forth in the Offer to Purchase, dated November 1, 2013 (the "*Offer to Purchase*"), and the related letter of transmittal (the "*Letter of Transmittal*"). The Offer to Purchase and the Letter of Transmittal have been filed as Exhibits (a)(1)(A) and (a)(1)(B) to the Schedule 14D-9, respectively.

Capitalized terms used, but not otherwise defined, in this Amendment shall have the meanings ascribed to them in the Schedule 14D-9. The information in the Schedule 14D-9 is incorporated into this Amendment by reference to all applicable items in the Schedule 14D-9, except that such information is hereby amended and supplemented to the extent specifically provided herein.

**Item 4.    The Solicitation or Recommendation.**

Item 4 ("*The Solicitation or Recommendation*") of the Schedule 14D-9 is hereby amended as follows:

*The following disclosure supplements and restates the third sentence of the last paragraph on page 10 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Background of the Offer and the Merger":*

After discussion regarding the Company's outlook and the attendant uncertainties, the Board determined that it desired additional information regarding the Company's financial and business outlook in order to assist the Board in considering various strategic options. For this reason, the Board decided to suspend the Company's discussions with third parties regarding a potential sale of the entire Company for the time being. However, the Board did authorize management to continue to permit Party A to conduct due diligence with respect to the data business and to contact other parties that might be interested in acquiring the Company's data business.

*The following disclosure supplements and restates the second-to-last sentence in the second paragraph on page 11 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Background of the Offer and the Merger":*

The Board discussed the strategic alternatives presented and then authorized the Company to formally engage Goldman Sachs as its financial advisor in connection with a potential sale of the Company. The Board also decided that, although there had been communications with various parties regarding a potential sale of the entire Company, the Company would be more likely to maximize stockholder value in connection with a potential sale of the entire Company if the Company were to conduct a more formal, non-public process of identifying and contacting the strategic and financial sponsor parties that would be the most likely to be interested in acquiring the Company (other than those as to which there were any material competitive concerns), and the Board directed Goldman Sachs, working with management, to begin such a process.

*The following disclosure supplements and restates the second sentence in the second full paragraph on page 17 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Background of the Offer and the Merger":*

The same day, the Company also provided Marlin with the Company's refined base case projections, which Company management had prepared on its own initiative to reflect refined assumptions regarding certain cash flow items.

*The following disclosure supplements and restates the last sentence of the first full paragraph on page 25 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

Goldman Sachs first calculated the implied values per Share as of December 31 for each of the calendar years 2014 through 2016, by applying illustrative price to one-year forward earnings per Share multiples of 12.0x to 18.0x, which were derived by Goldman Sachs utilizing its professional judgment and experience, taking into account current and historical trading data and the current P/E multiples for the Company and the selected companies (as defined below), to earnings per Share estimates for each of the calendar years 2015 through 2017. These theoretical future values of the Company's equity on a per Share basis were then discounted to present values to June 30, 2013, using an illustrative discount rate of 12.7% derived by application of the Capital Asset Pricing Model, which takes into account certain company-specific metrics, including the company's target capital structure and historical beta, as well as certain financial metrics for the United States financial markets generally and adding a size premium.

*The following disclosure supplements and restates the first sentence of the second paragraph on page 25 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

Goldman Sachs then calculated the implied values per Share as of December 31 for each of the calendar years 2014 through 2016, by applying illustrative price to one-year forward cash adjusted earnings per Share multiples of 8.0x to 14.0x, which were derived by Goldman Sachs utilizing its professional judgment and experience, taking into account current and historical trading data and the current cash adjusted P/E multiples for the Company and selected

2

companies, to cash adjusted earnings per Share estimates for each of the calendar years 2015 through 2017. These theoretical future values of the Company's equity on a per Share basis were then discounted to present values to June 30, 2013, using an illustrative discount rate of 12.7% derived by application of the Capital Asset Pricing Model, which takes into account certain company-specific metrics, including the company's target capital structure and historical beta, as well as certain financial metrics for the United States financial markets generally and adding a size premium.

*The following disclosure supplements and restates the first full paragraph on page 26 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

*Illustrative Discounted Cash Flow Analysis.* Goldman Sachs performed an illustrative discounted cash flow analysis on the Company using the Forecasts, the Company's cash balance and basic Share count as of June 28, 2013, and incorporating the present value (using a discount rate of 10.2%) of the Company's tax carryforwards of approximately $36 million (approximately $0.10 per share). In addition, stock based compensation expense was treated as a cash expense for purposes of determining unlevered free cash flow. Goldman Sachs calculated implied prices per Share using illustrative terminal values in the year 2017 based on perpetuity growth rates ranging from (2.0)% to 2.0%, estimated by Goldman Sachs utilizing its professional judgment and experience, taking into account the Forecasts and market expectations regarding long-term real growth of gross domestic product and inflation, to terminal year projected free cash flow and illustrative discount rates ranging from 16.6% to 20.6%. This analysis resulted in a range of implied present values per Share of $1.74 to $1.79.

*The following disclosure supplements and restates the second paragraph beginning on page 26 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

*Selected Companies Analysis.* Goldman Sachs reviewed and compared certain financial information for the Company to corresponding financial information, ratios and public market multiples for the following publicly traded corporations in the technology industry, separated into the Mid-Cap group (companies with market capitalizations of less than $10 billion), the Large-Cap group (companies with market capitalizations of $10 billion or more) and the Historically Declining Revenue group (collectively referred to as the "selected companies"). The following table presents the results of Goldman Sachs' analysis:

| Company | Enterprise Value as a multiple of | | | | Equity Value as a multiple of | | | |
| | CY2013E Revenue | CY2014E Revenue | CY2013E EBITDA | CY2014E EBITDA | CY2013E EPS | CY2014E EPS | CY2013E Cash Adjusted EPS | CY2014E Cash Adjusted EPS |
|---|---|---|---|---|---|---|---|---|
| **Large Cap** | | | | | | | | |
| Cisco | 1.85x | 1.76x | 6.0x | 5.6x | 11.1x | 10.5x | 6.7x | 6.3x |
| Ericsson | 1.02x | 0.98x | 8.6x | 7.2x | 19.4x | 14.7x | 15.0x | 11.3x |
| Juniper Networks | 1.79x | 1.69x | 7.9x | 6.8x | 17.4x | 15.5x | 11.6x | 10.3x |
| Motorola Solutions | 1.80x | 1.73x | 9.1x | 8.4x | 13.7x | 15.2x | 11.0x | 12.2x |
| **Median** | **1.80x** | **1.71x** | **8.2x** | **7.0x** | **15.6x** | **14.9x** | **11.3x** | **10.8x** |

3

| Mid-Cap | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ADTRAN | 1.59x | 1.41x | 16.5x | 11.3x | 35.9x | 27.6x | 24.9x | 18.9x |
| ADVA | 0.61x | 0.56x | 5.2x | 4.4x | 32.2x | 21.0x | 22.1x | 14.2x |
| Alcatel-Lucent | 0.55x | 0.54x | 9.4x | 6.6x | NM | NM | NM | 19.4x |
| Calix | 1.43x | 1.26x | 16.2x | 13.1x | 25.6x | 16.6x | 23.1x | 14.9x |
| Ciena | 1.84x | 1.66x | 19.5x | 15.0x | 38.9x | 24.8x | 34.5x | 21.8x |
| Harmonic | 1.43x | 1.33x | 13.2x | 10.9x | 46.0x | 24.5x | 38.2x | 20.0x |
| Infinera | 2.21x | 2.01x | NM | 17.6x | NM | 46.5x | NM | 37.2x |
| Sonus Networks | 2.54x | 2.40x | NM | NA | 173.5x | 69.4x | NA | 51.9x |
| Median | 1.51x | 1.37x | 14.7x | 11.3x | 37.4x | 24.8 | 24.9x | 19.7x |
| | | | | | | | | |
| **Historically Declining Revenue** | | | | | | | | |
| Alcatel-Lucent | 0.55x | 0.54x | 9.4x | 6.6x | NM | NM | NM | 19.4x |
| Blackberry | 0.14x | 0.17x | 1.5x | 1.4x | NM | NM | NM | NM |
| Nokia | 0.31x | 0.31x | 5.0x | 4.0x | NM | 22.5x | NM | 2.5x |
| Median | 0.31x | 0.31x | 5.0x | 4.0x | NM | 22.5x | NM | 10.9x |

Note that Blackberry market data and projections are as of September 22, 2013, one day prior to the announcement of the sale of the company to a consortium of investors. Nokia market data and projections are as of September 1, 2013, one day prior to announcement of the sale of the Devices & Services Business to Microsoft.

*The following disclosure supplements and restates the first full paragraph on page 27 of the Schedule 14D-9 in the section entitled "The Solicitation or Recommendation—Opinion of the Company's Financial Advisor":*

Although none of the selected companies is directly comparable to the Company, the selected companies were chosen because they are publicly traded companies in the communications technology industry with operations and product profiles that for purposes of analysis may be considered similar to certain of the Company's operations and product profiles.

## Item 8.  Additional Information.

Item 8 ("*Additional Information*") of the Schedule 14D-9 is hereby amended and supplemented by adding the following after the fourth paragraph under the heading "*Certain Litigation*":

"On November 24, 2013, the Company entered into a memorandum of understanding (the "*MOU*") with the plaintiffs in the *Lambert* action, which sets forth the parties' agreement in principle for settlement. The Company believes that no further disclosure is required to

supplement this Schedule 14D-9 under applicable laws; however, to avoid the risk that the *Lambert* action may delay or otherwise adversely affect the consummation of the Merger and to minimize the expense of defending the *Lambert* action, the Company has agreed, pursuant to the terms of the MOU, to make certain supplemental disclosures in this Schedule 14D-9, which are set forth in Amendment No. 2 to this Schedule 14D-9. Pursuant to the MOU, subject to certain confirmatory discovery by the plaintiffs in the *Lambert* action, the parties expect to execute a stipulation of settlement, which will be subject to approval by the United States District Court for the Northern District of Illinois, following the filing of Amendment No. 2 to this Schedule 14D-9. There can be no assurance that the settlement will be finalized or that the United States District Court for the Northern District of Illinois will approve the settlement."

## SIGNATURE

After due inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

**TELLABS, INC.**

By: /s/ Daniel P. Kelly
Daniel P. Kelly
President and Chief Executive Officer

Dated: November 25, 2013

6

Case: 1:13-cv-07945 Document #: 107-2 Filed: 08/24/15 Page 88 of 137 PageID #:1853

EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 1:13-cv-07945 |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Ronald A. Guzman |
| Defendants. | ) ) | |

## PRELIMINARY APPROVAL ORDER

WHEREAS, the Parties to the above-captioned class action (the "Lambert Action")[1] have

agreed to settle the Lambert Action; and

WHEREAS, Plaintiffs and Defendants have applied pursuant to Federal Rule of Civil

Procedure 23(e) for an Order approving the proposed Settlement of the Lambert Action and

determining certain matters in accordance with the Settlement Agreement entered into by the

Parties, dated November 20, 2014 (the "Agreement" or "Settlement Agreement"), and for the

---

[1] Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust, plaintiffs in the case of *Englehart, et al. v. Tellabs, Inc., et al.*, Case No. 1:14-cv-1990 (the "Englehart Action"), are also parties to the Settlement Agreement. As part of the Settlement Agreement, the plaintiffs in the Englehart Action have agreed to file a motion for a stay of the Englehart Action within three (3) business days of the execution of the Settlement Agreement and have agreed not to initiate or re-initiate any proceedings other than those incident to the Settlement itself pending the occurrence of the Effective Date. Plaintiffs in the Englehart Action

dismissal of the Lambert Action upon the terms and conditions set forth in the Settlement Agreement;[2]

NOW, after review and consideration of the Settlement Agreement filed with the Court and the Exhibits annexed thereto, and after due deliberation,

IT IS HEREBY ORDERED AND ADJUDGED this ___ day of _____, 2014, that:

1.       The Court approves, for purposes of settlement only, certification of the Lambert Action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class (the "Settlement Class" or "Class"):

> All record holders and beneficial owners of any share(s) of Tellabs stock who have held any such share(s) at any time during the period beginning on and including October 18, 2013, through and including December 2, 2013, including any and all of their respective successors-in-interest, successors, predecessors-in-interest, predecessors, representatives, trustees, executors, administrators, estates, heirs, assigns and transferees, immediate and remote, and any person or entity acting for or on behalf of, or claiming under, any of them, and each of them, together with their predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, but excluding the Defendants.

2.       The Court finds that, for the sole purpose of settlement and without an adjudication on the merits, that all requirements pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) are met for certification of the Settlement Class.

3.       Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of settlement only, Plaintiff Kerry Lambert is certified as the Class Representative. Pursuant to the Private Securities Litigation Reform Act, Plaintiff Kerry Lambert is appointed Lead Plaintiff and Faruqi & Faruqi LLP is appointed Lead Counsel.

---

have further agreed to file a stipulation of dismissal with prejudice in the Englehart Action within three (3) business days of the Effective Date.

[2] Capitalized terms (other than proper nouns) that are not defined herein shall have the meanings set forth in the Settlement Agreement.

4.      A hearing (the "Settlement Hearing") will be held on _____, 2015, at __:__ _.m., in the United States District Court for the Northern District of Illinois courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, to: (a) determine whether the Court should approve the Settlement as fair, reasonable and adequate and in the best interests of the Class; (b) determine whether the Final Order and Judgment should be entered dismissing the Lambert Action and the Released Claims as to the Released Parties with prejudice as against Plaintiffs and the Class, releasing the Released Claims, and permanently barring and enjoining all Class Members from commencing, instituting, prosecuting or litigating any action or other proceeding in any forum, or asserting any Released Claims against any of the Released Parties; (c) finally determine that the Notice was mailed in accordance with Paragraph 7 of this Order and that notice was given in full compliance with each of the requirements of Federal Rule of Civil Procedure 23 and due process; and (d) consider other matters, including a request by Plaintiffs' Counsel for attorneys' fees and reimbursement of expenses, such attorneys' fees and expenses (if and only if awarded by this Court) to be paid solely by Tellabs and/or its successor(s)-in-interest and/or their respective insurer(s).

5.      The Court reserves the right to adjourn and reconvene the Settlement Hearing, including with respect to the consideration of the application for attorneys' fees and reimbursement of expenses, without further notice to members of the Class other than by oral announcement at the Settlement Hearing or any adjournment thereof.

6.      The Court approves, in form and substance, the class notice (the "Notice"), identical in all material respects to the form attached hereto as Exhibit 1. The Court finds the mailing of the Notice in substantially the manner set forth in Paragraph 7 of this Order constitutes the best notice practicable under the circumstances to all persons entitled to such

notice of the Settlement Hearing and the proposed Settlement, and meets the requirements of Rule 23 of the Federal Rules of Civil Procedure and of due process. The Court further finds that the Notice attached hereto as Exhibit 1 complies with Federal Rule of Civil Procedure 23(c)(2)(B).

7.      Within twenty-one (21) days of entry of this Order, Coriant (formerly Tellabs Inc.) shall cause the Notice to be mailed by United States mail, first class, postage pre-paid, to each person who is shown on the records of Tellabs, its successors-in-interest or their respective transfer agents, to be a record holder of any share(s) of Tellabs stock or who held any such share(s) at any time during the period beginning on and including October 18, 2013, through and including the December 2, 2013, at his, her or its last known address appearing in the stock transfer records maintained by or on behalf of Tellabs. All record holders in the Class who were not also the beneficial owners of any Tellabs stock held by them of record shall be requested in the Notice to forward the Notice to such beneficial owners of such Tellabs tock. Coriant shall use reasonable efforts to give notice to such beneficial owners by causing additional copies of the Notice (a) to be made available to any record holder who, prior to the Settlement Hearing, requests the same for distribution to beneficial owners, or (b) to be mailed to beneficial owners whose names and addresses Coriant receives from record owners.

8.      At least twenty-one (21) calendar days before the date of the Settlement Hearing, Plaintiffs shall file with the Court papers in support of the Settlement and a Fee Application.

9.      At least ten (10) calendar days before the date of the Settlement Hearing, counsel for Tellabs shall file with the Court proof of mailing of the Notice.

10.      At least ten (10) calendar days before the date of the Settlement Hearing, counsel for Tellabs shall file with the Court proof of compliance with the Class Action Fairness Act.

11. Any Class Member may request exclusion from the Settlement Class. No Class Member shall be entitled to exclusion from the Class unless, no later than thirty (30) calendar days prior to the Settlement Hearing, such person delivers to the Clerk of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, via either United States mail or hand delivery, a written request for exclusion that includes the following information: (i) this case number (13-cv-07945); (ii) the Class Member's full name; (iii) the Class Member's current mailing address; (iv) a statement that the Class Member requests exclusion from the Settlement; (v) the total number of shares of Tellabs stock that the Class Member held at any time from October 18, 2013 through December 2, 2013; and (vi) the Class Member's personal signature and, if applicable, that of the Class Member's authorized representative.

12. If a request for exclusion does not include all of the information set forth in Paragraph 11, or if it is not timely submitted, then it shall be deemed invalid. A Class Member submitting an invalid request for exclusion from the Settlement Class shall be treated as if he or she did not submit any request for exclusion at all, and shall be deemed to have released all Released Claims upon entry of the Final Order and Judgment.

13. If the Court grants final approval of the Agreement and enters the Final Order and Judgment, all Class Members shall be bound by the Final Order and Judgment; provided, however, that Class Members who submit valid requests for exclusion pursuant to the requirements set forth in Paragraph 11 will not be bound by the release of any claims described in the Settlement Agreement.

.

14.     Any member of the Class may object to the Settlement Agreement, the Settlement, and/or the Fee Application. At the Settlement Hearing, any member of the Class who desires to do so may appear personally or by counsel, and show cause, if any, why the Settlement of the Lambert Action in accordance with and as set forth in the Settlement Agreement should not be approved as fair, reasonable and adequate and in the best interests of the Class; why the Final Order and Judgment should not be entered in accordance with and as set forth in the Settlement Agreement; or why the Court should not grant an award of reasonable attorneys' fees and expenses to Plaintiffs and/or Plaintiffs' Counsel for their services and actual expenses incurred in the Lambert Action; provided, however, that unless the Court in its discretion otherwise directs, no Class Member, or any other person, shall be entitled to contest the approval of the terms and conditions of the Settlement or (if approved) the Final Order and Judgment to be entered thereon, or the allowance of fees and expenses to Plaintiffs and/or Plaintiffs' Counsel, and no papers, briefs, pleadings or other documents submitted by any member of the Class or any other person (excluding a party to the Settlement Agreement) shall be received or considered, except by order of the Court for good cause shown, unless, no later than twenty-one (21) calendar days prior to the Settlement Hearing, such person files with the Clerk of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, and serves upon the attorneys listed below (1) proof of ownership that establishes that he, she or it is a member of the Class, and (2) a document containing the following information: (a) name, address, and telephone number; (b) name of the case; (c) the specific reasons for objecting to the Settlement or to Plaintiffs' Counsel's requested award of fees and expense; and (d) signature. If any Class Member also desires to speak at the hearing, such Class Member must also submit, in addition to items 1 & 2(a)-(d) above, a "Notice

of Intention to Appear at the Tellabs Fairness Hearing." These writings must be served upon the following attorneys:

| Plaintiffs' Counsel | Tellabs' Counsel | Marlin's Counsel |
|---|---|---|
| Juan E. Monteverde<br>Faruqi & Faruqi LLP<br>369 Lexington Avenue,<br>10th Floor<br>New York, NY 10003 | David F. Graham<br>Sidley Austin LLP<br>One South Dearborn<br>Street<br>Chicago, IL 60603 | William H. Gussman, Jr.<br>Schulte Roth & Zabel LLP<br>919 Third Avenue<br>New York, NY 10022 |

15.    Any person who fails to object in the manner described in Paragraph 14 shall be deemed to have waived the right to object (including any right of appeal) and shall be forever barred from raising such objection in this or any other action or proceeding. Class Members who do not object need not appear at the Settlement Hearing or take any other action to indicate their approval.

16.    All actions currently pending before this Court regarding the Released Claims, including the Lambert Action and any other actions, excluding, however, those proceedings within the Lambert Action incident to the Settlement or the Fee Application, are hereby stayed and suspended until further order of this Court.

17.    Pending final determination whether the Settlement should be approved, Plaintiffs and all members of the Class in their capacity as Tellabs shareholders, are barred and enjoined from commencing, prosecuting, litigating or instigating, either directly, representatively or in any other capacity, any action asserting any claims that are, or relate in any way to, Released Claims against Released Parties.

Dated: _____, 2014          _____
                                          United States District Judge

EXHIBIT 1

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
# If You Owned Shares of Tellabs Common Stock Between October 18, 2013 and December 2, 2013,
## Your Right To Sue May Be Affected By A Class Action Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A proposed settlement (the "Settlement") has been reached with Tellabs, Inc. ("Tellabs"), members of the Tellabs board of directors, Marlin Equity Partners ("Marlin"), and two of its affiliates (collectively "Defendants") in a class action relating to the sale of Tellabs to a Marlin affiliate, Blackhawk Merger Sub Inc. (the "Merger" or "Transaction"), and Tellabs' sales process. The terms and conditions of the Settlement are set forth in detail in the Settlement Agreement, which has been filed with the Court and which is subject to Court approval. This Notice only includes a summary of various terms of the Settlement, and does not purport to be a comprehensive description of its terms. The Settlement Agreement is available for review at www.faruqilaw.com.

- The Settlement resolves all claims against Defendants in a lawsuit over whether the members of the Tellabs board of directors breached their duties to Tellabs shareholders in connection with the sales process that was conducted, the terms of the Merger agreement with Marlin, and disclosures made to shareholders in connection with the Merger.

- As part of the Settlement, supplemental disclosures were provided regarding the Merger in an amendment to the Schedule 14D-9, which Tellabs filed with the Securities and Exchange Commission ("SEC") on November 25, 2013. Plaintiff had sought these additional disclosures, and entered into the Settlement to obtain them, so as to provide additional information for Tellabs shareholders to decide to tender their shares in connection with the Merger.

- The Court has granted preliminary approval of the Settlement and has scheduled a hearing on _____, 2015 at __:__ .m. Central Time to consider approval of the Settlement and Plaintiff's lawyers' request for an award of attorneys' fees and expenses. While you are not required to take any action in response to this notice, you have the right to request exclusion from the proposed Settlement, and object to the proposed Settlement and/or the request for an award of attorneys' fees and expenses subject to the deadlines described below. These rights and options – and the deadlines to exercise them – are explained in this notice.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| Your Legal Rights and Options in the Settlement | |
|---|---|
| **Object** | Write to the Court if you don't like the Settlement. |
| **Opt Out** | Write to the Court to request exclusion from the Settlement. |
| **Go To A Hearing** | Ask to speak in Court about the Settlement. |
| **Do Nothing** | You will not object to the Settlement and will have no right to ever sue Defendants about the legal claims in this case if the Settlement is approved. |

- These rights and options – and the deadlines to exercise them – are explained in this notice.
- The Court in charge of this case still has to decide whether to approve the Settlement.

Case: 1:13-cv-07945 Document #: 163-1 Filed: 08/24/15 Page 96 of 137 PageID #:1681
Case: 1:13-cv-07945 Document #: 107-1 Filed: 11/20/14 Page 47 of 63 PageID #:1060
EXHIBIT 1

| What This Notice Contains |
| --- |

BASIC INFORMATION................................................................................PAGE 3 to 4

     1.    Why is there a notice?
     2.    Who are the Plaintiff and Defendants?
     3.    What is this lawsuit about?
     4.    Why is this a class action?
     5.    Why is there a Settlement with Defendants?

WHO IS IN THE TELLABS SETTLEMENT CLASS...............................................PAGE 4

     6.    How do I know if I'm part of the Settlement?
     7.    Are there any exceptions to being included?
     8.    I'm still not sure I'm included.

THE TELLABS SETTLEMENT BENEFITS..........................................................PAGE 4 to 5

     9.    What does the Settlement provide?
    10.   What do I lose as a result of the Settlement?

THE LAWYERS REPRESENTING YOU... ... ...  ...............................................PAGE 5 to 6

    11.   Do I have a lawyer in the case?
    12.   How will the lawyers be paid?

OPTING OUT OF THE TELLABS SETTLEMENT..........................…....................PAGE 6

    13.   What do I do if I want to request exclusion from the Settlement?

OBJECTING TO THE TELLABS SETTLEMENT.....................................................PAGE 6 to 7

    14.   If I don't like the Settlement, how do I tell the Court?

THE COURT'S FAIRNESS HEARING ...............................................................PAGE 7

    15.   When and where will the Court decide whether to approve the Settlement?
    16.   Do I have to come to the hearing?
    17.   May I speak at the hearing?

IF YOU DO NOTHING.................................................................................PAGE 8

    18.   What happens if I do nothing at all?

GETTING MORE INFORMATION...................................................................PAGE 8

    19.   How do I get more information?

Case: 1:13-cv-07945 Document #: 167-1 Filed: 08/24/15 Page 97 of 137 PageID #:1832
Case: 1:13-cv-07945 Document #: 107-1 Filed: 11/20/14 Page 48 of 63 PageID #:1064

EXHIBIT 1

## BASIC INFORMATION

### 1. Why is there a notice?

You have a right to know about a proposed Settlement of a class action lawsuit, and about your options, before the Court decides whether to approve the Settlement.

The Court in charge of the case is the United States District Court for the Northern District of Illinois, and the case is known as *Lambert v. Tellabs, Inc., et al.*, Case No. 1:13-cv-07945. The person who sued is called the Plaintiff, and the individuals and companies they sued are called the Defendants.

### 2. Who are the Plaintiff and Defendants?

Plaintiff Kerry Lambert, a Tellabs shareholder, brought this lawsuit against members of the board of directors of Tellabs for alleged violations of their duties to Tellabs' public shareholders. Plaintiff also sued Tellabs, Marlin, and two affiliates of Marlin, Blackhawk Holding Vehicle, LLC and Blackhawk Merger Sub Inc. (collectively "Marlin's Affiliates"), for aiding and abetting the board of directors' alleged violations. The Defendants are as follows:

Tellabs, Inc.
Vincent H. Tobkin
Bo Hedfors
Frank Ianna
Vincent D. Kelly
Michael E. Lavin
Stephanie Pace Marshall
Alex Mashinsky
Gregory J. Rossmann
Dennis F. Strigl
Jan H. Suwinski
Mikel H. Williams
Marlin Equity Partners
Blackhawk Holding Vehicle, LLC
Blackhawk Merger Sub Inc.

Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust filed a similar case against the same defendants, also in the United States District Court forth the Northern District of Illinois, known as *Englehart v. Tellabs, Inc., et al.*, Case No. 1:14-cv-1990. This case has been stayed, and will be dismissed with prejudice upon final resolution of the Settlement. .

### 3. What is the lawsuit about?

The lawsuit claims that the members of the Tellabs board of directors breached their fiduciary duties to Tellabs shareholders in connection with Tellabs' sales process and the Merger, including by allegedly failing to undertake an adequate sales process, obtaining an unfair and inadequate price, engaging in self-dealing, including various "deal protection devices," and failing to disclose to the Company's shareholders information necessary to make an informed decision with respect to the Merger. The lawsuit also claims that the Schedule 14D-9 filed by Tellabs in connection with the Merger contained misleading or otherwise inadequate disclosures in violation of certain federal securities laws and alleged state law fiduciary duties. Tellabs, Marlin, and Marlin's Affiliates are claimed to have aided and abetted these alleged legal violations. The Defendants have vigorously denied that they did anything wrong. The Court has not yet heard or resolved the merits of Plaintiff's claims, or determined whether Plaintiff's or Defendants' claims are true.

3

Case: 1:13-cv-07945 Document #: 163-2 Filed: 08/24/15 Page 98 of 137 PageID #:1822
Case: 1:13-cv-07945 Document #: 107-1 Filed: 11/20/14 Page 98 of 137 PageID #:1062
EXHIBIT I

**4. Why is this a class action?**

In a class action, one or more people (in this case, Kerry Lambert) sue on behalf of persons who have similar claims. In this case, Kerry Lambert has sued on behalf of other Tellabs shareholders. All these people are a Class or Class Members for purposes of the Settlement. One court resolves the issues common to all Class Members.

**5. Why is there a Settlement with Defendants?**

The Court has not decided in favor of Plaintiff or Defendants and will not do so if the Settlement is approved. There will be no trial. Instead, by settling Plaintiff and Defendants avoid the costs and risks of further proceedings, and Class Members will have obtained the benefits of this Settlement.

The Plaintiff and his attorneys, who have conducted an investigation of the facts and the law relevant to the lawsuit, think the Settlement is best for all Class Members. Specifically, Plaintiff believes that the negotiated relief he obtained in the Settlement in the form of additional disclosures made prior to the date upon which Tellabs shareholders were required to decide whether to tender their shares to an affiliate of Marlin, is and was, under the circumstances, in the best interests of all the members of the Class in exchange for the Settlement. This is particularly so given that it is apparent that Plaintiff and the Class face significant risks that they would not be able to prevail on their remaining claims and further litigation of the lawsuit would entail time, expense and additional uncertainties.

## WHO IS IN THE TELLABS SETTLEMENT CLASS

**6. How do I know if I am part of the Settlement?**

If you were the record holder or beneficial owner of shares of Tellabs common stock at any time beginning on and including October 18, 2013 through December 2, 2013, you are a Class Member.

**7. Are there any exceptions to being included?**

You are not a Class Member if you are one of the Defendants in this Action.

**8. I'm still not sure if I'm included.**

If you are still not sure whether you are a Class Member, you can ask for free help. For more information, please contact Class Counsel as follows:

Juan E. Monteverde, Esq.
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Fl.
New York, NY 10003
(212) 983-9330

## THE TELLABS SETTLEMENT BENEFITS

**9. What does the Settlement provide?**

The Settlement provides for supplemental disclosures regarding the Merger in an amendment to the Schedule 14D-9, which Tellabs filed with the SEC on November 25, 2014. The amendment to the Schedule 14D-9 can be obtained at the following web address:

http://www.sec.gov/Archives/edgar/data/317771/000119312513452363/d634181dsc14d9a.htm

4

In particular, the amendment to the Schedule 14D-9 included: (1) in Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis,* additional information regarding the basis for the earnings per share multiples and discount rate used by Goldman Sachs for this analysis; (2) in Goldman Sachs' *Illustrative Discounted Cash Flow Analysis,* additional information regarding how Goldman Sachs treated certain factors when conducting this analysis; (3) in Goldman Sachs *Selected Companies Analysis,* (a) the results of such analysis, and (b) additional information about Goldman Sachs' basis for choosing the selected companies the multiples observed for each of the selected transactions; and (4) in the *Background of the Merger* section, (a) additional information regarding the basis for the Tellabs Board's March 27, 2013 decision to suspend discussions with third parties regarding a potential sale of the entire company for the time being, and (b) additional information regarding the basis for the Tellabs Board's April 30, 2013 decision to begin a more formal non-public process of identifying and contacting certain parties that would be the most likely to be interested in acquiring Tellabs, and (c) additional details regarding the refined base case projections that Tellabs provided to Marlin on October 3, 2013.

The Settlement Agreement, available at www.faruqilaw.com, contains more details about the Settlement.

## 10. What do I lose as a result of the Settlement?

If the Settlement is approved, you can't sue Defendants, continue to sue, or be part of any other lawsuit against Defendants seeking any type of relief, including monetary damages, regarding the legal claims in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" that bars you from suing Defendants regarding Tellabs sales process, the Merger and Defendants' disclosures, is described more fully in the Settlement Agreement and describes exactly the legal claims that you give up as a Class Member if the Settlement Agreement is approved. The Settlement Agreement is available at www.faruqilaw.com.

## THE LAWYERS REPRESENTING YOU

## 11. Do I have a lawyer in the case?

The Court has conditionally appointed the following law firms to represent the Class Members:

FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Fl.
New York, NY 10003
(212) 983-9330

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 12. How will the lawyers be paid?

The Court will decide how much Class Counsel will be paid. Class Counsel has not yet received any payment for its work on this case (and has not been reimbursed for their expenses). Class Counsel are asking the Court for an award of $750,000 in attorneys' fees, inclusive of reimbursement of the costs and expenses for investigating the facts, litigating the case, and negotiating and administering the Settlement. It is within the Court's discretion, however, to determine whether the amount requested, or a smaller amount, is reasonable and should be awarded. Defendants have agreed not to oppose Class Counsel's request for an award of fees and expenses up to $750,000. This agreement was reached after all other terms of the proposed Settlement were agreed upon.

5

EXHIBIT 1

Any award for attorneys' fees and expenses will NOT be paid from or lessen the $2.45 per share in cash for each Tellabs share that Tellabs shareholders have received as consideration in connection with the Merger. Instead, an award for attorneys' fees and expenses will be paid by either Tellabs, its successor, or their respective insurers.

## OPTING OUT OF THE TELLABS SETTLEMENT

### 13. If I don't like the Settlement, how do I tell the Court?

Any member of the Class may seek exclusion from the Settlement. If you are a member of the Class and you wish to seek exclusion from the Settlement, you must, no later than _____, 2015 deliver to the Clerk of the United States District Court for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, via either United States mail or hand delivery, a written request for exclusion that includes the following information:

> (1) this case number (13-cv-07945);
> (2) your full name;
> (3) your current mailing address;
> (4) a statement that you request exclusion from the Settlement;
> (5) the total number of shares of Tellabs stock that you held at any time from October 18, 2013 through December 2, 2013; and
> (6) your personal signature and, if applicable, that of your authorized representative.

IF A REQUEST DOES NOT INCLUDE ALL OF THE FOREGOING INFORMATION OR IF IT IS NOT TIMELY SUBMITTED, THEN IT SHALL BE DEEMED INVALID. ANY MEMBER OF THE CLASS WHO SUBMITS AN INVALID REQUEST FOR EXCLUSION FROM THE SETTLEMENT SHALL BE TREATED AS IF HE OR SHE DID NOT SUBMIT ANY REQUEST FOR EXCLUSION AT ALL, AND SHALL BE DEEMED TO HAVE RELEASED ALL RELEASED CLAIMS IF THE COURT APPROVES THE SETTLEMENT. No member of the Class may request exclusion on behalf of any other person besides himself or herself.

## OBJECTING TO THE TELLABS SETTLEMENT

### 14. If I don't like the Settlement, how do I tell the Court?

If you are a member of the Class, you can object to the Settlement or to Class Counsel's request for an award of attorneys' fees and expenses. To object, you must send proof of ownership that establishes you are a member of the Class and a letter saying you object. Your objection must also include the following information:

> (1)     Your name, address, and telephone number;
> (2)     The name of the case (*Lambert v. Tellabs, Inc., et al.*, Case No. 1:13-cv-07945);
> (3)     The specific reasons you object to the Settlement or to the requested award of attorneys' fees and expenses; and
> (4)     Your signature.

Your objection, along with any supporting materials you wish to submit, must be mailed and postmarked no later than _____, 2015 to the following four addresses:

| Court | Plaintiff's Counsel | Tellabs' Counsel | Marlin's Counsel |
|-------|---------------------|------------------|------------------|

6

| Clerk of the U.S. District Court, Northern District of Illinois 219 South Dearborn Street Chicago, IL 60604 | Juan E. Monteverde Faruqi & Faruqi LLP 369 Lexington Avenue, 10th Floor New York, NY 10003 | David F. Graham Sidley Austin LLP One South Dearborn Street Chicago, IL 60603 | William H. Gussman, Jr. Schulte Roth & Zabel LLP 919 Third Avenue New York, NY 10022 |
|---|---|---|---|

ANY PERSON WHO FAILS TO OBJECT AND FOLLOW THE PROCEDURES SET FORTH ABOVE SHALL BE CONSIDERED TO HAVE WAIVED ANY OBJECTION AND SHALL FOREVER BE BARRED FROM RAISING ANY OBJECTION IN THE ACTION OR ANY OTHER ACTION OR PROCEEDING.

### THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to approve the Settlement and to consider Class Counsel's request for an award of attorneys' fees and expenses. You may attend and, if you timely filed an objection and also provided the other information described in the answer to Question 16 below, you may ask to speak, but you don't have to.

### 15. When and where will the Court decide whether to approve the Settlement?

The Court has scheduled a Fairness Hearing which will be held before Judge Ronald Guzman on _____, 2015 at __:__ .m. Central Time, in the United States District Court for the Northern District of Illinois courthouse, 219 South Dearborn Street, Chicago, Illinois 60604.

At this hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who asked to speak at the hearing. The Court will also consider whether, and how much, to pay the lawyers for Plaintiff and the Class in the event the Settlement is approved. After the hearing, the Court will decide whether to approve the Settlement and, if so, whether and how much Class Counsel should be paid. We do not know how long these decisions will take.

### 16. Do I have to come to the hearing?

No. Plaintiff's lawyers will answer any questions Judge Guzman may have. But you are welcome to attend the hearing at your own expense. If you send a written objection, you do not have to come to the Court to discuss it. As long as you mailed your written objection on time, following the instructions in this Notice, the Court will consider it. You may also pay your own lawyer to attend, if you wish, but it's not necessary.

### 17. May I speak at the hearing?

If you have previously submitted an objection and appear at the hearing, you may ask the Court for permission to speak. To do so, you must also send a letter saying that it is your "Notice of Intention to Appear at the Tellabs Fairness Hearing." Be sure to include your name, address, telephone number, and your signature. If you intend to present any documents or other materials at the hearing, copies of these must be included with your Notice of Intention to Appear.

You must mail your Notice of Intention to Appear to the four addresses set forth in the answer to Question 13 above, and the Notice of Intention to Appear must be mailed and postmarked no later than _____, 2015.

7

Case 1:13-cv-07945 Document #: 160-2 Filed: 08/24/15 Page 102 of 137 PageID #:1087
Case 1:13-cv-07945 Document #: 107-1 Filed: 01/20/14 Page 93 of 637 PageID #:1086

EXHIBIT 1

## IF YOU DO NOTHING

| 18. What happens if I do nothing at all? |
| --- |

If you do nothing, your rights will nonetheless be affected. You won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Defendants about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| 19. How do I get more information? |
| --- |

This Notice summarizes the proposed Settlement. More details are in the Settlement Agreement. You can get a copy of the Settlement Agreement at www.faruqilaw.com.

### NOTICE TO PERSONS OR ENTITIES
### HOLDING RECORD OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks and other persons or entities who are members of the Class in their capacities as record holders, but not as beneficial holders, are requested to send this Notice promptly to beneficial holders. Additional copies of this Notice for transmittal to beneficial holders are available free of charge by contacting the following:

[INSERT]

You may also timely furnish the names and addresses of your beneficial holders in writing to Coriant (formerly Tellabs, Inc.) which will then be responsible for sending the Notice to such beneficial holders.

8

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:13-cv-07945 |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) ) | Hon. Ronald A. Guzman |
| Defendants. | ) ) | |

### FINAL ORDER AND JUDGMENT

A hearing having been held before this Court on _____, 2015 to determine whether the terms and conditions of the Settlement Agreement, dated November __, 2014 (the "Agreement" or the "Settlement Agreement"),[1] which is incorporated herein by reference, and the terms and conditions of the Settlement proposed in the Agreement (the "Settlement") are fair, reasonable and adequate for the settlement of all claims asserted herein; and whether the Settlement should be approved by this Court and a Final Order and Judgment should be entered in the above-captioned class action (the "Lambert Action"); and the Court having considered all matters submitted to it at the hearing and otherwise;

---

[1] Capitalized terms (other than proper nouns) that are not defined herein shall have the meanings set forth in the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.     This Final Order and Judgment incorporates and makes part hereof the Settlement Agreement filed with this Court on November __, 2014, including Exhibits A-C thereto. Unless otherwise defined in this Final Order and Judgment, the capitalized terms herein have the same meaning as they have in the Settlement Agreement.

2.     The mailing of the class notice (the "Notice") pursuant to and in the manner prescribed in the Preliminary Approval Order entered on _____, 2014, which was accomplished by a first class mailing made on _____, 201_, according to the proof of such mailing of the Notice filed with the Court by counsel for Tellabs, is hereby determined to be the best notice practicable under the circumstances and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process and applicable law.

3.     The Settlement of the Lambert Action as provided for in the Settlement Agreement is approved as fair, reasonable and adequate as to the Class.

4.     The Parties to the Settlement Agreement are hereby authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement.

5.     The Lambert Action and all of the claims alleged therein are hereby dismissed on the merits with prejudice as to all Defendants as against Plaintiff Lambert and all members of the Class, including Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust (except with respect to Class Members who validly requested exclusion from the Class pursuant to the Notice and Preliminary Approval Order), with no costs awarded to any Party except as provided herein.

6.     All members of the Class shall be and are deemed bound by the Settlement Agreement and this Final Order and Judgment.  This Final Order and Judgment, including the release of all Released Claims against all Released Parties, shall have *res judicata* and other preclusive effect in all pending and future lawsuits, arbitrations or other proceedings maintained by or on behalf of, Plaintiffs and all other members of the Class, as well as their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns.  Notwithstanding the foregoing, Class Members who have submitted valid requests for exclusion pursuant to the requirements set forth in the Notice and Preliminary Approval Order will not be bound by the release of any claims described in the Settlement Agreement.

7.     As of the Effective Date, the Released Claims shall be and shall be deemed to be fully, finally and forever released and discharged as to any and all of the Released Parties by the Plaintiffs and each and every Class Member and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns. Consistent with the Settlement Agreement, the following terms shall have the following meanings:

a.     "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims

3

(defined below), that Plaintiffs or any or all other members of the Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, against any of the Released Parties (defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal securities laws or state law regarding disclosure of fiduciary obligations or any claims that could be asserted derivatively on behalf of Tellabs), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, failures to act, transactions, occurrences, statements, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were, or could have been alleged, asserted, set forth, claimed, or referred to in the Lambert Action or the Englehart Action or the subject matter of the Lambert Action or the Englehart Action, including, without limitation, any and all claims which are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) the Transaction, including but not limited to the terms and conditions thereof, (ii) the Merger Agreement, including but not limited to the terms and conditions thereof, (iii) any and all occurrences or matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (iv) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the potential sale of Tellabs, (v) negotiations in connection with the Merger Agreement, the Transaction and with any actual or potential acquirer, (vi) the consideration to be received by Class Members or by any other Person in connection with the Transaction, (vii) the payment of a termination fee in connection with the termination of the Merger Agreement, (viii) the Schedule 14D-9, any amendment thereto or any other disclosures, public filings, periodic reports, press releases, proxy statements

or other statements issued, made available or filed relating, directly or indirectly, to the Transaction, the Merger Agreement or Tellabs' consideration of strategic alternatives, including but not limited to claims under the federal securities laws, (ix) the fiduciary obligations of the Released Parties (defined below) in connection with the Transaction, the Merger Agreement or any of the matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (x) claims for fees, expenses or costs incurred in prosecuting or settling the Lambert Action and the Englehart Action, or in connection with any claim for benefits conferred on the Class, except as set forth in Paragraph 13 of the Settlement Agreement, or (xi) any of the matters referred to or alleged in any complaint or amendment(s) thereto filed in the Lambert Action or the Englehart Action (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "Released Claims"); provided, however, that the Released Claims shall not include (1) the right to enforce the Settlement, or (2) any claims for statutory appraisal with respect to the merger of Blackhawk Merger Sub Inc. with and into Tellabs by Tellabs stockholders who properly perfect such appraisal claims and do not otherwise waive their appraisal rights, and (b) that Class Members who have submitted valid requests for exclusion pursuant to the requirements set forth in the Notice and Preliminary Approval Order are not bound by the release of any claims described in the Settlement Agreement.

      b.      Whether or not any or all of the following persons or entities were named, served with process or appeared in the Lambert Action or the Englehart Action, "Released Parties" means (i) Tellabs, Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, Mikel H. Williams, Marlin Management Company, LLC (d/b/a Marlin

Equity Partners), Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.; and (ii) the respective past, present or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributes, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

        c.     "Unknown Claims" means any claim that Plaintiffs or any other member of the Class does not know or suspect exists in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement. With respect to any of the Released Claims, the Parties stipulate and agree that upon Court Approval of the Settlement, Plaintiffs shall expressly and each member of the Class shall be deemed to have, and by operation of the Final Order and Judgment by the Court shall have, expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

      "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR

AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Plaintiffs acknowledge and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, and by operation of law the members of the Class, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement and was relied upon by each and all of Defendants in entering into the Settlement Agreement.

8.    Plaintiffs and all Class Members, and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, shall fully, finally and forever release, settle and discharge the Released Parties from and with respect to the Released Claims, and will be forever barred and enjoined from commencing, instituting, prosecuting or litigating any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties.

9.    As of the Effective Date, Defendants and their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of or claiming under any of them, and each of them, shall fully, finally and forever release, settle and discharge Plaintiffs

and Plaintiffs' Counsel from any and all claims arising out of or relating to their filing and prosecution of the Lambert Action and/or the Englehart Action (the "Release of Plaintiffs"); provided, however, that the Release of Plaintiffs shall not include Defendants' rights to enforce the Settlement.

10.     Neither the Memorandum of Understanding ("MOU"), the Settlement Agreement nor this Final Order and Judgment, nor the facts or any terms of the Settlement, nor any negotiation, discussion, action or proceeding in connection with the MOU or Settlement Agreement, is to be considered in this or any other proceeding as evidence, or a presumption, admission or concession by any Party in the Lambert Action or the Englehart Action, any signatory thereto or any Released Party, of any fault, liability or wrongdoing whatsoever, or lack of any fault, liability or wrongdoing, as to any facts or claims alleged or asserted in the Lambert Action or the Englehart Action, or any other actions or proceedings.  Neither the MOU, the Settlement Agreement nor this Final Order and Judgment is a finding or evidence of the validity or invalidity of any claims or defenses in the Lambert Action or the Englehart Action or any wrongdoing by any of the defendants named therein or any damages or injury to any Class Members.  Neither the MOU, the Settlement Agreement nor this Final Order and Judgment, nor any of the terms and provisions thereof, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the settlement proceedings, nor any statements in connection therewith may (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of any infirmity of any defense, or of any

8

damage to Plaintiffs or any Class Member, (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Lambert Action or the Englehart Action, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any person or entity, or (iii) otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Settlement Agreement and/or Final Order and Judgment may be introduced in any proceeding, whether in this Court or otherwise, as may be necessary to argue that the Settlement Agreement and/or Final Order and Judgment has *res judicata*, collateral estoppel or other issue or claim preclusion effect, or to otherwise consummate or enforce the Settlement and/or Final Order and Judgment.

11.     Faruqi & Faruqi LLP is hereby awarded attorneys' fees in the sum of $_____ , which sum the Court finds to be fair and reasonable, and reimbursement of expenses in the amount of $_____ . Such sums shall be paid pursuant to the provisions of the Settlement Agreement.  Neither the Plaintiffs nor Plaintiffs' Counsel shall make any other application for an award of fees and expenses in connection with the Lambert Action or the Englehart Action or the subject matter of the Lambert Action or the Englehart Action.

12.     Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

13.     If the Effective Date does not occur, this Final Order and Judgment shall be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith except for Paragraph 10 hereof and Paragraphs 16, 19, 26, 27, 28, 30 and 38 of the Settlement Agreement which shall survive any such termination or vacatur,

shall be null and void; the Parties returned, without prejudice in any way, to their respective litigation positions immediately prior to the execution of the MOU.

14.    The binding effect of this Final Order and Judgment and the obligations of Plaintiffs and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal from this Final Order and Judgment that relates solely to the issue of Plaintiffs' Counsel's (or any other counsel's) application for an award of attorneys' fees and expenses.

15.    Without affecting the finality of this Final Order and Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement.

16.    The Clerk of the Court is directed to enter and docket this Final Order and Judgment.

Dated: _____, 2015

_____
United States District Judge

Case: 1:13-cv-07045 Document #: 163-2 Filed: 08/24/15 Page 113 of 137 PageID #:1938

# EXHIBIT B

Faruqi &amp; Faruqi, LLP Announces Filing Of Class Action Lawsuit Against Tellabs, Inc.

# Faruqi & Faruqi, LLP Announces Filing Of Class Action Lawsuit Against Tellabs, Inc.

**Published: May 14 2014 18:30:01**

# Faruqi & Faruqi, LLP Announces Filing Of Class Action Lawsuit Against Tellabs, Inc.

PR Newswire

NEW YORK, May 14, 2014

NEW YORK, May 14, 2014 /PRNewswire/ -- Notice is hereby given that Faruqi & Faruqi, LLP has filed a class action lawsuit in the United States District Court for the Northern District of Illinois, case no. 1:13-cv-07945, on behalf of stockholders of Tellabs, Inc. ("Tellabs" or the "Company") (NASDAQ: TLAB) who held (and continue to hold) Tellabs securities acquired on or before October 21, 2013, the day the Company agreed to be acquired, via a tender offer, by Marlin Equity Partners, and its affiliates Blackhawk Holding Vehicle, LLC and Blackhawk Merger Sub Inc. (collectively, "Marlin").

If you wish to obtain information concerning this action or view a copy of the complaint, you can do so by clicking here: http://www.faruqilaw.com/tellabs

The complaint charges Tellabs, its board of directors, and Marlin with violations of the Securities Exchange Act of 1934 (the "Exchange Act") and breaches of fiduciary duties under state law.

On October 21, 2013, Tellabs announced that it had entered into a definitive agreement whereby Marlin would acquire all of Tellabs's outstanding stock, pursuant to a tender offer, for $2.45 per share in cash (the "Tender Offer"). The Tender Offer closed at 11:59 p.m., New York City time on December 2, 2013 and was followed by a short-form merger, which paid the shareholders who had not previously tendered the $2.45 per share.

The complaint alleges that defendants breached their fiduciary duties and/or aided and abetted such breaches in connection with the Tender Offer by conducting a flawed sales process designed to deliver the Company to Marlin and provide material benefits to Company insiders.

Further, in an attempt to secure shareholder support for the Tender Offer, on November 1, 2013, Tellabs filed a materially false and misleading recommendation statement (the "Recommendation Statement") with the Securities and Exchange Commission. The Recommendation Statement, which recommended that Tellabs' stockholders tender their shares, omitted and/or misrepresented material information in contravention of Sections 14(e) and 20(a) of the Exchange Act. The omitted information was material to the impending decision of Tellabs shareholders on whether or not to tender their shares and/or whether to seek appraisal for their shares.

Plaintiff is represented by Faruqi & Faruqi, LLP, a law firm with extensive experience in prosecuting class actions, and significant expertise in actions involving corporate fraud. Faruqi & Faruqi, LLP, was founded in 1995 and the firm maintains its principal office in New York City, with offices in Delaware, California, and Pennsylvania.

If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. Any member of the

© 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

Faruqi &amp; Faruqi, LLP Announces Filing Of Class Action Lawsuit Against Tellabs, Inc.

putative class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member. If you wish to discuss this action, or have any questions concerning this notice or your rights or interests, please contact:

Juan E. Monteverde, Esq.
FARUQI & FARUQI, LLP
369 Lexington Ave, 10th Floor
New York, NY 10017
Telephone: (877) 247-4292 or (212) 983-9330
E-mail: jmonteverde@faruqilaw.com

Photo - http://photos.prnewswire.com/prnh/20120119/MM38856LOGO

SOURCE Faruqi & Faruqi, LLP

**Website:** http://www.faruqilaw.com
-0- May/14/2014 22:30 GMT

**Bloomberg Law**®        © 2014 The Bureau of National Affairs, Inc. All Rights Reserved. Terms of Service

# Exhibit 4

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated,     ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | |
|    v.       ) | Case No. 1:13-cv-07945 |
|        ) | |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC.,    ) | Hon. Ronald A. Guzman |
|        ) | |
|     Defendants.     ) | |

## SUPPLEMENTAL AGREEMENT REGARDING REQUESTS FOR EXCLUSION

### (CONFIDENTIAL – FILED UNDER SEAL)

This Supplemental Agreement Regarding Requests for Exclusion (the "Supplemental Agreement") is intended to be incorporated into the Settlement Agreement dated as of November 20, 2014 (the "Settlement Agreement"). The terms used herein shall have the same meanings as in the Settlement Agreement.

IT IS HEREBY AGREED AS FOLLOWS:

1.      Pursuant to and in accordance with the provisions of Paragraph 18 of the Settlement Agreement, Defendants have the option to terminate the Settlement and to render the Settlement Agreement null and void if ▮▮▮▮▮ shares of Tellabs stock[1] choose to exclude themselves from

---

[1] The number reflected herein is equal to ▮▮▮ percent (▮%) of the total number of outstanding shares of Tellabs stock as of December 2, 2013.

ACTIVE 203982127v.1

the Settlement in accordance with the terms set forth in the Preliminary Approval Order and the Notice.

      2.      Defendants shall be entitled to exercise the above option to terminate the Settlement and to render the Settlement Agreement null and void only if Defendants provide Plaintiffs' Counsel with written notice of such termination within the time frame agreed upon in Paragraph 18 of the Settlement Agreement.

      3.      Any dispute among the Parties concerning the interpretation or application of this Supplemental Agreement shall be presented to the Court for resolution upon the application of any Party hereto.

      4.      The terms and conditions of this Supplemental Agreement shall be disclosed to the Court *in camera* but shall otherwise be kept confidential and shall not be disclosed unless otherwise ordered by the Court.

**[Signatures Appear On the Following Pages]**

Katrina Carroll
LITE DEPALMA GREENBERG,
LLC
One South Dearborn Street
Suite 2100
Chicago, IL 60603
Phone: (312) 212-4383
Fax: (312) 212-5919

Juan E. Monteverde
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Phone: (212) 983-9330
Fax: (212) 983-9331

*Counsel for Plaintiff Kerry Lambert*

Martin P. Greene
Dartesia A. Pitts
GREENE AND LETTS
55 W. Monroe Street, Suite 600
Chicago, IL 60603
Phone: (312) 346-1100
Fax: (312) 346-4571

/ with of permission

Robert M. Korenreich
Chet B. Waldman
Joshua W. Ruthizer
Natalie M. Mackiel
WOLF POPPER LLP
845 Third Avenue
New York, NY 10022
Phone: (212) 759-4600
Fax: (212) 486-2093

W. Scott Holleman
JOHNSON & WEAVER, LLP
99 Madison Avenue, 5th Floor

ACTIVE 203982127v.1

3

New York, NY 10016
Phone: (212) 802-1486
Fax: (212) 602-1592

*Attorneys for Plaintiffs Robert Englehart, Jorge Rodriguez and the Judith Kane-Rodriguez 2012 Family Trust*

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, and Mikel H. Williams*


_____

John M. Touhy
David M. Friebus
BAKER HOSTETLER
191 North Wacker Drive
Suite 3100
Chicago, IL 60606
Phone: (312) 416-6200
Fax: (312) 416-6201


_____

Michael E. Swartz
William H. Gussman, Jr.
Frank J. LaSalle
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

New York, NY 10016
Phone: (212) 802-1486
Fax: (212) 602-1592

*Attorneys for Plaintiffs Robert
Englehart, Jorge Rodriguez and the
Judith Kane-Rodriguez 2012 Family
Trust*

_____

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H.
Tobkin, Bo Hedfors, Frank Ianna,
Vincent D. Kelly, Michael E. Lavin,
Stephanie Pace Marshall, Alex
Mashinsky, Gregory J. Rossmann,
Dennis F. Strigl, Jan H. Suwinski, and
Mikel H. Williams*

_____

John M. Touhy
David M. Friebus
BAKER HOSTETLER
191 North Wacker Drive
Suite 3100
Chicago, IL 60606
Phone: (312) 416-6200
Fax: (312) 416-6201

_____

Michael E. Swartz
William H. Gussman, Jr.
Frank J. LaSalle
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

New York, NY 10016
Phone: (212) 802-1486
Fax: (212) 602-1592

*Attorneys for Plaintiffs Robert*
*Englehart, Jorge Rodriguez and the*
*Judith Kane-Rodriguez 2012 Family*
*Trust*

_____

David F. Graham
James W. Ducayet
Rachel B. Niewoehner
Kathleen L. Carlson
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Phone: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Tellabs, Inc., Vincent H.*
*Tobkin, Bo Hedfors, Frank Ianna,*
*Vincent D. Kelly, Michael E. Lavin,*
*Stephanie Pace Marshall, Alex*
*Mashinsky, Gregory J. Rossmann,*
*Dennis F. Strigl, Jan H. Suwinski, and*
*Mikel H. Williams*

_____

John M. Touhy
David M. Friebus
BAKER HOSTETLER
191 North Wacker Drive
Suite 3100
Chicago, IL 60606
Phone: (312) 416-6200
Fax: (312) 416-6201

_____

Michael E. Swartz
William H. Gussman, Jr.
Frank J. LaSalle
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022

Phone: (212) 756-2000
Fax: (212) 595-5955

*Counsel for Marlin Equity Partners,*
*Blackhawk Holding Vehicle, LLC, and*
*Blackhawk Merger Sub Inc.*

# Exhibit 5

EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| KERRY LAMBERT, On Behalf of Himself and All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cv-07945 |
| | ) | |
| TELLABS, INC., VINCENT H. TOBKIN, BO HEDFORS, FRANK IANNA, VINCENT D. KELLY, MICHAEL E. LAVIN, STEPHANIE PACE MARSHALL, ALEX MASHINSKY, GREGORY J. ROSSMANN, DENNIS F. STRIGL, JAN H. SUWINSKI, MIKEL H. WILLIAMS, MARLIN EQUITY PARTNERS, BLACKHAWK HOLDING VEHICLE, LLC, and BLACKHAWK MERGER SUB INC., | ) ) ) ) ) ) ) ) ) ) | Hon. Ronald A. Guzman |
| | ) | |
| Defendants. | ) | |

## FINAL ORDER AND JUDGMENT

A hearing having been held before this Court on _____, 2015 to determine whether the terms and conditions of the Settlement Agreement, dated November __, 2014 (the "Agreement" or the "Settlement Agreement"),[1] which is incorporated herein by reference, and the terms and conditions of the Settlement proposed in the Agreement (the "Settlement") are fair, reasonable and adequate for the settlement of all claims asserted herein; and whether the Settlement should be approved by this Court and a Final Order and Judgment should be entered in the above-captioned class action (the "Lambert Action"); and the Court having considered all matters submitted to it at the hearing and otherwise;

---

[1] Capitalized terms (other than proper nouns) that are not defined herein shall have the meanings set forth in the Settlement Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.     This Final Order and Judgment incorporates and makes part hereof the Settlement Agreement filed with this Court on November __, 2014, including Exhibits A-C thereto.  Unless otherwise defined in this Final Order and Judgment, the capitalized terms herein have the same meaning as they have in the Settlement Agreement.

2.     The mailing of the class notice (the "Notice") pursuant to and in the manner prescribed in the Preliminary Approval Order entered on _____, 2014, which was accomplished by a first class mailing made on _____, 201_, according to the proof of such mailing of the Notice filed with the Court by counsel for Tellabs, is hereby determined to be the best notice practicable under the circumstances and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process and applicable law.

3.     The Settlement of the Lambert Action as provided for in the Settlement Agreement is approved as fair, reasonable and adequate as to the Class.

4.     The Parties to the Settlement Agreement are hereby authorized and directed to consummate the Settlement in accordance with the terms and provisions of the Settlement Agreement.

5.     The Lambert Action and all of the claims alleged therein are hereby dismissed on the merits with prejudice as to all Defendants as against Plaintiff Lambert and all members of the Class, including Robert Englehart, Jorge Rodriguez, and the Judith Kane-Rodriguez 2012 Family Trust (except with respect to Class Members who validly requested exclusion from the Class pursuant to the Notice and Preliminary Approval Order), with no costs awarded to any Party except as provided herein.

6. All members of the Class shall be and are deemed bound by the Settlement Agreement and this Final Order and Judgment. This Final Order and Judgment, including the release of all Released Claims against all Released Parties, shall have *res judicata* and other preclusive effect in all pending and future lawsuits, arbitrations or other proceedings maintained by or on behalf of, Plaintiffs and all other members of the Class, as well as their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns. Notwithstanding the foregoing, Class Members who have submitted valid requests for exclusion pursuant to the requirements set forth in the Notice and Preliminary Approval Order will not be bound by the release of any claims described in the Settlement Agreement.

7. As of the Effective Date, the Released Claims shall be and shall be deemed to be fully, finally and forever released and discharged as to any and all of the Released Parties by the Plaintiffs and each and every Class Member and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns. Consistent with the Settlement Agreement, the following terms shall have the following meanings:

a. "Released Claims" means any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, costs, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, including Unknown Claims

3

(defined below), that Plaintiffs or any or all other members of the Class ever had, now have, or may have, whether direct, derivative, individual, class, representative, legal, equitable or of any other type, or in any other capacity, against any of the Released Parties (defined below), whether based on state, local, foreign, federal, statutory, regulatory, common or other law or rule (including, but not limited to, any claims under federal securities laws or state law regarding disclosure of fiduciary obligations or any claims that could be asserted derivatively on behalf of Tellabs), which, now or hereafter, are based upon, arise out of, relate in any way to, or involve, directly or indirectly, any of the actions, failures to act, transactions, occurrences, statements, omissions, allegations, facts, practices, events, claims or any other matters, things or causes whatsoever, or any series thereof, that were, or could have been alleged, asserted, set forth, claimed, or referred to in the Lambert Action or the Englehart Action or the subject matter of the Lambert Action or the Englehart Action, including, without limitation, any and all claims which are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) the Transaction, including but not limited to the terms and conditions thereof, (ii) the Merger Agreement, including but not limited to the terms and conditions thereof, (iii) any and all occurrences or matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (iv) the process conducted, and decisions made and actions taken or not taken in connection therewith and in connection with the potential sale of Tellabs, (v) negotiations in connection with the Merger Agreement, the Transaction and with any actual or potential acquirer, (vi) the consideration to be received by Class Members or by any other Person in connection with the Transaction, (vii) the payment of a termination fee in connection with the termination of the Merger Agreement, (viii) the Schedule 14D-9, any amendment thereto or any other disclosures, public filings, periodic reports, press releases, proxy statements

or other statements issued, made available or filed relating, directly or indirectly, to the Transaction, the Merger Agreement or Tellabs' consideration of strategic alternatives, including but not limited to claims under the federal securities laws, (ix) the fiduciary obligations of the Released Parties (defined below) in connection with the Transaction, the Merger Agreement or any of the matters mentioned or referred to in the Schedule 14D-9, any amendment thereto or the Supplemental Disclosures, (x) claims for fees, expenses or costs incurred in prosecuting or settling the Lambert Action and the Englehart Action, or in connection with any claim for benefits conferred on the Class, except as set forth in Paragraph 13 of the Settlement Agreement, or (xi) any of the matters referred to or alleged in any complaint or amendment(s) thereto filed in the Lambert Action or the Englehart Action (all of the foregoing, including both the foregoing subparts and the text preceding those subparts, being collectively referred to as the "Released Claims"); provided, however, that the Released Claims shall not include (1) the right to enforce the Settlement, or (2) any claims for statutory appraisal with respect to the merger of Blackhawk Merger Sub Inc. with and into Tellabs by Tellabs stockholders who properly perfect such appraisal claims and do not otherwise waive their appraisal rights, and (b) that Class Members who have submitted valid requests for exclusion pursuant to the requirements set forth in the Notice and Preliminary Approval Order are not bound by the release of any claims described in the Settlement Agreement.

   b.  Whether or not any or all of the following persons or entities were named, served with process or appeared in the Lambert Action or the Englehart Action, "Released Parties" means (i) Tellabs, Vincent H. Tobkin, Bo Hedfors, Frank Ianna, Vincent D. Kelly, Michael E. Lavin, Stephanie Pace Marshall, Alex Mashinsky, Gregory J. Rossmann, Dennis F. Strigl, Jan H. Suwinski, Mikel H. Williams, Marlin Management Company, LLC (d/b/a Marlin

Equity Partners), Marlin Equity Partners, Blackhawk Holding Vehicle, LLC, and Blackhawk Merger Sub Inc.; and (ii) the respective past, present or future family members, spouses, heirs, trusts, trustees, executors, estates, administrators, beneficiaries, distributes, foundations, agents, employees, fiduciaries, partners, partnerships, general or limited partners or partnerships, joint ventures, member firms, limited liability companies, corporations, parents, subsidiaries, divisions, affiliates, associated entities, stockholders, principals, officers, managers, directors, managing directors, members, managing members, managing agents, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, financial or investment advisors, advisors, consultants, investment bankers, entities providing any fairness opinion, attorneys, personal or legal representatives, accountants, insurers, co-insurers, reinsurers, and associates, of each and all of the foregoing.

      c.     "Unknown Claims" means any claim that Plaintiffs or any other member of the Class does not know or suspect exists in his, her or its favor at the time of the release of the Released Claims as against the Released Parties, including without limitation those which, if known, might have affected the decision to enter into the Settlement. With respect to any of the Released Claims, the Parties stipulate and agree that upon Court Approval of the Settlement, Plaintiffs shall expressly and each member of the Class shall be deemed to have, and by operation of the Final Order and Judgment by the Court shall have, expressly waived, relinquished and released any and all provisions, rights and benefits conferred by or under Cal. Civ. Code § 1542 or any law of the United States or any state of the United States or territory of the United States, or principle of common law, which is similar, comparable or equivalent to Cal. Civ. Code § 1542, which provides:

      "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR

AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Plaintiffs acknowledge and the members of the Class by operation of law shall be deemed to have acknowledged, that they may discover facts in addition to or different from those now known or believed to be true with respect to the Released Claims, but that it is the intention of Plaintiffs, and by operation of law the members of the Class, to completely, fully, finally and forever extinguish any and all Released Claims, known or unknown, suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and without regard to the subsequent discovery of additional or different facts. Plaintiffs acknowledge, and the members of the Class by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of "Released Claims" was separately bargained for and was a material element of the Settlement and was relied upon by each and all of Defendants in entering into the Settlement Agreement.

8.      Plaintiffs and all Class Members, and their respective heirs, executors, administrators, estates, predecessors-in-interest, predecessors, successors-in-interest, successors, and assigns, shall fully, finally and forever release, settle and discharge the Released Parties from and with respect to the Released Claims, and will be forever barred and enjoined from commencing, instituting, prosecuting or litigating any action or other proceeding, in any forum, asserting any Released Claims against any of the Released Parties.

9.      As of the Effective Date, Defendants and their respective successors-in-interest, predecessors, representatives, trustees, executors, administrators, heirs, assigns, or transferees, immediate and remote, and any person or entity acting for or on behalf of or claiming under any of them, and each of them, shall fully, finally and forever release, settle and discharge Plaintiffs

and Plaintiffs' Counsel from any and all claims arising out of or relating to their filing and prosecution of the Lambert Action and/or the Englehart Action (the "Release of Plaintiffs"); provided, however, that the Release of Plaintiffs shall not include Defendants' rights to enforce the Settlement.

10.     Neither the Memorandum of Understanding ("MOU"), the Settlement Agreement nor this Final Order and Judgment, nor the facts or any terms of the Settlement, nor any negotiation, discussion, action or proceeding in connection with the MOU or Settlement Agreement, is to be considered in this or any other proceeding as evidence, or a presumption, admission or concession by any Party in the Lambert Action or the Englehart Action, any signatory thereto or any Released Party, of any fault, liability or wrongdoing whatsoever, or lack of any fault, liability or wrongdoing, as to any facts or claims alleged or asserted in the Lambert Action or the Englehart Action, or any other actions or proceedings.  Neither the MOU, the Settlement Agreement nor this Final Order and Judgment is a finding or evidence of the validity or invalidity of any claims or defenses in the Lambert Action or the Englehart Action or any wrongdoing by any of the defendants named therein or any damages or injury to any Class Members.  Neither the MOU, the Settlement Agreement nor this Final Order and Judgment, nor any of the terms and provisions thereof, nor any of the negotiations or proceedings in connection therewith, nor any of the documents or statements referred to herein or therein, nor the Settlement, nor the fact of the Settlement, nor the settlement proceedings, nor any statements in connection therewith may (i) be argued to be, used or construed as, offered or received in evidence as, or otherwise constitute an admission, concession, presumption, proof, evidence, or a finding of any liability, fault, wrongdoing, injury or damages, or of any wrongful conduct, acts or omissions on the part of any of the Released Parties, or of any infirmity of any defense, or of any

damage to Plaintiffs or any Class Member, (ii) otherwise be used to create or give rise to any inference or presumption against any of the Released Parties concerning any fact alleged or that could have been alleged, or any claim asserted or that could have been asserted in the Lambert Action or the Englehart Action, or of any purported liability, fault, or wrongdoing of the Released Parties or of any injury or damages to any person or entity, or (iii) otherwise be admissible, referred to or used in any proceeding of any nature, for any purpose whatsoever; provided, however, that the Settlement Agreement and/or Final Order and Judgment may be introduced in any proceeding, whether in this Court or otherwise, as may be necessary to argue that the Settlement Agreement and/or Final Order and Judgment has *res judicata*, collateral estoppel or other issue or claim preclusion effect, or to otherwise consummate or enforce the Settlement and/or Final Order and Judgment.

11.     Faruqi & Faruqi LLP is hereby awarded attorneys' fees in the sum of $_____ , which sum the Court finds to be fair and reasonable, and reimbursement of expenses in the amount of $_____. Such sums shall be paid pursuant to the provisions of the Settlement Agreement. Neither the Plaintiffs nor Plaintiffs' Counsel shall make any other application for an award of fees and expenses in connection with the Lambert Action or the Englehart Action or the subject matter of the Lambert Action or the Englehart Action.

12.     Without further order of this Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of the Settlement Agreement.

13.     If the Effective Date does not occur, this Final Order and Judgment shall be rendered null and void and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith except for Paragraph 10 hereof and Paragraphs 16, 19, 26, 27, 28, 30 and 38 of the Settlement Agreement which shall survive any such termination or vacatur,

shall be null and void; the Parties returned, without prejudice in any way, to their respective litigation positions immediately prior to the execution of the MOU.

    14.    The binding effect of this Final Order and Judgment and the obligations of Plaintiffs and Defendants under the Settlement shall not be conditioned upon or subject to the resolution of any appeal from this Final Order and Judgment that relates solely to the issue of Plaintiffs' Counsel's (or any other counsel's) application for an award of attorneys' fees and expenses.

    15.    Without affecting the finality of this Final Order and Judgment in any way, this Court reserves jurisdiction over all matters relating to the administration and consummation of the Settlement.

    16.    The Clerk of the Court is directed to enter and docket this Final Order and Judgment.

Dated: _____, 2015        _____

                                       United States District Judge

# Exhibit 6

**REGISTERED HOLDERS OF TELLABS COMMON STOCK AND PROPORTIONATE SHARE OF COMMON STOCK HELD BY THE REGISTERED SHAREHOLDERS[1]**

| STATE | NUMBER OF SHAREHOLDERS | NUMBER OF SHARES | PERCENTAGE OF TOTAL |
|---|---|---|---|
| ALABAMA | 8 | 1,310 | 0.000256 |
| ALASKA | 2 | 106 | 0.000021 |
| ARIZONA | 33 | 2,942 | 0.000575 |
| ARKANSAS | 7 | 2,321 | 0.000454 |
| CALIFORNIA | 277 | 35,352 | 0.006910 |
| COLORADO | 40 | 9,148 | 0.001788 |
| CONNECTICUT | 20 | 4,323 | 0.000845 |
| DELAWARE | 2 | 107 | 0.000021 |
| DISTRICT OF COLUMBIA | 6 | 82,923 | 0.016209 |
| FLORIDA | 138 | 15,666 | 0.003062 |
| GEORGIA | 55 | 17,968 | 0.003512 |
| HAWAII | 5 | 168 | 0.000033 |
| IDAHO | 3 | 35 | 0.000007 |
| ILLINOIS | 1,646 | 156,202,872 | 30.532854 |
| INDIANA | 58 | 9,144 | 0.001787 |
| IOWA | 13 | 20,178 | 0.003944 |
| KANSAS | 12 | 2,915 | 0.000570 |
| KENTUCKY | 9 | 940 | 0.000184 |
| LOUISIANA | 6 | 6,181 | 0.001208 |
| MAINE | 2 | 300 | 0.000059 |
| MARYLAND | 47 | 6,468 | 0.001264 |
| MASSACHUSETTS | 98 | 315,785 | 0.061726 |
| MICHIGAN | 44 | 20,341 | 0.003976 |
| MINNESOTA | 26 | 4,804 | 0.000939 |
| MISSISSIPPI | 5 | 796 | 0.000156 |
| MISSOURI | 23 | 1,627 | 0.000318 |
| MONTANA | 1 | 74 | 0.000014 |
| NEBRASKA | 3 | 404 | 0.000079 |
| NEVADA | 10 | 6,941 | 0.001357 |
| NEW HAMPSHIRE | 14 | 1,697 | 0.000332 |
| NEW JERSEY | 33 | 22,525 | 0.004403 |
| NEW MEXICO | 3 | 121 | 0.000024 |
| NEW YORK | 88 | 354,640,682 | 69.321338 |
| NORTH CAROLINA | 24 | 5,107 | 0.000998 |
| NORTH DAKOTA | 4 | 216 | 0.000042 |
| OHIO | 39 | 5,699 | 0.001114 |
| OKLAHOMA | 6 | 594 | 0.000116 |

[1] The numbers listed in this table are based on the number of registered holders of Tellabs common stock as of December 2, 2013.

| | | | |
|---|---|---|---|
| OREGON | 13 | 9,369 | 0.001831 |
| PENNSYLVANIA | 123 | 5,332 | 0.001042 |
| RHODE ISLAND | 7 | 395 | 0.000077 |
| SOUTH CAROLINA | 14 | 1,236 | 0.000242 |
| SOUTH DAKOTA | 3 | 177 | 0.000035 |
| TENNESSEE | 22 | 1,522 | 0.000298 |
| TEXAS | 349 | 35,374 | 0.006914 |
| UTAH | 6 | 298 | 0.000058 |
| VERMONT | 1 | 114 | 0.000022 |
| VIRGINIA | 121 | 19,504 | 0.003812 |
| WASHINGTON | 15 | 7,565 | 0.001479 |
| WEST VIRGINIA | 11 | 2,268 | 0.000443 |
| WISCONSIN | 50 | 6,418 | 0.001255 |
| WYOMING | 0 | 0 | 0 |
| | | | |
| OUTSIDE UNITED STATES | 367 | 51,141 | 0.009996 |
| | | | |
| **TOTAL** | **3,912** | **511,589,493** | **100.000000** |